**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy (#134180)
Robert V. Prongay (#270796)
Lesley F. Portnoy (#304851)
Charles H. Linehan (#307439)
Pavithra Rajesh (#323055)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:   (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AJAY MALHOTRA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SONIM TECHNOLOGIES, INC., ROBERT PLASCHKE, JAMES WALKER, MAURICE HOCHSCHILD, ALAN HOWE, KENNY YOUNG, SUSAN G. SWENSON, JOHN KNEUER, JEFFREY D. JOHNSON, OPPENHEIMER & CO., INC., LAKE STREET CAPITAL MARKETS, LLC, and NATIONAL SECURITIES CORPORATION,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |

Plaintiff Ajay Malhotra ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Sonim Technologies, Inc. ("Sonim" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Sonim; and (c) review of other publicly available information concerning Sonim.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Sonim common stock pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's May 2019 initial public offering ("IPO" or the "Offering"). Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act").

2. Sonim provides ultra-rugged mobile phones and accessories for task workers who are physically engaged in their work environments. The Company's phones and accessories connect workers with voice, data and workflow applications in two end markets: industrial enterprise and public sector.

3. On May 13, 2019, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold approximately 4.07 million shares of common stock at a price of $11.00 per share. The Company received proceeds of approximately $37.5 million from the Offering, net of underwriting discounts and commissions. The proceeds from the IPO were purportedly to be used for general corporate purposes, including working capital, expanded sales and marketing activities, increased research and development expenditures and funding the Company's growth strategies.

4. On September 10, 2019, Sonim stated that it expected fiscal 2019 net revenues to be flat or slightly below 2018 net revenues of $135.7 million, citing "significant delays" in the

launch of new products as well as software issues related to these new introductions. Moreover, the Company disclosed that James Walker "will cease serving as the Company's Chief Financial Officer."

5.      On this news, the Company's share price fell $3.30, or nearly 47%, to close at $3.76 per share on September 10, 2019, on unusually heavy trading volume.

6.      By the commencement of this action, Sonim stock was trading as low as $3.39 per share, a nearly 70% decline from the $11 per share IPO price.

7.      The Registration Statement was false and misleading and omitted to state material adverse facts. Specifically, Defendants failed to disclose to investors: (1) that the Company's XP8 was experiencing material software challenges; (2) that these software issues adversely affected how the device's Qualcomm chipset, which supported Band 14 access, connected to AT&T's carrier network configuration; (3) that the Company's XP5 and XP3 devices were experiencing material software defects that adversely affected their optimization with certain accessories; (4) that, as a result, the Company was reasonably likely to delay the launch of new products; (5) that, as a result of the foregoing, the Company's financial results would be materially and adversely impacted; and (6) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

9.      The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

10.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 22 of the Securities Act (15 U.S.C. § 77v).

11.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b).

1    12.    In connection with the acts, transactions, and conduct alleged herein, Defendants

2 directly and indirectly used the means and instrumentalities of interstate commerce, including the

3 United States mail, interstate telephone communications, and the facilities of a national securities

4 exchange.

5                                          **PARTIES**

6    13.    Plaintiff Ajay Malhotra, as set forth in the accompanying certification, incorporated

7 by reference herein, purchased or otherwise acquired Sonim common stock pursuant and/or

8 traceable to the Registration Statement issued in connection with the Company's IPO, and

9 suffered damages as a result of the federal securities law violations and false and/or misleading

10 statements and/or material omissions alleged herein.

11    14.    Defendant Sonim is incorporated under the laws of Delaware with its principal

12 executive offices located in San Mateo, California. Sonim's common stock trades on the

13 NASDAQ exchange under the symbol "SONM."

14    15.    Defendant Robert Plaschke ("Plaschke") was, at all relevant times, the Chief

15 Executive Officer and a Director of the Company, and signed or authorized the signing of the

16 Company's Registration Statement filed with the SEC.

17    16.    Defendant James Walker ("Walker") was, at all relevant times, the Chief Financial

18 Officer of the Company, and signed or authorized the signing of the Company's Registration

19 Statement filed with the SEC.

20    17.    Defendant Maurice Hochschild ("Hochschild") was a director of the Company and

21 signed or authorized the signing of the Company's Registration Statement filed with the SEC.

