Richard W. Gonnello (admitted *pro hac vice*)
Katherine M. Lenahan (admitted *pro hac vice*)
Sherief Morsy (admitted *pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: rgonnello@faruqilaw.com
        klenahan@faruqilaw.com
        smorsy@faruqilaw.com

Benjamin Heikali SBN 307466
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
Email: bheikali@faruqilaw.com

*Attorneys for Proposed Lead Plaintiff David Sterrett*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AJAY MALHOTRA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SONIM TECHNOLOGIES, INC., ROBERT PLASCHKE, JAMES WALKER, MAURICE HOCHSCHILD, ALAN HOWE, KENNY YOUNG, SUSAN G. SWENSON, JOHN KNEUER, JEFFREY D. JOHNSON, OPPENHEIMER & CO., INC., LAKE STREET CAPITAL MARKETS, LLC, and NATIONAL SECURITIES CORPORATION,<br><br>Defendants. | **DAVID STERRETT'S OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS**<br><br>Case No. 3:19-cv-06416-MMC<br><br>**<u>CLASS ACTION</u>**<br><br>Judge:  Hon. Maxine M. Chesney<br>Date:    January 10, 2020<br>Time:   9:00 AM<br>Courtroom:  7 – 19th Floor |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT .............................................................................................................................3

I.    STERRETT IS ENTITLED TO BE APPOINTED LEAD PLAINTIFF AS A RESULT
      OF THE PSLRA'S MOST ADEQUATE PLAINTIFF PRESUMPTION ............................3

      A.    Sterrett Possesses The Largest Financial Interest In The Litigation ......................4

      B.    Sterrett Satisfies The Relevant Requirements For A Lead Plaintiff Under
            Rule 23 .................................................................................................................6

II.   MAITHER AND HIS COUNSEL ARE INADEQUATE TO REPRESENT THE
      CLASS ....................................................................................................................7

      A.    Maither And His Counsel Are Subject To A Debilitating Conflict .......................8

      B.    Maither's Potential Liability For Recommending Sonim Securities To His
            Subscribers Renders Him Inadequate....................................................................11

CONCLUSION ........................................................................................................................12

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Baffa v. Donaldson*,
222 F.3d 52 (2d Cir. 2000) ...............................................................................................11

*In re BankAmerica Corp. Sec. Litig.*,
263 F.3d 795 (8th Cir. 2001) ..........................................................................................8, 9

*In re BankAmerica Inc.*,
95 F. Supp. 2d 1044 (E.D. Mo. 2000) .................................................................................9

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ..................................................................................... *passim*

*In re Century Aluminum Co. Sec. Litig.*,
No. C 09-1001 SI, 2009 WL 2905962 (N.D. Cal. Sept. 8, 2009) ..........................................7

*In re Cloudera, Inc. Sec. Litig.*,
No. 19-CV-03221-LHK, 2019 WL 6842021 (N.D. Cal. Dec. 16, 2019)...........................4, 6

*Ferrari v. Gisch*,
225 F.R.D. 599 (C.D. Cal. 2004) ......................................................................................3

*Feyko v. Yuhe Int'l Inc.*,
No. CV 11-05511 DDP, 2012 WL 682882 (C.D. Cal. Mar. 2, 2012).....................................7

*Fischler v. AMSouth Bancorporation*,
No. 96-1567-Civ-T-17A, 1997 WL 118429 (M.D. Fla. Feb. 6, 1997) .................................11

*Fogarazzo v. Lehman Bros., Inc.*,
341 F. Supp. 2d 274 (S.D.N.Y. 2004) .................................................................................12

*Frias v. Dendreon Corp.*,
835 F. Supp. 2d 1067 (W.D. Wash. 2011) .........................................................................12

*Friedman-Katz v. Lindt & Sprungli (USA), Inc.*,
270 F.R.D. 150 (S.D.N.Y. Nov. 19, 2010)...........................................................................10

*Garbowski v. Tokai Pharms., Inc.*,
302 F. Supp. 3d 441 (D. Mass. 2018)............................................................................10, 11

*Gutman v. Sillerman*,
No. 15 Civ. 7192 (CM),
2015 U.S. Dist. LEXIS 179553 (S.D.N.Y. Dec. 8, 2015)....................................................10

*Hessefort v. Super Micro Computer, Inc.*,
317 F. Supp. 3d 1056 (N.D. Cal. 2018)............................................................................1, 3

ii

*Krim v. pcOrder.com, Inc.*,
   210 F.R.D. 581 (W.D. Tex. 2002)..................................................................................9

