# EXHIBIT D

MATTHEW W. CLOSE (S.B. #188570)
mclose@omm.com
JONATHAN WAXMAN (S.B. #294851)
jwaxman@omm.com
KATE M. IKEHARA (S.B. #313431)
kikehara@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
18th Floor
Los Angeles, California  90071-2899
Telephone:     +1 213 430 6000
Facsimile:      +1 213 430 6407

*Attorneys for Defendants Sonim Technologies,
Inc., Robert Plaschke, James Walker, Maurice
Hochschild, Alan Howe, Kenny Young, Susan G.
Swenson, John Kneuer, and Jeffrey D. Johnson*

Electronically
FILED
By Superior Court of California, County of San Mateo
ON    12/9/2019
By    /s/ Jennifer Tannous
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE CITY AND COUNTY OF SAN MATEO

| | |
|---|---|
| IN RE SONIM TECHNOLOGIES, INC., SECURITIES LITIGATION | Lead Case No. 19CIV05564 |
| | **CLASS ACTION** |
| This Document Relates To: | Assigned for all purposes to the Hon. Nancy L. Fineman, Dept. 4 |
| ALL ACTIONS. | **SONIM DEFENDANTS' NOTICE OF MOTION AND MOTION TO STAY AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | [Filed concurrently with Declaration of Matthew W. Close; [Proposed] Order; and Proof of Service] |
| | Date:    January 31, 2020<br>Time:    9:30 AM<br>Dept.:    4<br>Judge:  Hon. Nancy L. Fineman |

SONIM DEFS' NOTICE & MOTION TO STAY                         LEAD CASE NO. 19CIV05564

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 31, 2020 at 9:30 AM, or as soon thereafter as the matter may be heard in the courtroom of the Honorable Nancy L. Fineman, located in Department 4 at 400 County Center, Courtroom 8B, Redwood City, California, 94063, Defendants Sonim Technologies, Inc. ("Sonim" or the "Company"), Robert Plaschke, James Walker, Maurice Hochschild, Alan Howe, Kenny Young, Susan G. Swenson, John Kneuer, and Jeffrey D. Johnson (the "Individual Defendants," and collectively with Sonim, the "Sonim Defendants") will, and hereby do move the Court for an order staying the above-captioned putative class action on the grounds that pending litigation before the Delaware Supreme Court will substantially impact, and potentially render moot, further proceedings in this case. In a few months, the Delaware Supreme Court is expected to decide if Delaware corporations like Sonim can enforce provisions in their Certificates of Incorporation that require stock purchasers to bring federal claims like those filed in this case in federal court. There is also a substantially similar class action pending in the United States District Court for the Northern District of California and litigating the same claims twice—in this Court and federal court—would be wasteful, duplicative, and prejudicial.

The Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Matthew W. Close submitted herewith, the [Proposed] Order, the records and files in this action, and upon such other evidence or argument as may be presented before or during the hearing on this matter.

Dated: December 9, 2019

MATTHEW W. CLOSE
JONATHAN WAXMAN
KATE M. IKEHARA
O'MELVENY & MYERS LLP

By:  /s/ Matthew W. Close
      Matthew W. Close

*Attorneys for Defendants Sonim Technologies, Inc., Robert Plaschke, James Walker, Maurice Hochschild, Alan Howe, Kenny Young, Susan G. Swenson, John Kneuer, and Jeffrey D. Johnson*

- 2 -

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION .............................................................................................. 1

II.   BACKGROUND ............................................................................................... 2

    A.   Sonim's IPO. ........................................................................................ 2

    B.   The Securities Litigation. ..................................................................... 4

    C.   Sonim's Federal Forum Provision and the Delaware *Sciabacucchi* Litigation. ............................................................................................ 5

III.   ARGUMENT ..................................................................................................... 6

    A.   This Court Has Authority to Stay this Case. ........................................ 6

    B.   A Stay Is Warranted Because the Delaware Supreme Court Is Likely to Determine the Validity of Federal Forum Provisions In a Few Months. ................. 6

    C.   Additional Factors Favor a Stay of the State Court Actions. ............... 8

        1.   The Potential for "Unseemly Conflicts" Is High. ..................... 9

        2.   The Rights of the Parties Can Best Be Determined by the Federal Court. .................................................................... 10

        3.   No Prejudice Would Result From Staying the State Court Actions. ........ 11

        4.   The Court Should Give No Weight to the Order In Which the Actions Were Filed or the Number of Duplicative State Court Actions. ..................................... 12

