Richard W. Gonnello (admitted *pro hac vice*)
Katherine M. Lenahan (admitted *pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: rgonnello@faruqilaw.com
        klenahan@faruqilaw.com

Benjamin Heikali SBN 307466
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
Email: bheikali@faruqilaw.com

*Attorneys for [Proposed] Class Representative David Sterrett*
*and [Proposed] Class Counsel for the [Proposed] Settlement Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID STERRETT, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SONIM TECHNOLOGIES, INC., ROBERT PLASCHKE, JAMES WALKER, MAURICE HOCHSCHILD, ALAN HOWE, KENNY YOUNG, SUSAN G. SWENSON, JOHN KNEUER, JEFFREY D. JOHNSON, OPPENHEIMER & CO., INC., LAKE STREET CAPITAL MARKETS, LLC, and NATIONAL SECURITIES CORPORATION, <br><br> Defendants. | Case No. 3:19-cv-06416-MMC <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> **CLASS ACTION** <br><br> Judge: The Hon. Maxine M. Chesney <br> Date: N/A (*see* Gen. Order No. 72-5) <br> Time: N/A <br> Courtroom: 7 – 19th Floor |

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................2

FACTUAL AND PROCEDURAL BACKGROUND ................................................2

    A.    Description of the Action ................................................2

    B.    The Proposed Settlement ................................................4

    C.    The Plan of Allocation ................................................5

ARGUMENT ................................................6

I.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ................................................6

    A.    The Court "Will Likely Be Able To" Approve The Proposed Settlement ............7

        1.    The Class Has Been Adequately Represented ................................................7

        2.    The Proposed Settlement Was Negotiated at Arm's Length and Is Not The Result of Collusion ................................................8

        3.    The Relief Provided for the Class is Adequate ................................................10

            a.    The Costs, Risks, and Delay of Trial and Appeal Support Preliminary Approval ................................................10

            b.    The Proposed Method for Distributing Relief Is Effective ..........14

            c.    Terms of Attorneys' Fees and Timing of Payment ................................................15

            d.    Related Agreements ................................................16

        4.    The Settlement Treats Class Members Equitably ................................................16

        5.    The Extent of Discovery Completed and the Stage of Proceedings .........17

        6.    Risk of Maintaining Class Action Status Through Trial ................................................18

        7.    The Experience and Views of Counsel ................................................18

    B.    The Court "Will Likely Be Able To" Certify The Class For Settlement ............19

        1.    The Settlement Class Is Sufficiently Numerous ................................................20

        2.    There Are Common Questions of Law and Fact ................................................20

        3.    The Proposed Class Representative's Claims Are Typical ................................................20

        4.    The Proposed Class Representative Is Adequate ................................................21

        5.    The Predominance and Superiority Requirements Are Satisfied ............21

        6.    The Faruqi Firm Is Adequate To Serve as Class Counsel ................................................22

II.   THE PROPOSED CLASS NOTICE PROGRAM SHOULD BE APPROVED .................22

III.  PROPOSED SCHEDULE OF EVENTS .............................................................................25

CONCLUSION ......................................................................................................................25

1

## TABLE OF AUTHORITIES

2

**Cases**                                                                                   **Page(s)**

3

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) .......................................................................21

4

*Becker v. Bank of New York Mellon Trust Co., N.A.*,
5     2018 WL 6727820 (E.D. Pa. Dec. 21, 2018) ........................................14

6

*In re Bluetooth Headset Prods. Liabl. Litig.*,
7     654 F.3d 935 (9th Cir. 2011) ..............................................................9

8

*Booth v. Strategic Realty Trust, Inc.*,
    2015 WL 3957746 (N.D. Cal. June 28, 2015) .....................................20

9

*In re Celera Corp. Sec. Litig.*,
10     2015 WL 1482303 (N.D. Cal. Mar. 31, 2015) .......................................6

11

*In re China MediaExpress Holdings, Inc. Shareholder Litig.*,
12     2015 WL 13639423 (S.D.N.Y. Sept. 18, 2015) ...................................16

13

*Epstein v. MCA, Inc.*,
    179 F.3d 641 (9th Cir. 1999)..............................................................22

14

*Franklin v. Kaypro Corp.*,
15     884 F.2d 1222 (9th Cir. 1989) .............................................................6

16

*Hanlon v. Chrysler Corp.*,
17     150 F.3d 1011 (9th Cir. 1998)..................................................7, 10, 20

18

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .........................7, 10, 14, 16

19

*In re Heritage Bond Litig.*,
20     2005 WL 1594403 (C.D. Cal. June 10, 2005)........................................6

21

*Hofmann v. Dutch LLC*,
22     317 F.R.D. 566 (S.D. Cal. 2016) .......................................................15

23

*IBEW v. Int'l Game Tech., Inc.*,
    2012 WL 5199742 (D. Nev. Oct. 19, 2012) ........................................13

24

*In re Immune Response Sec. Litig.*,
25     497 F. Supp. 2d 1166 (S.D. Cal. May 31, 2007)..............................12, 19

26

*Klee v. Nissan N. Am., Inc.*,
    2015 WL 4538426 (C.D. Cal. July 7, 2015) ........................................10

27

*In re Magma Design Automation, Inc. Sec. Litig.*,
28     2007 WL 2344992 (N.D. Cal. Aug. 16, 2007)......................................20

iii

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ...................................................................18

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ...................................................................23

*Patel v. Axesstel, Inc.*,
   2015 WL 6458073 (S.D. Cal. Oct. 23, 2015) ................................11, 12

*In re Portal Software, Inc. Sec. Litig.*,
   2007 WL 1991529 (N.D. Cal. June 30, 2007) ....................................23

*Redwen v. Sino Clean Energy, Inc.*,
   2013 WL 12303367 (C.D. Cal. July 9, 2013) .....................................13

*Rieckborn v. Velti PLC*,
   2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ......................................9, 18

*Rihn v. Acadia Pharms. Inc.*,
   2018 WL 513448 (S.D. Cal. Jan. 22, 2018) ........................................15

*Ruch v. AM Retail Grp., Inc.*,
   2016 WL 1161453 (N.D. Cal. Mar. 24, 2016) ...........................4, 5, 10

*Satchell v. Fed. Express Corp.*,
   2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .......................................8

*Thomas v. MagnaChip Semiconductor, Inc.*,
   2016 WL 1394278 (N.D. Cal. Apr. 7, 2016) ......................................14

*In re Verisign, Inc. Sec. Litig.*,
   2005 WL 7877645 (N.D. Cal. Jan. 13, 2005) ...............................20, 22

*Villegas v. J.P. Morgan Chase & Co.*,
   2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ....................................15

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ...............................................................15

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
   2016 WL 4010049 (N.D. Cal. July 26, 2016) ......................................9

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
   2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) .....................................17

*In re Zynga, Inc. Sec. Litig.*,
   2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ........................... *passim*

**Statutes**

15 U.S.C. §77k(e) ........................................................................................13

iv

15 U.S.C. §77z-1(a)(4) ...............................................................................................17

15 U.S.C. §77z-1(a)(7) ...............................................................................................23

**Other Authorities**

Fed. R. Civ. P. 23 .......................................................................................... *passim*

**NOTICE OF MOTION AND MOTION AND STATEMENT OF COURT ACTION SOUGHT**

TO:  ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

PLEASE TAKE NOTICE that Lead Plaintiff David Sterrett ("Lead Plaintiff") will, and hereby does, move this Court for an order: (i) preliminarily approving the proposed settlement of this action; (ii) preliminarily certifying the proposed class for purposes of settlement and appointing Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel for purposes of settlement; (iii) approving the form and manner of giving notice of the proposed settlement to the class; and (iv) scheduling a final approval hearing before the Court.[1]  Pursuant to the N.D. Cal.'s General Order No. 72-5, "In re: Coronavirus Disease Public Health Emergency," adopted July 23, 2020, through September 30, 2020, all civil matters will be decided on the papers unless otherwise ordered.  Accordingly, Lead Plaintiff has not noticed this motion for a particular date and time as is typically required by Civil Local Rule 7-2(a).

