**HAGENS BERMAN SOBOL SHAPIRO LLP**
Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
Danielle Smith (291237)
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone:  (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com
danielles@hbsslaw.com

*Co-Lead Counsel for Intervenors Beecham
Pearson, Stephen Ly, and Michael Hostak*

[Additional counsel on signature page.]

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID STERRETT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SONIM TECHNOLOGIES, INC., ROBERT PLASCHKE, JAMES WALKER, MAURICE HOCHSCHILD, ALAN HOWE, KENNY YOUNG, SUSAN G. SWENSON, JOHN KNEUER, JEFFREY D. JOHNSON, OPPENHEIMER & CO., INC., LAKE STREET CAPITAL MARKETS, LLC, and NATIONAL SECURITIES CORPORATION,<br><br>Defendants. | Case No. 3:19-cv-06416-MMC<br><br>CLASS ACTION<br><br>**NOTICE OF MOTION AND MOTION TO INTERVENE AND OBJECT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          November 13, 2020<br>Time:          9:00 a.m.<br>Courtroom:  7 – 19th Floor<br>Judge:        Hon. Maxine M. Chesney |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................2

II.     BACKGROUND ................................................................................................3

    A.      The California Action Is Filed First ................................................................3

    B.      A Copycat Plaintiff Files a Duplicative Action in Federal Court ......................3

    C.      Defendants Try and Fail to Stay the California Action in Favor of
    the Federal Action ........................................................................................3

    D.      Sterrett and Defendants Engage in Secret Collusive Efforts to
    Settle the California Plaintiffs' Claims .............................................................4

    E.      The Proposed Settlement Pays Pennies on the Dollar .........................................5

III.    ARGUMENT ....................................................................................................5

    A.      California Plaintiffs Should Be Allowed to Intervene as of Right
    Under Rule 24(a) ..........................................................................................5

        1.      The California Plaintiffs Have a Significantly
        Protectable Interest in This Action ...........................................................6

        2.      The California Plaintiffs' Interests Are Not Adequately
        Protected .............................................................................................6

        3.      A Disposition on Preliminary Approval Will Impair or
        Impede the California Plaintiffs' Ability to Protect Their
        Significantly Protectable Interests ...........................................................7

        4.      This Motion Is Timely .........................................................................7

    B.      California Plaintiffs Should Be Granted Permissive Intervention
    Under Rule 24(b) ..........................................................................................8

        1.      California Plaintiffs Will Not Expand this Court's
        Jurisdiction .........................................................................................8

        2.      California Plaintiffs Share Common Questions of Law
        or Fact with Those Asserted in the Federal Action ...................................9

        3.      Granting California Plaintiffs Permissive Intervention
        Will Not Unduly Delay or Prejudice the Adjudication of
        Sterrett's Rights ..................................................................................9

i

C.    The Court Should Not Grant Preliminary Approval of the Proposed Settlement ................................................................. 10

    1.    The Court Has a Duty to Carefully Scrutinize Proposed Settlements ............................................................... 10

    2.    The Proposed Settlement Is Not Fair, Reasonable, or Adequate .................................................................. 10

        a.    The Proposed Settlement Was Negotiated in a Secretive and Unfair Manner ................................... 10

        b.    The Proposed Settlement Is Inadequate and an Improper Reverse Auction .................................... 11

D.    The Federal Action Should Be Stayed Under *Colorado River*, So the Claims of the Putative Class Can Be Pursued Without Further Hindrance in State Court ....................................................... 16

    1.    The California Action and Federal Action Are Parallel Proceedings ............................................................... 16

    2.    The *Colorado River* Factors Weigh in Favor of Staying the Federal Action ................................................ 17

        a.    The State Court Obtained Jurisdiction First ............................. 17

        b.    Allowing the Federal Action to Proceed and Extinguish the California Plaintiffs' Claims Would Promote Forum Shopping ............................. 18

        c.    The California Action Will Fully Protect Sterrett's Rights ...................................................... 18

        d.    The Remaining *Colorado River* Factors Are Inapplicable ......................................................... 18

IV.    CONCLUSION ......................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Federal Cases

*Anderson v. Strauss Neibauer & Anderson APC Profit Sharing 401(K) Plan*,
  2011 WL 149442 (E.D. Cal. Jan. 18, 2011) .......................................................................16, 17

*Arakaki v. Cayetano*,
  324 F.3d 1078 (9th Cir. 2003) ...............................................................................................6, 7

*In re Bluetooth Headset Prod. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ....................................................................................................10

*Chelsea Hearth & Fireplaces, Inc. v. Scottsdale Ins. Co.*,
  142 F. Supp. 3d 543 (E.D. Mich. 2015)....................................................................................11

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
  647 F.3d 893 (9th Cir. 2011) .....................................................................................................6

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976)............................................................................................................ *passim*

*Cotter v. Lyft, Inc.*,
  193 F. Supp. 3d 1030 (N.D. Cal. 2016) ....................................................................................10

*In re Countrywide Fin. Corp. Deriv. Litig.*,
  542 F. Supp. 2d 1160 (C.D. Cal. 2008) ..............................................................................16, 18

*Cty. of Fresno v. Andrus*,
  622 F.2d 436 (9th Cir. 1980) .....................................................................................................6

*Cunningham v. David Special Commitment Ctr.*,
  158 F.3d 1035 (9th Cir. 1998) ...................................................................................................7

*Cyan, Inv. v. Beaver Cty. Emps. Ret. Fund*,
  138 S. Ct. 1061 (2018)................................................................................................4, 12, 13

*Dalchau v. Fastaff, LLC*,
  2018 WL 1709925 (N.D. Cal. Apr. 9, 2018) ............................................................................13

*De Cisneros v. Younger*,
  871 F.2d 305 (2d Cir. 1989)......................................................................................................17

*Doe v. City of L.A.*,
  42 Cal. 4th 531 (2007) .......................................................................................................15, 18

*Donnelly v. Glickman*,
  159 F.3d 405 (9th Cir. 1998) ................................................................................................5, 6

iii

NOTICE OF MOTION & MOTION TO INTERVENE AND OBJECT;
MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06416-MMC

*El Centro Foods, Inc. v. Nazarian et al.*,
    2010 WL 1710286 (C.D. Cal., Apr. 21, 2010) ...............................................................13, 17

*In re Estate of Ferdinand E. Marcos Human Rights Litig.*,
    536 F3d 980 (9th Cir. 2008) ...............................................................................................6

