Richard W. Gonnello (admitted *pro hac vice*)
Katherine M. Lenahan (admitted *pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: rgonnello@faruqilaw.com
      klenahan@faruqilaw.com

Benjamin Heikali SBN 307466
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
Email: bheikali@faruqilaw.com

*Attorneys for [Proposed] Class Representative David Sterrett*
*and [Proposed] Class Counsel for the [Proposed] Settlement Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID STERRETT, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SONIM TECHNOLOGIES, INC., ROBERT PLASCHKE, JAMES WALKER, MAURICE HOCHSCHILD, ALAN HOWE, KENNY YOUNG, SUSAN G. SWENSON, JOHN KNEUER, JEFFREY D. JOHNSON, OPPENHEIMER & CO., INC., LAKE STREET CAPITAL MARKETS, LLC, and NATIONAL SECURITIES CORPORATION, <br><br> Defendants. | **PLAINTIFF'S OPPOSITION TO THE STATE PLAINTIFFS' MOTION TO INTERVENE AND OBJECT** <br><br> Case No. 3:19-cv-06416-MMC <br><br> **CLASS ACTION** <br><br> Judge: The Hon. Maxine M. Chesney <br> Date: November 13, 2020 <br> Time: 9:00 a.m. <br> Courtroom: 7 – 19th Floor |

**TABLE OF CONTENTS**

STATEMENT OF ISSUES TO BE DECIDED ...................................................................1

INTRODUCTION ...............................................................................................................1

PROCEDURAL BACKGROUND ......................................................................................3

    A.    The State Court Action ...................................................................................3

    B.    The Federal Court Action ...............................................................................4

    C.    State Plaintiffs' Letter And Intervention Motion ..........................................5

ARGUMENT .......................................................................................................................5

I.    STATE PLAINTIFFS ARE NOT ENTITLED TO INTERVENE AS OF RIGHT .............5

    A.    State Plaintiffs' Intervention Motion Is Untimely.........................................5

    B.    State Plaintiffs' Interests Will Not Be Impaired Or Impeded ........................8

    C.    State Plaintiffs' Interests Are Adequately Protected .....................................9

II.    STATE PLAINTIFFS SHOULD NOT BE ALLOWED TO PERMISSIVELY
    INTERVENE .................................................................................................................10

III.    STATE PLAINTIFFS' OPPOSITION TO PRELIMINARY APPROVAL AND
    OBJECTIONS TO THE SETTLEMENT ARE UNTIMELY AND MERITLESS.........11

    A.    State Plaintiffs' Opposition And Objections Are Untimely................................11

    B.    State Plaintiffs' Procedural Objections Are Meritless .........................................11

        1.    The Settlement Was The Product of Arms' Length Negotiations
        Mediated By a Former Magistrate Judge In This District.......................12

        2.    State Plaintiffs' "Yellow Flags" Of Collusion Are Red Herrings............13

    C.    The Settlement Amount Is Adequate .................................................................17

IV.    THERE IS NO BASIS TO STAY THIS ACTION........................................................18

    A.    *Colorado River* Does Not Warrant A Stay Of This Action ..................................18

        1.    The State Action And The Federal Action Are Not Parallel
        Proceedings Because They Involve Different Plaintiffs .........................19

        2.    The *Colorado River* Factors Weigh Against Staying The Federal
        Action .....................................................................................................20

            (1)    Which Court First Assumed Jurisdiction Over Any Property
            At Stake .......................................................................................20

            (2)    The Inconvenience Of The Federal Forum .................................20

(3) The Desire To Avoid Piecemeal Litigation.................................21

(4) The Order In Which The Forums Obtained Jurisdiction..............21

(5) Whether Federal Law Or State Law Provides The Rule Of Decision On The Merits ............................................................22

(6) Whether The State Court Proceedings Can Adequately Protect The Rights Of The Federal Litigants.............................................22

(7) The Desire To Avoid Forum Shopping.......................................23

(8) Whether The State Court Proceedings Will Resolve All Issues Before The Federal Court............................................................23

B. There Is No Basis For Staying This Action Until The Demurrer Is Resolved In State Court...................................................................................24

CONCLUSION .........................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                  **Page(s)**

*Allen v. Bedolla,*
   787 F.3d 1218 (9th Cir. 2015) ............................................................................6

*Anderson v. Strauss Neibauer & Anderson APC Profit Sharing 401(K) Plan,*
   2011 WL 149442 (E.D. Cal. Jan. 18, 2011) ..................................................20

*Arakaki v. Cayetano,*
   324 F.3d 1078 (9th Cir. 2003) ........................................................................5, 9

*In re BankAmerica Corp. Sec. Litig.,*
   263 F.3d 795 (8th Cir. 2001) ...............................................................2, 15, 23

*Bergman v. Thelen LLP,*
   2009 WL 1308019 (N.D. Cal. May 11, 2009) ..............................................8, 9

*In re Cavanaugh,*
   306 F.3d 726 (9th Cir. 2002) ........................................................................1, 15

*Chavez v. PVH Corp.,*
   2015 WL 12915109 (N.D. Cal. Aug. 6, 2015) ................................................11

*Chelsea Hearth & Fireplaces, Inc. v. Scottsdale Ins. Co.,*
   142 F. Supp. 3d 543 (E.D. Mich. 2015) ........................................................15

*Chi v. University of Southern California,*
   2019 WL 3064457 (C.D. Cal. Apr. 18, 2019) ..................................................8

*Cicero v. Directv, Inc.,*
   2010 WL 11463634 (C.D. Cal. Mar. 2, 2010) ................................................10

*Cody v. SoulCycle, Inc.,*
   2017 WL 8811114 (C.D. Cal. Sept. 20, 2017) .....................................6, 11, 24

*Cohorst v. BRE Properties, Inc.,*
   2011 WL 3475274 (S.D. Cal. Aug. 5, 2011) ....................................................8

*Cohorst v. BRE Properties, Inc.,*
   2011 WL 3489781 (S.D. Cal. July 19, 2011) ............................................10, 14

*Colorado River Water Conservation Dist. v. United States,*
   424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976) ........................... *passim*

*Cyan, Inc. v. Beaver County Employees Retirement Fund,*
   138 S.Ct. 1061 (2018) ................................................................................15, 16

*Dalchau v. Fastaff, LLC,*
   2018 WL 1709925 (N.D. Cal. Apr. 9, 2018) ..................................................13

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.,*
    498 F.3d 1059 (9th Cir. 2007)....................................................................................24

*El Centro Foods, Inc. v. Nazarian et al.,*
    2010 WL 1710286 (C.D. Cal. Apr. 21, 2020)....................................................21, 25

*Evanston Ins. Co. v. Van Syoc Chtd.,*
    863 F. Supp. 2d 364 (D.N.J. 2012)............................................................................15

*Fierle v. Perez,*
    350 F. App'x 140 (9th Cir. 2009)..............................................................................19

*Freeman Inv., L.P. v. Pacific Life Ins. Co.,*
    704 F.3d 1110 (9th Cir. 2013)....................................................................................14

*Friends of Oceano Dunes v. Ainsworth,*
    785 F. App'x 394 (9th Cir. 2019)..............................................................................19

*Gallagher v. Dillon Grp. 2003-I,*
    2010 WL 890056 (N.D. Cal. Mar. 8, 2010)..........................................................20, 22

*Gallucci v. Gonzales,*
    603 F. App'x 533 (9th Cir. 2015)..................................................................12, 14, 16

*Glass v. UBS Fin. Svcs., Inc.,*
    2007 WL 474936 (N.D. Cal. Jan. 17, 2007)..............................................................10

*Guo Haiyu Trading Inc. v. Vanek,*
    2018 WL 1407122 (C.D. Cal. Jan. 4, 2018)..............................................................19

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998)......................................................................................9

*Harvey v. Morgan Stanley Smith Barney LLC,*
    2019 WL 4462653 (N.D. Cal. Sept. 5, 2019)............................................................15

*In re Heritage Bond Litig.,*
    2005 WL 1594403 (C.D. Cal. June 10, 2005)............................................................25

*Jaroslawicz v. M&T Bank Corp.,*
    962 F.3d 701 (3d Cir. 2020)........................................................................................17

*Kmiec v. Powerwave Techs., Inc.,*
    2013 WL 12113411 (C.D. Cal. Jan. 25, 2013)..........................................................16

*Lane v. Facebook, Inc.,*
    2009 WL 3458198 (N.D. Cal. Oct. 23, 2009)........................................................6, 10

*League of United Latin Am. Citizens v. Wilson,*
    131 F.3d 1297 (9th Cir. 1997)............................................................................5, 6, 10

*McKenna v. Smart Techs. Inc.*,
    2012 WL 1131935 (S.D.N.Y. Apr. 3, 2012) ...............................................................16

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71, 126 S. Ct. 1503, 164 L. Ed. 2d 179 (2006) .......................................21

*Montanore Minerals Corp. v. Baki*,
    867 F.3d 1160 (9th Cir. 2017) ...............................................................................20

*Nakash v. Marciano*,
    882 F.2d 1411 (9th Cir. 1989) ...............................................................................20