22    18.    Defendant Alan Howe ("Howe") was a director of the Company and signed or

23 authorized the signing of the Company's Registration Statement filed with the SEC.

24    19.    Defendant Kenny Young ("Young") was a director of the Company and signed or

25 authorized the signing of the Company's Registration Statement filed with the SEC.

26    20.    Defendant Susan G. Swenson ("Swenson") was a director of the Company and

27 signed or authorized the signing of the Company's Registration Statement filed with the SEC.

28

---

1    21.    Defendant John Kneuer ("Kneuer") was a director of the Company and signed or

2    authorized the signing of the Company's Registration Statement filed with the SEC.

3    22.    Defendant Jeffrey D. Johnson ("Johnson") was a director of the Company and

4    signed or authorized the signing of the Company's Registration Statement filed with the SEC.

5    23.    Defendants Plaschke, Walker, Hochschild, Howe, Young, Swenson, Kneuer, and

6    Johnson are collectively referred to hereinafter as the "Individual Defendants."

7    24.    Defendant Oppenheimer & Co. Inc. ("Oppenheimer") served as an underwriter for

8    the Company's IPO.

9    25.    Defendant Lake Street Capital Markets, LLC ("Lake Street") served as an

10   underwriter for the Company's IPO.

11   26.    Defendant National Securities Corporation ("National Securities") served as an

12   underwriter for the Company's IPO.

13   27.    Defendants Oppenheimer, Lake Street, and National Securities are collectively

14   referred to hereinafter as the "Underwriter Defendants."

15                        **CLASS ACTION ALLEGATIONS**

16   28.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

17   Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that

18   purchased or otherwise acquired Sonim common stock issued in connection with the Company's

19   IPO.  Excluded from the Class are Defendants, the officers and directors of the Company, at all

20   relevant times, members of their immediate families and their legal representatives, heirs,

21   successors, or assigns, and any entity in which Defendants have or had a controlling interest.

22   29.    The members of the Class are so numerous that joinder of all members is

23   impracticable.  Throughout the Class Period, Sonim's shares actively traded on the NASDAQ.

24   While the exact number of Class members is unknown to Plaintiff at this time and can only be

25   ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or

26   thousands of members in the proposed Class.  Millions of Sonim shares were traded publicly

27   during the Class Period on the NASDAQ.  Record owners and other members of the Class may be

28   identified from records maintained by Sonim or its transfer agent and may be notified of the

1 | pendency of this action by mail, using the form of notice similar to that customarily used in
2 | securities class actions.

3 |       30.    Plaintiff's claims are typical of the claims of the members of the Class as all
4 | members of the Class are similarly affected by Defendants' wrongful conduct in violation of
5 | federal law that is complained of herein.

6 |       31.    Plaintiff will fairly and adequately protect the interests of the members of the Class
7 | and has retained counsel competent and experienced in class and securities litigation.

8 |       32.    Common questions of law and fact exist as to all members of the Class and
9 | predominate over any questions solely affecting individual members of the Class.  Among the
10 | questions of law and fact common to the Class are:

11 |       (a)    whether the federal securities laws were violated by Defendants' acts as alleged
12 | herein;

13 |       (b)    whether statements made by Defendants to the investing public during the Class
14 | Period omitted and/or misrepresented material facts about the business, operations, and prospects
15 | of Sonim; and

16 |       (c)    to what extent the members of the Class have sustained damages and the proper
17 | measure of damages.

18 |       33.    A class action is superior to all other available methods for the fair and efficient
19 | adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the
20 | damages suffered by individual Class members may be relatively small, the expense and burden of
21 | individual litigation makes it impossible for members of the Class to individually redress the
22 | wrongs done to them.  There will be no difficulty in the management of this action as a class
23 | action.