*Leevan v. Credit Suisse Int'l*,
   No. C 13-2783 SBA, 2013 WL 6490269 (N.D. Cal. Dec. 5, 2013).........................................4

*Lou v. Ma Labs., Inc.*,
   No. C 12-05409 WHA, 2014 WL 68605 (N.D. Cal. Jan. 8, 2014) .......................................10

*Marcus v. J.C. Penney Co., Inc.*,
   No. 6:13-CV-736, 2014 WL 11394911 (E.D. Tex. Feb. 28, 2014) ......................................10

*Markette v. XOMA Corp.*,
   No. 15-cv-03425-HSG, 2016 WL 2902286 (N.D. Cal. May 13, 2016).................................4

*Melucci v. Corcept Therapeutics Inc.*,
   No. 19-CV-01372-LHK, 2019 WL 4933611 (N.D. Cal. Oct. 7, 2019) ..............................7, 8

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.*,
   No. 13-CV-05368-LHK, 2014 WL 2604991 (N.D. Cal. June 10, 2014)................................8

*Norman v. Salomon Smith Barney, Inc.*,
   350 F. Supp. 2d 382 (S.D.N.Y. 2004) ................................................................................12

*In re Puda Coal Inc. Sec. Litig.*,
   No. 11 Civ. 2598 (DLC)(HBP), 2017 WL 65325 (S.D.N.Y. Jan. 6, 2017) ...........................6

*Puente v. Chinacast Educ. Corp.*,
   No. CV 12-4621-JFW, 2012 WL 3731822 (C.D. Cal. Aug. 22, 2012) ..................................3

*Richardson v. TVIA, Inc.*,
   No. C-06-06304 RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) .................................6

*ScripsAmerica, Inc. v. Ironridge Global LLC*,
   119 F. Supp. 3d 1213 (C.D. Cal. 2015)................................................................................5

*In re SiRF Tech. Holdings, Inc. Sec. Litig.*,
   No. C 08-0856 MMC,
   2008 WL 2220601 (N.D. Cal. May 27, 2008) (Chesney, J.) .................................................6

*Yi Xiang v. Inovalon Holdings, Inc.*,
   327 F.R.D. 510 (S.D.N.Y. 2018)..........................................................................................7

**Statutes**

15 U.S.C. § 77k(e)...........................................................................................................4, 5, 6

15 U.S.C. § 77z-1 ...................................................................................................... *passim*

15 U.S.C. § 78u-4(a)(3)(B)(iv)............................................................................................11

David Sterrett ("Sterrett") respectfully submits this memorandum of law in further support of his motion for appointment as Lead Plaintiff pursuant to § 27(a)(3)(B) of the Securities Act of 1933 ("Securities Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 77z-1(a)(3)(B), approval of Sterrett's selection of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel, and in opposition to all other competing motions.[1]

## PRELIMINARY STATEMENT

Presently before this Court are two motions by class members who seek appointment as Lead Plaintiff in the above-captioned action (the "Action" or the "Federal Action"), which asserts claims for violations of the Securities Act against Sonim Technologies, Inc. ("Sonim") and certain of its officers, directors, and underwriters of Sonim's initial public offering ("IPO"). The two competing movants are Sterrett and Lyndon Maither ("Maither").[2]

Under Section 27 of the Securities Act, as amended by the PSLRA, in situations where multiple class members seek appointment as Lead Plaintiff, Congress has established a rebuttable presumption favoring the appointment of the movant—the so-called "most adequate plaintiff"—who possesses the largest financial interest in the litigation provided the plaintiff makes a *prima facie* showing that the plaintiff satisfies the class representative requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. §77z-1(a)(3)(B)(iii)(I); *Hessefort v. Super Micro Computer, Inc.*, 317 F. Supp. 3d 1056, 1060-61 (N.D. Cal. 2018) ("Once a movant has demonstrated that it has the largest financial interest, it need only make a *prima facie* showing of its typicality and adequacy.").  The statutory scheme "provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case." *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002).  After the Court identifies the plaintiff with

---

[1]   Unless stated otherwise, the following conventions are used herein: (1) all defined terms have the same meanings as they did in Sterret's opening brief, *see* ECF No. 16 ("Opening Br."); (2) all internal citations and quotations are omitted; (3) all emphases are added; and (4) all references to "Ex. __" are to the exhibits annexed to the Declaration of Richard W. Gonnello, dated December 20, 2019, filed in support hereof.