IV.   CONCLUSION ............................................................................................... 14

SONIM DEFS' NOTICE & MOTION TO STAY          LEAD CASE NO. 19CIV05564

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Bionics Corp. v. Medtronic, Inc.*,
29 Cal. 4th 697 (2002) ........................................................................................... 12

*Berg v. MTC Elecs. Techs. Co.*,
61 Cal. App. 4th 349 (1998) ................................................................................. 8, 9

*Biondi v. Scrushy*,
820 A.2d 1148 (Del. Ch. 2003), ............................................................................ 12

*Caiafa Prof'l Law Corp. v. State Farm Fire & Cas. Co.*,
15 Cal. App. 4th 800 (1993) ......................................................................... 8, 10, 11

*Caravetta v. McKesson HBOC, Inc.*,
846 A.2d 240 (Del. Super. 2000) ........................................................................... 11

*Cheng Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ....................................................... 12

*Clark's Fork Reclamation Dist. #2069 v. Johns*,
259 Cal. App. 2d 366 (1968) ................................................................................. 11

*Dennis v. Hart*,
724 F.3d 1249 (9th Cir. 2013) ............................................................................... 10

*Forlenzo v. Schwartz*,
2006 WL 4524484 (Alameda Cty. Super. Ct. Nov. 15, 2006) ............................... 11

*Freiberg v. City of Mission Viejo*,
33 Cal. App. 4th 1484 (1995) .................................................................................. 6

*Guerrero v. Dep't of Corr. & Rehab.*,
28 Cal. App. 5th 1091 (2018) .................................................................................. 8

*In re Arlo Techs., Inc. S'holder Litig.*,
No. 2018-1-CV-339231 (Santa Clara Cty. Super. Ct. June 21, 2019) .................. 7, 8

*In re Bear Stearns Cos. Inc. S'holder Litig.*,
2008 WL 959992 (Del. Ch. Apr. 9. 2008) ............................................................ 12

*In re Network Assocs., Inc., Sec. Litig.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999) .................................................................. 12

*In re Quest Software, Inc. S'holder Litig.*,
2012 WL 10236178 (Cal. Super. Ct. June 7, 2012) .............................................. 13

- ii -

SONIM DEFS' NOTICE & MOTION TO STAY                    LEAD CASE NO. 19CIV05564

**TABLE OF AUTHORITIES**
*(continued)*

**Page(s)**

*In re Topps Co. S'holders Litig.*,
924 A.2d 951 (Del. Ch. 2007) ................................................................................................ 12

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ................................................................................................................ 6

*Mediterranean Enters., Inc. v. Ssangyong Corp.*,
708 F.2d 1458 (9th Cir. 1983) ................................................................................................ 6

*OTO, L.L.C. v. Kho*,
8 Cal. 5th 111 (2019) .............................................................................................................. 6

*Schneider v. Vennard*,
183 Cal. App. 3d 1340 (1986) ................................................................................................ 7

*Sciabacucchi v. Salzberg*,
2018 WL 6719718 (Del. Ch. Dec. 19, 2018) ........................................................................ 5

*Staehr v. Duffield*,
2003 WL 25485513 (Alameda Cty. Super. Ct. June 18, 2003) ............................................ 13

**Statutes**

15 U.S.C. § 78aa(a) ............................................................................................................ 10, 16

15 U.S.C. § 78u-4(3)(A)(i)(II) ................................................................................................ 4, 9

15 U.S.C. § 78u-4(3)(B)(i) ...................................................................................................... 4, 9

**Rules**

Fed. R. Civ. P. 23 .................................................................................................................... 12

- iii -

## I.    INTRODUCTION

Sonim Technologies, Inc. ("Sonim" or the "Company") held an initial public offering of its common stock ("IPO") in May 2019.  After Sonim's stock price dropped below the IPO offering price, several individual Sonim stock purchasers predictably rushed to court.  Four putative securities class action complaints were filed, three in this Court and one in the United States District Court for the Northern District of California.  The four complaints are substantively identical.  Each Plaintiff seeks to represent the same class of Sonim stock purchasers, names the same defendants, and asserts exclusively federal claims under the Securities Act of 1933 (the "Securities Act").

The four overlapping complaints should be litigated in only one court.  Otherwise, the parties and the courts will waste significant resources to resolve the same underlying disputes against the same defendants.  This is not only inefficient, it also risks inconsistent rulings on multiple issues, ranging from the timing and scope of discovery to the substantive legal and factual issues in the case.  The Sonim Defendants respectfully submit that this Court should stay the consolidated action pending here for several reasons.