This motion is based upon the Memorandum of Points and Authorities set forth below, the Declaration of Katherine M. Lenahan, with attached exhibits, filed herewith; the Stipulation filed herewith; the pleadings and records on file in this action, and other such matters and argument as the Court may consider at the hearing of this motion.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether the proposed settlement falls within the range of reasonableness, such that preliminary approval is warranted.

2. Whether the content and manner of dissemination of the proposed notices and Proof of Claim and Release ("Proof of Claim") form should be approved.

3. Whether, for the purposes of settlement only, the Class should be preliminarily certified, Lead Plaintiff should be preliminarily appointed Class Representative, and Lead Counsel should be preliminarily appointed Class Counsel.

---

[1]    Unless otherwise noted, the following conventions are used herein: (i) all capitalized terms that are not otherwise defined herein shall have the same meaning as those provided in the Stipulation of Settlement dated as of September 10, 2020 (the "Stipulation" or "Stip."), filed concurrently herewith; (ii) all quotations and citations are omitted; (iii) all emphases are added; and (iv) all references to "Stip. Ex. ___" are to the Exhibits annexed to the Stipulation.

1

4. Whether the Court should set a hearing date for a Final Approval Hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Lead Plaintiff, on behalf of himself and the putative Class, and defendants Sonim Technologies, Inc. ("Sonim" or the "Company"), Robert Plaschke, James Walker, Maurice Hochschild, Alan Howe, Kenny Young, Susan G. Swenson, John Kneuer, Jeffrey D. Johnson (collectively, the "Sonim Defendants"), and underwriters Oppenheimer & Co., Inc., Lake Street Capital Markets, LLC, National Securities Corporation (collectively, the "Underwriter Defendants") (collectively, with the Sonim Defendants, "Defendants"), have reached a proposed classwide settlement for $2,000,000 that, if approved, will resolve all claims in the above-captioned action (the "Action"). The Settlement was reached only after a thorough investigation by Lead Counsel, the filing of an Amended Class Action Complaint ("AC"), comprehensive briefing on Defendants' motion to dismiss, a mediation session, and an additional mediation/arbitration session to resolve an open issue under the settlement. The proposed Settlement represents a significant percentage of the alleged damages and is a favorable result for the Class, particularly in light of the risks posed by Sonim's precarious financial position and the global economic crisis triggered by the COVID-19 pandemic.

For these reasons, as well as those set forth below, Lead Plaintiff respectfully submits this memorandum of law in support of his motion and requests that the Court: (1) preliminarily approve the Settlement; (2) preliminarily certify the Class for settlement purposes; (3) preliminarily appoint Lead Plaintiff as Class Representative and Faruqi & Faruqi, LLP (the "Faruqi Firm") as Class Counsel; (4) approve the form and manner of giving notice of the settlement to the Class; and (5) set a date for the Final Approval Hearing.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.    Description of the Action**

On October 7, 2019, plaintiff Ajay Malhotra filed the initial class action complaint in the United States District Court for the Northern District of California. ECF No. 1. Shortly before that complaint was filed, a securities class action was filed in California state court against the same defendants and on behalf of the same class of investors. *See In re Sonim Techs., Inc. Sec.*

2

1   *Litig.*, No. 19CIV05564 (Cal. Sup. Ct.) ("State Court Action" or "Cal. Dkt.").  On January 22,

2   2020, the Court appointed Mr. Sterrett as Lead Plaintiff, and the Faruqi Firm as Lead Counsel in

3   this federal Action.  ECF No. 52.  Soon thereafter, the State Court Action was stayed due to

4   pending litigation in Delaware Supreme Court.  *See* Minute Order, Cal. Dkt. (Jan. 31, 2020).[2]

5         On February 24, 2020, Lead Plaintiff filed the AC.  ECF No. 55.  The AC alleged that

6   Defendants violated §§11 and 15 of the Securities Act by materially misrepresenting and

7   omitting material facts as alleged in the AC.  *See, e.g.*, AC ¶¶2, 6-9, 48-64.  On April 1, 2020,

8   the Sonim Defendants filed the Motion To Dismiss the AC ("Motion To Dismiss" or "MTD"),

9   ECF No. 62, as well as the Request for Incorporation By Reference and Judicial Notice

10   ("Request for Judicial Notice" or "RJN"), ECF No. 62-1, and the Underwriter Defendants filed

11   a joinder in the MTD, ECF No. 63.

12         Following completion of the parties' briefing on the Motion To Dismiss and Request for

13   Judicial Notice, the Parties met for a virtual mediation on June 24, 2020 before the Hon.

14   Elizabeth Laporte (Ret.), a well-respected mediator who served as a United States Magistrate

15   Judge in this District for more than two decades.  Prior to the mediation session, Sonim

16   provided Lead Plaintiff a core document production of 3,484 pages of materials and made its

17   Chief Financial Officer ("CFO") available to Lead Counsel pursuant to the mediation

18   confidentiality agreement. The Underwriter Defendants also provided Lead Plaintiff with a

19   production of certain documents under the provisions of a mediation confidentiality agreement.

20   The mediation session was also preceded by submission of mediation statements and exhibits.

21

22

23   [2]    Specifically, the State Court Action was stayed to await the Delaware Supreme Court's

24   opinion in *Sciabacucchi v. Salzberg*, regarding whether courts must enforce exclusive federal forum provisions in corporate certificates of incorporation, like the one Sonim purports to have.

25   *See id.*; ECF No. 44-5 (defendants' stay motion, attached as an exhibit to Mr. Sterrett's lead plaintiff opposition brief).  After the *Sciabucucchi* decision answered this question in the

26   affirmative, Defendants moved to dismiss the State Court Action based on *forum non conveniens* ("FNC"), arguing that "in light of this decision, Sonim's federal forum provision is

27   enforceable and bars Plaintiffs from litigating this case in this court."  FNC Motion at 2, Cal. Dkt. (May 11, 2020).  The State Court Action remains stayed, and a hearing on the FNC Motion

28   is currently scheduled for October 15, 2020.  *See* Notice of Hearing, Cal. Dkt. (July 31, 2020).

3

No settlement was reached during the June 24th mediation session.  Subsequently, Judge Laporte presented a mediator's proposal for the monetary terms for a settlement of this Action. All parties accepted the mediator's proposal and thereafter engaged in negotiations regarding the complete terms of the Settlement, which are set forth in this Stipulation and which are subject to approval by the Court.  During the settlement documentation process, a dispute arose among the parties regarding the confidential Supplemental Agreement, which sets forth certain conditions under which Sonim shall have the sole option to terminate the settlement and render this Stipulation null and void in the event that requests for exclusion from the settlement Class exceed certain criteria (the "Termination Threshold").  *See* Stip. ¶7.3.  This necessitated additional written submissions by the parties, and an additional mediation/arbitration session with Judge LaPorte, who ultimately decided the Termination Threshold through final binding non-appealable arbitration.  *See id*.

**B.      The Proposed Settlement**

Briefly, the settlement provides that Sonim will cause to be paid $2,000,000, in cash, to settle all claims in the Action.  In exchange, Lead Plaintiff and the settlement Class will release all Released Claims against the Released Parties.  The Released Claims are appropriately tailored and differ only slightly from the AC's claims in that the Released Claims include "Unknown Claims," claims that could have been brought, and claims that "(a) arise out of, are based upon, are connected to, or relate in any way to any of the allegations, acts, transactions, facts, events, matters, occurrences, statements, representations, misrepresentations or omissions involved, set forth, alleged or referred to, in this Action, or which could have been alleged in this Action, and (b) arise out of, are based upon, are connected to, or relate in any way to the purchase, acquisition, holding, sale, or disposition of any Sonim stock purchased or otherwise acquired pursuant to or traceable to the Registration Statement issued in connection with Sonim's IPO (except for claims to enforce the settlement)."  Stip. ¶1.24.  Product liability, warranty, and consumer claims unrelated to Sonim stock ownership are not released.  Thus, the settlement releases only those claims that are "based on the same factual predicate as the underlying claims in this case."  *Ruch v. AM Retail Grp., Inc.*, 2016 WL 1161453, at *11 (N.D.