*Evanston Ins. Co. v. Van Syoc Chtd.*,
    863 F. Supp. 2d 364 (D.N.J. 2012) ..................................................................................11

*Freedom from Religion Found., Inc. v. Geithner*,
    644 F.3d 836 (9th Cir. 2011) .............................................................................................9

*Gallagher v. Dillon Grp.*,
    2010 WL 890056 (N.D. Cal. Mar. 8, 2010)..................................................................16, 18

*General Reinsurance Corp. and*
    *North Star Reinsurance Corp v. Ciba-Geigy Corp.*,
    853 F.2d 78 (2d. Cir. 1988)..............................................................................................17

*Grossman v. Waste Mgmt., Inc.*,
    589 F. Supp. 395 (N.D. Ill. 1984) ......................................................................................5

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .........................................................................................10

*Herman & MacLean v. Huddleston*,
    459 U.S. 375 (1983)........................................................................................................11

*Holder v. Holder*,
    305 F.3d 854 (9th Cir. 2002) ...........................................................................................15

*In re HP Inkjet Printer Litig.*,
    716 F.3d 1173 (9th Cir. 2013) .........................................................................................10

*Kootenai Tribe of Idaho v. Veneman*,
    313 F.3d 1094 (9th Cir. 2002),
    *abrogated by Wilderness Soc'y v. U.S. Forest Serv.*,
    630 F.3d 1173 (9th Cir. 2011) ...........................................................................................9

*League of United Latin Am. Citizens v. Wilson*,
    131 F.3d 1297 (9th Cir. 1997) ........................................................................................7, 8

*Cal. ex rel. Lockyer v. United States*,
    450 F.3d 436 (9th Cir. 2006) .............................................................................................6

*In re Mercury Interactive Corp. Sec. Litig.*,
    618 F.3d 988 (9th Cir. 2010) ...........................................................................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)............................................................................................................17

iv

*Nakash v. Marciano*,
    882 F.2d 1411 (9th Cir. 1989) ....................................................................................16

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) ......................................................................................12

*Sea Prestigio, LLC v. M/Y TRITON*,
    787 F. Supp. 2d 1116 (S.D. Cal. 2011).......................................................................13

*Stockton Firefighters' Local 456, Int'l Ass'n of Firefighters v. City of Stockton*,
    2010 WL 3825674 (E.D. Cal. Sept. 8, 2010)..............................................................17

*U.S. v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004) ........................................................................................6

*U.S. v. Carpenter*,
    298 F.3d 1122 (9th Cir. 2002) ......................................................................................8

*U.S. v. City of L.A.*,
    288 F.3d 391 (9th Cir. 2002) ........................................................................................7

*Weinberger v. Great N. Nekoosa Corp.*,
    925 F.2d 518 (1st Cir. 1991) ......................................................................................10

### State Cases

*In re Cloudera, Inc. Sec. Litig.*,
    No. 19CV348674 (Cal. Super. Ct., Santa Clara Cty. Oct. 29, 2019).........................15

*In re Mobileiron, Inc. S'holder Litig.*,
    2016 WL 9137540 (Cal. Super. Ct., Santa Clara Cty. Oct. 4, 2016).........................15

*Wong v. Restoration Robotics, Inc.*,
    No. 18CIV02609 (Cal. Super. Ct., San Mateo Cty. Sept. 1, 2020) ...........................14

### Federal Statutes

15 U.S.C. § 77k ...................................................................................................................3

15 U.S.C. § 77k(e) ..........................................................................................................5,11

15 U.S.C. § 77l(a)(2)..........................................................................................................12

15 U.S.C. § 77o...................................................................................................................3

### Other Authorities

Fed. R. Civ. P. 23...............................................................................................................13

Fed. R. Civ. P. 24.................................................................................................................1

Fed. R. Civ. P. 24(a) .................................................................................................5, 7

Fed. R. Civ. P. 24(a)(2)............................................................................................5, 6

Fed. R. Civ. P. 24(b) ...................................................................................................8

Fed. R. Civ. P. 24(b)(1)(B) .........................................................................................9

Fed. R. Civ. P. 24(b)(3)............................................................................................8, 9

Cal. Civ. Proc. Code § 425.10 ...................................................................................15

John C. Coffee, Jr., *Class Wars: The Dilemma of the Mass Tort Class Action*, 95
       Colum. L. Rev. 1343, 1371 (1995) .................................................................16

Jonathan R. Macey & Geoffrey P. Miller, *Judicial Review of Class Action
       Settlements,* 1 J. Legal Analysis 167, 191-94 (2009)..............................13, 14

4 William B. Rubenstein, Newberg on Class Actions §13:60 (5th ed. 2018) .............12

*Standards and Guidelines for Litigating and Settling Consumer Class Actions,*
       299 F.R.D. 160 (3d ed. 2014) ..........................................................................12

vi

## NOTICE OF MOTION AND MOTION TO INTERVENE

TO:      ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

PLEASE TAKE NOTICE that Intervenors Beecham Pearson, Steven Ly, and Michael Hostak (the "California Plaintiffs"), by and through their undersigned counsel, hereby move this Court before the Honorable Maxine M. Chesney in Courtroom 7, 19th Floor, of the U.S. District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, on November 13, 2020, at 9:00 a.m., or as soon as the matter may be heard, for the entry of an order granting their motion to intervene in this action for the limited purpose of objecting to the proposed settlement and seeking to stay this action under the *Colorado River* doctrine.

This motion is made pursuant to Rule 24 of the Federal Rules of Civil Procedure and is based on this notice of motion and motion, memorandum of points and authorities herein, the Declaration of Reed Kathrein ("Kathrein Decl.") filed concurrently herewith and in support hereof, including Exhibit A attached thereto, and such other written or oral argument as may be presented to the Court.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Should the Court allow the California Plaintiffs to intervene in this action pursuant to Fed. R. Civ. P. 24 where the California Plaintiffs are members of the putative class whose claims Sterrett seeks to settle and are also leading the parallel, first-filed California Action?

2.      Should the Court grant preliminary approval to the proposed settlement even though it is both procedurally and substantively unfair and the product of a reverse auction that prejudices the entire putative class and even though preliminary approval would trigger a costly notice process?

3.      Should the Court apply the *Colorado River* doctrine and stay itself in favor of the earlier filed California Action so that the claims of the putative class can be more effectively prosecuted?