*Negrete v. Allianz Life Ins. Co. of North America*,
    523 F.3d 1091 (9th Cir. 2008) .........................................................................11, 14

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ...............................................................................17

*Oh v. Chan, et al.*,
    No. 2:07-cv-04891-DDP-AJW (C.D. Cal. Sept. 25, 2009), ECF No. 100...........17

*R.R. St. & Co. Inc. v. Transp. Ins. Co.*,
    656 F.3d 966 (9th Cir. 2011) ...............................................................................23

*Ruch v. AM Retail Grp., Inc.*,
    2016 WL 1161453 (N.D. Cal. Mar. 24, 2016) ......................................................12

*S.E.C. v. Fraser*,
    2011 WL 13233321 (W.D. Wash. Mar. 4, 2011) ..................................................24

*Sea Prestigio, LLC v. M/Y TRITON*,
    787 F. Supp. 2d 1116 (S.D. Cal. 2011) ................................................................25

*Seneca Ins. Co., Inc. v. Strange Land, Inc.*,
    862 F.3d 835 (9th Cir. 2017) ........................................................................ *passim*

*Timoney v. Upper Merion Twp.*,
    66 F. App'x 403 (3d Cir. 2003) .............................................................................19

*Tower Acton Holdings v. Los Angeles Cty. Waterworks Dist. No. 37*,
    105 Cal. App. 4th 590 (2002) ...............................................................................25

*U.S. v. Carpenter*,
    298 F.3d 1122 (9th Cir. 2002) .................................................................................6

*U.S. v. City of L.A.*,
    288 F.3d 391 (9th Cir. 2002) .................................................................................9

*United States v. Morros*,
    268 F.3d 695 (9th Cir. 2001) ...............................................................................21

*United States v. Stoterau*,
   524 F.3d 988 (9th Cir. 2008) ............................................................................24, 25

*Vaccaro v. New Source Energy Partners L.P.*,
   No. 1:15-cv-08954 (KMW) (S.D.N.Y. Dec. 14, 2017), ECF No. 74 ....................................17

*Walsh v. CorePower Yoga LLC*,
   2017 WL 4390168 (N.D. Cal. Oct. 3, 2017) ....................................................................12

*Zepeda v. PayPal, Inc.*,
   2014 WL 1653246 (N.D. Cal. Apr. 23, 2014).....................................................................8

**Statutes**

15 U.S.C. §77z-1(a)(3)(A)(i) ................................................................................................1

15 U.S.C. §77z-1(a)(3)(B) ..................................................................................................14

15 U.S.C. §77z-1(a)(3)(B)(v) ...............................................................................................1

15 U.S.C. §78u-4(a)(3)......................................................................................................23

Civil L.R. 7-3(a) ...............................................................................................................11

**Other Authorities**

Jonathan R. Macey & Geoffrey P. Miller,
   *Judicial Review of Class Action Settlements*, 1 J. Legal Analysis 167 (2009).....................13

Kim Hart, *The pandemic is hitting city budgets harder than the Great Recession*,
   Axios.com (Aug. 13, 2020) ...............................................................................................7

Laarni T. Bulan & Laura E. Simmons,
   *Securities Class Action Settlements: 2019 Review and Analysis*,
   Cornerstone Research (2020) ...........................................................................................18

Rule 24(b)(3) ...................................................................................................................10

Lead Plaintiff David Sterrett respectfully submits this memorandum of law in opposition to the Motion To Intervene and Object ("Intervention Motion" or "Int. Mot.") filed by Beecham Pearson, Steven Ly, and Michael Hostak ("State Plaintiffs") (ECF No. 82).[1]

### STATEMENT OF ISSUES TO BE DECIDED

1.      Should State Plaintiffs' Intervention Motion be denied?

2.      Should State Plaintiffs' request to stay this Action be denied?

### INTRODUCTION

The Private Securities Litigation Reform Act of 1995 ("PSLRA") was enacted to end the "race to the courthouse" and prevent the improper lawyer-driven litigation that had become commonplace in securities class actions. *See In re Cavanaugh*, 306 F.3d 726, 729, 736-37 (9th Cir. 2002). Congress envisioned securities class actions helmed by strong leadership consisting of a court-appointed lead plaintiff and lead counsel; and to that end Congress set forth a procedure by which that leadership was to be determined. Rather than race to the courthouse, the PSLRA requires the first plaintiff who files an action in *federal* court to publish notice informing class members of a 60-day deadline to seek appointment as lead plaintiff. 15 U.S.C. §77z-1(a)(3)(A)(i). Courts are then "to select as lead plaintiff . . . the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23." *Cavanaugh*, 306 F.3d at 729. The lead plaintiff selects and retains counsel to represent the class, subject to court approval. 15 U.S.C. §77z-1(a)(3)(B)(v). Pursuant to the PSLRA, this Court appointed Sterrett as Lead Plaintiff and approved his preferred counsel as Lead Counsel. As Court-appointed Lead Plaintiff, Sterrett has the *right* to control, *inter alia*, settlement

---

[1]      Unless otherwise noted, Lead Plaintiff uses the following conventions herein: (i) all capitalized terms mean the same as they do in the Stipulation of Settlement dated as of September 10, 2020 ("Stipulation"), ECF No. 75; (ii) all references to "AC" are to the Amended Class Action Complaint, ECF No. 55; (iii) all references to the "Federal Action" or the "Action" are to the above-captioned action; (iv) all references to the "State Action" are to *Pearson v. Sonim Technologies, Inc.*, No. 19-CIV-05564 (Cal. Super. Ct., San Mateo Cty.) (Fineman, J.); (v) all references to "State Court" are to the court presiding over the State Action; (vi) all references to "Preliminary Approval Motion" or "PA Motion" are to the Motion For Preliminary Approval of the Class Action Settlement, ECF No. 76; (vii) all "Rule" references are to the Federal Rules of Civil Procedure; (viii) all internal quotations and citations are omitted; (ix) all emphases are added; and (x) all references to "Ex. _" are to the Exhibits annexed to the Declaration of Richard W. Gonnello, filed concurrently herewith.

1     negotiations. *In re BankAmerica Corp. Sec. Litig.*, 263 F.3d 795, 801 (8th Cir. 2001).

2         By contrast, State Plaintiffs admit they filed in State Court in an effort to take advantage

3 of that forum's pleading standards. State Plaintiffs and their counsel also undoubtedly sought to

4 avoid the risk of non-appointment under the PSLRA's leadership provisions if they filed in

5 federal court. State Plaintiffs now belatedly seek to intervene to object to the proposed

6 Settlement and to stay this Action. State Plaintiffs complain Lead Plaintiff did not obtain their

7 permission before entering into settlement negotiations, despite the fact that: (1) Lead Plaintiff

8 is the ***only*** putative class member appointed by the Court to lead this Action and negotiate a

9 settlement; (2) Congress granted Lead Plaintiff the ***right*** to negotiate a settlement; and (3) State

10 Plaintiffs filed in the wrong forum, resulting in significant costs to the Class by diverting

11 Sonim's limited funds to defending the State Action instead of funding a larger settlement. The

12 overwhelming weight of authority—not to mention judicial economy—forecloses the relief

13 State Plaintiffs seek.

14         First, Lead Plaintiff is not required to provide notice of a settlement to absent class

15 members—like State Plaintiffs—until ***after*** preliminary approval. Courts often reject absent

16 class members' attempts to intervene at this stage because Rule 23 already affords them the

17 ability to protect their interests by objecting to or opting out of the settlement at the correct time.

18         Second, the notion that the Settlement was the product of collusion is utterly without

19 merit. Tellingly, State Plaintiffs omit that the settlement was the result of a mediator proposal

20 from the Honorable Elizabeth Laporte (ret.), who mediated the settlement negotiations and

21 previously served this District as a Magistrate Judge with distinction and integrity for over 20

22 years. The suggestion that Judge Laporte colluded with the parties to produce this Settlement,

23 risking her reputation in the process, is ridiculous, which undoubtedly explains why State

24 Plaintiffs never mention her role in the Settlement. As the PA Motion explains, the

25 Settlement's monetary terms were proposed ***by the mediator*** and the decision to settle was

26 heavily influenced by Sonim's precarious financial condition and the COVID-19 pandemic—

27 additional key facts that State Plaintiffs ignore.

28         State Plaintiffs complain that the Settlement "represents less than the full value" of the

1   Class's claims, yet that is true of nearly all securities class action settlements.  In any event,

2   there is no evidence that Sonim, which is obligated to indemnify the other defendants, would

3   even be able to pay such a sum.  As of this filing, Sonim stock is trading at *57¢*.  It would not be

4   in the Class's best interests in the midst of a pandemic to walk away from a Settlement that is

5   well within the range of typical recoveries—indeed when using State Plaintiffs' damages

6   estimate is essentially at the median recovery for Section 11 claims—all in the hopes that

7   someday Defendants *might* file a demurrer in State Court (in an action that has been tentatively

8   dismissed), which *might* be resolved in State Plaintiffs' favor, which *might* enable State

9   Plaintiffs to obtain a larger settlement from Defendants in the future.  State Plaintiffs' counsel's

10  self-serving speculation is not grounds for allowing intervention or staying this Action.