24 | **SUBSTANTIVE ALLEGATIONS**

25 | **Background**

26 |       34.    Sonim provides ultra-rugged mobile phones and accessories for task workers who
27 | are physically engaged in their work environments. The Company's phones and accessories

28 |

connect workers with voice, data and workflow applications in two end markets: industrial enterprise and public sector.

**The Company's False and/or Misleading
Registration Statement and Prospectus**

35.     On May 9, 2019, the Company filed its final amendment to the Registration Statement with the SEC on Form S-1/A, which forms part of the Registration Statement. The Registration Statement was declared effective the same day.

36.     On May 13, 2019, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold approximately 4.07 million shares of common stock at a price of $11.00 per share.  The Company received proceeds of approximately $37.5 million from the Offering, net of underwriting discounts and commissions. The proceeds from the IPO were purportedly to be used for general corporate purposes, including working capital, expanded sales and marketing activities, increased research and development expenditures and funding the Company's growth strategies.

37.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

38.     Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

39.     According to the Registration Statement, the Company's revenue growth relied on the launch of its XP5 and XP8 phones in March 2018, stating:

*Total revenues*. Total revenues increased by $76.7 million, or 129.8%, from $59.0 million for the year ended December 31, 2017 to $135.7 million for the year ended December 31, 2018. The increase in revenues can be attributed to (i) the introduction of two new phone products in the first quarter of 2018, the XP8 smartphone and the XP5s feature phone, comprising $98.3 million of revenues for the year ended December 3 1 , 2018, and (ii) the acceptance of those two products as stocked phones at several of the major Wireless carriers in both the United States

and Canada, including AT&T, comprising $95.9 million of revenues for the year ended December 31, 2018. Total revenues from mobile phone sales to AT&T and

Group O, a provider for AT&T, were $14.5 million and $54.4 million for the years ended December 31, 2017 and December 31, 2018, respectively. While we do not have access to specific end customer data from our wireless carriers, we believe that the 275% year-over-year growth in revenues derived from sales of mobile phones to AT&T was primarily attributable to the launch of our XP5s feature phone and XP8 smartphone as stocked products at AT&T as well as AT&T'S recent sales activities in the public sector with FirstNet.

40.     The XP5 and XP8 models were "certified to work on multiple mobile network operators and come equipped with LTE Band 14 to support FirstNet," according to the Registration Statement.

41.     Under "Risks Related to Our Business," as to product defects, the Registration Statement stated:

> ***Defects in our products could reduce demand for our products and result in a loss of sales, delay in market acceptance and injury to our reputation, which would adversely impact our business.***
>
> Complex software, components and assemblies used in our products may contain undetected defects that are subsequently discovered at any point in the life of the product. For example, in 2018, we recalled one batch of our XP8 devices from two wireless carriers due to manufacturing defects. Defects in our products may result in a loss of sales, delay in market acceptance and injury to our reputation and increased warranty costs.
>
> Additionally, our software may contain undetected errors, defects or bugs. Although we have not suffered significant harm from any errors, defects or bugs to date, we may discover significant errors, defects, or bugs in the future that we may not be able to correct or correct in a timely manner. It is possible that errors, defects or bugs will be found in our existing or future software products and related services with the potential for delays in, or loss of market acceptance of, our products and services, diversion of our resources, injury to our reputation, increased service and warranty expenses, and payment of damages.
>
> Further, errors, defects or bugs in our solutions could be exploited by hackers or could otherwise result in an actual or perceived breach of our information systems. Alleviating any of these problems could require significant expense and could cause interruptions, delays or cessation of our product licensing, which would reduce demand for our products and result in a loss of sales, delay in market acceptance and injure our reputation and could adversely impact our business, results of operations and financial condition.

42.     The Registration Statement claimed that certain risks impacted the Company's launch of the XP5 and XP8 phones in March 2018 in the public safety market:

> [I]n March 2018, we launched our XP5s and XP8 phones in the public safety market and also have limited operating history in the industrial enterprise market. Because of this limited operating history, we face challenges in predicting our business and evaluating its prospects. These challenges present risks and uncertainties relating to our ability to implement our business plan successfully.