[2]   Two additional motions seeking appointment as Lead Plaintiff were filed, but were subsequently withdrawn.  *See* ECF No. 42 (Sean Campbell); ECF No. 43 (Ajay Malhotra and Andre Ling Bin Zulkifli).

the larges financial stake in the litigation, the Court must then determine whether the plaintiff "satisfies the other statutory requirements." *Id.*

With statutory damages of $43,441.90, Sterrett possesses the largest financial interest in the Action among the four Lead Plaintiff movants. Additionally, Sterrett has made a *prima facie* showing that he satisfies the typicality and adequacy requirements of Rule 23(a) because he timely moved for appointment as Lead Plaintiff, his interests are aligned with the proposed class as evidenced by the PSLRA-required certifications he timely submitted, and lastly he retained counsel experienced in successfully prosecuting complex securities class actions who are not subject to a conflict in this case. *See* Opening Br. at 5-8. Sterrett is therefore entitled to invoke the PSLRA's most adequate plaintiff presumption. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). As there is no proof rebutting the presumption in favor of Sterrett's appointment, 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II), Sterrett is entitled to be appointed Lead Plaintiff and his selection of Lead Counsel should be approved.

For the sake of completeness, Sterrett additionally notes that movant Maither is inadequate to serve as Lead Plaintiff because he and his chosen counsel are subject to a debilitating conflict. That is, Maither's counsel represents a different plaintiff in a related state court class action against the defendants wherein that plaintiff is actively taking antagonistic positions against the rights of the duly-appointed Lead Plaintiff in this Federal Action and thus Maither's counsel is advocating against the interests of this Action's class. Maither is also inadequate because he has potential liability to investors he advised to purchase Sonim stock through his website Maither's Investment Alerts, Ltd., which puts his interests in conflict with those of the class as explained further herein.

For the reasons summarized above and explained further below, Sterrett therefore respectfully requests that the Court grant his motion to be appointed Lead Plaintiff and approve his selection of the Faruqi Firm as Lead Counsel.

2

## ARGUMENT

**I.     STERRETT IS ENTITLED TO BE APPOINTED LEAD PLAINTIFF AS A RESULT OF THE PSLRA'S MOST ADEQUATE PLAINTIFF PRESUMPTION**

The PSLRA directs the Court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. § 77z-1(a)(3)(B)(i).  The PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the movant who "has the largest financial interest in the relief sought by the class," and makes a *prima facie* showing that he satisfies Rule 23's criteria for class representatives.  15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb), (cc).

The Ninth Circuit has outlined the steps the Court must take in appointing a lead plaintiff.  First, the Court "must compare the financial stakes of the various plaintiffs and determine ***which one has the most to gain from the lawsuit***."  *Cavanaugh*, 306 F.3d at 730.  Second, the Court "must then focus its attention on ***that*** plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'"  *Id.* (original emphasis).  Notably, at the lead plaintiff stage, only a ***prima facie*** showing of typicality and adequacy is necessary.  *See Hessefort,* 317 F. Supp. 3d at 1060-61.  A "wide ranging analysis" of whether Rule 23's typicality and adequacy requirements are met is inappropriate at this stage and "should be left for consideration on a motion for class certification."  *Puente v. Chinacast Educ. Corp.*, No. CV 12-4621-JFW (PLAx), 2012 WL 3731822, at *3 (C.D. Cal. Aug. 22, 2012); *Ferrari v. Gisch*, 225 F.R.D. 599, 606 (C.D. Cal. 2004) (same).  Third, "[i]f the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23."  *Cavanaugh*, 306 F.3d at 730.  Once the presumptive lead plaintiff is chosen, other plaintiffs are afforded an opportunity to present ***evidence*** to rebut the presumptive lead plaintiff's Rule 23(a) showing.  *Id.*

3

**A.      Sterrett Possesses The Largest Financial Interest In The Litigation**

While the PSLRA does not prescribe a methodology for calculating each movant's financial interest, courts in this district typically evaluate movants using either the economic loss method (*i.e.*, actual economic losses suffered) or the potential recovery method (*i.e.*, recoverable damages).  *See In re Cloudera, Inc. Sec. Litig.*, No. 19-CV-03221-LHK, 2019 WL 6842021, at *4 (N.D. Cal. Dec. 16, 2019) (discussing the two methods); *Markette v. XOMA Corp.*, No. 15-cv-03425-HSG, 2016 WL 2902286, at *5 (N.D. Cal. May 13, 2016) ("Methods in the first category equate financial interest with actual economic losses suffered.  In contrast, a second category of methods equates largest financial interest with potential recovery."); *Leevan v. Credit Suisse Int'l*, No. C 13-2783 SBA, 2013 WL 6490269, at *3 (N.D. Cal. Dec. 5, 2013) ("District Courts have equated financial interest with actual economic losses suffered or with potential recovery, *i.e.*, recoverable damages.").