Oral argument has been set in the Delaware Supreme Court in *Sciabacucchi v. Salzberg*, which squarely presents the question of whether courts must enforce exclusive federal forum provisions in corporate certificates of incorporation.  Federal forum provisions mandate that all Securities Act claims against the particular corporation be filed exclusively in federal court.  Like other Delaware corporations, Sonim included such a provision in its Amended and Restated Certificate of Incorporation at the time of its IPO.  If the Delaware Supreme Court holds that these provisions are enforceable, this consolidated action cannot proceed in this Court.  And all of the work and resources expended by the parties and this Court in the meantime will have been for naught.  In contrast, the Delaware Supreme Court's decision will have no effect on the parallel litigation pending in federal court.  Accordingly, this Court should stay this action, in the interest of justice and judicial economy, at least until the Delaware Supreme Court has ruled on the gating issue in this case: whether corporations like Sonim can require in their certificates of incorporation that stock purchasers pursue federal Securities Act claims in federal court.

- 1 -

Additional considerations confirm that this Court should stay the consolidated action irrespective of the outcome in *Sciabacucchi*. Litigating the same claims twice, in parallel and wholly duplicative proceedings, wastes resources of the parties and the courts, risks inconsistent rulings, injures class members, and prejudices the defendants by forcing them to defend against identical allegations in multiple fora. There is also the prospect that in a few months the lead plaintiff appointed by the federal court will add claims under the Securities Exchange Act of 1934 ("Exchange Act") for which the federal court has exclusive jurisdiction. If that occurs, the federal court will indisputably be better positioned to handle the actions.

Plaintiffs will not face any prejudice if the putative class's claims are litigated in federal court. These are federal statutory claims and the federal court is located nearby. Plaintiffs here are members of the same putative stock purchaser class that is pursuing claims in federal court, and the state court plaintiffs could have applied to be appointed as the lead plaintiffs in the federal proceeding.

## II.     BACKGROUND

### A.     Sonim's IPO.

Sonim is a leading U.S. provider of ultra-rugged mobile phones and accessories designed specifically for task workers physically engaged in their work environments, including first responders and public safety personnel. Sonim sells its products to three of the four largest wireless carriers in the United States—AT&T, Sprint and Verizon—as well as the three largest wireless carriers in Canada—Bell, Rogers and Telus Mobility. (*See, e.g.*, *Pearson* Compl. ¶ 2; Ex. 1 at 1.)[1] Sonim's products are collectively designed to increase worker productivity, communication, and safety on the job site. (Ex. 1 at 1.)

Sonim was founded in 1999, and the Company's business has grown over the years, with revenues growing from $59 million in 2017, to $135.7 million in 2018. (*Id.* at 6, 50.) In connection with Sonim's IPO, the Company filed amendments to its Form S-1 Registration Statement in April and May 2019. On May 13, 2019, Sonim filed the final prospectus in

---

[1] References to "Ex. __" refer to documents attached to the Declaration of Matthew W. Close, filed herewith.

- 2 -

connection with its IPO, which forms part of the Registration Statement (collectively, the "Registration Statement"). (*Pearson* Compl. ¶ 7.) The Registration Statement describes in detail Sonim's business, products, industry, historical results, and risk factors. (*See generally* Ex. 1 at 1–39.) Specifically, the Registration Statement discloses certain Risk Factors to potential investors, including that "[c]omplex software, components and assemblies used in our products may contain undetected defects that are subsequently discovered at any point in the life of the product." (*Id.* at 15.) The Registration Statement further explains that, "[f]or example, in 2018, we recalled one batch of our XP8 devices from two wireless carriers due to manufacturing defects." (*Id.*) Moreover, the Registration Statement informs potential investors that, "[i]t is possible that errors, defects or bugs will be found in our existing or future software products and related services with the potential for delays in, or loss of market acceptance of, our products and services, diversion of our resources, injury to our reputation, increased service and warranty expenses, and payment of damages." (*Id.*)

Sonim's Registration Statement was declared effective on May 9, 2019, and Sonim completed its IPO at a price of $11.00 per share. Sonim shares began trading on the Nasdaq Global Market on May 10, 2019. Over the following weeks, Sonim's stock price rose to a high of $18.25 on June 7, 2019. On July 24, 2019, during its regular quarterly earnings announcement and investor call, Sonim gave forward-looking financial guidance for the remainder of 2019. During August, Sonim's stock began to trade below the $11 IPO price.