4

1   Cal. Mar. 24, 2016).  "Such a narrow release warrants preliminary approval."  *Id.*

2   No litigation class has been certified in this Action, but the settlement Class definition in

3   the Stipulation is substantially similar to that in the AC, as explained further in §I.B, *infra.*

4   It is currently estimated that if Class Members submit claims for 100% of the shares

5   eligible for distribution, the average distribution per share of common stock will be

6   approximately $0.49 before deduction of Court-approved fees and expenses.  The Settlement

7   Amount represents approximately 6.3% of the Class's estimated maximum damages, and

8   approximately 14.9% of the Class's estimated damages when crediting a negative causation

9   defense that limits damages to the corrective disclosures alleged in the AC.  *See* §I.A.3.a.

10  Under either measure, the settlement is well within the range of typical recoveries in complex

11  securities litigation.  *Id.*

12  ### C.      The Plan of Allocation

13  Pursuant to the settlement Stipulation, after Court-approved fees and expenses and other

14  costs of settlement are paid, the Net Settlement Fund will be distributed to Authorized

15  Claimants (*i.e*, Class Members who submit valid and timely Proof of Claim forms that are

16  approved for payment by the Claims Administrator or the Court), in accordance with the Plan of

17  Allocation described in the Notice of Pendency and Proposed Settlement of Class Action

18  ("Notice").  *See, e.g.*, Stip. ¶5.3; Stip. Ex. A-1 at 15-18.  The Plan of Allocation was drafted

19  with the assistance of a damages consultant and reflects damages theories that are consistent

20  with the applicable federal securities laws.  *See* Stip. Ex. A-1 at 15.  It seeks to equitably

21  distribute the Net Settlement Fund among Authorized Claimants based on their respective losses

22  as a result of the alleged misrepresentations and/or omissions.  *See id*.  Class Members'

23  recovery will depend on several factors, including when and at what price they purchased

24  Sonim common stock and when such stock was sold.  *See id.*

25  No portion of the Settlement Fund shall revert to any defendant after the Effective Date.

26  *See* Stip. ¶2.8.  If there is any balance remaining in the Net Settlement Fund following all

27  feasible distributions to Class Members, it will be donated to the Investor Protection Trust, *see*

28  Stip. ¶5.7, which is an appropriate *cy pres* recipient for the reasons described in §I.A.3.b., *infra*.

5

1

2

**ARGUMENT**

**I.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL[3]**

3        Federal Rule of Civil Procedure ("Rule") 23(e) provides that any compromise of a class

4  action must receive court approval.  The Ninth Circuit has a "strong judicial policy that favors

5  settlements, particularly where complex class action litigation is concerned."  *In re Heritage*

6  *Bond Litig.*, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005).  "[T]here is an overriding

7  public interest in settling and quieting litigation.  This is particularly true in class action suits[.]"

8  *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989).

9        The settlement approval process involves two steps: "(1) preliminary approval of the

10  settlement; and (2) final approval of the settlement at a fairness hearing following notice to the

11  class."  *In re Celera Corp. Sec. Litig.*, 2015 WL 1482303, at *3 (N.D. Cal. Mar. 31, 2015).

12        Under the amendments to Rule 23 that went into effect on December 1, 2018, the issue

13  at preliminary approval is whether the court "will ***likely*** be able to: (i) approve the proposal

14  under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Rule

15  23(e)(1)(B).  Rule 23(e)(2) directs the court to determine whether the settlement is "fair,

16  reasonable, and adequate" after considering whether: (A) the class has been adequately

17  represented; (B) the proposal was negotiated at arms' length; (C) the relief provided is adequate;

18  and (D) the proposal treats class members equitably relative to each other.

19        Rule 23(e)(2)'s new factors, however, do not displace the factors that the Ninth Circuit

20  previously used to determine whether a settlement is "fair, reasonable, and adequate."  *See* Rule

21  23(e)(2) advisory committee's note (explaining that the amendment's goal "is not to displace

22  any factor" courts previously considered when evaluating a proposed settlement).  The Ninth

23  Circuit traditionally uses the following factors, several of which overlap with Rule 23(e)(2)'s

24  factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely

25  duration of further litigation; (3) the risk of maintaining class action status throughout the trial;

26

27

28

---

[3]        Exhibit 1 contains a chart comparing the proposed settlement to three of Lead Counsel's
past comparable settlements, as suggested by the N.D. Cal's Procedural Guidance for Class
Action Settlements.  Exs. 1-2 referenced herein are annexed to the Declaration of Katherine M.
Lenahan, submitted herewith.

1   (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the

2   proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

3   participant; and (8) the reaction of the class members to the proposed settlement. *See In re*

4   *Zynga, Inc. Sec. Litig.*, 2015 WL 6471171, at *8 (N.D. Cal. Oct. 27, 2015) (citing *In re*

5   *Bluetooth Headset Prods. Liabl. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).  When settlements,

6   like this one, "occur before formal class certification," the court must also ensure that the

7   settlement is not the product of collusion among the negotiating parties[.]"  *Hefler v. Wells*

8   *Fargo & Co.*, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018).

9        As explained below, the Settlement satisfies the applicable factors such that Notice of

10   the proposed Settlement should be sent to the Class.[4]

11        **A.     The Court "Will Likely Be Able To" Approve The Proposed Settlement**

12              **1.     The Class Has Been Adequately Represented**

13        Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and

14   class counsel" have adequately represented the class.  Determining adequacy requires

15   "[r]esolution of two questions . . . : (1)  do the named plaintiffs and their counsel have any

16   conflicts of interest with other class members and (2) will the named plaintiffs and their counsel

17   prosecute the action vigorously on behalf of the class?"  *Hanlon v. Chrysler Corp.*, 150 F.3d

18   1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564

19   U.S. 338 (2011).  Both prongs are met here.  Lead Plaintiff's interests are directly aligned with

20   those of other Class Members, as he claims to have suffered damages from the same alleged

21   conduct, and through those claims seeks the same recovery from Defendants.

22        Additionally, Lead Counsel is a national law firm that is qualified, experienced, and able

23   to conduct this litigation.  *See* Ex. 2, Faruqi Firm resume.  Lead Counsel has devoted significant

24   efforts to identifying and investigating the potential claims in this Action and has fought to

25   preserve those claims.

26

27   ───────────────

28   [4]     The "presence of a governmental participant" and "the reaction of the class members to
     the proposed settlement" are not relevant because there is no governmental entity involved and
     notice has not yet been disseminated to the Class.

### 2.     The Proposed Settlement Was Negotiated at Arm's Length and Is Not The Result of Collusion

Rule 23(e)(2)(B) requires the Court to consider whether the proposed settlement "was negotiated at arm's length."  Here, the parties engaged in a mediation session after, *inter alia*, (1) Lead Counsel conducted a lengthy investigation into the facts alleged in the Action, including reviewing and analyzing documents filed publicly with the SEC and press releases, news articles, financial information, and public statements issued by or concerning Sonim; (2) Lead Counsel drafted the AC; (3) Defendants and Lead Plaintiff engaged in Motion To Dismiss and Request for Judicial Notice briefing; (4) Lead Counsel reviewed over 3,000 pages of core documents produced by Defendants pursuant to a mediation confidentiality agreement; and (5) Lead Counsel had a call with Sonim CFO Bob Tirva pursuant to a mediation confidentiality agreement to discuss Sonim's financial condition and business plans, including its ability to fund a settlement.  Thus, the parties engaged in negotiations with a comprehensive understanding of the strengths and weaknesses of their positions and the procedural hurdles facing this Action.  *See Zynga*, 2015 WL 6471171, at *8 ("For the parties to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value.").