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

The California Plaintiffs filed the first securities class action arising out of Sonim Technologies, Inc.'s ("Sonim" or the "Company") May 9, 2019 initial public offering ("IPO"). That action is currently pending before Honorable Nancy L. Fineman ("Judge Fineman") in San Mateo County Superior Court (the "California Action"). The California Plaintiffs are moving to intervene because Plaintiff David Sterrett ("Sterrett") in this later-filed parallel action (the "Federal Action") seeks to settle and release the claims in the California Action through a settlement that (i) is procedurally unfair; and (ii) substantively unsound. Specifically, without notice to the California Plaintiffs, Sterrett engaged in secret settlement negotiations with Defendants[1] and now seeks to settle and release all claims arising out of the IPO, including those in the California Action, for pennies on the dollar before the California Plaintiffs have even had an opportunity to test the sufficiency of their complaint. As discussed below, the proposed $2 million settlement appears to be the product of a collusive reverse auction by Defendants to obtain a low-value settlement in the hope that this Court will approve a dubious settlement that will preclude the California Plaintiffs' claims. The proposed settlement sells out the class's interests and represents less than the full value of their claims.

There is no reason to grant preliminary approval to the premature, lowball settlement pending before this Court. Granting preliminary approval will generate an expensive notice process whereby class members are mailed notice and proof of claim and given a right to object. At the end of that process, the settlement will suffer from the same defects outlined herein.

Accordingly, this Court should stay itself in favor of the California Action pursuant to the *Colorado River* doctrine. Alternatively, this Court should exercise its discretion to stay itself until the resolution of demurrer in the California Action. Such an adjournment would allow the

---

[1] "Defendants" collectively include Sonim, Robert Plaschke, James Walker, Maurice Hochschild, Alan Howe, Kenny Young, Susan G. Swenson, John Kneuer, Jeffrey D. Johnson, Oppenheimer & Co., Inc., Lake Street Capital Markets, LLC, and National Securities Corporation.

1  California Plaintiffs to proceed with the demurrer in their action and advocate for a substantial

2  recovery for the putative class. An adjournment is also consistent with well-established principles

3  of comity, which recognize that the first court to obtain jurisdiction over a matter – in this case

4  California state court – should be afforded the opportunity to dispose of the matter.

5          Thus, this Court should grant the California Plaintiffs' motion in full.

6                                    **II.     BACKGROUND**

7  **A.      The California Action Is Filed First**

8          On September 20, 2019, intervenor-plaintiff Beecham Pearson filed the first nationwide

9  putative class action complaint against Defendants for violations of §§ 11 and 15 of the Securities

10  Act of 1933 (the "1933 Act") in the Superior Court of the State of California, San Mateo,

11  captioned *Pearson v. Sonim Technologies, Inc.*, No. 19-CIV-05564 (the "*Pearson* Action"). Other

12  Sonim shareholders filed similar class actions shortly thereafter. On November 8, 2019, Judge

13  Fineman consolidated these related cases and appointed Scott+Scott Attorneys at Law LLP,

14  Hagens Berman Sobol Shapiro LLP, and Kaplan Fox & Kilsheimer LLP, three national securities

15  class action firms, Co-Lead Counsel (the "California Action"). On December 20, 2019, Co-Lead

16  Counsel filed a consolidated amended complaint against Defendants for violations of Sections 11

17  and 15 of the 1933 Act.

18  **B.      A Copycat Plaintiff Files a Duplicative Action in Federal Court**

19          On October 7, 2019, Ajay Malhotra ("Malhotra") filed a complaint in this Court asserting

20  the exact same claims as those brought in the California Action. *Compare* the *Pearson* Complaint

21  ¶¶ 8, 42-49 *with* ECF No. 1 ¶¶ 7, 39-43. On January 22, 2020, this Court appointed Sterrett lead

22  plaintiff and Faruqi & Faruqi, LLP lead counsel of the Federal Action. On February 24, 2020,

23  Sterrett filed his amended complaint, continuing to assert the same 1933 Act claims first-filed in

24  the California Action.

25  **C.      Defendants Try and Fail to Stay the California Action in Favor of the Federal Action**

26          On December 9, 2019, over a month before this Court appointed a Lead Plaintiff and

27  nearly three months before the operative complaint was filed in the Federal Action, Defendants

28  sought to move the case away from Judge Fineman by seeking a stay of the California Action in

1   favor of the Federal Action. Judge Fineman denied Defendants' invitation to stay the California

2   Action in favor of the Federal Action, finding persuasive the facts, among other things, that her

3   court "undisputed[ly]" has jurisdiction to hear the action under the Supreme Court's seminal

4   decision in *Cyan, Inv. v. Beaver Cty. Emps. Ret. Fund*, 138 S. Ct. 1061 (2018), and, importantly,

5   that the California Action was filed first. *See* Kathrein Decl., Ex. A.[2]

6   **D.      Sterrett and Defendants Engage in Secret Collusive Efforts to Settle the California
   Plaintiffs' Claims**

7           Unbeknownst to the California Plaintiffs, while briefing on Defendants' motion to dismiss

8   the Federal Action was ongoing (or immediately thereafter), and before this Court had an

9   opportunity to measure the sufficiency of Sterrett's claims, Sterrett and Defendants engaged in

10  settlement negotiations that led to the withdrawal of Defendants' motion to dismiss on August 6,

11  2020, and the filing of Sterrett's motion for the preliminary approval of settlement on September

12  11, 2020. ECF No. 76 at 3-4. Neither Sterrett nor Defendants informed or invited California

13  Plaintiffs to participate in these settlement discussions, yet, in exchange for a class-wide

14  settlement of $2 million, Sterrett has agreed to release Defendants from California Plaintiffs'

15  claims. *Id.* at 4.

16          Consequently, on September 21, 2020, after reviewing the publicly available information

17  concerning the proposed settlement – information that suggests the settlement is inadequate and

18  akin to a reverse auction – California Plaintiffs sent Sterrett and Defendants a letter asking for

19  them to produce specific information related to the proposed settlement so that they could

20  carefully assess its fairness, adequacy, and reasonableness and determine whether it is in the best

21  interest of the proposed settlement class. *See* Kathrein Decl., Ex. B. On September 28, 2020,

22  counsel for Sterrett responded with a note indicating no present interest to comply with this

23  reasonable request. *See id.*, Ex. C.