11          For these reasons, and those set forth more fully below, Lead Plaintiff respectfully

12  requests the Court deny State Plaintiffs' Intervention Motion in its entirety.

13                              **PROCEDURAL BACKGROUND**

14      **A.      The State Court Action**

15          Sonim's Amended and Restated Certificate of Incorporation provides, *inter alia*, that

16  "federal district courts . . . shall be the exclusive forum for the resolution of any complaint

17  asserting a cause of action arising under the Securities Act" ("Federal Forum Provision" or

18  "FFP").  *See* ECF No. 44-5 (defendants' stay motion, attached as an exhibit to Sterrett's lead

19  plaintiff opposition brief) at 5.  Despite this provision, Pearson filed an action in California

20  Superior Court for the County of San Mateo on September 20, 2019 asserting claims under the

21  Securities Act against Sonim and other defendants.  *See* Int. Mot. at 3.

22          On November 8, 2019, Pearson's action was consolidated with two substantially similar

23  actions also filed in State Court, with Kaplan Fox & Kilsheimer LLP, Hagens Berman Sobol

24  Shapiro LLP ("Hagens Berman"), and Scott+Scott Attorneys at Law LLP appointed as Interim

25  Co-Lead Counsel.  *See* ECF No. 44-2 (Stipulation and Order Consolidating Related

26  Complex Cases, attached as an exhibit to Sterrett's lead plaintiff opposition brief) at 2.

27          On January 31, 2020, the State Action was stayed pending the Delaware Supreme

28  Court's decision in *Sciabacucchi v. Salzberg*, which concerned whether exclusive federal forum

3

provisions (like Sonim's FFP) are enforceable. *See* PA Mot. at 3 n.2. After the *Sciabacucchi*

decision answered this question in the affirmative, Defendants moved to dismiss the State

Action based on *forum non conveniens* ("Forum Motion"), arguing that Sonim's FFP bars State

Plaintiffs from litigating their claims in State Court. *Id.* On October 14, 2020, the State Court

tentatively ruled in Defendants' favor, with a final ruling expected in the near future. *See* Ex. A

(State Court Tentative Ruling) at 14 (concluding that Sonim's shareholders "are bound by the

charter provisions for the reasons set forth in the *Dropbox* tentative" ruling, located at pp. 4-13).

### B.    The Federal Court Action

This Action was filed on October 7, 2019. *See* ECF No. 1. Pursuant to the early notice

provisions of the PSLRA, first-filed federal plaintiff Ajay Malhotra published notice of the lead

plaintiff deadline. *See* ECF No. 16 at 5. As a result, members of the proposed Class were

required to seek appointment as Lead Plaintiff on or before December 6, 2019. *See id.* (citing

15 U.S.C. §77z-1(a)(3)(A)(i)). On that day, four movants filed motions for appointment as lead

plaintiff and approval of their respective selections of counsel as lead counsel. *See* ECF No. 44

at 1 & n.2. None of the State Plaintiffs sought appointment as lead plaintiff in the Federal

Action although one of the State Plaintiffs' counsel, Hagens Berman, represented a different

class member, Lyndon Maither, who sought to lead the Action. *Id.* On January 22, 2020, this

Court appointed Sterrett as Lead Plaintiff, finding that he had the largest financial interest in the

case and satisfied Fed. R. Civ. P. 23's adequacy and typicality requirements. ECF No. 52

("Lead Plaintiff Order") at 2-3. The Lead Plaintiff Order also vested Sterrett and his counsel

with the "***sole authority***" to, *inter alia,*

> Conduct settlement negotiations on behalf of the lead plaintiff and putative class
> members, and, if appropriate, to enter into a settlement that is fair, reasonable, and
> adequate on behalf of the putative class members; . . .

*Id.* at ¶3. Pursuant to his authority as Lead Plaintiff, Sterrett filed the AC and subsequently

mounted a robust opposition to Defendants' Motion To Dismiss. *See* PA Mot. at 2-3. The

parties then agreed to mediate the dispute on May 20, 2020; and, after submitting mediation

briefs in support of their respective positions, the parties met for a virtual mediation session on

June 24, 2020 before Judge Laporte, during which the parties vigorously debated their positions

but did not reach an agreement. *See id.* at 3-4. Reaching a final agreement involved months of additional contentious negotiations, which culminated in the parties' acceptance of a mediator proposal to settle the case, and a subsequent arbitral award by Judge LaPorte when the parties disagreed over one of the final provisions of the Settlement. *See id.* at 8-9. On September 11, 2020, Lead Plaintiff filed the PA Motion, along with the Stipulation. *See* ECF Nos. 75-77.

## C. State Plaintiffs' Letter And Intervention Motion

After the PA Motion was filed, State Plaintiffs sent Lead Plaintiff a letter stating, *inter alia*, that the proposed Settlement "appears to be inadequate and designed simply to extinguish the claims asserted by plaintiffs in the State Action[,]" and requesting that Lead Plaintiff produce certain discovery. ECF No. 82-3 (letter dated Sept. 21, 2020). Lead Plaintiff wrote back, explaining that State Plaintiffs' discovery request would be considered at the appropriate time for objections. *See* ECF No. 82-4. On October 7, 2020, after responses to the PA Motion were due, State Plaintiffs filed their Intervention Motion. ECF No. 82.

## ARGUMENT

## I. STATE PLAINTIFFS ARE NOT ENTITLED TO INTERVENE AS OF RIGHT

In the Ninth Circuit, one seeking to intervene as a matter of right must: (1) file a timely motion; (2) have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) be situated such that the disposition of the action may impair or impede that party's ability to protect that interest; and (4) have protectable interests that are not adequately represented by existing parties. *See Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). State Plaintiffs fail to meet three of the four requirements (the first, third, and fourth) and therefore are not entitled to intervene as of right.

### A. State Plaintiffs' Intervention Motion Is Untimely

Timeliness is the "threshold requirement" for intervention as of right, meaning that if the Court finds the motion to be untimely, it "need not reach any of the remaining elements of Rule 24." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997). Whether intervention is timely depends on three factors: (1) the stage of the proceedings; (2) the reason for the delay; and (3) the prejudice to other parties from the delay in seeking to

intervene. *See id.* All three factors confirm State Plaintiffs' motion is untimely.

First, Courts routinely decline to allow intervention at this stage of the proceedings. *See, e.g., Allen v. Bedolla*, 787 F.3d 1218, 1222 (9th Cir. 2015) (finding motion to intervene "on the eve of [class] settlement" to be untimely); *Lane v. Facebook, Inc.*, 2009 WL 3458198, at *3 (N.D. Cal. Oct. 23, 2009) (finding untimely intervention that was sought two weeks after a preliminary approval motion was filed).

Second, State Plaintiffs offer no valid justification for their delay in filing the motion. They incorrectly assert that timeliness should be measured from the date they discovered Lead Plaintiff filed the PA Motion—September 14. Int. Mot. at 7. Not so. "[T]he key question . . . is not when [State Plaintiffs were] on notice that [their] interests ***would*** be affected but when there was notice that those interests ***could*** be affected." *Cody v. SoulCycle, Inc.*, 2017 WL 8811114, at *3 (C.D. Cal. Sept. 20, 2017) (original emphasis).[2]

There is no question that State Plaintiffs were aware that their interests ***could be*** impacted by the Federal Action from its inception. A notice of pendency of the Federal Action and the lead plaintiff deadline was published on October 7, 2019, the day the Federal Action was filed. *See* ECF No. 16 at 5. Hagens Berman—one of the firms serving as Interim Co-Lead Counsel in the State Action—unsuccessfully sought appointment as lead counsel in the Federal Action and appointment of the firm's client, Maither, as lead plaintiff. *See* ECF No. 22. Defendants moved to stay the State Action in favor of the Federal Action that same day. *See* Ex. B (State Court Dkt.) at 15. After Sterrett was appointed Lead Plaintiff in the Federal Action, a notice of the Lead Plaintiff Order was filed in the State Action on January 24, 2020. *See* Ex. B at 18-19. And on August 6, 2020, this Court entered an order which noted that the parties had reached a settlement. *See* ECF No. 74.

---

[2]     State Plaintiffs cite *U.S. v. Carpenter*, 298 F.3d 1122 (9th Cir. 2002) to support the proposition that timeliness is measured from the date they discovered the Settlement. As the Ninth Circuit has since explained, *Carpenter*'s reasoning does not apply where, as here, the government is not a party. *See Allen,* 787 F.3d at 1222 (explaining that "*Carpenter* involved a government entity not representing intervenors' interests[,]" and that *Carpenter*'s "reasoning was grounded in the need to encourage the assumption that when the government is a party, the interests of others will be protected[,]"and rejecting objector's argument that intervention as of right "can be timely . . . when the intervenors act promptly after receiving notice of a proposed settlement that would not adequately represent their interests").