---

CLASS ACTION COMPLAINT

7

Our prospects must be considered in light of the risks, expenses and difficulties frequently encountered by newly-public companies that have recently launched a new product into a new market. If we are unsuccessful in addressing these risks and uncertainties, our business, results of operations and financial condition will be significantly harmed.

43.     The Registration Statement was materially false and misleading and omitted to state: (1) that the Company's XP8 was experiencing material software challenges; (2) that these software issues adversely affected how the device's Qualcomm chipset, which supported Band 14 access, connected to AT&T's carrier network configuration; (3) that the Company's XP5 and XP3 devices were experiencing material software defects that adversely affected their optimization with certain accessories; (4) that, as a result, the Company was reasonably likely to delay the launch of new products; (5) that, as a result of the foregoing, the Company's financial results would be materially and adversely impacted; and (6) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

## **The Subsequent Disclosures**

44.     On September 10, 2019, Sonim stated that it expected fiscal 2019 net revenues to be flat or slightly below 2018 net revenues of $135.7 million, citing "significant delays" in the launch of new products as well as software issues related to these new introductions. In a press release, the Company stated, in relevant part:

**Fiscal 2019 Financial Outlook**

Based on current expectations, Sonim management has updated its financial guidance for the fiscal year ending December 31, 2019:

• Net revenues are expected to be flat or slightly below 2018 net revenues of $135.7 million reported in fiscal 2018;

• GAAP net loss, defined as net revenues less cost of goods sold, selling, general and administrative expenses, operating expenses, depreciation, interest, taxes and other expenses, is expected to be up to $15 million;

• Adjusted EBITDA, a non-GAAP metric, is expected to be a loss of up to $5 million.

* * *

[T]he company has experienced technical challenges related to its XP8 smartphone and other general non-systemic, accessory-related issues in its feature phones,

which cumulatively resulted in lost sales momentum. These challenges have diverted resources away from launching smaller Tier 2 carrier customers and, as such, delayed the launch of Sonim devices to their customer base. The company believes that these issues are being remediated, and Sonim expects the bulk of the Tier 2 carriers to launch Sonim products in the latter part of 2019.

45.     Moreover, the Company disclosed that James Walker "will cease serving as the Company's Chief Financial Officer." In a Form 8-K filed with the SEC on September 10, 2019, the Company stated:

On September 9, 2019, the Company and Mr. James Walker determined that Mr. Walker will cease serving as the Company's Chief Financial Officer, effective immediately, and that Mr. Walker will be leaving the Company following a brief period to ensure a smooth transition of his duties to the Company's newly appointed interim Chief Financial Officer.

46.     The same day, during a conference call with investors, defendant Plaschke stated:

[W]e did experience some software challenges related to our XP8 smartphone and some other general non-systemic accessory-related issues With our feature phones.

As a result, we'd experienced lost sales momentum in the second and third quarter. These challenges have diverted resources away from launching smaller tier 2 carrier customers and as such, delayed the launch of Sonim devices to their customer bases.

47.     Defendant Plaschke further disclosed material software issues concerning Sonim products, stating:

Sure. On the XP8, we picked a chipset that explicitly because it supported band class 14. It was the first chipset available What's called a kind of mid-tier that Qualcomm provides that support band class 14, and so we in conjunction working with AT&T, to get the products out. We picked the first available -— the chipset that was most -— earliest available to get band class 14 up and running.

This chipset that Qualcomm when it releases chipsets, they don't really yet — don't really have a -- and again I don't want to speak for Qualcomm, but the -- you take a gamble on Whether you're going to be the first chipset in a particular region of the world. It turns out that the chipset that we launched, we were the first to launch it in -- at least from our -- from what we understand, the first t0 launch at North America.