In this case, plaintiffs only assert claims under Sections 11 and 15 of the Securities Act; and they assert no claims under Section 10(b) of the Exchange Act.  *See* ECF No. 1, Class Action Complaint ("Complaint") at ¶¶50-63 (listing claims).  Unlike Section 10(b) of the Exchange Act, Section 11 of the Securities Act provides a statutory measure of damages that is easy to calculate and can be "consistently applied," as required by the Ninth Circuit in *Cavanaugh*.  *See Cavanaugh*, 306 F.3d at 730 n.4 (providing that the "accounting methods" to be used for calculating a lead plaintiff's financial interest should be "both rational and consistently applied"); 15 U.S.C. § 77k(e) (setting forth Section 11's "measure of damages"); *compare* Gibson, Dunn & Crutcher LLP, *Securities Litigation – A Practitioner's Guide*, 2d Ed., Release No. 1, §7.2.2 at 7-5 (Meryl L. Young, *et al.*, ed., Practising Law Institute Oct. 2017) ("Practitioner's Guide") (providing that "[t]he formula in section 11(e) is the *sole* methodology to be used to calculate section 11 damages[]"), *with* Practitioner's Guide at § 1:2.2 at 1-55 ("Neither section 10(b) nor Rule 10b-5 [promulgated thereunder] contains any express provisions for damages.").  Because the PSLRA requires that the most adequate lead plaintiff is the one with the "largest financial interest in the *relief sought by the class*," 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb) and Section 11(e) of the Securities Act sets forth how to calculate each

4

movant's damages, Sterrett respectfully submits that potential recovery (*i.e.*, recoverable damages) is the appropriate methodology in a case like this.

A plaintiff's potential recovery (*i.e.*, damages) under Section 11 depends upon "whether and when a plaintiff sold his shares prior to entry of judgment in the case." Practitioner's Guide at § 7.2.2 at 7-5. That is, the measure of each plaintiff's damages is the difference between the price paid for the security (not to exceed the price at which the securities were offered to the public—in this case $11 per share) and (1) the value thereof as of the time such suit was brought—in this case $3.15 per share,[3] or (2) the price at which such security was disposed of in the market *before the Action was filed*, or (3) the price at which such security was disposed of *after the Action was filed* but before judgment *if* such damages are less than the difference between the purchase price and the value of the security at the time of suit—$3.15 per share. 15 U.S.C. § 77k(e).

Based on the information provided in each movant's certification, each movant's potential recovery under Section 11(e) of the Securities Act is set forth in the chart below:

| Movant | Potential Recovery[4] |
|---|---|
| **David Sterrett** | **$43,441.90** |
| **Lyndon Maither** | **$12,475.60** |

As the chart above illustrates, Sterrett indisputably possesses the largest financial interest in the relief sought by the Class under the potential recovery method as Sterrett's damages are over three times as great as Maither's damages. *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb). For that matter, even if the Court were to use the economic loss method

[3] Sterrett respectfully requests that the court take judicial notice that the closing price of Sonim stock on the day the Action was filed, October 7, 2019, was $3.15. *See* Ex. A (a chart of Sonim's historical trading prices; *ScripsAmerica, Inc. v. Ironridge Global LLC*, 119 F. Supp. 3d 1213, 1232 (C.D. Cal. 2015) ("Because publically traded companies historical stock prices can be readily ascertained and those prices are not subject to reasonable dispute, courts routinely take judicial notice of them.")

[4] The movants' potential recovery is derived from their respective lead plaintiff certifications and loss charts. *See* ECF Nos. 16-3 & 16-4 (Sterrett); ECF Nos. 24-2 & 24-3 (Maither). *See* Ex. B (setting forth how each movant's potential recovery was calculated).