On September 10, 2019, Sonim issued a press release revising its financial guidance downward for 2019. In the September 10 press release, Sonim explained that its revised financial outlook was caused by several factors, primarily stemming from changes in U.S. wireless carrier forecasts for the launch of Sonim's new products and launch delays due to software issues related to these new phones. Also on September 10, 2019, Sonim held a conference call with investors in which the Company provided additional information about the software challenges it faced in connection with its new products. Following Sonim's September 10 guidance revisions, Sonim's stock price fell further.

- 3 -

**B.    The Securities Litigation.**

Between September 20 and October 16, 2019, four putative class action lawsuits were filed against Sonim, certain of its current and former officers and directors, and the underwriters of its IPO (collectively, the "Defendants").  The actions are all brought under the Securities Act against identical defendants regarding the same underlying events.  In all four complaints, Plaintiffs allege that the Registration Statement contained material misstatements or omissions; Plaintiffs' theory is that at the time of the IPO, the Company's phones were suffering from material software defects that the Company failed to disclose.  Each Plaintiff seeks to represent the same putative class of Sonim investors—those who purchased shares pursuant to or traceable to the Registration Statement issued in connection with Sonim's IPO.

Three lawsuits were filed in this Court: *Pearson v. Sonim Technologies, Inc., et al.*, Case No. 19CIV05564 (filed September 20, 2019); *Ly v. Sonim Technologies, Inc., et al.*, Case No. 19CIV05889 (filed October 4, 2019); and *Hostak v. Sonim Technologies, Inc., et al.*, Case No. 19CIV06104 (filed October 16, 2019) (collectively, the "State Court Actions").  There have been no substantive developments in the State Court Actions, although they have been consolidated, and the parties have stipulated that Defendants need not respond to the current pleadings because Plaintiffs will file a consolidated amended complaint by December 20.

In addition to the State Court Actions, a lawsuit was filed in the United States District Court for the Northern District of California: *Malhotra v. Sonim Technologies, Inc. et al.*, Case No. 3:19-cv-06416 (filed October 7, 2019) (the "Federal Action").  (*See* Ex. 2.)  The Federal Action is currently pending before the Honorable Maxine M. Chesney.  Pursuant to the Private Securities Litigation Reform Act ("PSLRA"), any stock purchaser may move for appointment as lead plaintiff by December 6, 2019.  *See* 15 U.S.C. § 78u-4(3)(A)(i)(II).  The Sonim Defendants expect that Judge Chesney will appoint a lead plaintiff and lead counsel to prosecute the Federal Action in early 2020.  *See* 15 U.S.C. § 78u-4(3)(B)(i) (providing for appointment of lead plaintiff within ninety days of publication of lead plaintiff notice).  The lead plaintiff in the Federal Action will file an amended complaint, which will allow the lead plaintiff to expand the scope of the Federal Action, including by asserting additional claims under the Exchange Act, claims for

- 4 -

which federal courts have exclusive jurisdiction.

C.    **Sonim's Federal Forum Provision and the Delaware *Sciabacucchi* Litigation.**

Sonim's Amended and Restated Certificate of Incorporation (the "Restated Certificate") contains, among other things, a provision designating the federal courts of the United States as the exclusive forum for claims arising under the Securities Act.  (*See* Ex. 3.)  In particular, Article VII(B) states:

> Unless the Company consents in writing to the selection of an alternative forum, the ***federal district courts of the United States of America shall be the exclusive forum for the resolution of any complaint asserting a cause of action arising under the Securities Act***.  Any person or entity purchasing or otherwise acquiring any interest in shares of capital stock of the Company shall be deemed to have notice of and to have consented to the provisions of this Article VII.

(*Id.* at 5) (the "Federal Forum Provision") (emphasis added).  The Federal Forum Provision applies to all of Plaintiffs' claims and provides that federal court is the exclusive venue for those claims.

The Registration Statement informed potential investors of the Federal Forum Provision.  Specifically, the Registration Statement explained:

> Our amended and restated certificate of incorporation will provide that, unless we consent in writing to the selection of an alternative forum, the ***federal district courts of the United States shall, to the fullest extent permitted by law, be the sole and exclusive forum for the resolution of any complaint asserting a cause of action arising under the Securities Act.***

(Ex. 1 at 37–38.)  The Registration Statement also fully disclosed that there was uncertainty as to whether a court would enforce such a provision: At the time, the Delaware Court of Chancery had declined in *Sciabacucchi* to enforce a substantially similar federal forum provision.  *Sciabacucchi v. Salzberg*, 2018 WL 6719718 (Del. Ch. Dec. 19, 2018.)  But the Registration Statement further made clear that if the Chancery Court's decision were reviewed and overturned by the Delaware Supreme Court (the relevant appeal had not been filed at the time), Sonim would seek to enforce the Federal Forum Provision.  (Ex. 1 at 37–38.)