The negotiations first took place in a virtual session with the assistance of Judge LaPorte, a well-respected mediator who served as a United States Magistrate Judge in this District for more than two decades.  *See* Hon. Elizabeth D. Laporte (Ret.), JAMS, https://www.jamsadr.com/laporte/ (describing Judge Laporte's professional background); *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").  The parties vigorously debated their positions during the mediation but were unable to reach a settlement during the session.  At Lead Counsel's request, the Underwriter Defendants produced additional documents after the mediation session so that Lead Counsel could better determine the strengths and weaknesses of their purported defenses.  After further contemplation, all parties accepted Judge Laporte's mediator's proposal for the monetary terms for a settlement of this Action and thereafter engaged in negotiations regarding the complete

8

terms of the Settlement.  An additional mediation/arbitration session was held during the settlement documentation process to resolve a dispute that arose regarding the Termination Threshold.  *See* Stip. ¶7.3.  After the parties reached an impasse, Judge Laporte decided the matter through final binding non-appealable arbitration.  *See id.*

Furthermore, Lead Counsel is a nationally-recognized law firm with substantial experienced prosecuting securities class actions, *see* Ex. 2, and Defendants' counsel, O'Melveny & Myers LLP and Sidley Austin LLP, are widely renowned for their securities litigation practices.[5]  Courts in this district have found that where a settlement is "the result of arm's-length negotiations by experienced Class Counsel[,] . . . [it] is entitled to an initial presumption of fairness."  *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 2016 WL 4010049, at *14 (N.D. Cal. July 26, 2016).

Additionally, none of the subtle factors indicating collusion are present either.  *See Bluetooth*, 654 F.3d at 947 (identifying three subtle signs of collusion: (a) when class counsel receives a disproportionate percentage of the settlement; (2) when the parties negotiate a "clear sailing" agreement separate from the settlement fund; and (3) when the parties arrange for fees not paid to revert to defendants).  Lead Counsel intends to request an award of attorneys' fees equal to 25% of the Settlement Fund, which is based on the benchmark in this Circuit and often awarded in similar actions, thus weighing against a finding of collusion.  *See* §I.A.3.c, *infra*; *Rieckborn v. Velti PLC*, 2015 WL 468329, at *8 (N.D. Cal. Feb. 3, 2015) (finding 25% fee and request for approximately $219,000 in litigation expenses weighed against finding of collusion). There is also no "clear sailing" agreement—*i.e.*, an "arrangement providing for the payment of attorneys' fees separate and apart from class funds[.]"  *Bluetooth*, 654 F.3d at 947.  The attorneys' fees are to be paid only out of the Settlement Fund, at a rate approved by the Court, and any fees requested but denied by the Court would remain in the Class's Settlement Fund. *See* Stip. ¶¶6.2-6.3, 6.5.  Even if there were such an agreement, "the absence of a 'kicker

---

[5]      *See, e.g.*, Securities Litigation, O'Melveny & Myers LLP, https://www.omm.com/ services/practices/litigation/securities (last visited Aug. 30, 2020); Securities and Shareholder Litigation, Sidley Austin LLP, https://www.sidley.com/en/services/securities-and-shareholder-litigation (last visited Aug. 30, 2020).

1  provision' stating that all fees not awarded would revert to defendants, weighs against a finding

2  of collusion." *Klee v. Nissan N. Am., Inc.*, 2015 WL 4538426, at *10 (C.D. Cal. July 7, 2015).

3  Thus, the parties obviously did not engage in collusion when entering into the

4  settlement. *See Ruch*, 2016 WL 5462451, at *8 (finding no collusion when the parties

5  "participated in a formal private mediation, then spent several weeks negotiating the details of

6  the Settlement Agreement and the class notice.").

### 3.  The Relief Provided for the Class is Adequate

8  Rule 23(e)(2)(C) requires the Court to determine whether the relief provided for the

9  Class is adequate, taking the following considerations into account: (1) the costs, risks, and

10  delay of trial and appeal; (2) the effectiveness of proposed methods of distributing relief to the

11  class; (3) the terms and timing of attorneys' fees; and (4) any related agreements.  Each of these

12  considerations is addressed below, along with the Ninth Circuit factors that overlap with them.

### a.  The Costs, Risks, and Delay of Trial and Appeal Support Preliminary Approval

15  Rule 23(e)(2)(C)(i) requires the Court to consider whether the Settlement Amount is

16  adequate when taking into account the costs, risks, and delay of trial and appeal.  Rule

17  23(e)(2)(C)(i).  This inquiry overlaps with the following Ninth Circuit factors:  "the strength of

18  the plaintiffs' case; "the risk, expense complexity, and likely duration of further litigation;" and

19  "the amount offered in settlement." *See Hanlon*, 150 F.3d at 1026.

20  The Settlement provides an immediate benefit to the class and is adequate when

21  compared to the risk that no recovery, or lesser recovery, might be achieved after prolonged

22  litigation, particularly in light of the Company's financial position and the economic uncertainty

23  posed by the ongoing pandemic.  While Lead Plaintiff believes that the claims asserted in the

24  Action are meritorious and that the information developed to date supports those claims, he

25  acknowledges that continuing the Action poses significant risks and additional costs.

26  "[S]ecurities actions are highly complex and . . . securities class litigation is notably difficult

27  and notoriously uncertain." *Hefler*, 2018 WL 6619983, at *13.  This case is no exception.

28  Defendants have raised numerous challenges and adamantly deny any wrongdoing. *See*

Stip. at 3-4; *see generally* ECF Nos. 62, 62-1, 63, 69-70 (Defendants' MTD and RJN briefing). Without this Settlement, the Action would have continued to be vigorously contested. While Lead Plaintiff believes that his claims would have survived Defendants' Motion To Dismiss, this result was far from guaranteed.

Even if the Action survived the MTD, the fact discovery process would likely be time-consuming and expensive. For example, the AC alleges, *inter alia*, that the Registration Statement's discussion of Sonim's phones capabilities and the risks facing investors were false and/or misleading for failing to disclose that Sonim conducted inadequate testing of certain of its phones. *See, e.g.,* AC ¶¶40, 60-61, 66, 68. According to Defendants, such testing involves third parties such as Sonim's wireless carrier channel partners (*e.g.*, AT&T, Sprint, and Verizon). *See* ECF No. 62 (MTD) at 19. Thus, the fact discovery process would require, among other things, numerous document subpoenas to third parties, which are notoriously difficult to enforce; the retention of expert witnesses regarding highly technical issues about the functioning of cellular phones and the proper testing of such devices; discovery motion practice; production and review of thousands of pages of documents; and taking numerous depositions. Defendants would undoubtedly aggressively litigate this Action at each step. Thus, even after the considerable time and expense of discovery, there is a chance Lead Plaintiff's claims could be dismissed at summary judgment. Even if the claims were to survive summary judgment, trial would be very time consuming and expensive and would monopolize valuable court resources. Indeed, the damages issues present in this case would likely boil down to a "battle of the experts" at trial, creating the risk that the jury may believe Defendants' expert over Lead Plaintiff's and find in Defendants' favor. Thus, after the expense and time devoted to taking this Action to trial, the Class could be left with no recovery at all. Indeed, this Action would not necessarily end after a trial; the losing party might appeal the decision, leading to additional years of protracted litigation. *See Patel v. Axesstel, Inc.*, 2015 WL 6458073, at *5 (S.D. Cal. Oct. 23, 2015) ("The settlement prevents these expenses" of "discovery, motion practice, experts, trial, and appeals" "and the likely long duration of the litigation from eroding or delaying the ultimate recovery, if any, of the class members.").