24

25  _____

26      [2] Judge Fineman granted Defendants' alternative request for a short temporary stay
   pending a decision by the Delaware Supreme Court on whether courts must enforce exclusive
   federal forum provisions in corporate certificates of incorporations. The parties in the California
27  Action are scheduled to argue Defendants' fully briefed motion to dismiss on *forum non
   conveniens* grounds on October 15, 2020.

28

4

NOTICE OF MOTION & MOTION TO INTERVENE AND OBJECT;
MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06416-MMC

**E.     The Proposed Settlement Pays Pennies on the Dollar**

Sonim's IPO was a success in that Sonim issued over 4 million shares of its common stock at $11.00 per share, raising net proceeds of approximately $37.5 million. Since its IPO, however, the Company's stock has precipitously declined.

Section 11(e) of the 1933 Act provides the statutory formula for calculating damages, which is the difference between "the amount paid for the security" (not exceeding the IPO price) and either (i) "the *value* thereof as of the time (the) suit was brought"; (ii) the price at which such security was sold prior to suit; or (iii) the price at which the security was sold after suit was brought (if the price is higher than the value of the security at the time the suit was brought). 15 U.S.C. § 77k(e). Here, calculating damages under Rule 11(e), using the closing stock price on September 20, 2019, of $3.14 per share (the day the California Action commenced), yields statutory damages of at least $28 million. The proposed settlement would only provide $2 million, minus proposed attorneys' fees of $500,000, to address these losses.[3]

### III.     ARGUMENT

**A.     California Plaintiffs Should Be Allowed to Intervene as of Right Under Rule 24(a)**

Intervention as of right under Rule 24(a)(2) is appropriate upon satisfaction of a four-factor test: (i) the applicant must assert a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (ii) the applicant's interest is not adequately represented by the parties to the action; (iii) the applicant must be situated such that disposition of the action may, as a practical matter, impair or impede its ability to protect that interest; and (iv) the applicant's motion must be timely. Fed. R. Civ. P. 24(a); *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).[4] Rule 24(a)(2)'s requirements "are broadly

---

[3] Statutory damages may ultimately be higher if a different "value" than the share price on the date the first-filed 1933 Act case is used. *See Grossman v. Waste Mgmt., Inc.*, 589 F. Supp. 395, 415-16 (N.D. Ill. 1984) ("We note that though § 77k(e) uses 'price' for most of its calculations, it expressly refers to 'value' as of the date of suit in § 77k(e)(1). This indicates that the figure we are to use is not necessarily the market price of the stock on the date of suit.").

[4] Unless otherwise noted, internal citations are omitted.

interpreted in favor of intervention." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).

### 1. The California Plaintiffs Have a Significantly Protectable Interest in This Action

To warrant intervention as a matter of right, a movant must first show they have a "significantly protectable interest" in the action. Such an interest is considered "significantly protectable" if it is protected under some law and is related to the plaintiff's claims. *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) (citing *Donnelly*, 159 F.3d at 409). The Ninth Circuit has made clear that Rule 24(a)(2) does not require a proposed intervenor's interest to be specifically legal or equitable. *Cty. of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980). Rather, the Ninth Circuit has held that a non-speculative economic interest may be sufficient to support intervention if the interest is concrete and related to the action's underlying subject matter. *See, e.g.*, *U.S. v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). In short, the "significantly protectable" interest test requires a case-by-case, fact-based analysis, and the Ninth Circuit has viewed this test as "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *In re Estate of Ferdinand E. Marcos Human Rights Litig.*, 536 F3d 980, 985 (9th Cir. 2008). Here, there can be no question that the California Plaintiffs – appointed to represent and protect the interests of the first-filed overlapping class, and with a fiduciary obligation to do so – have a "significantly protectable" interest in this matter. They are pursuing the very claims that Sterrett now seeks to certify and release for an unacceptable *de minimis* amount.

### 2. The California Plaintiffs' Interests Are Not Adequately Protected

To satisfy the second factor, a "minimal" showing of inadequate representation is all that is required. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). In evaluating adequacy of representation, courts in the Ninth Circuit evaluate three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties

6

would neglect." *Id.* "The most important factor in determining the adequacy of representation is how the interest compares with the interests of existing parties." *Id.* Here, Sterrett seeks preliminary approval of a settlement that does not appear to be adequate and that unreasonably settles and releases the claims of the California Plaintiffs. Sterrett is, thus, incapable of making (and will not make) any of the California Plaintiffs' arguments for why the settlement is inadequate and the result of an ill-advised and improper reverse auction. Moreover, if successful in this effort, Sterrett's counsel will receive a payment of $500,000 while the claims of the California Plaintiffs will be extinguished.

### 3.     A Disposition on Preliminary Approval Will Impair or Impede the California Plaintiffs' Ability to Protect Their Significantly Protectable Interests

Intervention is appropriate when disposition of the pending action may "as a practical matter impair or impede [the movant's] ability to protect [its] interest." Fed. R. Civ. P. 24(a); *Cunningham v. David Special Commitment Ctr.*, 158 F.3d 1035, 1038 (9th Cir. 1998). "[T]he relevant inquiry is whether [a disposition] 'may' impair rights 'as a practical matter' rather than whether the decree will 'necessarily' impair them." *U.S. v. City of L.A.*, 288 F.3d 391, 401 (9th Cir. 2002). For the same reasons discussed above, the outcome of the pending motion for preliminary approval could certainly "impair or impede" the ability of the California Plaintiffs to protect the interest of the putative class at issue in the California Action.

### 4.     This Motion Is Timely

A motion for intervention must also be timely. When assessing timeliness, the Ninth Circuit considers three factors: (i) the stage of proceedings; (ii) any prejudice to existing parties; and (iii) the length of, and reason for, any delay. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997).

Here, the motion is certainly timely. Although the parties to the Federal Action participated in a virtual mediation on June 24, 2020, and engaged in subsequent discussions (ECF No. 76 at 3-4), they concealed the existence of the settlement-in-principle from the California Plaintiffs until September 14, 2020, when Co-Lead Counsel discovered that Sterrett had filed his motion for preliminary approval of settlement with this Court on September 11, 2020. Kathrein

7

NOTICE OF MOTION & MOTION TO INTERVENE AND OBJECT;
MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06416-MMC

Decl. ¶ 2. Neither Sterrett nor Defendants served Sterrett's pending motion on the California Plaintiffs, much less invited them to participate in the mediation or subsequent negotiations. *Id.* The filing of this motion only 23 days after discovery of the proposed settlement is, thus, well-timed. *See, e.g.*, *U.S. v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002) (a motion was timely when made one month following the disclosure of the settlement).