6

1       Third, State Plaintiffs argue that allowing them to intervene "for the **sole** purpose of

2   opposing Sterrett's preliminary approval will not cause any delay, much less unnecessary

3   delay."  Int. Mot. at 9.  This is obviously untrue: State Plaintiffs also seek to intervene for the

4   purpose of staying this action under the *Colorado River* doctrine or, alternatively, "at least until

5   the demurrer is resolved" in the State Action.  *Id*. at 2, 18.  There is no question that this would

6   cause Lead Plaintiff and the Class undue delay and prejudice.

7       A stay of this Action would hold the putative Class hostage to State Plaintiffs' litigation

8   over Sonim's Federal Forum Provision, which has been ongoing since last December and has

9   been tentatively decided **against** State Plaintiffs.  *See* Ex. A.  Even if State Plaintiffs appeal the

10  State Court's final decision and win, it could be years before a demurrer is filed, much less

11  resolved.  Meanwhile, there is no guarantee that Sonim, which is obligated to indemnify the

12  Individual Defendants as well as the Underwriter Defendants, *see* PA Mot. at 12, will be able to

13  fund **any** settlement in the future.  Both the State Action and the Federal Action assert claims

14  relating to Sonim's unsuccessful launch of its prior generation of phones.  *See, e.g.,* AC ¶¶1-10;

15  State Court Dkt., Consol. Compl. (filed Dec. 20, 2019) at ¶¶1-30.  There is no guarantee that

16  Sonim's development of its next generation 5G phones will be successful.  *See* PA Mot. at 12

17  (explaining that Sonim intends to "[d]evelop next generate 5G-enabled" products, which is

18  necessary for Sonim's survival).  Many municipalities, a key customer demographic for Sonim,

19  are facing steep budget cuts due to the COVID-19 pandemic.  *See* AC ¶33 (Sonim markets its

20  phones to "task workers," including those working for "public sector agencies"); Kim Hart, *The*

21  *pandemic is hitting city budgets harder than the Great Recession*, Axios.com (Aug. 13, 2020)[3]

22  (explaining pandemic's effects on city budgets).  There is no guarantee that these customers will

23  purchase Sonim's new products, or in sufficient quantities, to keep the company afloat.

24      Accordingly, allowing State Plaintiffs to intervene would prejudice Lead Plaintiff and

25  the Class because the resulting delay would at minimum delay distribution of the settlement and

26  at worst could prove fatal to the Class's ability to recover anything, particularly where Sonim

27

28  ---
    [3]    *See* https://www.axios.com/the-pandemic-is-hitting-city-budgets-harder-than-the-great-
    recession-0156574a-c5f9-454d-b579-1292595abdca.html (last visited Oct. 15, 2020).

would continue incurring significant costs defending the State Action while the Company's financial future is so uncertain. *See Zepeda v. PayPal, Inc.*, 2014 WL 1653246, at *8 (N.D. Cal. Apr. 23, 2014) (finding prejudice would occur where intervention "after extensive mediated settlement negotiations and when an amended motion for preliminary approval is to be filed soon—would delay the potential resolution of this case[]").

## B. State Plaintiffs' Interests Will Not Be Impaired Or Impeded

Numerous courts in the Ninth Circuit have found that class members' interests are not impaired or impeded where they are able to protect their interests by objecting to or opting out of a proposed settlement. *See, e.g., Chi v. University of Southern California*, 2019 WL 3064457, at *6 (C.D. Cal. Apr. 18, 2019) (finding that because proposed intervenors were class members they "would be allowed to opt out of the settlement if they prefer to adjudicate their claims in an individual action, meaning that intervention as of right is unavailable under Rule 24(a)(2)[]"); *Zepeda,* 2014 WL 1653246, at *4 ("[C]ourts have frequently denied intervention in the class action settlement context, citing concerns about prejudice, as well as putative interveners' ability to protect their interests by less disruptive means, such as opting out of the settlement class or participating in the fairness hearing process.").

Here, the proposed Settlement, in compliance with Rule 23, procedural due process, and the PSLRA, will provide absent class members (like State Plaintiffs) with notice of the Settlements' terms and notice of the opportunity to object or opt out at the appropriate time. *See* PA Mot. at 22-23. Should State Plaintiffs decide to opt out, they are free to continue to pursue their individual actions against Defendants. *See Bergman v. Thelen LLP*, 2009 WL 1308019, at *2 (N.D. Cal. May 11, 2009) ("The disposition of the action will not, as a practical matter, impede or impair applicants' ability to protect their interest[,]" and they "may opt of the class action and assert any claims they wish to pursue against Defendants[,]"). Should State Plaintiffs decide to remain in the Class and object at final approval, they will have the opportunity to be heard. *See Cohorst v. BRE Properties, Inc.*, 2011 WL 3475274, at *6 (S.D. Cal. Aug. 5, 2011) (denying intervention motion where proposed intervenor "may raise any objections to the settlement at the time of the Final Hearing[]").

## C.	State Plaintiffs' Interests Are Adequately Protected

State Plaintiffs must also show that their protectable interest is not being adequately represented. A "presumption of adequacy of representation arises" when the "applicant for intervention and an existing party have the same ultimate objective." *Arakaki*, 324 F.3d at 1086. State Plaintiffs and Lead Plaintiff both have the same ultimate objective: obtaining compensation for violations of the Securities Act as a result of alleged false and/or misleading statements made in the Registration Statement. *Compare* AC at ¶¶1-10, *with* State Action Dkt., Consol. Compl. at ¶¶1-30; *cf. Bergman*, 2009 WL 1308019, at *2 ("[C]ertain federal courts have held that there is a presumption of adequate representation when the persons attempting to intervene are members of a class already involved in the litigation or are intervening only to protect the interests of class members."). Although State Plaintiffs argue that only a "minimal" showing of inadequacy is required, where the presumption of adequacy applies, it can only be rebutted with a "compelling showing" to the contrary. *Arakaki*, 324 F.3d at 1086.[4]

State Plaintiffs do not marshal any facts to rebut the presumption. Instead, they make unfounded accusations that the Settlement is the result of collusion (addressed in §III.B, *infra*) and complain that the Settlement Amount is too low (addressed in §III.C, *infra*). As State Plaintiffs are aware, all litigation involves weighing risks. For instance, they filed in State Court despite the risk that the FFP would be enforced and their action would be dismissed (a risk that appears to have materialized, *see* Ex. A). Despite having a tentatively-dismissed action that recovered nothing for the Class, State Plaintiffs now seek to second-guess Lead Plaintiff's and Lead Counsel's judgment without taking into consideration any of the risks that weighed upon the decision to settle. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (providing that courts must consider, *inter alia*, "the strength of the plaintiffs' case[,]" and "the risk, expense, complexity, and likely duration of further litigation" to determine whether a settlement is fair, reasonable, and adequate"). For example, State Plaintiffs

---

[4]	State Plaintiffs' authority is inapposite. *See U.S. v. City of L.A.*, 288 F.3d 391, 401-02 (9th Cir. 2002) (explaining that although the presumption of adequate representation arises when the government is acting on behalf of a constituency it represents, it does not apply where the government is acting as an employer—here, the proposed intervenor (a bargaining unit for LAPD officers) and the government are "antagonists in the collective bargaining process").

completely ignore the fact that the Settlement Amount was proposed **by the mediator**, and Lead

Plaintiff's decision to accept it was heavily influenced by the risks of further litigation,

particularly in light of the Company's precarious financial condition, the economic conditions

created by the COVID-19 pandemic, and the risks that Defendants' potential negative causation

defense would materially reduce the Class's damages. *See* PA Mot. at 10-14, 17.

At bottom, State Plaintiffs' basis for intervention is that they disagree with Lead Plaintiff

over the timing of the decision to settle and the amount. Courts are hesitant to grant

intervention based on "disagreements over litigation strategy or legal tactics," *League*, 131 F.3d

at 1306, and often find that similar attacks fall short of the "compelling showing" needed to

rebut the presumption of adequate representation. *See Glass v. UBS Fin. Svcs., Inc.*, 2007 WL

474936, at *7 (N.D. Cal. Jan. 17, 2007) (Chesney, M.) (rejecting proposed intervenor's

argument that representation was inadequate because the settlement amount was "too low" in

proposed intervenor's view), *aff'd,* 331 F. App'x 452 (9th Cir. 2009); *Cicero v. Directv, Inc.*,

2010 WL 11463634, at *3 (C.D. Cal. Mar. 2, 2010) (similar); *see also Cohorst v. BRE*

*Properties, Inc.*, 2011 WL 3489781, at *8 (S.D. Cal. July 19, 2011) (finding that proposed

intervenor's objection "to settlement terms agreed to by [] counsel" are not a basis for

intervention). State Plaintiffs' attempt to intervene should likewise be rejected.

## II. STATE PLAINTIFFS SHOULD NOT BE ALLOWED TO PERMISSIVELY INTERVENE

A proposed intervenor must meet three requirements before permissive intervention may

be granted under Rule 24(b): (1) the motion is timely; (2) the proposed intervenor shares a

common question of law or fact with the main action; and (3) the court has an independent basis

for jurisdiction over the applicant's claims. *See Lane*, 2009 WL 3458198, at *2. Even if the

proposed intervenor satisfies these requirements, the district court still has discretion to deny

intervention. *Id.* In exercising that discretion, the court must consider whether the intervention

will "unduly delay or prejudice the adjudication of the original parties' rights." Rule 24(b)(3).