And when you do that, you unintentionally take -— you unintentionally become the kind of the beta customer for that chipset and then you face a number of what I'd called network-related issues in terms of how the chipset works with the network configurations in the carriers in that particular region and they differ region to region. So we -- that has -- that has been a unexpected kind of drag coefficient for us. A number of corner cases emerged in terms of what would -- how the phone operate in different parts of the country based off the different network configurations. And we have finally I think gotten over the hump in terms of getting that -- those fixes made. Those are software changes happily, so that they

can be communicated over the air but it's taken us a number of maintenance releases and a number of -- a lot of work with Qualcomm to kind of get there.

It's not a -- so it's -- you wouldn't -- I don't know if you'd called it quality issue, just call it basically a new product introduction issue that we happen to be first. Typically, we try to, to your point or your question, we try not to be the first OEM to release a chipset in a particular region. But because of the importance of getting band class 14 out, we unintentionally took that risk, so that's the XP8.

On the XP5s and the XP3, the phones are used in a number of scenarios that are not necessarily easy to test. These are used in mission critical or what we called business critical scenarios where they are -- they are put in combination with other accessories and put in unusual situations.

So, I'll give you an example. You have a school bus company who has a certain wiring configuration to the little, the kind of a holder Where you put the phone in, and that wiring configuration as it turns out if it's not -- if it's not, I don't know what the right word is, if it's not optimized can created feedback that can affect the noise cancellation software on the phone.

These are as you might expect not easy things to debug before you launch and frankly we just -- we kind of have to take on the chin to get these problems fixed. The silver lining is that and there's multiple examples in this context of these what I would call very industrialized use cases, the silver lining is that once we figured this stuff out, we become the de facto answer for carriers to solve these tough industrial use cases where they're not going to put a normal consumer cell phone into that scenario.

48.    On this news, the Company's share price fell $3.30, or nearly 47%, to close at $3.76 per share on September 10, 2019, on unusually heavy trading volume.

49.    By the commencement of this action, Sonim stock was trading as low as $3.39 per share, a nearly 70% decline from the $11 per share IPO price.

## FIRST CLAIM

### Violation of Section 11 of the Securities Act
### (Against All Defendants)

50.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

51.    This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Defendants.

52.    The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

53.    Sonim is the registrant for the IPO.  The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

54.    As issuer of the shares, Sonim is strictly liable to Plaintiff and the Class for the misstatements and omissions.

55.    None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement was true and without omissions of any material facts and were not misleading.

56.    By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

57.    Plaintiff acquired Sonim shares pursuant and/or traceable to the Registration Statement for the IPO.

58.    Plaintiff and the Class have sustained damages.  The value of Sonim common stock has declined substantially subsequent to and due to the Defendants' violations.

## SECOND CLAIM

### Violation of Section 15 of the Securities Act
### (Against the Individual Defendants)

59.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

60.    This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

61.    The Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Sonim within the meaning of Section 15 of the Securities Act.  The Individual Defendants had the power and influence and exercised the same to cause Sonim to engage in the acts described herein.

62.    The Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

63.    By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  October 7, 2019               **GLANCY PRONGAY & MURRAY LLP**

By:   *s/ Lesley F. Portnoy*
Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email: info@glancylaw.com

*Attorneys for Ajay Malhotra*

## SWORN CERTIFICATION OF PLAINTIFF

### SONIM TECHNOLOGIES, INC. SECURITIES LITIGATION

I, Ajay Malhotra, certify that:

1.      I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.      I did not purchase the Sonim Technologies, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.      I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.      My transactions in Sonim Technologies, Inc. securities during the Class Period set forth in the Complaint are as follows:

        (See attached transactions)

5.      I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years.

6.      I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.


I declare under penalty of perjury that the foregoing are true and correct statements.


DocuSigned by:

_Ajay Malhotra_
B3C49B3F463D48D...

10/7/2019
_____                    _____
Date                                                              Ajay Malhotra

**Ajay Malhotra's Transactions in Sonim Technologies, Inc. (SONM)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 6/28/2019 | Bought | 82 | $12.8000 |