5

here, the difference between Sterrett's financial interest and Maither's would be even greater because Sterrett's economic losses (*i.e.*, his out-of-pocket losses) would increase by $29,381.23 because Sterrett purchased all of his 5,534 shares above Sonim's $11.00 IPO price, which amount is excluded from recoverable damages under § 11(e)'s measure of damages. *See* 15 U.S.C. § 77k(e) (providing that the measure of damages under Section 11 includes a purchase price not to exceed the price at which the securities were offered to the public); Complaint ¶3 (setting forth the IPO price); ECF 16-3 (Sterrett's PSLRA certification setting forth his purchase prices) at 3.[5]  Consequently, Sterrett has the largest financial interest in the litigation no matter which method is used.[6]

### B.     Sterrett Satisfies The Relevant Requirements For A Lead Plaintiff Under Rule 23

Having established that he possesses the largest financial interest, Sterrett is entitled to invoke the PSLRA's "most adequate plaintiff" presumption because he made a *prima facie* showing that he satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc); *Cavanaugh*, 306 F.3d at 730; *see also In re SiRF Tech. Holdings, Inc. Sec. Litig.*, No. C 08-0856 MMC, 2008 WL 2220601, at *2 (N.D. Cal. May 27, 2008) (Chesney, J.) ("Because the Court has found [movant] has the largest loss and could satisfy the requirements set forth in Rule 23(a), [movant] is the presumptively most adequate plaintiff.").

---

[5]     While lead plaintiff movants' total shares purchased, net shares purchased, and net funds expended during the class period are sometimes considered under the economic loss method as factors, *see Cloudera*, 2019 WL 6842021, at *4, "the approximate losses suffered" is by far the "most determinative" of these factors in identifying the plaintiff with the largest financial loss," *Richardson v. TVIA, Inc.,* No. C-06-06304 RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007).

[6]     For simplicity's sake, Sterrett will not dispute the various economic losses provided by some of the other movants because they are nonetheless smaller than Sterrett's.  Sterrett notes, however, that Maither appeared to use the PSLRA's 90-day limitation on damages in calculating his losses, ECF No. 24-3 at 2 (referencing a "90-day lookback period"), but that provision "is inapplicable to claims brought under the Securities Act[,]" which are the only claims asserted in this Action.  *In re Puda Coal Inc. Sec. Litig.*, No. 11 Civ. 2598 (DLC)(HBP), 2017 WL 65325, at *11 n.10 (S.D.N.Y. Jan. 6, 2017) (explaining that the PSLRA's limitation on damages appears in 15 U.S.C. § 78u-4(e) and "is only applicable to claims brought under the Exchange Act[]"), *adopted by* No. 11cv2598(DLC), 2017 WL 511834 (S.D.N.Y. Feb. 8, 2017).

6

As evidenced by his certification, ECF No. 16-3 at 1-2, Sterrett's claims are typical of the Class's claims because he acquired Sonim stock pursuant and/or traceable to the IPO and suffered damages as a result of Defendants' Securities Act violations. *See Yi Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510, 523 (S.D.N.Y. 2018) (typicality satisfied for Section 11 claims when investors purchased stock pursuant and/or traceable to defendant corporation's IPO).

Additionally, Sterrett demonstrates that he satisfies Rule 23's adequacy requirement by having timely moved for Lead Plaintiff, filing the requisite certifications, and selecting counsel—the Faruqi Firm—with the requisite skills, experience, and competence to prosecute the Action vigorously and efficiently in the best interest of the class. *See In re Century Aluminum Co. Sec. Litig*., No. C 09-1001 SI, 2009 WL 2905962, at *5 (N.D. Cal. Sept. 8, 2009) (movant's certification evidenced adequacy to serve as the lead plaintiff); *Feyko v. Yuhe Int'l Inc*., No. CV 11-05511 DDP (PJWx), 2012 WL 682882, at *3 (C.D. Cal. Mar. 2, 2012) (The adequacy "prong is satisfied where the lead plaintiff's attorneys are qualified and where its interest are not antagonistic to those of the class.").

Consequently, Sterrett is the presumptive Lead Plaintiff.  To overcome the strong presumption favor of appointing Sterrett as Lead Plaintiff, the PSLRA requires "proof" that Sterrett is either inadequate or atypical to serve as Lead Plaintiff.  *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).  No such proof exists here, and Sterrett should therefore be appointed Lead Plaintiff in this Action.