The appellate briefing in *Sciabacucchi* is now complete.  (Exs. 4, 6) (final appellate brief

- 5 -

SONIM DEFS' NOTICE & MOTION TO STAY                    LEAD CASE NO. 19CIV05564

filed on November 5, 2019). The Delaware Supreme Court is scheduled to hold a hearing on January 8, 2020, after which the Court will issue a decision within ninety days of submission.[2] (Ex. 6; Del. Sup. Ct. Internal Operating Procedures III(2).) That decision is likely to resolve whether federal forum provisions are enforceable and, as a result, if Plaintiffs can pursue their claims in this Court.

## III.    ARGUMENT

### A.    This Court Has Authority to Stay this Case.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). As the California Supreme Court recently explained, "A court ordinarily has inherent power, in its discretion, to stay proceedings when such a stay will accommodate the ends of justice." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 141 (2019) (internal quotation omitted); *see also Freiberg v. City of Mission Viejo*, 33 Cal. App. 4th 1484, 1489 (1995) ("Trial courts generally have the inherent power to stay proceedings in the interests of justice and to promote judicial efficiency."). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) (citation omitted).

### B.    A Stay Is Warranted Because the Delaware Supreme Court Is Likely to Determine the Validity of Federal Forum Provisions In a Few Months.

The Delaware Supreme Court will shortly hear argument on an appeal that is likely to determine the critical gating question in this case. If the Delaware Supreme Court reverses the Chancery Court's ruling in *Sciabacucchi* and upholds the validity of exclusive federal forum provisions, then Plaintiffs are barred from litigating their Securities Act claims in this Court. The

---

[2] Generally, in cases where oral argument is scheduled, a matter is deemed submitted on the later of the date of the oral argument or the completion of supplemental briefing. *See* Del. Sup. Ct. Internal Operating Procedures III(2).

- 6 -

Sonim Defendants would immediately seek to dismiss them pursuant to the Federal Forum Provision. All resources, time, and efforts expended by the parties and this Court to that point would be wasted. A stay is therefore appropriate.

The risk of wasted resources in this matter is real. If the State Court Actions proceed, the Sonim Defendants anticipate that (1) they will demur to any consolidated complaint, and (2) the parties will litigate the applicability of the PSLRA discovery stay to Plaintiffs' Securities Act claims. With twelve named Defendants, represented by two law firms, plus four plaintiffs' law firms involved in a self-selected proposed leadership structure, it is reasonable to expect that the initial briefing and motion practice in the State Court Actions will require the Court and the parties to expend significant time and resources in the State Court Actions. The cost of litigation and the expenditure of judicial resources will increase significantly if the case survives the pleadings stage and proceeds into discovery.

The costs of litigating parallel actions in state and federal court will not only fall on the parties and the Court but will also negatively impact the putative class members. Those stock purchasers would be harmed by the duplicative costs incurred by Defendants—costs that may end up being wasted entirely if the State Court Actions are not stayed—because those expenditures reduce the funds from which the class members could recover. *See In re Arlo Techs., Inc. S'holder Litig.*, No. 2018-1-CV-339231, slip op. at 5 (Santa Clara Cty. Super. Ct. June 21, 2019) (Ex. 5 at 5)[3] ("If this action moves forward as the same time as the federal case, additional resources will be expended, which could adversely affect putative class members."); *Schneider v. Vennard*, 183 Cal. App. 3d 1340, 1349–50 (1986) (litigating two securities class actions "would require . . . possibly higher attorney's fees, thus reducing the amount of recovery"). Meanwhile, Plaintiffs had an obvious alternative if they wished to control the litigation against Defendants: They could have applied to Judge Chesney for selection as the lead plaintiff in the Federal Action pursuant to the PSLRA.

---

[3] The Sonim Defendants respectfully include a California trial court ruling in this memorandum because it may be helpful to this Court on the issues presented by this Motion. This trial court ruling does not bind this Court, of course.

- 7 -

SONIM DEFS' NOTICE & MOTION TO STAY                    LEAD CASE NO. 19CIV05564

Thus, staying the State Court Actions while the Delaware Supreme Court decides the key jurisdictional issue preserves the resources of this Court, protects Defendants from incurring substantial and unnecessary expenses, allows litigation to proceed in the Federal Action, and serves the interests of the absent stakeholder class members.