1    "In most situations, unless the settlement is clearly inadequate, its acceptance and

2    approval are preferable to lengthy and expensive litigation with uncertain results." *Id.* at *5; *see*

3    *also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. May 31, 2007)

4    ("[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive

5    litigation that induce consensual settlements.").

6         The risks of further litigation are exacerbated by Sonim's precarious financial position.

7    Based upon Sonim's public filings with the SEC, as well as a call with Sonim's current CFO, it

8    is Lead Counsel's and Lead Plaintiff's understanding that the Company's ability to fund a

9    settlement in this Action is limited, and that continued litigation would further erode the assets

10   available to fund a judgment or a settlement made at a later date.  For example, Sonim is

11   required to indemnify the officers, directors, and underwriters named in this Action, *see* Sonim,

12   SEC Form 424B4 at 26 (June 8, 2020), and the Company has a large self-insured retention on

13   its relevant insurance policy that would require Sonim to spend a substantial sum on litigation

14   before insurance would cover any costs.  On June 8, 2020, the Company warned that it has not

15   been profitable in recent years and may not achieve or maintain profitability in the future.  *See*

16   *id*. at 5.  It also warned at that time that "substantial doubt exists as to [Sonim's] ability to

17   continue as a going concern," because, *inter alia*, the Company has "incurred significant net

18   losses since 2013[,]" expects that its costs for research and development will increase, and its

19   principal sources of liquidity as of March 31, 2020 consist of existing cash and cash equivalents

20   of $12.4 million.  *See id. at* 5, 12.

21        Although the Company recently raised funds through another public offering in June, it

22   is Lead Plaintiff's and Lead Counsel's understanding that the proceeds were used to pay a

23   portion of Sonim's debt, and are needed to cover, *inter alia*, the high research and development

24   costs the Company expects to incur to develop devices that can operate on 5G wireless

25   networks, which is necessary for Sonim to survive in the highly competitive cellular device

26   market.  *See, e.g., id.* at 4, 19 (discussing the Company's intention to "[d]evelop next generation

27   5G-enabled rugged communication devices[,]" and risks related thereto).  While Sonim recently

28   stated that this capital raise will allow it "to continue operations for at least the next twelve

1  months[,]" the Company continues to warn investors "that substantial doubt exists as to our

2  ability to continue as a going concern," citing, *inter alia*, its current revenue run-rate, the fact

3  that it expects costs to increase in future periods, and that just $4.6 million was provided by

4  Sonim's operating activities during the six months ended June 30, 2020.  *See* Sonim, SEC Form

5  10-Q at 27, 30 (Aug. 12, 2020).[6]  Sonim's stock is currently trading below $1.  *See* SONM,

6  Yahoo! Finance, https://finance.yahoo.com/quote/SONM (last visited Sept. 11, 2020).

7      Continued litigation is made especially risky by the ongoing coronavirus pandemic,

8  which caused a global economic crisis and continues to sow economic uncertainty.  Sonim is

9  not immune to the pandemic's effects—it was forced to close its manufacturing facility in

10  Shenzhen for most of February 2020 and recently warned that "demand for our solutions may

11  be reduced as a result of the COVID-19 outbreak and resulting market uncertainty."  Sonim,

12  SEC Form 10-Q at 29-30 (Aug. 12, 2020).

13      Thus, the Settlement Amount of $2,000,000 is well within the range of reasonableness

14  under the circumstances.  It is currently estimated that if Class Members submit claims for

15  100% of the shares eligible for distribution, the average distribution per share of common stock

16  will be approximately $0.49 before deduction of Court-approved fees and expenses.  The

17  Settlement Amount represents approximately 6.3% of the Class's estimated maximum damages,

18  and approximately 14.9% of the Class's estimated damages when crediting a negative causation

19  defense that limits damages to the corrective disclosures alleged in the AC.  *See* AC ¶71; *see*

20  *also* 15 U.S.C. §77k(e) (setting forth measure of Section 11 damages and negative causation

21  defense).  Under either measure, the Settlement Amount is well within the range of typical

22  recoveries in complex securities litigation.  *See Zynga*, 2015 WL 6471171, at *11 (citing 5.5-

23  6.2% as the average range and noting that 14% of estimated damages "exceeds the typical

24  recovery"); *Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at *6 (C.D. Cal. July 9,

25  2013) (similar); *IBEW v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19,

26  2012) (approving securities class settlement where recovery was "about 3.5% of the maximum

27  ────────────────

28  [6]     *Available at* https://www.sec.gov/Archives/edgar/data/1178697/000156459020039717/
   sonm-10q_20200630.htm

1    damages that Plaintiffs believe could be recovered at trial[,]" and "within the median recovery

2    in securities class actions settled in the last few years[]").  In light of the foregoing, the

3    Settlement represents a favorable recovery that is in the best interests of the Class.

        **b.**       **The Proposed Method for Distributing Relief Is Effective**

5          Rule 23(e)(2)(C)(ii) requires the court to consider whether the proposed method of

6    distributing relief to the class is effective, including the processing of class members' claims.

7    The Settlement provides a well-established method for distributing relief to eligible Class

8    Members and processing claims.  As explained in Section II, *infra*, the notice plan includes

9    mailing the Notice and Proof of Claim form to all Class Members who can be identified with

10   reasonable efforts.  *See* Stip. Exs. A-1 & A-2.  These documents will request the information

11   necessary for the Claims Administrator to calculate each eligible Class Member's claim

12   pursuant to the Plan of Allocation.  *See* Stip. Ex. A-1 at 15-18; Ex. A-2.  Under the proposed

13   Plan of Allocation, which was developed with the assistance of a damages consultant, Class

14   Members who are entitled to a distribution of at least $10 will receive a *pro rata* share of the

15   recovery based upon their claimed losses consistent with the Action's allegations.  *See* Stip. Ex.

16   A-1 at 15-18.  Lead Plaintiff respectfully submits that this method of distribution and claims

17   processing is effective.  *See Hefler*, 2018 WL 6619983, at *7 (finding a similar method of

18   distribution and claims processing to be effective); *Becker v. Bank of New York Mellon Trust

19   Co., N.A.*, 2018 WL 6727820, at *7 (E.D. Pa. Dec. 21, 2018) (finding that the "methods of

20   distributing relief to the class and of processing class-member claims are fair[]" where class

21   members were required to submit a proof of claim listing their relevant holdings and provide

22   documentation to substantiate their holdings).

23         The settlement contemplates a *cy pres* award only if any residual settlement funds are

24   left in the Net Settlement Fund that cannot feasibly be distributed to Authorized Claimants.

25   *See* Stip. ¶5.7.  The proposed *cy pres* beneficiary, the Investor Protection Trust, or IPT, is an

26   appropriate recipient for any such residual funds as "it bears 'a substantial nexus to the interests

27   of the class members[.]'"  *Thomas v. MagnaChip Semiconductor, Inc.*, 2016 WL 1394278, at *8

28   (N.D. Cal. Apr. 7, 2016).  IPT is a 501(c)(3) non-profit organization that serves as an

independent source of non-commercial investor education at the state and national level.[7]  As

"*[c]y pres* distribution must be guided by (1) the objectives of the underlying statutes and (2)

the interests of the silent class members," *Hofmann v. Dutch LLC*, 317 F.R.D. 566, 577 (S.D.