Moreover, following Co-Lead Counsel's discovery of Sterrett's motion for preliminary approval of settlement, the California Plaintiffs acted diligently. On September 21, 2020, Co-Lead Counsel served a letter to the parties in the Federal Action seeking the production of the same documents Sterrett claims to have reviewed prior to entering and in connection with the proposed settlement. ECF No. 76 at 8. Those efforts were abated by Sterrett's counsel who, by letter received September 28, 2020, indicated no present willingness to comply with the California Plaintiffs' reasonable requests. Additionally, there can be no claim of prejudice. With the hearing on Sterrett's motion scheduled for October 30, 2020, both Sterrett (and Defendants) enjoy ample time to consider and respond to the objections raised herein.

Under these facts, there would be no prejudice in allowing the California Plaintiffs to intervene. On the contrary, denial of intervention would prejudice both the California Plaintiffs and putative class, on whose behalf the Federal Action is prosecuted.

**B.    California Plaintiffs Should Be Granted Permissive Intervention Under Rule 24(b)**

The Court can also exercise its discretion and allow permissive intervention under Rule 24(b). For permissive intervention, the applicant need only show that: (i) independent grounds for jurisdiction exist; (ii) the motion is timely; and (iii) the applicant's claim or defense shares a common question of law or fact with the main action. Fed. R. Civ. P. 24(b); *League of United*, 131 F.3d at 1308. Further, in exercising its discretion, the court should consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

**1.    California Plaintiffs Will Not Expand this Court's Jurisdiction**

Here, intervention is sought only to appear and argue against preliminary settlement approval and preliminary class certification, not to allege additional claims or defenses or

additional bases for jurisdiction. Since this Court already has jurisdiction (concurrent jurisdiction) under the 1933 Act, the first prong for permissive intervention is met. *See Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011) (federal question supports intervention so long as intervenor not asserting new state-law claims).

**2.      California Plaintiffs Share Common Questions of Law or Fact with Those Asserted in the Federal Action**

Permissive intervention requires an applicant to "ha[ve] a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The existence of a common question is liberally interpreted. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108-09 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011). All that is required is "that [the proposed] intervenor's 'claim or defense and the main action have a question of law or fact in common.'" *Kootenai Tribe*, 313 F.3d at 1108. Here, the California Plaintiffs are asserting 1933 Act claims arising out of Sonim's IPO, which are the same claims asserted by Sterrett. Thus, the two actions share common questions of law and fact.

**3.      Granting California Plaintiffs Permissive Intervention Will Not Unduly Delay or Prejudice the Adjudication of Sterrett's Rights**

Once the conditions for granting permissive intervention are met, intervention rests in the sound discretion of the court. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the original parties' rights. Fed. R. Civ. P. 24(b)(3).

As discussed above, allowing California Plaintiffs' intervention for the sole purpose of opposing Sterrett's preliminary approval will not cause any delay, much less unnecessary delay. Indeed, consistent with the schedule set by this Court, Sterrett will have the opportunity to respond in writing before the October 30, 2020 hearing on his motion for preliminary approval of settlement. If anything, intervention would promote the interests of fairness and equity, allowing this Court to resolve issues relating to the inadequacy of the proposed settlement before the putative class is saddled with an expensive notice process paid for out of the proposed settlement.

**C.    The Court Should Not Grant Preliminary Approval of the Proposed Settlement**

**1.   The Court Has a Duty to Carefully Scrutinize Proposed Settlements**

In determining whether to approve a class settlement, the court's responsibility is to prevent fraud, collusion, or unfairness to the class when reviewing settlement because the rights of the class members, and even named plaintiffs, may not have been given due regard by the negotiating parties. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). This duty is heightened in cases, such as here, where settlement is sought before class certification. *See id.*; *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). In those cases, courts "must remain alert to the possibility that some class counsel may urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir. 1991)).

To guard against this real danger, the court acts as a "fiduciary for the class . . . with 'a jealous regard'" for the rights and interests of absent class members. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) (internal quotations omitted). Given practical considerations, such as the cost of providing notice to the class, the court should not grant preliminary approval to a proposed settlement unless it is "fair, reasonable and adequate." *See, e.g.*, *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016).

**2.    The Proposed Settlement Is Not Fair, Reasonable, or Adequate**

**a.    The Proposed Settlement Was Negotiated in a Secretive and Unfair Manner**

The settlement process here was not fair or reasonable. The California Action was the first to be filed and both Sterrett and Defendants were obviously aware of that proceeding. Yet, in negotiating over resolution of the claims asserted in the California Action, Sterrett and Defendants excluded the California Plaintiffs entirely. Kathrein Decl. ¶ 2.

The exclusion of the California Plaintiffs from the settlement process prejudiced the interests of the class, as it resulted in a premature settlement that threatens the orderly conduct of the state case and which could result in the involuntary release of claims that the California Plaintiffs have been vigorously pursuing. In addition, district courts have generally agreed that, as

10

a practical matter, settlement negotiations are greatly facilitated by "having all of the parties in the same state case before the same judge or mediator." *Chelsea Hearth & Fireplaces, Inc. v. Scottsdale Ins. Co.*, 142 F. Supp. 3d 543, 548 (E.D. Mich. 2015). Such coordination promotes the efficient resolution of both actions and conserves both judicial and party resources. *Id.*; *see also Evanston Ins. Co. v. Van Syoc Chtd.*, 863 F. Supp. 2d 364, 371 (D.N.J. 2012) ("Further, the Court notes that other issues of case management, such as settlement negotiations, could potentially be more efficiently addressed if all interested parties are included in cases pending in the same court.").

Here, in direct contravention of these principles, the California Plaintiffs were not told about the mediation or any subsequent settlement talks. Kathrein Decl. ¶ 2. The California Plaintiffs did not learn about the proposed settlement until September 14, 2020, when their counsel discovered Sterrett's motion on the Federal Action's docket. *Id.*

> **b.**   **The Proposed Settlement Is Inadequate and an Improper Reverse Auction**

The proposed settlement is also low as measured against damages and is the product of an unfair reverse auction designed to settle the claims in the first-filed California Action at a discount to their true value.