State Plaintiffs' motion is untimely for the same reasons as those set forth in §I.A and

should be denied on that basis alone. *See Wilson*, 131 F.3d at 1308 (explaining that timeliness

under Rule 24(b) is analyzed "more strictly" than it is under "intervention as of right[]").

Timeliness aside, permissive intervention is inappropriate because it would "undu[ly] delay or prejudice adjudication of the original parties' rights[,]" for the reasons explained in §I.A, *supra*. *See Cody*, 2017 WL 8811114, at *5 (denying permissive intervention where the request is "not timely and risks compromising or postponing final settlement").

## III. STATE PLAINTIFFS' OPPOSITION TO PRELIMINARY APPROVAL AND OBJECTIONS TO THE SETTLEMENT ARE UNTIMELY AND MERITLESS

### A. State Plaintiffs' Opposition And Objections Are Untimely

To the extent State Plaintiffs use their Intervention Motion to oppose preliminary approval, their opposition is too late. Oppositions to the PA Motion were due on September 25, 2020—14 days after the motion was filed on September 11, 2020—yet State Plaintiffs' motion was not filed until October 7, 2020. *See* Civil L.R. 7-3(a); *Chavez v. PVH Corp.*, 2015 WL 12915109, at *3-4 (N.D. Cal. Aug. 6, 2015) (explaining rule and finding opposition untimely in similar circumstances). Furthermore, to the extent State Plaintiffs use their Intervention Motion to ***object*** to the proposed Settlement, their objections are premature. As numerous courts have recognized, class member objections at the preliminary approval stage are procedurally improper. *See, e.g., Chavez*, 2015 WL 12915109, at *3-4 ("Objector cites no Civil Local Rule, Federal Rule of Civil Procedure, or other authority that permits a putative class member to file objections to a motion for preliminary approval."). Thus, State Plaintiffs' Intervention Motion should be denied on that basis alone. Regardless, State Plaintiffs' attacks are meritless and should be rejected for the reasons explained below.

### B. State Plaintiffs' Procedural Objections Are Meritless

State Plaintiffs' speculation that the Settlement was unfair because it was the product of a so-called "reverse auction" is unfounded. "A reverse auction is said to occur when the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant." *Negrete v. Allianz Life Ins. Co. of North America*, 523 F.3d 1091, 1099 (9th Cir. 2008). No reverse auction or other collusion occurred here; in fact, State Plaintiffs tellingly ignore the evidence to the contrary.

11

### 1. The Settlement Was The Product of Arms' Length Negotiations Mediated By a Former Magistrate Judge In This District

The Settlement was the product of hard-fought, arm's length negotiations among experienced counsel *with the assistance of an experienced mediator*, Judge Laporte. *See* PA Mot. at 3, 8. Judge Laporte's involvement in the settlement negotiations vitiates State Plaintiffs' "collusion" argument, particularly considering that she served this District as a Magistrate Judge for over 20 years. *See* PA Mot. at 8. It is nonsense, and quite frankly offensive, to suggest that the parties colluded with Judge Laporte in a reverse auction, which is undoubtedly why State Plaintiffs never mention Judge Laporte's role in their Intervention Motion. "The presence of a mediator strongly suggests the absence of collusion or bad faith by the parties or counsel." *Walsh v. CorePower Yoga LLC*, 2017 WL 4390168, at *7 (N.D. Cal. Oct. 3, 2017); *see also Gallucci v. Gonzales*, 603 F. App'x 533, 534 (9th Cir. 2015) (declining to find "reverse auction" where settlement was "negotiated with the aid of a retired magistrate judge and experienced mediator, who reported no evidence of collusion[]"); *Ruch v. AM Retail Grp., Inc.*, 2016 WL 1161453, at *11 (N.D. Cal. Mar. 24, 2016) (finding no collusion when the parties participated in a formal private mediation, then spent several weeks negotiating the details of the Settlement Agreement and the class notice).

The history of the settlement negotiations further corroborates the absence of collusion. Prior to the first mediation session, Lead Counsel thoroughly investigated the relevant facts; drafted the AC; vigorously opposed Defendants' Motion To Dismiss and Request for Judicial Notice; reviewed over 3,000 pages of core documents produced by Defendants; and had a call with Sonim's CFO to discuss Sonim's financial conditions and business plans, including its ability to fund a settlement. PA Mot. at 8. Following the mediation session—which did not result in a settlement—Judge Laporte presented a mediator's proposal for the Settlement Amount. *Id.* Before Lead Plaintiff decided on the mediator's proposal, Lead Counsel requested additional documents from the Underwriter Defendants to better determine the strengths and weaknesses of the Action. *Id.* Only after reviewing these documents and further contemplating the issues did Lead Plaintiff accept the mediator's proposal. *Id.*

Even after the Settlement Amount was agreed upon, negotiations regarding the complete

terms of the Settlement Agreement remained contentious. After a dispute arose over a material term of the settlement, the parties had an additional mediation/arbitration session with Judge Laporte. *Id.* at 9. When the parties reached an impasse, the matter was decided by Judge Laporte through final binding non-appealable arbitration. *Id.* It then took over a month of robust negotiations for the parties to come to a final agreement on the full terms of the settlement. *Id.* at 4. While these additional negotiations did not increase the Settlement Amount (or the fees Lead Counsel could seek) they were necessary to protect the Class's interests.

Unlike the types of collusive agreements flagged in State Plaintiffs' authorities, the Settlement's Released Claims are appropriately tailored and release only those claims that are "based on the same factual predicate as the underlying claims in this case." *Compare* PA Mot. at 4, *with* Jonathan R. Macey & Geoffrey P. Miller, *Judicial Review of Class Action Settlements*, 1 J. Legal Analysis 167, 191-92 (2009) (noting "sudden expansion of the scope of the settled case (for example, by converting the action from a statewide to a nationwide class)" as a sign of collusion), *and Dalchau v. Fastaff, LLC*, 2018 WL 1709925, at *3 (N.D. Cal. Apr. 9, 2018) (court was suspicious about the settlement where it required the plaintiff to file an amended complaint which vastly expanded the claims to include an Unfair Competition Law claim and a FLSA collective action claim that would likely release first-filed plaintiff's claims).

Lead Counsel's requested attorneys' fees are also incompatible with State Plaintiffs' accusations of collusion. Far from seeking "the red carpet treatment on fees," Lead Counsel intends to request an award of 25% of the Settlement Fund ($500,000), an amount based on this Circuit's benchmark that is often awarded in similar actions. PA Mot. at 9. To be clear, Lead Counsel is not seeking any sort of windfall. *See id.* at 15 (explaining that Lead Counsel's estimated lodestar is ***$700,000***: a negative multiplier).

## 2. State Plaintiffs' "Yellow Flags" Of Collusion Are Red Herrings

Despite the implausibility of State Plaintiffs' accusations of collusion, State Plaintiffs nonetheless claim that the following are "yellow flags" signifying that a reverse auction occurred: (1) the Federal Action was filed after the State Action; (2) Defendants negotiated Settlement with the Lead Plaintiff instead of them; and (3) the Federal Action is the "weaker"

action. Int. Mot. at 13-15. State Plaintiffs' arguments lack merit.

***"Yellow Flag" 1***: State Plaintiffs fail to explain how the sequence in which the actions were filed suggests that collusion was afoot. They argue—without citing any authority—that plaintiffs' lawyers in federal actions filed after state court actions that assert Securities Act claims are somehow particularly "vulnerable to defendants seeking to pit plaintiffs against each other[.]" Int. Mot. at 13. Due to the procedural safeguards of the PSLRA, which was designed to end the race to the courthouse, it is highly unlikely that Court-appointed lead plaintiffs, with the largest financial interest in the litigation and thus a greater incentive to maximize the recovery, would somehow be more vulnerable to pressure from defendants seeking to settle on the cheap than plaintiffs in state court who did not even have to prove their financial interest in the litigation. *See* 15 U.S.C. §77z-1(a)(3)(B) (setting forth the test for appointing a lead plaintiff in federal court); *cf. Freeman Inv., L.P. v. Pacific Life Ins. Co.*, 704 F.3d 1110, 1114 (9th Cir. 2013) (after the PSLRA was passed, "inventive lawyers" brought "state law class actions in state courts, [] avoid[ing] the procedural steeplechase erected by the PSLRA[]"); *Cohorst*, 2011 WL 3489781, at *8 (finding that a second-filed action was a "copycat" of the first did not "support the indictment of a 'reverse auction'"). And given Sonim's FFP, it is hardly a shocker that an investor would ultimately choose to file a case in the correct forum.