## II.       MAITHER AND HIS COUNSEL ARE INADEQUATE TO REPRESENT THE CLASS

Setting aside the fact that Maither is not entitled to be appointed Lead Plaintiff because he asserts a smaller financial interest than Sterrett, he cannot meet Rule 23's adequacy requirements because: (1) Maither and his counsel are conflicted due to a position his counsel has taken in a related state court class action on behalf of a different client that is antagonistic to the Federal Action's class and Lead Plaintiff; and (2) Maither faces potential liability for recommending Sonim stock to subscribers on his investment website, which puts his interests in conflict with the interests of the class.  *See Melucci v. Corcept Therapeutics Inc.*, No. 19-CV-

7

01372-LHK, 2019 WL 4933611, at *5 (N.D. Cal. Oct. 7, 2019) (considering whether proposed lead plaintiff and his counsel had conflicts while conducting adequacy inquiry); *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, No. 13-CV-05368-LHK, 2014 WL 2604991, at *5 (N.D. Cal. June 10, 2014) (same).

### A.   Maither And His Counsel Are Subject To A Debilitating Conflict

Although not disclosed to the Court or other movants, Maither's counsel Hagens Berman Sobol Shapiro LLP ("Hagens Berman") currently serves as Plaintiffs' Interim Co-Lead counsel along with three other law firms in a consolidated securities class action pending in California state court against the same defendants on behalf of the same class of investors alleged here ("State Court Action").  *See* Ex. C, Stipulation and Order Consolidating Related Complex Cases at ¶¶9, 14, *In re Sonim Techs., Inc. Sec. Litig.*, No. 19CIV05564 ("State Court Docket") (Cal. Sup. Ct. Nov. 8, 2019) (appointing Hagens Berman as Interim Co-Lead Counsel in the consolidated action).  A Joint Case Management Conference Statement ("CMC Statement") was recently filed in the State Court Action which set forth the State Court Action's plaintiffs' intention to *oppose* the defendants' motion to stay the State Court Action in deference to the Federal Action—*i.e.*, this Action.[7]  *See* Ex. E, CMC Statement at 4, State Court Docket (Dec. 3, 2019).

By opposing the stay motion, Maither's counsel is taking a position on behalf of another client that conflicts not only with Maither's interests in leading this Federal Action, but also actively undermines the duly appointed lead plaintiff's rights "to steer [the] litigation."  *See In re BankAmerica Corp. Sec. Litig.*, 263 F.3d 795, 801 (8th Cir. 2001) (explaining that the PSLRA's lead plaintiff provisions "create significant federal rights that previously did not

---

[7]   The Defendants also indicated their intention to seek a stay due to pending litigation in the Delaware Supreme Court.  The litigation pertains to whether "courts must enforce exclusive federal forum provisions in corporate certificates of incorporation," like the one Sonim purports to have.  *See* Ex. D, Sonim Defendants' Notice of Motion and Motion To Stay and Memorandum of Points and Authorities In Support Thereof ("Motion To Stay") at 1, State Court Docket (Dec. 9, 2019).  According to the defendants, the Delaware Court will likely decide this question within 90 days of January 8, 2020, *id.* at 6, and "[i]f the Delaware Supreme Court holds that these provisions are enforceable, this consolidated [State Court Action] cannot proceed in [State] Court," *id.* at 1.

8

exist," which include the rights to "control [] aspects of litigation such as discovery, choice of counsel, assertion of legal theories, retention of consultants and experts, and settlement negotiations[,]" "giv[ing] the lead plaintiff decisional muscle that other members of the class lack[]"); *cf. Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 589 (W.D. Tex. 2002) ("Conflicts of interest may exist for class counsel if they are involved in multiple lawsuits for the named representative or against the same defendants.").

As the Defendants point out, allowing this Action and the State Court Action to proceed simultaneously would also be wasteful, duplicative, and create a "high" "risk of inconsistent rulings and unseemly conflicts" because it "would require simultaneous litigation and trial of claims in which competing plaintiffs seek recovery on behalf of the *same* putative class, alleging the exact *same* conduct and underlying facts, brought under the *same* federal securities laws, and asserted against the same defendants." Ex. D, Motion To Stay at 2, 9 (original emphasis).[8]  Indeed, should the State Court Action proceed, the State Court plaintiffs could attempt to settle the claims in this Action without the duly appointed federal Lead Plaintiff's consent, undermining the Lead Plaintiff's Congressionally-conferred rights. *See BankAmerica*, 263 F.3d at 800 ("[T]he federal right of control by the greatest stakeholder could not be given its intended scope if competing state court plaintiffs . . . could institute premature settlement negotiations which threaten the orderly conduct of the federal case and which could result in the release of the federal claims.").[9]

---

[8]  Sterrett intends to support Defendants' Motion To Stay should he be appointed Lead Plaintiff, and may take the additional step approved by the Eighth Circuit Court of Appeals in *BankAmerica* and file a motion seeking to enjoin the State Court Action.  *See BankAmerica*, 263 F.3d at 798-800 (affirming the district court's injunction barring state court plaintiffs from prosecuting a state court action whose proceedings undermined the federal lead plaintiff's rights).