**C.      Additional Factors Favor a Stay of the State Court Actions.**

Additional factors that California courts analyze in determining whether to stay actions in favor of federal suits confirm that this Court should stay the proceedings.  "It is black letter law that, when a federal action has been filed covering the same subject matter as is involved in a California action, the California court has the discretion but not the obligation to stay the state court action."  *Caiafa Prof'l Law Corp. v. State Farm Fire & Cas. Co.*, 15 Cal. App. 4th 800, 804 (1993) (citing cases).  In exercising that discretion, California courts consider the following factors: (1) the importance of "avoiding unseemly conflicts with the courts of other jurisdictions"; (2) the "importance of discouraging multiple litigation designed solely to harass an adverse party"; and (3) "whether the rights of the parties can best be determined by the [federal] court." *Id.* (citations omitted).  An additional "critical factor" favoring a stay of a state court action in deference to a federal action is that the federal action is pending in a district court in California, not another state.  *Id.*

Securities claims arising out of Sonim's IPO should be litigated only once.  *See Berg v. MTC Elecs. Techs. Co.*, 61 Cal. App. 4th 349, 363 (1998) (staying securities class action in California and noting the "burdens and inefficiencies that would be imposed by the conduct of parallel litigations in different fora"); *Guerrero v. Dep't of Corr. & Rehab.*, 28 Cal. App. 5th 1091, 1099 (2018) ("The reduction of duplicative proceedings also furthers the goals of convenience, efficiency and judicial economy—in one proceeding, the same trial court presides over discovery, motions, and a single trial.").  Thus, a core issue that permeates this dispute is whether claims should proceed in this Court or in federal court.

Judge Kuhnle's recent decision in *Arlo* is instructive on how the *Caifa* factors apply in this context.  In *Arlo*, the plaintiffs filed Securities Act and Exchange Act claims in federal court, following an IPO.  (Ex. 5 at 4.)  An overlapping Securities Act class action had already been filed

- 8 -

in state court, and the defendants sought to stay the first-filed state action. *Id.* In issuing a stay to allow the "federal court [to] resolve the claims set forth in that action" Judge Kuhnle aptly recognized: (1) "[i]t is not in the putative class members' interest for there to be duplicative litigation"; (2) litigating the same issues in parallel proceedings gives rise to a "real possibility of conflicting rulings"; and (3) the federal court was the better forum since the claims there were "potentially broader than those filed in the state action." (*Id.* at 5.)[4]

### 1. The Potential for "Unseemly Conflicts" Is High.

Parallel proceedings would require simultaneous litigation and trial of claims in which competing plaintiffs seek recovery on behalf of the *same* putative class, alleging the exact *same* conduct and underlying facts, brought under the *same* federal securities laws, and asserted against the *same* defendants. Allowing this multiplicity of actions would create a significant danger of inconsistent rulings, result in a substantial waste of resources for both the parties and this Court, and prejudice Defendants by forcing them to defend against identical allegations, in multiple courts, at the same time.

If the duplicative State Court Actions and Federal Action are allowed to proceed simultaneously, it is inevitable that two courts in the Bay Area would both be forced to decide an array of common legal and factual issues, including, among others, the adequacy of the pleadings; whether Plaintiffs have standing to pursue their claims; whether the challenged statements in the Registration Statement are false or misleading; the scope of overlapping discovery; due diligence defenses of numerous defendants and class-wide causation and damages issues. It is clear that the risk of inconsistent rulings and "unseemly conflicts" here is high. *See, e.g., Berg*, 61 Cal. App. 4th at 356 (affirming stay of California stockholder action in favor of similar pending federal court actions, noting that proceeding with parallel litigation "would create an unseemly conflict

---

[4] Judge Kuhnle rejected an alternative argument that the action should be stayed pending the outcome of the *Sciabacucchi* appeal. But the facts have changed since Judge Kuhnle made his ruling in June 2019. At that time, there was "no guaranteed timeline" for resolution of *Sciabacucchi*, and Judge Kuhnle did not deem it appropriate to "wait an indefinite period." Instead, he stayed the state action in favor of the federal court case without regard to the outcome in *Sciabacucchi*. Now, however, as discussed, the timeline has been set: *Sciabacucchi* is now fully briefed; oral argument is scheduled for January 8, 2020; and an order is expected early next year. (*See* Ex. 6.)

SONIM DEFS' NOTICE & MOTION TO STAY                    LEAD CASE NO. 19CIV05564

between federal and state courts, and cause the potential for conflicting rulings"). Under these circumstances, California courts have readily stayed proceedings because "[t]he potential for 'unseemly conflict' is great, unless both forums should reach the exact same resolution of the issues." *Caiafa*, 15 Cal. App. 4th at 807 (ordering the stay of arbitration proceedings that were concurrent with a federal RICO claim which raised many of the same issues); *see also* Ex. 5 at 5 ("[M]any of the same issues will be litigated and there is a real possibility of conflicting rulings.")