Cal. 2016), IPT is an appropriate potential *cy pres* beneficiary for any residual funds in this

class action alleging violations of the Securities Act on behalf of a putative class of investors

nationwide.  *See Rihn v. Acadia Pharms. Inc.*, 2018 WL 513448, at *4 (S.D. Cal. Jan. 22, 2018)

(finding IPT to be an appropriate *cy pres* recipient in a securities class action).[8]

### c.    Terms of Attorneys' Fees and Timing of Payment

Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of

attorney's fees, including timing of payment."  Lead Counsel intends to seek an award of

attorneys' fees of 25% of the Settlement Amount, and expenses in an amount not to exceed

$50,000, plus interest on both amounts.  "In common fund cases such as this, [the Ninth Circuit

has] established twenty-five percent (25%) of the common fund as the benchmark award for

attorneys' fees."  *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *7 (N.D. Cal.

Nov. 21, 2012).  A "[c]alculation of the lodestar, which measures the lawyers' investment of

time in the litigation, provides a check on the reasonableness of the percentage award."

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002).  While Lead Counsel has not

yet conducted a comprehensive review of its time in this Action, and notes that additional time

will be spent in connection with final approval and Settlement administration, Lead Counsel's

estimated lodestar to date is approximately $700,000 based on approximately 1,182 hours of

attorney and professional staff time.  An award of 25% of the Settlement Fund (approximately

$500,000) represents less than the actual fees incurred, resulting in a negative multiplier.[9]  As

---

[7]    *See* IPT, About IPT, http://www.investorprotection.org/ipt-activities/?fa=about (last visited Aug. 30, 2020); IPT, IPT Financials, http://www.investorprotection.org/ipt-activities/?fa=financials (last visited Aug. 30, 2020).

[8]    Lead Counsel does not have a relationship with IPT, but has successfully proposed IPT as a *cy pres* beneficiary for unclaimed or non-distributable funds in other securities class actions in which it served as Lead or Co-Lead Counsel because the organization fulfills the requirements for *cy pres* beneficiaries.  *See, e.g., Acadia*, 2018 WL 513448, at *4.

[9]    Lead Counsel will provide a detailed lodestar report with its motion for an award of attorneys' fees and reimbursement of expenses which it anticipates filing pursuant to the proposed schedule of events set forth in §III below.

1    the multiplier is negative, no argument can be made that the requested attorneys' fees would

2    result in a windfall to Lead Counsel.

3          The Stipulation provides that the fees are to be paid to Lead Counsel "immediately after

4    the Court executes an order awarding such fees and expenses notwithstanding any objection

5    thereto[,]" subject to the obligation to repay as described therein.  Stip. ¶¶6.2-6.3.  The timing of

6    payment is standard in class action cases and typically approved.  *See, e.g.*, *In re China*

7    *MediaExpress Holdings, Inc. Shareholder Litig.*, 2015 WL 13639423, at *2 (S.D.N.Y. Sept. 18,

8    2015) (awarding fees to be paid "from the Settlement Fund within ten calendar days" of the

9    entry of the final judgment or the fee order, if later, subject to an obligation to repay).  Lead

10   Counsel respectfully submits that the contemplated attorneys' fee award and the timing of

11   payment are reasonable and do not weigh against preliminary approval.

### d.    Related Agreements

13         Rule 23(e)(2)(C)(iv) requires the Court to determine the proposed Settlement's adequacy

14   in light of any agreements made in connection with it.  The only such agreement is the parties'

15   confidential Supplemental Agreement, discussed above.  This type of agreement is common in

16   class actions and does not render a settlement unfair.  *See Hefler*, 2018 WL 6619983, at *7

17   ("The existence of a termination option triggered by the number of class members who opt out

18   of the Settlement does not by itself render the Settlement unfair.").

### 4.    The Settlement Treats Class Members Equitably

20         Rule 23(e)(2)(d) requires the Court to consider whether "the proposal treats class

21   members equitably relative to each other."  Consideration of this factor "could include whether

22   the apportionment of relief among class members takes appropriate account of differences

23   among their claims, and whether the scope of the release may affect class members in different

24   ways[.]"  Rule 23(e)(2), advisory committee's notes.  Under the proposed Plan of Allocation,

25   Class Members will be required to sign the same release and will receive a *pro rata* share of the

26   recovery based upon their Recognized Losses consistent with the Action's allegations.  *See* Stip.

27   Ex. A-1 at 14-18.  Thus, the proposed Settlement treats Class Members equitably relative to

28   each other.  *See Hefler*, 2018 WL 6619983, at *8 (finding settlement treated class members

16

1   equitably where those "who submit timely claims will receive payments on a *pro rata* basis

2   based on the date(s) class members purchased and sold [the Company's] shares as well as the

3   total number and amount of claims filed[]").

4          While Lead Plaintiff will receive a distribution from the Net Settlement Fund in

5   accordance with the Plan of Allocation, he may also seek an award of up to $2,500 for his

6   reasonable costs and expenses (including lost wages) directly relating to his representation of

7   the class, as authorized by the PSLRA. *See* 15 U.S.C. §77z-1(a)(4). Lead Plaintiff plans to

8   support his request for an award at the final approval stage with a declaration attesting to the

9   amount of time he devoted to the Action and any reasonable expenses he personally incurred in

10  representing the Class.

11                **5.    The Extent of Discovery Completed and the Stage of Proceedings**

12         The Ninth Circuit also looks to the extent of discovery completed and the stage of

13  proceedings in evaluating a class action settlement to determine whether the parties had

14  sufficient information before entering into the settlement. Formal discovery "is not a necessary

15  ticket to the bargaining table where the parties have sufficient information to make an informed

16  decision about settlement." *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and*

17  *Prods. Liab. Litig.*, 2016 WL 6248426, at *13-14 (N.D. Cal. Oct. 25, 2016).

18         Although the Settlement was achieved relatively early in the litigation, it was reached

19  only after the parties had a comprehensive understanding of the potential risks and procedural

20  hurdles facing further litigation of the Action. Lead Counsel conducted a thorough

21  investigation into the claims asserted, as described in §I.A.2, *supra*. Lead Counsel also

22  conducted extensive legal research in drafting the AC and briefing Defendants' MTD and RJN,

23  which helped Lead Counsel better evaluate and understand the strengths and weaknesses of the

24  claims asserted. Prior to the mediation, Lead Counsel: (i) reviewed over 3,000 pages of

25  materials provided by Defendants; (ii) had a call with Sonim's CFO under the provisions of a

26  mediation confidentiality agreement; (iii) conducted research for and drafted a mediation

27  statement and exhibits, and reviewed the mediation statements and exhibits submitted by

28  Defendants. *See* Stip. at 2. Prior to agreeing to the mediator's proposal for the settlement's

                                            17

monetary terms, Lead Counsel evaluated the Company's ability to pay in light of the

circumstances discussed in §I.A.3.a, and reviewed additional documents produced by the

Underwriter Defendants.  As discussed above, the parties had to engage in an additional

mediation/arbitration session before the final terms of the settlement could be reached.

Thus, Lead Plaintiff and Lead Counsel had sufficient information to make an informed

assessment of the Action's strengths and weaknesses and the Settlement's fairness.  *See In re

Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir. 2000), as amended (June 19, 2000)

(affirming district court's approval of $1.725 million settlement where no discovery took place,

noting "the district court's conclusion that the Plaintiffs had sufficient information to make an

informed decision about the Settlement is not clearly erroneous[]"); *Rieckborn*, 2015 WL

468329, at *6 (finding that "[d]espite reaching settlement relatively early in the life span of this

case, the Settling Parties have shown that their decision to settle was made on the basis of a

thorough understanding of the relevant facts and law[,]" even though settlement was reached

before the filing of a motion to dismiss).

### 6.    Risk of Maintaining Class Action Status Through Trial

The Class has not yet been certified.  While Lead Plaintiff is confident that the class

meets the requirements for certification, *see* §I.B, Lead Plaintiff is aware that the Court could

disagree.  Even if the Court were to certify the Class, there is always a risk that the Class could

be decertified later.  *See* Rule 23(c)(1) (providing that a class certification order may be altered

or amended any time before a decision on the merits).