As discussed above, class-wide damages under Rule 11(e), at minimum, are at least $28 million. By Sterrett's own account, the $2 million proposed settlement represent only a 6.3% recovery on behalf of the putative class. ECF No. 76 at 5. That is a low figure considering the fact that the evidence of liability in this matter is strong, with Sonim's stock trading nearly 65.5% below its $11.00 offering price within just four months of first going public (before precipitously falling further, trading now well below $1.00 per share), and that the strict liability claims asserted here only require a material misstatement or omission, not evidence of scienter. *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983) ("Although limited in scope, Section 11 [of the 1933 Act] places a relatively minimal burden on a plaintiff" as compared to Section 10(b) of the 1933 Act, which requires a plaintiff to "prove that the defendant[s] acted with scienter, *i.e.*, with intent to deceive, manipulate or defraud."). Moreover, the 6.3% recovery

Sterrett touts actually pales in comparison to other class action settlements of this kind.[5]
According to Cornerstone, in cases involving only Section 11 (and/or Section 12(a)(2)) claims,
with statutory damages equaling less than $50 million, as is the case here, the median settlement
as a percentage of damages from 2010 through 2019 was 12.3%. *Id.* at 8. Applying that
percentage here, the settlement should be nearly $3.5 million, or 1.7 times larger than the
settlement Sterrett seeks to approve. And of course, given the facts of the case, the California
Plaintiffs would seek a settlement above the median. Thus, by any measure, the proposed
settlement is scant.

    The reason this settlement is so low is because Sterrett and his counsel engaged in what is
known as a reverse auction. A reverse auction is a defendant's attempt to reach a low-value class
deal with a plaintiff on tenuous footing, with the goal of precluding other representative claims
that are being litigated from a position of greater strength. *See Reynolds v. Beneficial Nat'l Bank*,
288 F.3d 277, 282 (7th Cir. 2002) (Posner, J.) (defining a reverse auction as "the practice whereby
the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a
settlement with in the hope that the district court will approve a weak settlement that will preclude
other claims against the defendant"); 4 William B. Rubenstein, Newberg on Class Actions §13:60
(5th ed. 2018) (explaining the primary "problem in the reverse auction situation is that the class's
interests have been sold out, and class members will get less than the full value of their claims");
*Standards and Guidelines for Litigating and Settling Consumer Class Actions*, 299 F.R.D. 160
(3d ed. 2014) ("[In a reverse auction] a defendant proposes a cheap settlement and shops around
among plaintiffs' counsel until the defendant finds a lawyer willing to settle on its terms. The
potential for collusion and abuse is obvious if a lawyer agrees to a bad deal in order to secure
fees.").

---

[5] *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2019 Review and Analysis* at 21, CORNERSTONE RESEARCH (2020) https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2019-Review-and-Analysis ("Cornerstone").

Reverse auctions are particularly problematic in the context of concurrent state and federal actions under the 1933 Act and the U.S. Supreme Court's seminal decision in *Cyan*. In the wake of *Cyan*, original 1933 Act claims commenced in state court are increasingly followed by copycat lawsuits filed in federal court by less scrupulous plaintiffs' lawyers who are then more vulnerable to defendants seeking to pit plaintiffs against each other. Without careful judicial management, this incentive structure can lead to increasingly clogged dockets, wasted judicial resources, erosion of the 1933 Act, *Cyan*, and Rule 23's prescriptions, and inefficient use of plaintiffs' resources.

Commentators have identified certain "yellow flags" of collusion that should give the court pause before preliminarily approving a proposed settlement:

> First is the situation in which the judge observes evidence of a reverse auction settlement. Markers of a reverse auction include the presence of overlapping class actions involving similar claims against the same defendant; settlement discussions initiated by the defendant; settlement bargaining limited to one of the competing groups of plaintiffs' attorneys; settlement with the group of attorneys who present a less substantial threat of carrying the case forward to trial; lack of an extended process of settlement bargaining; agreements that promote the award of lucrative and potentially justified attorneys' fees; and sudden expansion of the scope of the settled case (for example, by converting the action from a statewide to a nationwide class).

Jonathan R. Macey & Geoffrey P. Miller, *Judicial Review of Class Action Settlements*, 1 J. Legal Analysis 167, 191-94 (2009); *cf. Dalchau v. Fastaff, LLC*, No. 3:17-cv-01584-WHO, 2018 WL 1709925, at *4 (N.D. Cal. Apr. 9, 2018) (Orrick, J.) (considering the timing of a settlement, "the way in which it came about," and the lack of "vigorous[] litigat[ion]" of classwide claims in the settling case in concluding that a settlement "plausibly reflect[s] an attempt on the part of [the defendant] to undercut [the plaintiff] in the instant action" and escape liability).

Here, these "yellow flags" are blinding. First, the California Plaintiffs asserted the 1933 Act claims against Defendants and filed their operative consolidated amended complaint before plaintiffs in the Federal Action levied those exact same claims against the same defendants here in federal court. Under well-established principles of comity, an action usually proceeds in the forum that first obtained jurisdiction, rather than in a later-filed jurisdiction. *See, e.g.*, *El Centro*

13

NOTICE OF MOTION & MOTION TO INTERVENE AND OBJECT;
MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06416-MMC

1    *Foods, Inc. v. Nazarian et al.*, No. 2:09-cv-06395-ODW-VBK, 2010 WL 1710286, at *3 (C.D.

2    Cal., Apr. 21, 2010); *Sea Prestigio, LLC v. M/Y TRITON*, 787 F. Supp. 2d 1116, 1119 (S.D. Cal.

3    2011).[6] Notably, Judge Fineman declined to stay the California Action in favor of the Federal

4    Action based on the arguments raised by Defendants. *See* Kathrein Decl., Ex. A. Yet here, in

5    violation of these tenets, Sterrett and Defendants have unilaterally sought to settle the claims of

6    the class in this forum.