***"Yellow Flag" 2***: Defendants' decision to discuss settlement with the duly-appointed Lead Plaintiff in this Federal Action instead of State Plaintiffs who filed in the wrong forum due to Sonim's FFP does not establish that a "reverse auction" occurred. If it did, "the 'reverse auction' argument would lead to the conclusion that no settlement could ever occur in the circumstances of parallel or multiple class actions—none of the competing cases could settle without being accused by another of participating in a collusive reverse auction." *Allianz*, 523 F.3d at 1099-1100. The Ninth Circuit has "never adopted such a rule[.]" *Gallucci*, 603 F. App'x at 535. Here, State Plaintiffs are essentially arguing that Sonim should have ignored its FFP and discussed settlement with them. If the Court were to adopt State Plaintiffs' argument, plaintiffs would consistently violate federal forum provisions and file suits in the wrong forum. Furthermore, "[c]ourts look for a showing of impropriety to find that a reverse auction is

occurring." *Harvey v. Morgan Stanley Smith Barney LLC*, 2019 WL 4462653, at *1 (N.D. Cal. Sept. 5, 2019). State Plaintiffs have made no such showing, nor could they.

State Plaintiffs' complaint that the settlement negotiations were "secretive" implies that they have a right to participate in them. Unsurprisingly, State Plaintiffs cite no authority for the proposition that Lead Plaintiff, appointed pursuant to the PSLRA in the Federal Action, was required to consult with them prior to entering settlement negotiations.[5] No such obligation exists, and for good reason: it would subvert the rights that Congress conferred on the Lead Plaintiff when it enacted the lead plaintiff provisions of the PSLRA. *See BankAmerica*, 263 F.3d at 801 ("[T]he lead-plaintiff provisions of the PSLRA create significant federal rights that previously did not exist."). Specifically, the PSLRA confers Lead Plaintiff with "the right to steer litigation" and exercise "control over [] litigation," including the right to "control []. . . ***settlement negotiations***[.]" *Id.* These rights give the Lead Plaintiff "decisional muscle that other members of the class"—like State Plaintiffs—"lack." *Id.*

That the State Action was filed first is irrelevant: Congress deliberately took the reins from the first-filed plaintiff and gave them to the movant with the "largest financial interest" in the litigation when it enacted the PSLRA. *See Cavanaugh*, 306 F.3d at 729-30. For that matter, Lead Plaintiff would be in dereliction of his duties were he to cede the right to negotiate the settlement to State Plaintiffs, none of whom sought to lead this Action. *See BankAmerica*, 263 F.3d at 799-800 (affirming district court's injunction of a ***state court*** action that was attempting to settle the claims out from under the ***lead plaintiff*** in federal court, noting that the district court "concluded that the federal right of control by the greatest stakeholder could not 'be given its intended scope if competing state court plaintiffs, representing a significantly smaller number of shares, [could] institute premature settlement negotiations which threaten the orderly conduct of the federal case and which could result in the release of the federal claims[]'").[6]

---

[5]     The authorities State Plaintiffs cite for the proposition that state plaintiffs should be included in settlement negotiations involved cases where the claims were not subject to the PSLRA and are therefore inapposite. *See Chelsea Hearth & Fireplaces, Inc. v. Scottsdale Ins. Co.*, 142 F. Supp. 3d 543, 548 (E.D. Mich. 2015); *Evanston Ins. Co. v. Van Syoc Chtd.*, 863 F. Supp. 2d 364, 371 (D.N.J. 2012).

[6]     The Supreme Court's decision in *Cyan, Inc. v. Beaver County Employees Retirement Fund*, 138 S.Ct. 1061 (2018), did not change any of the rights that Congress conferred on the

15

1      Further, the fact that Defendants did not approach State Plaintiffs for settlement

2 negotiations actually undermines their collusion argument.  If Defendants were trying to pit the

3 Lead Plaintiff and State Plaintiffs against one another to obtain a low settlement figure in a

4 "reverse auction" arrangement, they would have conducted settlement negotiations with State

5 Plaintiffs as well.  *See Gallucci*, 603 F. App'x at 535 (declining to find that a reverse auction or

6 other collusion had occurred where "no evidence suggest[s] [that] a bidding war between the

7 various potential class counsel actually occurred").

8      ***"Yellow Flag" 3***: State Plaintiffs' claim that the Federal Action is supposedly "weaker"

9 than the State Action is meritless.  First, the State Action was procedurally far behind the

10 Federal Action and was at real risk of being dismissed from State Court due to the FFP at the

11 time of the settlement negotiations.  Second, State Plaintiffs' argument that their operative

12 complaint is stronger because it "asserts more material misstatements and/or omissions and

13 other factual claims," Int. Mot. at 14, confuses quantity with quality.  For example, the

14 challenged statement they highlight as missing from the Federal Action's AC—Sonim was in a

15 "strong position" to access the fast-growing market for the public safety sector (Int. Mot. at 14-

16 15)—is hardly immune from dismissal.  While similar statements are sometimes upheld as

17 materially false or misleading, they are often attacked by defendants as vague, nonactionable

18 puffery and there is no guarantee they would be upheld here.  *See, e.g., Kmiec v. Powerwave*

19 *Techs., Inc.*, 2013 WL 12113411, at *4 (C.D. Cal. Jan. 25, 2013) (finding statements such as

20 "we are in a very strong position in with these new technologies" to be nonactionable puffery).

21      Additionally, the Federal Action is not weaker for not including an Item 303 claim.

22 Item 303 contains a knowledge component that often invites an argument that the complaint

23 "sounds in fraud" and should be subject to the heightened pleading requirements of Rule 9(b)

24 instead of Rule 8.  *See McKenna v. Smart Techs. Inc.*, 2012 WL 1131935, at *8 (S.D.N.Y. Apr.

25 3, 2012) (finding that complaint "sounds in fraud" where the "gravamen" was that defendants

26 "were aware of certain known trends and, pursuant to [Item 303], were obligated to disclose"

27

28 lead plaintiff under the PSLRA.  It merely confirmed that SLUSA did not strip state courts of
their jurisdiction over Securities Act claims.  *See id*. at 1078.

them).[7]  Thus, State Plaintiffs' argument that the Federal Action is somehow "weaker" is dubious at best, and counterfactual in light of the State Action's tentative dismissal.

## C.      The Settlement Amount Is Adequate

The $2 million Settlement Amount provides the putative Class with real relief and is a favorable result considering the Company's limited ability to pay and the current economic crisis.  Yet, State Plaintiffs still contend that the Settlement is inadequate, focusing primarily on the amount of damages recovered as a percentage of the maximum **possible** damages.  As courts nationwide recognize, however, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982).

The PA Motion provided an estimate of the percentage of recovery, explaining that the Settlement represents 6.3% of the Class's estimated maximum damages and 14.9% if a negative causation defense is credited.  This result is well within the range typically accepted in these actions.  *See* PA Mot. at 13.[8]  What's more, the Settlement Amount was proposed **by the mediator** following a mediation session, and Lead Plaintiff's decision to accept it was heavily influenced by Sonim's precarious financial position, the economic conditions created by the pandemic, and the risk that Defendants might be able to prove a particular negative causation defense that would materially reduce the Class's damages.  *See* PA Mot. at 10-14.  State Plaintiffs do not argue that these concerns are unfounded, they just ignore them entirely, as if settlements are reached in a vacuum and class members live blissfully in a risk-free world.

Tellingly, State Plaintiffs are not even sure what an "adequate" recovery would be. Early in their brief they complain that the Settlement Amount is too low because it represents

---

[7]      Lead Plaintiff alleged a violation of Item 503—Item 105's predecessor—so State Plaintiffs' argument on this point is mistaken.  *See* AC ¶64 (Item 503 allegation); *Jaroslawicz v. M&T Bank Corp.*, 962 F.3d 701, 705 (3d Cir. 2020) (Item 503 was "recodified as Item 105").

[8]      *See also Vaccaro v. New Source Energy Partners L.P.*, No. 1:15-cv-08954 (KMW) (S.D.N.Y. Dec. 14, 2017), ECF No. 74 (approving a $2,850,000 settlement in an action alleging Securities Act claims, which purportedly represented about 6.3% of statutory damages ($2,850,000 settlement divided by $44.9 million statutory damages) (*see* ECF No. 54 at 2, 15-16)); *Oh v. Chan, et al.*, No. 2:07-cv-04891-DDP-AJW (C.D. Cal. Sept. 25, 2009), ECF No. 100 (approving a $1.2 million settlement in an action alleging claims under Sections 11 and 15 of the Securities Act, which purportedly represented approximately 2.6% of estimated damages) (*see* ECF No. 91 at 3, 12)).

"less than the full value" of the Class's claims, but then later suggest that 12.3% of maximum possible damages might be sufficient because Cornerstone reported that this is the median settlement as a percentage of damages for Section 11 cases within a certain dollar range of estimated statutory damages from 2010-2019. *See* Int. Mot. at 3, 12. Cornerstone, however, provides no analysis of the defendants' ability to pay in this subset of actions, or how viable negative causation defenses were factored in. Furthermore, the settlements analyzed by Cornerstone all occurred ***before*** the global pandemic upended the global financial system and injected uncertainty into practically every facet of life.

In any event, when using State Plaintiffs' estimate of $28 million in damages based on the date of the State Action's filing, Int. Mot. at 11-12, the proposed $2 million settlement fares even better—representing 7.14% of that amount and approximating Cornerstone's median recovery for Section 11 cases.[9] The Settlement is thus adequate under the circumstances.