[9]  Maither's counsel is undoubtedly aware of the conflict that the parallel State Court proceedings pose to the federal Lead Plaintiff's rights as one of the attorneys who represents him, Reed Kathrein, represented the state court plaintiffs in *BankAmerica* while he was with the firm of Milberg, Weiss, Hynes & Lerach ("Milberg Weiss").  *See In re BankAmerica Inc.*, 95 F. Supp. 2d 1044, 1048, 1050 (E.D. Mo. 2000) (expressing frustration with Milberg Weiss for engaging in "precisely the sort of lawyer-driven machinations the PSLRA was designed to prevent" and describing those "machinations" as including, *inter alia*, a letter submitted by Mr. Kathrein indicating the state court plaintiffs' "intent to structure the classes to avoid removal of the case to federal court"), *aff'd,* 263 F.3d 795 (8th Cir. 2001).

9

Thus, Maither's counsel is necessarily inadequate because it has taken a position antagonistic to the Federal Action's class and Lead Plaintiff as well as for willfully hiding the fact that it is trying to undermine the Federal Action's duly appointed Lead Plaintiff's rights in the State Court Action while purporting to protect them by seeking appointment as Lead Counsel on behalf of Maither. *See Lou v. Ma Labs., Inc.*, No. C 12-05409 WHA, 2014 WL 68605, at *1-2 (N.D. Cal. Jan. 8, 2014) (finding proposed class counsel inadequate where it had a "conflict" due to its representation of an overlapping class against the same defendants in another case and stating "a class . . . deserves to be championed by its counsel unencumbered by their duties to other clients[]"); *Gutman v. Sillerman*, No. 15 Civ. 7192 (CM), 2015 U.S. Dist. LEXIS 179553, at *10-11 (S.D.N.Y. Dec. 8, 2015) (declining to appoint as lead counsel and lead plaintiff those who "engaged in chicanery"); *Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 160 (S.D.N.Y. Nov. 19, 2010) ("[I]n considering whether the proposed class counsels are adequate, the Court may consider the honesty and integrity of the putative class counsels, as they will stand in a fiduciary relationship with the class."); *cf. Marcus v. J.C. Penney Co., Inc.*, No. 6:13-CV-736, 2014 WL 11394911, at *7 (E.D. Tex. Feb. 28, 2014) (finding a proposed lead plaintiff inadequate for taking a position that was adverse to the class's interests by advocating for a shorter class period and stating "[t]his self-serving behavior is precisely the type of rebuttable evidence provided in the PSLRA that would prohibit this Court from appointing [the plaintiff] lead plaintiff[]").

Hagens Berman's conflict likewise renders Maither himself inadequate. If Maither is aware of his counsel's plan to oppose the stay in the State Court Action, he is inadequate not only because he chose conflicted counsel, but also because he is effectively encouraging four law firms (the interim co-lead counsel in the State Court Action) to run up expenses to the detriment of the class and unbeknownst to the Court. *Cavanaugh*, 306 F.3d at 733 ("[I]f the presumptive lead plaintiff has selected as counsel . . . a lawyer who has a conflict of interest, this too may bear on the plaintiff's adequacy."). Likewise, Maither is also inadequate if he was unaware of the position his counsel has taken in the State Court Action because he has failed to supervise his counsel. *Garbowski v. Tokai Pharms., Inc.*, 302 F. Supp. 3d 441, 455-56 (D.

10

Mass. 2018) (finding movant inadequate because "case would have been conducted by unsupervised plaintiffs' attorneys—a practice the PSLRA was intended to end"); *Baffa v. Donaldson*, 222 F.3d 52, 61 (2d Cir. 2000) (a plaintiff is inadequate when he is "unwilling to protect the interest of the class against the possibly competing interests of the attorneys").