**2.    The Rights of the Parties Can Best Be Determined by the Federal Court.**

If the Delaware Supreme Court upholds the validity of federal forum provisions, there will be no dispute that "the rights of the parties can best be determined by the [federal] court." *Caiafa*, 15 Cal. App. 4th at 804 (citation omitted). Even without regard to that critical jurisdictional issue, federal court is the appropriate forum for this litigation. In federal court—but not in state court—the PSLRA's lead plaintiff provisions apply, which ensure an orderly process and objective criteria for determining which stock purchaser will control the litigation. The appointed lead plaintiff will in all likelihood file a better-developed and more comprehensive complaint than the complaints filed to date. Among other things, the federal lead plaintiff may add claims under Section 10(b) of Exchange Act, which extends to statements made outside IPO offering documents. A Section 10(b) claim might raise, for example, the financial projections announced by Sonim on July 24, 2019, and then revised downward on September 10, 2019.

Claims based on statements made by Sonim after the IPO can only be heard in federal court. *See* 15 U.S.C. § 78aa(a) ("The district courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder . . . ."); *Dennis v. Hart*, 724 F.3d 1249, 1253 (9th Cir. 2013) ("Section 27 of the Exchange Act vests federal courts with exclusive jurisdiction over actions 'brought to enforce any liability or duty created by [the Exchange Act] or the rules and regulations thereunder.'"). If this occurs, the Federal Action will be broader than the State Court Actions and will include a claim that can ***only*** be litigated in federal court, which weighs heavily in favor of staying the State Court Actions. *See* Ex. 5 at 5 (staying state court action in deference to federal action where the "scope of claims filed in the

- 10 -

federal action," including a Section 10(b) claim, were "potentially broader than those filed in the state action"); *Caiafa*, 15 Cal. App. 4th at 807 (staying California action in favor of broader federal action); *Forlenzo v. Schwartz*, 2006 WL 4524484 (Alameda Cty. Super. Ct. Nov. 15, 2006) (staying California action in favor of federal action where "the federal cases include federal claims that can be asserted only in federal court" and finding that "the totality of state and federal claims can 'best be determined' by the federal court").

### 3.     No Prejudice Would Result From Staying the State Court Actions.

A stay of the State Court Actions will not prejudice Plaintiffs. The fact that both the State Court Actions and Federal Action are pending in California is a "critical factor" weighing in favor of a stay. *See Caiafa*, 15 Cal. App. 4th at 804, 807 ("[T]he federal court is of equal convenience to the parties and witnesses as is the state court."). Because the Federal Action was filed in a district court sitting in San Francisco, it is clear that the stay of this proceeding pending resolution of the Federal Action could not possibly create any inconvenience for Plaintiffs. *See id.* (noting the absence of any inconvenience to state court plaintiffs where "the federal fraud action is pending in the Southern District of California, not in some other state"). Although a stay of the State Court Actions will not prejudice Plaintiffs, Defendants will be substantially prejudiced should this Court deny the stay and should the Delaware Supreme Court reverse *Sciabacucchi*. In that scenario, the wasted time, effort, and expense would be huge.

Moreover, Plaintiffs assert violations solely of the federal securities laws; they allege no claims under state law. The federal court is clearly well suited to adjudicate federal securities claims. *See Clark's Fork Reclamation Dist. #2069 v. Johns*, 259 Cal. App. 2d 366, 369–70 (1968) (noting that a number of elements supported a stay of California action where the issues raised "turn[ed] wholly on questions of federal law"); *Caravetta v. McKesson HBOC, Inc.*, 846 A.2d 240, 247 (Del. Super. 2000) (staying state class action in deference to federal class action where both were brought under the Securities Act, and acknowledging that federal court was "well suited, if not better suited, to hear claims of federal securities law violations").