### 7.    The Experience and Views of Counsel

As set forth in detail in the Faruqi Firm's resume, Lead Counsel is a nationally-

recognized law firm that has substantial experience litigating securities class action lawsuits and

has negotiated many substantial recoveries for classes across the country.  *See* Ex. 2.

Defendants were also represented by highly reputable firms.  *See* §I.A.2.  Lead Counsel, having

carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence to

support the claims asserted against Defendants, the likelihood of prevailing on these claims, the

risk, expense, and duration of continued litigation, and the likelihood of subsequent appellate

18

proceedings even if Lead Plaintiff were to prevail against Defendants at trial, concluded that the settlement here is an excellent result for the Class in light of Sonim's financial position and indemnity obligations.  *See* §I.A.3.a.  Thus, since "[b]oth Parties are represented by experienced counsel[,] . . . their mutual desire to adopt the terms of the proposed settlement, while not conclusive, is entitled to [a] great deal of weight."  *Immune Response*, 497 F. Supp. 2d at 1174.

## B.    The Court "Will Likely Be Able To" Certify The Class For Settlement

Rule 23(e)(1)(B)(ii) requires the Court to consider whether it "will likely be able to certify the class for purposes of judgment on the proposal."  Lead Plaintiff seeks certification of the following Class for the purposes of Settlement only:

> [A]ll Persons who purchased or otherwise acquired Sonim common stock pursuant or traceable to the May 2019 Registration Statement and Prospectus filed in connection with the IPO of Sonim on or about May 9, 2019 and were damaged thereby.  Excluded from the Class are Defendants, the officers and directors of Sonim (at all relevant times), members of their families and their legal representatives, heirs, successors or assigns, and any entity in which any of the above has a majority ownership interest.  Also excluded from the Class are those Persons who would otherwise be Class Members but who timely and validly exclude themselves therefrom.

Stip. ¶1.3.  The scope of this Class is nearly identical to that alleged in the AC, but those excluded from the Class are described with greater specificity in the Stipulation.  *Compare* Stip. ¶1.3, *with* AC ¶¶1, 73-74.

Rule 23(a) sets forth four prerequisites to class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  In addition, the Court must find that at least one of the three subsections of Rule 23(b) is met.  *See Zynga*, 2015 WL 6471171, at *6.  Under Rule 23(b)(3), a class may be certified if the Court finds that: (1) the questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  "As in almost all lawsuits by shareholders of public companies, the investors in this case easily satisfy the requirements of

19

Rule 23." *In re Magma Design Automation, Inc. Sec. Litig.*, 2007 WL 2344992, at *1 (N.D. Cal. Aug. 16, 2007).  This Action satisfies all the factors for class certification.

### 1.    The Settlement Class Is Sufficiently Numerous

Rule 23(a) provides that a class may be certified if it is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "In cases involving securities traded on national stock exchanges, numerosity is practically a given."  *In re Verisign, Inc. Sec. Litig.*, 2005 WL 7877645, at *4 (N.D. Cal. Jan. 13, 2005).  Sonim stock began trading on the Nasdaq Global market following the IPO.  AC ¶¶43-44.   Approximately 4.1 million shares of Sonim common stock were sold in the IPO, *see* AC ¶43, potentially owned by hundreds or thousands of persons who are Class Members.  Thus, joinder would be impractical and the numerosity requirement of Rule 23(a)(1) is satisfied.

### 2.    There Are Common Questions of Law and Fact

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class[.]" "Courts regularly hold that commonality is plainly satisfied in a securities case where the alleged misrepresentations obviously present important common issues."  *Booth v. Strategic Realty Trust, Inc.*, 2015 WL 3957746, at *3 (N.D. Cal. June 28, 2015).  In this case, the overarching issue shared by all members of the proposed settlement Class is whether Defendants violated the Securities Act in connection with Lead Plaintiff's factual allegations discussed above.  *See* AC ¶78.  This issue involves common questions because each Class Member has to prove the same elements to establishing Defendants' liability and thus the low hurdle of Rule 23(a)(2) is satisfied.  *See Zynga*, 2015 WL 6471171, at *6.

### 3.    The Proposed Class Representative's Claims Are Typical

A class may by certified if the claims of the representative parties are typical of the claims of the class.  Rule 23(a)(3).  "Under the rule's permissive standards, representative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.

Lead Plaintiff's claims arise from the same events and alleged misconduct and are based on the same legal theories as those of the proposed settlement Class.  Specifically, Lead

Plaintiff claims that (a) Defendants violated §§11 and 15 of the Securities Act because the Registration Statement contained false and/or misleading statements; (b) Lead Plaintiff and other settlement Class Members purchased or otherwise acquired Sonim common stock pursuant or traceable to the Registration Statement and were damaged thereby; and (c) by proving Lead Plaintiff's own claims, Lead Plaintiff would prove the claims of the settlement Class Members.  *See, e.g.*, AC ¶76.  Thus, there is a sufficient nexus between Lead Plaintiff's claims and the Class's claims to satisfy Rule 23(a)(3).

### 4.    The Proposed Class Representative Is Adequate

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Lead Plaintiff has established his adequacy for the reasons in §I.A.1.

### 5.    The Predominance and Superiority Requirements Are Satisfied

A class may be certified under Rule 23(b)(3) if the Court finds that: (1) the questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The predominance prong is satisfied because, as described above, the questions of law or fact common to the settlement Class Members described above predominate over any individual questions.  *See Zynga*, 2015 WL 6471171, at *7 (finding predominance satisfied when each class member purchased stock and suffered damages as a result).

The superiority prong is also satisfied because the relevant factors are met in this case. *Amchem Prods. v. Windsor*, 521 U.S. 591, 616 (1997)  (providing that the following four factors should be considered with respect to "superiority": (i) class members' interest in individually prosecuting separate actions; (ii) the extent of any litigation already commenced by class members; (iii) the desirability of concentrating the litigation in the particular forum; and (iv) the difficulties in management of a class action).[10]  Prosecution of this lawsuit on a class action

---

[10]    The fourth factor need not be considered because the proposed Settlement eliminates any manageability problems that may have existed.  *See Amchem*, 521 U.S. at 620 (stating that when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . .").

basis will be more efficient than adjudication of the numerous individual shareholder claims because the shareholders are geographically dispersed and have relatively small claims. *See Verisign*, 2005 WL 7877645, at \*9 ("Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants."). Additionally, Lead Plaintiff and Lead Counsel have already invested significant resources thus far in preserving and prosecuting the claims asserted in the AC. *See* §§I.A.2-3, I.A.5. Any additional individual litigation would simply be duplicative of their efforts. Certification is the superior method to facilitate the resolution of the Class's claims against Defendants because, absent certification, Defendants would not be able to obtain a Class-wide release and thus would have little incentive to enter into a settlement.

### 6.    The Faruqi Firm Is Adequate To Serve as Class Counsel

"[A] court that certifies a class must appoint class counsel." Rule 23(g). Lead Plaintiff respectfully requests that the Court appoint the Faruqi Firm as Class Counsel for the Settlement Class. The Faruqi Firm has, and will continue to, fairly and adequately represent the Settlement Class. As explained in §I.A.1, proposed counsel is knowledgeable about the applicable law, experienced in handling class actions, has performed substantial work in pursuing the claims and in reaching a settlement, and has committed the necessary resources to representing the Settlement Class. *See* Rule 23(g)(1)(A).