7          Second, as discussed in the proceeding section, settlement discussions occurred between

8    the parties to the Federal Action while California Plaintiffs and Co-Lead Counsel were

9    deliberately kept in the dark. This is a cause for concern. *See Judicial Review of Class Action*

10   *Settlements* at 191 (the court can infer improper motivation when settlement bargaining is limited

11   to one of the competing groups of plaintiffs' attorneys [or] settlement is with a group of attorneys

12   who present a less substantial threat of carrying the case forward to trial). Moreover, Sterrett's

13   motion leaves other important questions regarding the settlement process unanswered. For

14   example, Sterrett fails to state which party initiated settlement discussions. *See id.*

15         Third, the Federal Action is the weaker action. This is another yellow flag. *Id.* The

16   California Plaintiffs, relying on the collective efforts of three national shareholder rights firms,

17   have filed a more particularized complaint than that which was filed by Sterrett in the Federal

18   Action. Indeed, the operative complaint in the California Action, filed two months before the

19   operative complaint was filed in the Federal Action, asserts more material misstatements and/or

20   omissions and other factual claims wholly ignored here. For example, the California Action

21   ─────────────

22        [6] Defendants may argue that the California Action is in the wrong court because of Sonim's
     federal forum selection provision and will likely cite to the Honorable Marie S. Weiner's ("Judge
23   Weiner") recent decision in *Restoration Robotics* to suggest that California courts enforce these
     provisions in 1933 Act cases. *Wong v. Restoration Robotics, Inc.*, No. 18CIV02609 (Cal. Super.
24   Ct., San Mateo Cty. Sept. 1, 2020) (Weiner, J.). Not so. As Judge Weiner recognized, forum
     selection clauses are not binding on California judges. *See Restoration Robotics*, Case
25   Management Order No.10; *see also id.*, Order Re: Motions to Dismiss at 13, 42. Rather, a
     California judge may exercise his or her discretion to decide whether to abstain on the basis of a
26   forum selection clause. *Id.*, Order Re: Motions to Dismiss at 42, 44. One circumstance where a
     California court might not abstain is present here. Specifically, where the federal forum is not
27   capable of providing full relief due to the presence of a plaintiff intent on pressing an inadequate
     settlement. Judge Weiner further indicated that third parties, such as the underwriter defendants
28   here, may not be able to avail themselves of a forum selection clause at all. *Id.* at 2.

alleges that the Registration Statement's claim that Sonim was in a "strong position" to access the fast-growing market for the public safety sector (California Action Compl. ¶ 70) was, in fact, untrue at the time of the IPO. Similarly, the California Action claims that Sonim's revenue growth was not sustainable and, in fact, materially declining from existing channel partners at the time of the IPO. *Id.* ¶ 76. Next, the California Action states that Defendants alleged misstatements and omissions violated Item 303 and 105 of SEC Regulation S-K. *Id.* ¶¶ 78-79. The Federal Action is largely silent as to these issues.

What is more, the California Plaintiffs believe they have a significant chance of prevailing on Defendants' forthcoming demurrer. The California Plaintiffs' exclusively non-fraud, strictly liability 1933 Act claims are subject to California's liberal pleading standard under Cal. Civ. Proc. Code § 425.10, which requires only "'a statement of the facts constituting the cause of action, in ordinary and concise language.'" *Doe v. City of L.A.*, 42 Cal. 4th 531, 550 (2007) (quoting Cal. Civ. Proc. Code § 425.10). California judges have reasoned that California's relatively liberal pleading standard and other procedures are one of the reasons that they should exercise jurisdiction over 1933 Act claims rather than defer to federal court. *See, e.g.*, *In re Cloudera, Inc. Sec. Litig.*, No. 19CV348674, Order After Hearing on October 25, 2019 at 7 (Cal. Super. Ct., Santa Clara Cty. Oct. 29, 2019) (denying motion to stay 1933 Act class action in favor of related federal action based, in part, on the presence of "significantly different pleading standards"); Kathrein Decl., Ex. D at 3 ("If rulings are inconsistent because of differences in state and federal law or procedure, that factor weighs against a stay."). The California Plaintiffs' judgement is further supported by the fact that complaints similar to what the California Plaintiffs filed in the California Action have been sustained in California state courts. *See, e.g.*, *Cloudera* (demurrer overruled based on finding that allegations concerning objective characteristics of a technology company's offerings stated a Section 11 claim); *In re Mobileiron, Inc. S'holder Litig.*, No. 2015-1-CV-284001, 2016 WL 9137540, at *6 (Cal. Super. Ct. Oct. 4, 2016) (demurrer overruled based on finding that allegations regarding security and the vulnerability of technology company's platform stated a Section 11 claim).

Since the markers of a reverse auction are unquestionably apparent here and approval of reverse auction settlements creates perverse incentives in representative cases, "signal[ing] to the unscrupulous plaintiffs' attorney that by filing a parallel, shadow action . . ., [he or she] can underbid the original plaintiffs' attorney team that researched, prepared and filed the action[,]" this Court should reject Sterrett's motion for preliminary approval of settlement. *See* John C. Coffee, Jr., *Class Wars: The Dilemma of the Mass Tort Class Action*, 95 Colum. L. Rev. 1343, 1371 (1995) (exploring the issue).

**D.     The Federal Action Should Be Stayed Under *Colorado River*, So the Claims of the Putative Class Can Be Pursued Without Further Hindrance in State Court**

In light of the foregoing, it is not in the interests of the putative class to pursue further litigation in this Court at present. Accordingly, this Court should stay the Federal Action in favor of the concurrent, first-filed state proceeding pursuant to the Supreme Court's decision in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("*Colorado River*"). *See also Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir. 1989). Under *Colorado River*, abstention is appropriate if: (i) the state and federal proceedings are "parallel"; and (ii) the circumstances warrant abstention. *In re Countrywide Fin. Corp. Deriv. Litig.*, 542 F. Supp. 2d 1160, 1170 (C.D. Cal. 2008). Both factors are present here.

**1.   The California Action and Federal Action Are Parallel Proceedings**

"The threshold inquiry under *Colorado River* is whether a parallel state court action is pending." *Gallagher v. Dillon Grp.*, No. 4:09-cv-02135-SBA, 2010 WL 890056, at *3 (N.D. Cal. Mar. 8, 2010). "'Exact parallelism' between the federal and state suits are not required; '[i]t is enough if the two proceedings are substantially similar.'" *Anderson v. Strauss Neibauer & Anderson APC Profit Sharing 401(K) Plan*, No. 1:09-cv-01446-OWW-DLB, 2011 WL 149442, at *7 (E.D. Cal. Jan. 18, 2011) (brackets in original). "[P]roceedings are substantially similar where substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Gallagher*, 2010 WL 890056, at *3. Here, it cannot seriously be disputed that the Federal Action and the California Action are substantially identical.