## IV. THERE IS NO BASIS TO STAY THIS ACTION

State Plaintiffs request that the Court stay the Federal Action in favor of the State Action under the *Colorado River* doctrine or, alternatively, until the "***forthcoming*** demurrer" in the State Action is resolved. A stay is not justified and would only prejudice the Class, particularly given the State Court's tentative dismissal of the State Action.

### A. *Colorado River* Does Not Warrant A Stay Of This Action

In *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835 (9th Cir. 2017) ("*Strange Land*"), the Ninth Circuit analyzed the Supreme Court's holding in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S. Ct. 1236, 1244, 47 L. Ed. 2d 483 (1976) ("*Colorado River*"). In doing so, the Ninth Circuit cautioned that "[a]bstention from the exercise of federal jurisdiction is the ***exception, not the rule***." *Id.* at 841 (explaining the pendency of an action in state court is generally "no bar to proceedings concerning the same matter in the Federal court having jurisdiction" because federal courts have a "virtually unflagging obligation to exercise the jurisdiction given them[.]"). Thus, only "***exceptional***" and

---

[9] *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2019 Review and Analysis* at 7, Cornerstone Research (2020) (median settlement values for § 11 and/or § 12(a)(2) was 7.4%).

"***exceedingly rare circumstances***" justify a federal court's "[a]bdication of the obligation to decide cases[.]" *Id.* Before determining whether these exceedingly rare circumstances exist, the Court must first decide whether the federal and state actions are parallel. *See Friends of Oceano Dunes v. Ainsworth*, 785 F. App'x 394, 395 (9th Cir. 2019). If and only if this prerequisite is met, may the Court then weigh the *Colorado River* factors. *See Strange Land*, 862 F.3d at 841-42.

### 1. The State Action And The Federal Action Are Not Parallel Proceedings Because They Involve Different Plaintiffs

"As a threshold matter to the *Colorado River* test, the Court determines whether the federal and state actions are sufficiently parallel." *See Guo Haiyu Trading Inc. v. Vanek*, 2018 WL 1407122, at *4 (C.D. Cal. Jan. 4, 2018); *see also Strange Land*, 862 F.3d at 845 ("Parallelism is necessary but not sufficient to counsel in favor of abstention."). "Cases are parallel if they involve the ***same parties*** and substantially identical claims, raising nearly identical allegations and issues." *See Timoney v. Upper Merion Twp.*, 66 F. App'x 403, 405 (3d Cir. 2003); *Guo Haiyu Trading Inc.*, 2018 WL 1407122, at *4 (cases parallel when, *inter alia*, parties were "***virtually identical***"); *see also Fierle v. Perez*, 350 F. App'x 140, 141 (9th Cir. 2009) (cases with identical plaintiffs parallel because the state action was "an adequate vehicle for the complete and prompt resolution of the issues before the parties").

The State Action is not parallel to the Federal Action because Sterrett is not currently a party in the State Action and the State Plaintiffs are not currently parties in the Federal Action. Indeed, this lack of parallelism is demonstrated by the fact that the State Plaintiffs are attempting to intervene in this action. Furthermore, given that State Plaintiffs have not certified a class that includes Sterrett, have not survived or even briefed Defendants' "forthcoming demurrer," and the State Court tentatively dismissed the State Action based on Defendants' Forum Motion, there is "substantial doubt" that the State Action will ever include Sterrett or resolve his federal claims. *See Ainsworth*, 785 F. App'x at 395 (cases not parallel "if there is a substantial doubt that the state suit will resolve all issues before the federal court."); *Strange Land*, 862 F.3d at 845 (the "existence of substantial doubt as to whether the state proceedings

will resolve the federal action precludes a *Colorado River* stay" because it shows a lack of

parallelism). Thus, the actions are not parallel, and a *Colorado River* stay is unjustified.[10]

### 2. The *Colorado River* Factors Weigh Against Staying The Federal Action

Even if the Court were to find the actions parallel, State Plaintiffs have not demonstrated

"exceptional circumstances" that warrant "federal abstention from concurrent federal and state

proceedings[.]" *See Strange Land*, 862 F.3d at 841. To make this determination, courts assess

eight factors. *See id.* at 841–42 (listing the factors).[11] The "underlying principle guiding this

review is a ***strong presumption against federal abstention***." *Id.* at 842. "[T]he task is to

ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that

can suffice under *Colorado River* to justify the ***surrender*** of that jurisdiction." *Id.* (citing *Moses*

*H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26, 103 S. Ct. 927, 942, 74 L. Ed.

2d 765 (1983) (original emphasis). "Any doubt as to whether a factor exists should be ***resolved***

***against a stay***, not in favor of one." *Id.* Here, six *Colorado River* factors weigh against a stay

(*i.e.*, in favor of this Court exercising jurisdiction) while the other two factors are neutral.

### (1) Which Court First Assumed Jurisdiction Over Any Property At Stake

This factor is neutral because, "[n]either the federal nor the state court has assumed

jurisdiction over any property the ownership of which is in dispute." *See Strange Land*, 862

F.3d at 842. As State Plaintiffs concede, *see* Int. Mot. at 18, no property is at stake, and

therefore "the concerns that animate this factor are not implicated[.]" *See id.* at 842.

### (2) The Inconvenience Of The Federal Forum

This factor is neutral because "neither forum has a significant advantage as to

convenience." *See Montanore Minerals Corp. v. Baki,* 867 F.3d 1160, 1167 (9th Cir. 2017), *as*

[10]    State Plaintiffs' authority is unavailing. In *Nakash v. Marciano*, 882 F.2d 1411, 1416–17 (9th Cir. 1989), the plaintiff in the federal action (Marciano) was the defendant in the state action. In *Anderson v. Strauss Neibauer & Anderson APC Profit Sharing 401(K) Plan*, 2011 WL 149442, at *7 (E.D. Cal. Jan. 18, 2011), the plaintiff in the federal action (Anderson) had also filed a cross-claim in the state action. In *Gallagher v. Dillon Grp. 2003-I*, 2010 WL 890056, at *3 (N.D. Cal. Mar. 8, 2010), no party argued the actions were not parallel.

[11]    State Plaintiffs rely on an outdated district court decision that omits one of the eight-factors listed in *Strange Land. See* Int. Mot. at 17 (citing *Anderson*, 2011 WL 149442, at *7).

20

*amended on denial of reh'g and reh'g en banc* (Oct. 18, 2017).  As State Plaintiffs concede, both forums are equally convenient.  *See* Int. Mot. at 18.

**(3)     The Desire To Avoid Piecemeal Litigation**

This factor "is met, as it was in *Colorado River* itself, **only when** there is evidence of a strong federal policy that all claims should be tried in the state courts."  *See United States v. Morros*, 268 F.3d 695, 706–07 (9th Cir. 2001).  "A general preference for avoiding piecemeal litigation is insufficient to warrant abstention. . . . Instead, there must be exceptional circumstances present that demonstrate that piecemeal litigation would be particularly problematic."  *See Strange Land*, 862 F.3d at 842-43 (explaining district court "misconstrued" this factor "because it failed to identify any **special concern** counseling in favor of federal abstention as a clear federal policy of avoiding piecemeal" litigation).  State Plaintiffs have not established this factor because they provided no "special or important rationale or legislative preference for resolving these issues in a single proceeding" in state court.  *Id.* at 843.  Nor could State Plaintiffs provide this explanation because federal policy has been enacted that explicitly favors the ***federal resolution*** of securities lawsuits.  *See e.g.*, *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 82, 126 S. Ct. 1503, 1511, 164 L. Ed. 2d 179 (2006) (explaining that Congress enacted SLUSA "[t]o stem this shift from Federal to State courts and prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the [PSLRA]").  Accordingly, this factor weighs against a stay.

**(4)     The Order In Which The Forums Obtained Jurisdiction**

This factor requires "analyz[ing] the progress made in each case in a pragmatic, flexible manner with a view to the realities of the case at hand[,]" not simply by "compar[ing] filing dates[.]"  *See Strange Land*, 862 F.3d at 843 (explaining that "the district court is well positioned to understand the ***relative progress*** of each case in this practical way").[12]  The Federal Action has—without question—progressed farther than the State Action.  For

---

[12]     Thus, it is irrelevant that State Plaintiffs filed their action "weeks before the Federal Action."  *See* Int. Mot. at 17-18.  Indeed, *Strange Land*, 862 F.3d at 835, explained that a two-month difference in filing time was meaningless when neither action had "progressed significantly further than the other."  *El Centro Foods, Inc. v. Nazarian et al.*, 2010 WL 1710286, at *3 (C.D. Cal. Apr. 21, 2020), failed to account for this.

21

comparison, while Sterrett and Defendants have completed motion to dismiss briefing and already preliminarily proposed a settlement, State Plaintiffs appear to have lost the battle on whether they even selected the correct forum. Accordingly, this factor weighs against a stay.