Should the Court find the foregoing points regarding Maither's and his counsel's inadequacy to be debatable, Sterrett respectfully requests that he be allowed to depose Maither regarding his knowledge of his counsel's positions in the State Court Action on behalf of the State Court plaintiffs, and whether his counsel's deference to the State Court Action was ever disclosed to him. *See* 15 U.S.C. § 77z-1(a)(3)(B)(iv) (permitting "discovery relating to whether a member . . . of the purported plaintiff class is the most adequate plaintiff" if there is a "reasonable basis" to find that the plaintiff is incapable of adequately representing the class); *Fischler v. AMSouth Bancorporation*, No. 96-1567-Civ-T-17A, 1997 WL 118429, at *3-4 (M.D. Fla. Feb. 6, 1997) (granting discovery of lead plaintiff movant, whose counsel served as counsel for named plaintiffs in a similar Alabama state court action, where there were "unanswered questions" about the movant's intent "to stay, divide, or sever portions of the class for disposition elsewhere" and there was uncertainty about which "claims" the movant would press).

### B.    Maither's Potential Liability For Recommending Sonim Stock To His Subscribers Renders Him Inadequate

Maither, who provides professional investment advice for a fee, recommended his clients invest in Sonim on August 16, 2019 by including it in his "Daily Interest" reports on his business's website. *See* Ex. F (screenshot from Maither's website describing Sonim as one the stock "picks" for that day).[10]  According to his website, Maither's "Daily Interests" are reports that "consist[] of lists of 4 to 6 TSX/NYSE/NASDAQ stocks that were picked for their ability, with this, ***to gain considerable returns in the mid/long-term***."  Daily Interests & Criteria, Maither Investment Alerts Ltd., https://maithers-investment-alerts.com/daily-interests-criteria/ (last visited Dec. 16, 2019).  The preview available of the report on Sonim suggests that Maither

---

[10]    Tellingly, Maither's website is now inaccessible as of the date of this filing.

predicts the stock price will hit $18-19, even though it had closed at $7.10 the previous day. *See* Ex. F; Ex. A (Sonim's historical trading prices).

By recommending Sonim to other investors, Maither appears to have potential exposure for his Sonim investment recommendation that would put his interests in conflict with those of the class. *See Norman v. Salomon Smith Barney, Inc.*, 350 F. Supp. 2d 382, 384-85 (S.D.N.Y. 2004) (upholding claims for breach of fiduciary duty against defendant that issued false or misleading analyst reports); *Fogarazzo v. Lehman Bros., Inc.*, 341 F. Supp. 2d 274, 290 (S.D.N.Y. 2004) (upholding claims under 10b-5 against defendants that issued false or misleading analyst reports). For example, if Maither were sued for breach of fiduciary duty or negligent misrepresentation as a result of his recommendation of Sonim, he would have to take the position that he could not have known of the registration statements' falsity, which the underwriter defendants would then use to support their due diligence defense. *See* Practitioner's Guide at §1:1:1.1[G] at 1-10 (providing that defendants besides the issuer may establish a due diligence defense to a Section 11 claim under 15 U.S.C. § 77k(b)(3) if they can demonstrate that they had "after reasonable investigation, reasonable grounds to believe, at the time such part of the registration statement became effective, that the statements therein were true and that there was no omission to state a material fact required to be stated therein or necessary to make statements therein not misleading"). Thus, Maither's interests are "antagonistic" to those of the proposed class and he is therefore inadequate to serve as Lead Plaintiff. *Frias v. Dendreon Corp.*, 835 F. Supp. 2d 1067, 1076 (W.D. Wash. 2011) (stating that to satisfy the "adequacy" requirement, the proposed lead plaintiff's interests cannot be "antagonistic" to the class's interests").

## CONCLUSION

For the foregoing reasons, Sterrett respectfully requests that the Court appoint him as Lead Plaintiff, approve his selection of the Faruqi Firm as Lead Counsel, and grant such other relief as the Court may deem just and proper.

Dated: December 20, 2019                    **FARUQI & FARUQI, LLP**

12

By: */s/ Richard W. Gonnello*
      Richard W. Gonnello

Richard W. Gonnello (*pro hac vice*)
Katherine M. Lenahan (*pro hac vice*)
Sherief Morsy (*pro hac vice*)
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: rgonnello@faruqilaw.com
      klenahan @faruqilaw.com
      smorsy@faruqilaw.com

Benjamin Heikali SBN 307466
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
Email:  bheikali@faruqilaw.com

*Attorneys for Proposed Lead Plaintiff David Sterrett*

**DAVID STERRETT'S OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS**
**Case No. 3:19-cv-06416-MMC**