Plaintiffs' interests will be protected in the event of a stay. As noted, Plaintiffs could have moved for appointment as the lead plaintiff in the Federal Action if they believed that they

- 11 -

qualified for selection based on the objective criteria established by federal securities law. In any event, the lead plaintiff there will owe a fiduciary duty to Plaintiffs here, who are putative class members in the Federal Action. *See In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1032 (N.D. Cal. 1999) (the lead plaintiff "owes a fiduciary duty to all members of the proposed class"). Further, if the lead plaintiff in the Federal Action settles the claims on behalf of the class members, Plaintiffs in the State Court Actions will have the opportunity to challenge or opt out of any proposed settlement in the Federal Action. *See* Fed. R. Civ. P. 23; *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *3 (C.D. Cal. Oct. 10, 2019) (noting in an Exchange Act case that "Class Members should be given the opportunity to opt-out of the settlement and to object to the settlement"). Finally, if Plaintiffs' claims are not resolved by the Federal Action, Plaintiffs can ask this Court to lift the stay so that this Court can address the remaining claims. *See, e.g.*, Ex. 5 at 5 (staying California action and noting that "if anything remains to be adjudicated in this case, the stay should be lifted so this Court can address the remaining issues").

**4.  The Court Should Give No Weight to the Order In Which the Actions Were Filed or the Number of Duplicative State Court Actions.**

The California Supreme Court has made clear that "[t]he first-filed rule 'was never meant to apply where the two courts involved are not courts of the same sovereignty.'" *Advanced Bionics Corp. v. Medtronic, Inc.*, 29 Cal. 4th 697, 707 (2002) (citation omitted). In the context of class actions, which present "the greatest chance for identical claims to be presented to multiple courts at the same time," the order of filing is irrelevant. *Biondi v. Scrushy*, 820 A.2d 1148, 1158 (Del. Ch. 2003), *aff'd sub nom. In re HealthSouth Corp. S'holders Litig.*, 847 A.2d 1121 (Del. 2004); *see also In re Bear Stearns Cos. Inc. S'holder Litig.*, 2008 WL 959992, at *5 (Del. Ch. Apr. 9. 2008) (first-filed status "has little significance in the present context, where all of the competing lawsuits are representative class action suits"). As one court explained, "A first-filing plaintiff has no legitimacy to 'call forum' for all the other stockholders of a corporation, as if their rights turned on a schoolboy playground convention. What is most important is not that the filing plaintiff get her way, but that the stockholders she seeks to represent have their legitimate expectations upheld." *In re Topps Co. S'holders Litig.*, 924 A.2d 951, 956–57 (Del. Ch. 2007).

- 12 -

In this case, all stock purchasers were informed of the Federal Forum Provision in Sonim's Restated Certificate and were told that Securities Act claims would be litigated in federal court if the Delaware Supreme Court upheld such provisions. A stay pending the Delaware Supreme Court's decision will uphold stock purchasers' "legitimate expectations."

Numerous California courts have stayed putative class actions in deference to substantially similar later-filed actions. *See, e.g.*, Ex. 5 at 5 (granting motion to stay and staying first-filed state court stockholder class action in deference to later-filed federal action); *In re Quest Software, Inc. S'holder Litig.*, 2012 WL 10236178, at *2 (Cal. Super. Ct. June 7, 2012) (granting motion to stay and staying a first-filed California action in favor of "substantially identical" actions pending in the Delaware Court of Chancery, explaining that "[l]ittle weight should be given to the timing of the filing of the actions in this situation where, as here, multiple class shareholder suits are filed almost immediately upon announcement of the proposed transaction"); *Staehr v. Duffield*, 2003 WL 25485513 (Alameda Cty. Super. Ct. June 18, 2003) (staying stockholder class action in California state court pending resolution of litigation in Delaware Court of Chancery where cases were at "approximately the same stage of the proceedings" and noting that the order in which the actions were filed "is not particularly relevant"). Thus, this Court should give no weight to the order in which the actions were filed.

The fact that there are three State Court Actions and one Federal Action is also irrelevant. All four cases are substantively identical, and the PSLRA provides a mechanism for any stock purchaser to seek appointment as lead plaintiff efficiently in federal court without having to file a duplicative lawsuit. There is no incentive or reason to file duplicative federal court actions. In contrast, under state court procedures, filing a duplicative action is necessary if the plaintiff or his counsel wants to be part of the self-selected proposed leadership of the case. Whatever one thinks of the two processes, the fact that more duplicative actions have been filed in state court is irrelevant to the appropriateness of a stay.

- 13 -

IV.   **CONCLUSION**

For these reasons, the Court should stay further proceedings in the State Court Actions.

Dated:  December 9, 2019

MATTHEW W. CLOSE
JONATHAN WAXMAN
KATE M. IKEHARA
O'MELVENY & MYERS LLP


By:   /s/ *Matthew W. Close*
      Matthew W. Close

*Attorneys for Defendants Sonim Technologies, Inc., Robert Plaschke, James Walker, Maurice Hochschild, Alan Howe, Kenny Young, Susan G. Swenson, John Kneuer, and Jeffrey D. Johnson*

- 14 -