## II.    THE PROPOSED CLASS NOTICE PROGRAM SHOULD BE APPROVED

Due process for class action plaintiffs requires that counsel provide "notice plus an opportunity to be heard and participate in the litigation[.]" *Epstein v. MCA, Inc.*, 179 F.3d 641, 649 (9th Cir. 1999). "For any class certified under Rule 23(b)(3), class members must be afforded the best notice practicable under the circumstances, which includes individual notice to all members who can be identified through reasonable effort." *Zynga*, 2015 WL 6471171, at \*13. Under this standard, the notice must state the following in plain language: (i) the nature of the action; (ii) the class definition; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney; (v) that the court will exclude from the

22

1  class any member who requests exclusion; (vi) the time and manner for requesting exclusions;

2  and (vii) the binding effect of a class judgment on members.  *Id.*  Rule 23(e) requires notice that

3  describes "the terms of the settlement in sufficient detail to alert those with adverse viewpoints

4  to investigate and to come forward and be heard."  *In re Online DVD-Rental Antitrust Litig.*,

5  779 F.3d 934, 946 (9th Cir. 2015).  Furthermore, the PSLRA requires that the notice contain: (i)

6  a statement of the recovery; (ii) a statement of the potential outcome of the case (pertaining to

7  damages issues); (iii) a statement of attorneys' fees and costs; (iv) identification of the legal

8  representatives; (v) reasons for settlement; (vi) other information the court requires; and (vii) a

9  cover page summarizing that information.  *See* 15 U.S.C. §77z-1(a)(7).

10  The Notice and Proof of Claim form will be sent by U.S. mail to potential Class

11  Members and will be available on the website www.rg2claims.com/sonim.html, and the

12  Summary Notice will be published in *Investor's Business Daily* and on *PR Newswire*.  *See* Stip.

13  Ex. A.  The Notice and Summary Notice have been carefully drafted to notify the Class of the

14  settlement's terms, the Class Members' rights in connection with the settlement, and the date of

15  the Final Approval Hearing in compliance with Rule 23(c)(2) and 23(e), the PSLRA, and due

16  process.  *See* Stip. Exs. A-1, A-3.

17  This manner of providing notice represents the best notice practicable under the

18  circumstances, and satisfies the requirements of Rule 23, the PSLRA, and due process.  *See,*

19  *e.g.*, *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007)

20  (approving notice by mail and publication to all reasonably identifiable class members as best

21  practicable).  Furthermore, the proposed settlement claims administrator, RG/2 Claims

22  Administration, LLC ("RG/2"), was chosen after Lead Counsel solicited estimates from RG/2

23  and four other claims administrators.  All five potential claims administrators proposed methods

24  of notice that are similar to those set forth above.  Lead Counsel chose RG/2, which submitted

25  the lowest overall administration estimate.  RG/2 has not served as a claims administrator in any

26  securities cases in which the Faruqi Firm served as lead or co-lead counsel in the last two years.

27  RG/2's estimated administration expenses are $61,740, which amounts to only $0.02 per

28  share of common stock.  This is a very reasonable amount given the high quality of RG/2's

services.  Accordingly, Lead Plaintiff respectfully requests that the Court approve the Notice, Summary Notice, and Proof of Claim form and the procedures for their dissemination.

Based on RG/2's and Lead Counsel's experience in the settlement of similar cases, it is estimated that approximately 10-25% of potential class members to whom notice can be provided will submit a claim form.  RG/2 based its estimate of this response rate upon its experience with past securities class action settlements of similar size, including *Fragala v. 500.com Ltd.*, No. 2:15-CV-01463-JFW (C.D. Cal.), a securities class action settlement that used methods of notice similar to those proposed in this Action and had a response rate of approximately 9%.  *See Fragala* docket, ECF No. 97-1 (RG/2 declaration in support of distribution) at ¶¶3, 7 (providing that 1,463 claims were submitted out of 16,432 notices mailed); *Fragala* docket, ECF No. 92-13 (RG/2 declaration regarding dissemination of notice). Lead Counsel cross-checked the reasonableness of the estimated 10-25% response rate by comparing it to the approximate response rates in three recent cases in which it served as Lead Counsel.  *See Larkin v. GoPro, Inc., et al*, No. 4:16-cv-06654-CW (N.D. Cal.) (7.5% response rate); *In re Dynavax Techs. Corp. Sec. Litig.*, No. 3:13-cv-02796-CRB (N.D. Cal.), (19% response rate); *Rihn v. Acadia Pharms. Inc.*, No. 3:15-cv-00575-BTM-DHB (S.D. Cal.), (22% response rate).[11]  These examples were selected because they are securities class action settlements from this Circuit that used methods of notice similar to those proposed in this Action.  *See GoPro* docket, ECF No. 124 (preliminary approval order describing, *inter alia*, notice methods); *Dynavax* docket, ECF No. 144 (same); *Acadia* docket, ECF No. 71 (same).

Defendants will provide Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1715, notice and are solely responsible for doing so.  Stip. ¶3.1.  Within ten days of the filing of the Stipulation with the Court, Defendants will cause notice of the proposed settlement to be served upon the appropriate officials in compliance with CAFA's requirements.

---

[11]    The response rates in each case were determined by dividing the claims submitted by the total number of notices sent.  *See GoPro* docket, ECF No. 145-1 (post-distribution accounting chart); *Dynavax* docket, ECF No. 157-1 (claims administrator's distribution declaration) at ¶¶3, 10; *Acadia* docket, ECF No. 81 at ¶2 (claims administrator's mailing declaration), ECF No. 94-2 (claims administrator's distribution declaration) at ¶9.

III.       PROPOSED SCHEDULE OF EVENTS

As outlined in the proposed Preliminary Approval Order submitted herewith, the parties

proposed the following schedule:

| Event | Time for Compliance |
|---|---|
| Deadline for Sonim to cause Lead Counsel to be provided with a list of record owners | 14 calendar days after entry of the Preliminary Approval Order (¶10)[12] |
| Deadline to mail the Notice and Proof of Claim to the list of record owners and publish them to the website ("Notice Date") | 28 calendar days after entry of the Preliminary Approval Order (¶11) |
| Deadline for publishing Summary Notice | 14 calendar days after the Notice Date (¶12) |
| Deadline for submitting Proofs of Claim | 90 calendar days from the Notice Date (¶17) |
| Deadline for filing the motion in support of final approval of the Settlement and the applications for attorneys' fees and expenses | 56 calendar days prior to the Final Approval Hearing (¶23) |
| Deadline for filing and serving proof of mailing and publication | 7 calendar days prior to the Final Approval Hearing (¶16) |
| Deadline for objections and exclusions | 21 calendar days prior to the Final Approval Hearing (¶¶18, 21) |
| Deadline for filing reply memoranda in response to any objections | 7 calendar days prior to the Final Approval Hearing (¶23) |
| Final Approval Hearing | 110 calendar days from the date of the Preliminary Approval Order (¶5) |

## CONCLUSION

For the reasons stated above, Lead Plaintiff respectfully requests that the court enter the

Preliminary Approval Order which will: (a) preliminarily approve the proposed Settlement; (b)

approve the proposed form and manner of providing notice; (c) preliminary certify the Class for

settlement purposes; (d) preliminarily appoint Lead Plaintiff as Class Representative and the

Faruqi Firm as Class Counsel for settlement purposes; and (e) set a hearing date for the Final

Approval Hearing.

Dated: September 11, 2020              **FARUQI & FARUQI, LLP**

By:   */s/ Richard W. Gonnello*
Richard W. Gonnello

---

12       All "¶__" references in this chart are to the Preliminary Approval Order (Stip. Ex. A).

25

1

Richard W. Gonnello (admitted *pro hac vice*)
Katherine M. Lenahan (admitted *pro hac vice*)
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: rgonnello@faruqilaw.com
klenahan @faruqilaw.com

2

3

4

5

Benjamin Heikali SBN 307466
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
Email: bheikali@faruqilaw.com

6

7

8

9

*Attorneys for [Proposed] Class Representative
David Sterrett and [Proposed] Class Counsel for
the [Proposed] Settlement Class*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26