### 2. The *Colorado River* Factors Weigh in Favor of Staying the Federal Action

Courts in this Circuit consider seven nonexclusive factors to determine whether to abstain from hearing a parallel federal proceeding:

> (1)     whether the state court first assumed jurisdiction over property;
>
> (2)     inconvenience of the federal forum;
>
> (3)     the desirability of avoiding piecemeal litigation;
>
> (4)     the order in which jurisdiction was obtained by the concurrent forums;
>
> (5)     whether federal law or state law provides the rule of decision on the merits;
>
> (6)     whether the state court proceedings are inadequate to protect the federal litigant's rights; [and]
>
> (7)     whether exercising jurisdiction would promote forum shopping.

*See Anderson*, 2011 WL 149442, at *8 (citing *Holder v. Holder*, 305 F.3d 854, 870 (9th Cir. 2002). Those factors are "pragmatic," and the courts have applied them in a "flexible manner with a view to the realities of the case at hand." *Stockton Firefighters' Local 456, Int'l Ass'n of Firefighters v. City of Stockton*, No. 2:10-cv-01828-FCD-GGH, 2010 WL 3825674, at *5 (E.D. Cal. Sept. 8, 2010) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983)).

Here, at least three of the seven *Colorado River* factors weigh in favor of abstention. The remaining four factors are either neutral or inapplicable. That is more than sufficient to warrant a stay of the Federal Action. *See El Centro Foods*, 2010 WL 1710286, at *3 (granting stay where three factors favored abstention, one factor weighed against abstention, and the remaining factors were neutral); *see also De Cisneros v. Younger*, 871 F.2d 305, 307-09 (2d Cir. 1989) (affirming stay where two factors weighed in favor of abstention, two weighed against, and the rest were neutral).

#### a. The State Court Obtained Jurisdiction First

The California Action was filed weeks before the Federal Action. In this Circuit, that fact weighs heavily in favor of a stay. *El Centro Foods*, 2010 WL 1710286, at *3 ("It is settled that

17

the court first assuming jurisdiction over a matter may exercise that jurisdiction to the exclusion of other courts.").

### b.   Allowing the Federal Action to Proceed and Extinguish the California Plaintiffs' Claims Would Promote Forum Shopping

As explained above, Defendants have engaged in forum shopping and wrangled Sterrett into a low dollar settlement that is not in the interests of the putative class. A *Colorado River* stay in favor of the California Action addresses these problems.

### c.   The California Action Will Fully Protect Sterrett's Rights

Abstention in the Federal Action will not prejudice Sterrett. If this Court abstains pursuant to *Colorado River*, Sterrett would remain a member of the putative class in the California Action and his rights and interests would be fully protected in those proceedings. *Gallagher*, 2010 WL 890056, at *5 (noting that this factor weighs "heavily" for abstention because the case is a class action and plaintiffs do not "contend that the state court would be inadequate to protect their rights"). If anything, Sterrett's interests are better protected by the collective efforts, experiences, and resources of Co-Lead Counsel, three nationwide securities class action firms with long-histories of achieving substantial results on behalf of shareholders. *See* Kathrein Decl., Exs. E-G. Sterrett's claims will also be subject to the relatively more lenient pleading standards applicable in state court. *See City of L.A.*, 42 Cal. 4th at 550 (quoting Cal. Civ. Proc. Code §425.10).

### d.   The Remaining *Colorado River* Factors Are Inapplicable

The remaining *Colorado River* factors are either neutral (both forums are equally convenient and both state and federal courts enjoy concurrent jurisdiction over 1933 Act claims) or inapplicable (neither court has established jurisdiction over a *res*). Thus, the *Colorado River* factors weigh in favor of staying the Federal Action, while no factor weighs against a stay. These circumstances warrant abstention in favor of the parallel California Action. *See, e.g.*, *Countrywide*, 542 F. Supp. 2d at 1173; *Gallagher*, 2010 WL 890056, at *3; *Waterbury*, 2006 WL 3147687, at *3; *General Reinsurance Corp. and North Star Reinsurance Corp v. Ciba-Geigy Corp.*, 853 F.2d 78, 81-82 (2d. Cir. 1988). In the alternative, this Court should stay itself at least

18

NOTICE OF MOTION & MOTION TO INTERVENE AND OBJECT;
MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06416-MMC

1  until the demurrer is resolved in the California Action, which will strengthen the ability of the

2  putative class to obtain a reasonable settlement.

3  **IV.    CONCLUSION**

4          For the foregoing reasons, California Plaintiffs respectfully request that this Court grant

5  their motion to intervene in the Federal Action for the limited purpose of objecting to the proposed

6  settlement and seeking to stay the Federal Action under the *Colorado River* doctrine.

7

8  DATED:  October 7, 2020                    Respectfully submitted,

9                                             **HAGENS BERMAN SOBOL SHAPIRO LLP**

10                                             */s/ Reed R. Kathrein*
                                             _____
11                                             Reed R. Kathrein (139304)
                                             Lucas E. Gilmore (250893)
12                                             Danielle Smith (291237)
                                             715 Hearst Avenue, Suite 202
13                                             Berkeley, CA  94710
                                             Telephone: (510) 725-3000
14                                             Facsimile:  (510) 725-3001
                                             reed@hbsslaw.com
15                                             lucasg@hbsslaw.com
                                             danielles@hbsslaw.com
16

17                                             **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
                                             John T. Jasnoch (281605)
18                                             Hal Cunningham (243048)
                                             600 W. Broadway, Suite 3300
19                                             San Diego, CA  92101
                                             Telephone: (619) 233-4565
20                                             Facsimile:  (619) 233-0508
                                             jjasnoch@scott-scott.com
21                                             hcunningham@scott-scott.com

22                                             – and –

23

24                                             Thomas L. Laughlin, IV
                                             Jonathan M. Zimmerman
25                                             The Helmsley Building
                                             230 Park Avenue, 17th Floor
26                                             New York, NY  10169
                                             Telephone: (212) 223-6444
27                                             Facsimile:  (212) 223-6334
                                             tlaughlin@scott-scott.com
28
                                             19

jzimmerman@scott-scott.com

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (206423)
Mario M. Choi (243409)
1999 Harrison Street, Suite 1560
Oakland, CA  94612
Telephone: (415) 772-4700
Facsimile:  (415) 772-4707
lking@kaplanfox.com
mchoi@kaplanfox.com

– and –

Robert N. Kaplan
Jeffrey P. Campisi
Jason A. Uris
850 Third Avenue
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
rkaplan@kaplanfox.com
jcampisi@kaplanfox.com
juris@kaplanfox.com

*Co-Lead Counsel for Intervenors Beecham*
*Pearson, Stephen Ly, and Michael Hostak*