### (5) Whether Federal Law Or State Law Provides The Rule Of Decision On The Merits

"The presence of federal-law issues must always be a major consideration weighing *against* surrender of jurisdiction, but the presence of state-law issues may weigh in favor of that surrender only in some rare circumstances." *Id.* at 844 (original emphasis). Therefore, "[c]ases implicating only routine issues of state law . . . which the district court is fully capable of deciding do not entail rare circumstances counseling in favor of abstention." *Id.* State Plaintiffs' argument that this factor is neutral because "state and federal courts enjoy concurrent jurisdiction over 1933 Act claims[,]" *see* Int. Mot. at 18, fails. The fact that *only* federal law claims are involved here weighs against a stay and State Plaintiffs fail to offer *any* of the "rare circumstances" that counsel in favor of abstention.

### (6) Whether The State Court Proceedings Can Adequately Protect The Rights Of The Federal Litigants

A party must provide "the clearest of justifications warranting the surrender of federal jurisdiction[]" to succeed on this factor. *See Strange Land*, 862 F.3d at 845 (explaining that the existence of this factor "may preclude abstention" but that the alterative "*never compel[s] abstention*").[13] Tellingly, State Plaintiffs do not meaningfully argue this factor; instead they merely suggest that Sterrett would "remain a member of the putative class in the California Action" where he would have three law firms as co-lead counsel.[14] *See* Int. Mot. at 18. As the Lead Plaintiff in the Federal Action, however, Sterrett has Congressionally created rights that cannot adequately be protected in State Court by other plaintiffs, such as "the right to steer

---

[13] State Plaintiffs' outdated and non-binding citation to *Gallagher*, 2010 WL 890056, at *5, for its holding that this factor weighed in favor of abstention is unavailing because the plaintiffs in that case did not "contend that the state court would be inadequate to protect their rights" runs counter to *Strange Land's* admonition.

[14] The fact that three "nationwide securities class action firms" are needed to represent State Plaintiffs begs the question of whether the State Action is being litigated efficiently. *See* Int. Mot. at 18. Indeed, there are *12 lawyers* listed on State Plaintiffs' 19-page motion. Apparently, not one of the 12 counseled against filing in the wrong forum. *Id.* at 19-20.

litigation" and exercise "control" over the litigation—the very rights State Plaintiffs are seeking to usurp. *See BankAmerica*, 263 F.3d at 801. And, of course, the State Court's tentative dismissal of the State Action confirms that the State Action will not protect Sterrett. This factor weighs heavily against abstention.

### (7) The Desire To Avoid Forum Shopping

"When evaluating forum shopping under *Colorado River*," the court must "consider whether either party improperly sought more favorable rules in its choice of forum or pursued suit in a new forum after facing setbacks in the original proceeding." *See Strange Land*, 862 F.3d at 846. State Plaintiffs decided to file in State Court: (1) to avoid the PSLRA's lead plaintiff appointment process, *see* 15 U.S.C. §78u-4(a)(3); (2) to circumvent the federal forum provision in Sonim's charter, *see* Ex. A at 10 n. 5, 14; and (3) to take advantage of the "relatively more lenient pleading standards applicable in state court," *see* Int. Mot. at 18. Accordingly, State Plaintiffs forum shopped and this factor weighs heavily against a stay.[15]

### (8) Whether The State Court Proceedings Will Resolve All Issues Before The Federal Court

Like factor six above, a party must provide "the clearest of justifications warranting the surrender of federal jurisdiction[]" to succeed on this factor." *See Strange Land*, 862 F.3d at 845 (explaining that the existence of this factor "may preclude abstention[,]" but that the alternative "***never compel[s] abstention***"). As the State Plaintiffs entirely omit this factor, they make no attempt to provide this justification. Because the State Action has been tentatively dismissed (*see* Ex. A), it is highly unlikely that the State Court proceedings will resolve anything, let alone all issues before the Federal Court. Thus, this factor weighs against a stay.

---

[15] State Plaintiffs' unsubstantiated and false suggestion that Lead Plaintiff's settlement was influenced by Defendants' forum shopping (*see* Int. Mot. at 18) does not demonstrate that Sterrett forum shopped because Sterrett was well within his rights to assert his claims in the correct forum. *See R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 982 (9th Cir. 2011) ("[W]e are cautious about labeling as 'forum shopping' a plaintiff's desire to bring previously unasserted claims in federal court. The desire for a federal forum is assured by the constitutional provision for diversity jurisdiction and the congressional statute implementing Article III.").

1    In review, six *Colorado River* factors weigh against a stay (factors three through eight),

2    while the other two *Colorado River* factors are neutral (factors one and two).[16]  Accordingly,

3    "[n]othing about this case is exceptional so as to warrant disregarding the virtually unflagging

4    obligation of a federal court to exercise its jurisdiction" and Sterrett respectfully discourages the

5    Court from "essentially transforming the strong presumption against abstention into a

6    presumption in favor of abstention[.]"  *Id.* at 847.

7    **B.      There Is No Basis For Staying This Action Until The Demurrer Is Resolved
          In State Court**

8

9    State Plaintiffs alternatively request the Court stay the Action until Defendants'

10   demurrer—which has not been and may never be filed—is resolved by the State Court.  State

11   Plaintiffs make no meaningful argument and cite no authority justifying their request; thus, the

12   request is waived.  *See United States v. Stoterau*, 524 F.3d 988, 1003 n.7 (9th Cir. 2008).

13   Regardless, a stay is unwarranted.  Courts in this Circuit employ a three-factor test to

14   determine whether to stay an action: (1) the possible damage which may result from the

15   granting of the stay; (2) the hardship or inequity which a party may suffer in being required to

16   go forward; and (3) the orderly course of justice measured in terms of the simplifying or

17   complicating of issues, proof, and questions of law which could be expected to result from a

18   stay.  *S.E.C. v. Fraser*, 2011 WL 13233321, at *3 (W.D. Wash. Mar. 4, 2011).

19   All these factors weigh against a stay.  First, waiting until a yet-to-be-filed demurrer is

20   resolved in State Court in a tentatively dismissed case would work an indefinite stay on this

21   action, which is disfavored.  *See Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498

22   F.3d 1059, 1066 (9th Cir. 2007) ("Generally, stays should not be indefinite in nature.").  The

23   Class would risk serious damage if this indefinite stay was granted, as it could prohibit it from

24   receiving any recovery at all.  *See* §1.A.

25   Second, State Plaintiffs will not suffer hardship and inequity if the Federal Action

26   proceeds.  *See* §I.B; *Cody*, 2017 WL 8811114, at *5 (stay of preliminary approval is

27

28   ------
     [16]     State Plaintiffs have not proffered a single case where a court ordered a stay when the
     *Colorado River* factors were so one-sided against a stay—nor could they.

unnecessary "because . . . Rule 23 already allows the Proposed Intervenor's objections to be heard in the course of the fairness hearing[]").

Third, the orderly course of justice weighs in favor of the Court considering the PA Motion. Settling avoids having to resolve issues of proof and questions of law. If the Action is settled, the Court need not, for example, resolve the Motion To Dismiss or any discovery disputes or summary judgment motions that may arise. If Preliminary Approval is granted, Class members will be provided with a fair opportunity to decide whether to voice their objections to the Settlement, exclude themselves from it, or participate in it. *See* §I.B. The stay would halt this process indefinitely, leaving the Class with potentially no recovery at all. Allowing the Federal Action to go forward is also consistent with federal and state policy, which favors settlement. *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) (explaining that the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned[]" and that "[s]ettlement spares the parties the costs of protracted litigation and eases the congestion of judicial calend[a]rs[]"); *Tower Acton Holdings v. Los Angeles Cty. Waterworks Dist. No. 37*, 105 Cal. App. 4th 590, 602 (2002) ("California's public policy is to encourage settlement.").[17]

## CONCLUSION

For the foregoing reasons and those set forth in the PA Motion, Lead Plaintiff respectfully requests that the Court: (1) deny the State Plaintiffs' Intervention Motion; and (2) preliminary approve the Settlement.

Dated: October 21, 2020 **FARUQI & FARUQI, LLP**

By: _/s/ Richard W. Gonnello_
Richard W. Gonnello

---

[17] To the extent State Plaintiffs argue that "comity" warrants their requested stay, their argument is moot in light of the State Court's decision on the Forum Motion (*see* Ex. A) and waived for failure to meaningfully argue it. *See Stoterau*, 524 F.3d at 1003 n.7. In any event, comity only justified a stay in the cases State Plaintiffs cite because state law issues were at stake. *See El Centro Foods*, 2010 WL 1710286, at *3 (granting stay in favor of state action "out of consideration for federal-state comity" where federal action raised **substantial state law** issues regarding a franchise agreement); *Sea Prestigio, LLC v. M/Y TRITON*, 787 F. Supp. 2d 1116, 1119 (S.D. Cal. 2011) ("[W]here—as here—**state law issues predominate**, [g]ranting the stay is ... consistent with the federal court's discretion to decline to exercise jurisdiction out of consideration for federal-state comity.").

Richard W. Gonnello (admitted *pro hac vice*)
Katherine M. Lenahan (admitted *pro hac vice*)
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: rgonnello@faruqilaw.com
        klenahan@faruqilaw.com

Benjamin Heikali SBN 307466
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
Email:  bheikali@faruqilaw.com

*Attorneys for [Proposed] Class Representative*
*David Sterrett and [Proposed] Class Counsel for*
*the [Proposed] Settlement Class*