Richard W. Gonnello (admitted *pro hac vice*)
Katherine M. Lenahan (admitted *pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: rgonnello@faruqilaw.com
        klenahan@faruqilaw.com

Benjamin Heikali SBN 307466
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
Email: bheikali@faruqilaw.com

*Attorneys for [Proposed] Class Representative David Sterrett
and [Proposed] Class Counsel for the [Proposed] Settlement Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID STERRETT, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SONIM TECHNOLOGIES, INC., ROBERT PLASCHKE, JAMES WALKER, MAURICE HOCHSCHILD, ALAN HOWE, KENNY YOUNG, SUSAN G. SWENSON, JOHN KNEUER, JEFFREY D. JOHNSON, OPPENHEIMER & CO., INC., LAKE STREET CAPITAL MARKETS, LLC, and NATIONAL SECURITIES CORPORATION, <br><br> Defendants. | Case No. 3:19-cv-06416-MMC <br><br> **LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND AN AWARD TO LEAD PLAINTIFF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> <u>**CLASS ACTION**</u> <br><br> Judge: The Hon. Maxine M. Chesney <br> Date: March 5, 2021 <br> Time: 9:00 a.m. <br> Courtroom: 7 – 19th Floor |

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES..............................................................1

FACTUAL AND PROCEDURAL BACKGROUND ..................................................................3

ARGUMENT ...............................................................................................................................4

I.  THE REQUESTED FEE IS REASONABLE IN THIS CASE ..........................................4

    A.  Percentage Of The Fund Is The Preferred Method ................................................4

    B.  The Requested Fee Of 25% Is Reasonable In This Case ......................................5

        1.  Lead Counsel Obtained a Favorable Result for the Class .........................5

        2.  Litigation of this Action Involved Significant Risks.................................7

        3.  Lead Counsel Provided Quality Representation ........................................8

        4.  Lead Counsel Took on a Financial Burden ..............................................10

        5.  The Fee Is In Line With the Customary Fee in Similar Actions..............11

        6.  The Requested Fee Is Reasonable Under the Lodestar Cross-Check ......11

II.  THE LITIGATION EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED ..................................................................................................................13

III.  THE REQUESTED AWARD FOR LEAD PLAINTIFF IS REASONABLE ..................15

CONCLUSION ..........................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*In re Am. Apparel, Inc. Shareholder Litig.*,
   2014 WL 10212865 (C.D. Cal. July 28, 2014) ...............................................................9, 11

*In re Bear Stearns Cos., Inc. Sec., Derivative, and ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) .................................................................................15

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ............................................................................................5, 13

*In re CV Therapeutics, Inc. Sec. Litig.*,
   2007 WL1033478 (N.D. Cal. Apr. 4, 2007).........................................................................11

*Destefano v. Zynga, Inc.*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016)................................................................. *passim*

*In re DJ Orthopedics, Inc. Sec. Litig.*,
   2004 WL 1445101 (S.D. Cal. June 21, 2004) ......................................................................11

*Fischel v. Equitable Life Assur. Soc'y of the U.S.*,
   307 F.3d 997 (9th Cir. 2002)................................................................................................4

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994).................................................................................................13

*HCL Partners Ltd. P'ship v. Lead Wireless Int'l, Inc.*,
   2010 WL 4156342 (S.D. Cal Oct. 15, 2010).........................................................................9

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ....................................................................12

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005)...........................................................10, 12, 13

*In re Hewlett-Packard Co. Sec. Litig.*,
   2014 WL 12656737 (C.D. Cal. Sept. 15, 2014).................................................................14

*Hosely v. Costolo, et al.*,
   No. 16-CIV-02228 (Cal. Sup. Ct., San Mateo Cty.), Judgment and Order
   Granting Final Approval of Class Action Settlement, Aug. 16, 2018......................................6

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..........................................................................8, 12

*Lopez v. Youngblood*,
   2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ..................................................................4

**LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND AN AWARD TO LEAD PLAINTIFF**
**Case No. 3:19-cv-06416-MMC**

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ....................................................................10

*McPhail v. First Command Fin. Planning, Inc.*,
    2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ..........................................................11

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ..................................................................................11

*In re Nuvelo, Inc. Sec. Litig.*,
    2011 WL 2650592 (N.D. Cal. July 6, 2011) ...........................................................11

*Oh v. Chan, et al.*,
    No. 2:07-cv-04891-DDP-AJW (C.D. Cal. Sept. 25, 2009), ECF No. 100..............5

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008).................................................4, 5, 10, 11

*Ramsey v. MRV Commc'ns Inc.*,
    2010 WL 11596641 (C.D. Cal. Nov. 16, 2010) ......................................................15

*Rieckborn v. Velti PLC*,
    2015 WL 468329 (N.D. Cal. Feb. 3, 2015)..............................................................14

*Rodriguez v. Disner*,
    688 F.3d 645 (9th Cir. 2003)....................................................................................5

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003).............................................................................5, 11

*Vaccaro v. New Source Energy Partners L.P.*,
    No. 1:15-cv-08954 (KMW) (S.D.N.Y. Dec. 14, 2017), ECF No. 74 ......................6

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1024 (9th Cir. 2002)...........................................................................11, 12

*In re Vocera Commn'cs, Inc. Sec. Litig.*,
    2016 WL 8201593 (N.D. Cal. July 29, 2016) .........................................................14

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods.*
    *Liability Litig.*,
    2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ........................................................12

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994)..............................................................................4, 5

*Weitzke v. CoStar Realty Info, Inc.*,
    2011 WL 817438 (S.D. Cal. Mar. 2, 2011)..............................................................7

*In re Worldspace, Inc. Sec. Litig.*,
    1:07-cv-02252-RMB (S.D.N.Y. June 3, 2013), ECF No. 107 ................................6

**Statutes**

15 U.S.C. §77k(e)...................................................................................................................5

15 U.S.C. §77z-1(a)(4) .........................................................................................................15

**Other Authorities**

H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. (1995)........................................................15

**LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND AN AWARD TO LEAD PLAINTIFF**
**Case No. 3:19-cv-06416-MMC**

**NOTICE OF MOTION AND MOTION AND STATEMENT OF COURT ACTION SOUGHT**

TO:  ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

PLEASE TAKE NOTICE that on March 5, 2021 at 9:00 a.m., before the Honorable Maxine M. Chesney, Lead Counsel, Faruqi & Faruqi, LLP will move this Court for an order: (i) awarding attorneys' fees in the amount of 25% of the Settlement Fund; (ii) reimbursing expenses in the amount of $27,486.76, plus accrued interest; and (iii) authorizing an award for Lead Plaintiff in the amount of $871.[1]  The grounds for this motion are that the attorneys' fees award, expenses, and Lead Plaintiff's award are warranted under the fee-setting and expense reimbursement criteria applicable to common fund cases and cases subject to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §77z-1.

This motion is based upon the Memorandum of Points and Authorities set forth below, the Declaration of Katherine M. Lenahan ("Lenahan Declaration" or "Lenahan Decl."), with attached exhibits, filed herewith; the pleadings and records on file in this action; and other such matters and argument as the Court may consider at the hearing of this motion.

<strong>STATEMENT OF ISSUES TO BE DECIDED</strong>

1.    Whether the Court should award the attorneys' fees requested by Lead Counsel.

2.    Whether the Court should reimburse the expenses incurred by Lead Counsel.

3.    Whether the Court should grant the award to Lead Plaintiff.

<strong>MEMORANDUM OF POINTS AND AUTHORITIES</strong>

As discussed in Lead Plaintiff's Motion for Preliminary Approval of the Class Action Settlement ("Preliminary Approval Motion"), ECF No. 76, Lead Plaintiff, on behalf of himself and the putative Class, and defendants Sonim Technologies, Inc. ("Sonim" or the "Company"), Robert Plaschke, James Walker, Maurice Hochschild, Alan Howe, Kenny Young, Susan G. Swenson, John Kneuer, Jeffrey D. Johnson (collectively, the "Sonim Defendants"), and

---

[1]    Unless otherwise noted, the following conventions are used herein: (a) all emphases are added; (b) all internal citations and quotations are omitted; (c) all capitalized terms have the meaning ascribed to them in the Stipulation of Settlement dated September 10, 2020 ("Stipulation"), ECF No. 75; and (d) all page references are to a document's native pagination unless unavailable, in which case the ECF-stamped pagination is used.

1

underwriters Oppenheimer & Co., Inc., Lake Street Capital Markets, LLC, National Securities Corporation (collectively, the "Underwriter Defendants") (collectively, with the Sonim Defendants, "Defendants"), have reached a proposed classwide settlement for $2,000,000 that, if given final approval, will resolve all claims in the above-captioned action (the "Action"). The Settlement is the result of zealous prosecution by Lead Counsel and is a favorable result for the Class considering the significant risks that a smaller recovery—or ***no recovery***—might be achieved after further litigation, particularly in light of the risks posed by Sonim's precarious financial position and the global economic crisis triggered by the COVID-19 pandemic.

In connection with the Settlement, Lead Counsel respectfully seeks approval of an award of attorneys' fees in the amount of 25% of the Settlement Fund,[2] or $500,000 plus interest accrued thereon,[3] and reimbursement of $27,486.76 in expenses reasonably incurred during the course of the Action, plus interest accrued thereon. As detailed below, the requested fee is fair and reasonable in light of the obstacles Lead Counsel has faced during prosecution of this Action, Lead Counsel's skill and expertise in litigating securities class actions, and the favorable result obtained for the Class. In recognition of the risks undertaken and the effort expended by counsel in contingency fee cases, courts in this Circuit and throughout the United States routinely award fees of this size in complex securities case with comparable recoveries. Lead Counsel also requests that the Lead Plaintiff be granted an award of $871 pursuant to 15 U.S.C. §77z-1(a)(4) for the time and effort that he devoted to representing the Class in this Action.

Accordingly, Lead Counsel respectfully submits that the requested attorneys' fees, reimbursement of expenses, and award for Lead Plaintiff should be granted.

---

[2]   The Settlement Fund is defined in the Stipulation as "the Settlement Amount [$2,000,000] plus any accrued interest or income earned thereon . . . ." Stipulation ¶1.28.

[3]   Lead Counsel's request for interest accrued on the fee and expense amounts is limited to the interest or income earned on those amounts between the time the Settlement Amount was deposited into the Escrow Account to the time the fees and expenses are permitted to be disbursed. For example, if the Court awards Lead Counsel's request for 25% of the Settlement Fund, and the Settlement Fund contains $2,000,100 (having earned $100 since being deposited in the Escrow Account), Lead Counsel's fees would be $500,025.

**LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND AN AWARD TO LEAD PLAINTIFF**
**Case No. 3:19-cv-06416-MMC**

**FACTUAL AND PROCEDURAL BACKGROUND**[4]

Briefly, on October 7, 2019, plaintiff Ajay Malhotra filed the initial class action complaint in the United States District Court for the Northern District of California. ECF No. 1. On January 22, 2020, the Court appointed Mr. Sterrett as Lead Plaintiff, and his counsel, the Faruqi Firm, was appointed Lead Counsel. ECF No. 52. Lead Plaintiff filed the AC on February 24, 2020. ECF No. 55. The AC alleges that Defendants violated §§11 and 15 of the Securities Act by materially misrepresenting and omitting material facts as alleged in the AC. *See, e.g.*, AC ¶¶2, 6-9, 48-64. The Sonim Defendants thereafter filed a Motion To Dismiss the Amended Complaint and a Request for Incorporation By Reference and Judicial Notice, which the Underwriter Defendants joined. *See* ECF Nos. 62-63.

Following the parties' briefing on the Motion To Dismiss, the parties met for a mediation session on June 24, 2020 before the Hon. Elizabeth Laporte (Ret.), a well-respected mediator who served as a United States Magistrate Judge in this District for more than two decades. *See* Stipulation at 2. No Settlement was reached during the mediation session. The parties ultimately accepted the mediator's subsequent proposal for the monetary terms of the Settlement, but only after Lead Counsel requested and was provided with additional documents from the Underwriter Defendants to better assess the strengths and weaknesses of the Action. The parties continued to vigorously debate the Settlement's remaining terms thereafter. A Settlement was only reached after further contentious negotiations between the Parties, as well as an additional mediation/arbitration session to resolve an open issue under the Settlement that was ultimately resolved by Judge Laporte through final binding non-appealable arbitration.

On September 11, 2020, Lead Plaintiff filed the Motion for Preliminary Approval of the Class Action Settlement ("Preliminary Approval Motion") (ECF No. 76). Plaintiffs in the State

---

[4]   The Northern District's Procedural Guidance for Class Action Settlements provides that attorneys' fee motions that are filed separately from final approval motions "should refer to the history and facts set out in the motion for final approval." Because the final approval motion is due after this Fee Motion, Lead Counsel included some relevant factual and procedural background herein for ease of reference. For the sake of brevity, Lead Counsel respectfully refers the Court to the Lenahan Declaration, filed herewith, for more detailed information.

3

Court Action[5] then filed a Motion To Intervene and Object on October 7, 2020 (ECF No. 82), which Lead Plaintiff opposed (ECF No. 91) and the Court denied (ECF No. 95).  On October 30, 2020, the Court held a hearing on the Preliminary Approval Motion and ordered that revisions be made to certain of the notice documents.  *See* ECF Nos. 99, 101.   After the notices were revised, the Court issued the Preliminary Approval Order on November 6, 2020, which, *inter alia*, approved the form and manner of providing notice to the Settlement Class, preliminarily certified the Class for settlement purposes, and set a hearing date for the Final Approval Hearing as well as deadlines for the briefing related thereto.

**ARGUMENT**

**I.      THE REQUESTED FEE IS REASONABLE IN THIS CASE**

**A.      Percentage Of The Fund Is The Preferred Method**

It is well established in the Ninth Circuit that, in a common fund case, the court has discretion to apply either the percentage of the fund method or the lodestar method in calculating a fee award.  *See Fischel v. Equitable Life Assur. Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002); *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994) ("*WPPSS*").  However, "use of the percentage method in common fund cases appears to be dominant" in this Circuit and its "advantages . . . have been described thoroughly by other courts."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008).  For example, in addition to removing the burden on courts to calculate the attorneys' lodestar, the percentage of the fund method incentivizes attorneys to obtain the maximum possible recovery for the class in the most efficient manner.  *See Lopez v. Youngblood*, 2011 WL 10483569, at *3 (E.D. Cal. Sept. 2, 2011) ("[T]he percentage of the available fund analysis is the preferred approach in class action fee requests because it more closely aligns the interests of the counsel and the class, *i.e.*, class counsel directly benefit from increasing the size of the class fund and working in the most efficient manner.").

---

[5]      "State Court Action" refers to *In re Sonim Techs., Inc. Sec. Litig.*, No. 19CIV05564 (Cal. Sup. Ct.), which was tentatively dismissed on October 14, 2020.  *See* ECF No. 91-3 (State Court Tentative Ruling).

4

**B.    The Requested Fee Of 25% Is Reasonable In This Case**

While the ultimate determination of the appropriate amount of attorneys' fees to be awarded in each case rests within the sound discretion of the district court, *see Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2003), "[t]his circuit has established 25% of the common fund as a benchmark award for attorney fees[,]" *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003).  The benchmark is a starting point, as "the district court should be guided by the fundamental principle that fee awards out of common funds be reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296.  Thus, in assessing whether a fee in line with the 25% benchmark is fair and reasonable in a particular case, or whether the fee should be adjusted upwards or downwards, courts generally consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work performed; (4) the contingent nature of the fee and the financial burden; and (5) awards made in similar cases.  *See Destefano v. Zynga, Inc.*, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016).  All of the factors support the reasonableness and fairness of Lead Counsel's requested fee.

**1.    Lead Counsel Obtained a Favorable Result for the Class**

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Omnivision*, 559 F. Supp. 2d at 1046; *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Foremost among these considerations . . . is the benefit obtained for the class.").

The recovery achieved in this Action, $2,000,000 in all cash, is a favorable result that will provide the Class with an immediate and certain benefit.  As explained in the Preliminary Approval Motion, the Settlement Amount is approximately 6.3% of the Class's estimated maximum damages, and approximately 14.9% of the Class's estimated damages when crediting a negative causation defense that limits damages to the corrective disclosures alleged in the AC.  *See* AC ¶71; *see also* 15 U.S.C. §77k(e) (setting forth measure of Section 11 damages and negative causation defense).  Under either measure, the Settlement Amount is well within the range of court-approved recoveries in complex securities class actions such as this.  *See, e.g., Oh v. Chan, et al.*, No. 2:07-cv-04891-DDP-AJW (C.D. Cal. Sept. 25, 2009), ECF No. 100

5

(approving a $1.2 million settlement in an action alleging claims under Sections 11 and 15 of the Securities Act, which purportedly represented approximately 2.6% of estimated damages) (*see* ECF No. 91 at 3, 12)); *Hosey v. Costolo, et al.*, No. 16-CIV-02228, Judgment and Order Granting Final Approval of Class Action Settlement at 2 (Cal. Sup., San Mateo Cty. Aug. 16, 2018) (granting final approval to $2.5 million settlement in action alleging claims under Sections 11 and 15 of the Securities Act that purportedly recovered 5.8% of "estimated aggregate damages" (*see* Memorandum of Points and Authorities in Support of Plaintiff's Unopposed Motion for Certification of Settlement Class and for Final Approval of Settlement, at 11 (Cal. Sup., San Mateo Cty. July 3, 2018)); *Vaccaro, et al. v. New Source Energy Partners L.P., et al.*, No. 1:15-cv-08954 (KMW) (S.D.N.Y. Dec. 14, 2017), ECF No. 74 at 3 (approving a $2,850,000 settlement in an action alleging Securities Act claims, which purportedly represented about 6.3% of statutory damages ($2,850,000 settlement divided by $44.9 million statutory damages) (*see* ECF No. 54 at 2, 15-16)); *In re Worldspace, Inc. Sec. Litig.*, 1:07-cv-02252-RMB (S.D.N.Y. June 3, 2013), ECF No. 107 (granting final approval of $2,375,000 settlement in an action alleging claims under Sections 11, 12(a)(2), and 15 of the Securities Act, which purportedly represented approximately 3.3-5% of the Class's maximum provable damages (*see* ECF No. 105 at 1, 18-19)).

Furthermore, when negotiating the Settlement, Lead Counsel carefully examined the continued time and expense of additional litigation as well as Lead Plaintiff's likelihood of success on the merits, the maximum provable damages, and the likelihood of obtaining a larger settlement after continued litigation, particularly considering Defendants' potential negative causation defense, the Underwriter Defendants' potential due diligence defense, and Sonim's precarious financial position and the global economic uncertainty caused by the COVID-19 pandemic. *See* Lenahan Decl. ¶¶26-36. Lead Counsel determined that, in light of these issues, the Settlement Amount was a favorable result for the Class. *See id.* Specifically, in order to develop the claims in the operative complaint, the fact discovery process would require, among other things: drafting numerous rounds of discovery requests; engaging in discovery motion practice; reviewing thousands of pages of documents; taking numerous depositions; serving and

attempting to enforce third party subpoenas; and retaining expert witnesses regarding highly technical issues about the functioning of cellular phones and the proper testing of such devices. *See id.* at ¶27.  Even after putting in the considerable time and incurring the additional expenses that fact discovery would require, there is a chance that Lead Plaintiff's claims could be dismissed at summary judgment or trial.  *See id.*, at ¶¶26-29.

Thus, "the result achieved for the Class—especially at this early stage—is favorable considering the potential vulnerabilities of Lead Plaintiff's case." *Zynga*, 2016 WL 537946, at *17.

### 2.     Litigation of this Action Involved Significant Risks

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly [in] a case involving complicated legal issues, is a significant factor in the award of fees." *Weitzke v. CoStar Realty Info, Inc.*, 2011 WL 817438, at *6 (S.D. Cal. Mar. 2, 2011).

Lead Plaintiff and Lead Counsel continue to believe that the claims asserted in the Action are meritorious and that the evidence developed to date supports those claims.  While Lead Plaintiff believes that his claims would have survived Defendants' Motion To Dismiss, this result was far from guaranteed.  Even if the Action did survive, there is a material risk that Lead Plaintiff's claims might be dismissed after class certification, summary judgment, trial, or appeals.  *See* Lenahan Decl. at ¶¶26-29.  Defendants have raised numerous challenges and adamantly deny any wrongdoing.  *See* Stipulation at 3-4; *see generally* ECF Nos. 62, 62-1, 63, 69-70 (Defendants' MTD and RJN briefing).  There is no doubt that they would have continued to aggressively pursue dismissal of the claims in the AC had litigation of this Action continued.  *See* Lenahan Decl. at ¶29.  Thus, after investing years of time litigating this Action, Lead Counsel could be left with no compensation for its efforts.

While further litigation might have been successful, it would also significantly deplete the funds Sonim has available to fund any recovery.  The Company is required to indemnify the other defendants, and has a high self-insured retention on its relevant insurance that would require it to spend a substantial sum on litigation before insurance would cover any costs.  *See* Lenahan Decl. at ¶31.  Based on Sonim's public filings with the SEC, as well as a call with

7

Sonim's current CFO, it is Lead Counsel's understanding that Sonim's ability to fund a settlement in this Action is limited and that continued litigation would further erode the assets available to fund a judgment or a settlement made at a later date. *See id.* at ¶¶31-32. The ongoing COVID-19 pandemic and its devastating effect on the global economy makes this risk even greater. *Id.* at ¶35. As explained in the Preliminary Approval Motion, the pandemic forced Sonim to close its manufacturing facility in Shenzhen for most of February 2020, and the Company has warned that demand for its products "may be reduced as a result of the COVID-19 outbreak and resulting market uncertainty." Sonim Form 10-Q at 29-30 (filed with the SEC on Aug. 12, 2020). Additionally, many municipalities, a key customer demographic for Sonim, are facing steep budget cuts due to the COVID-19 pandemic. *See* Lenahan Decl. ¶35. There is no guarantee that these customers will purchase Sonim's products, or in sufficient quantities, to enable the Company to fund a judgment or settlement in the future.

While recovery from the Individual Defendants and the Underwriter Defendants is possible, to date neither group has indicated any willingness to fund a settlement, as Sonim has been funding their litigation costs. *See id.* at ¶34. Lead Counsel believes that Lead Plaintiff would have to prove his case on the merits and overcome this and other defenses the Underwriter Defendants and Individual Defendants may assert before either group would be willing to contribute any money towards a settlement. *Id.* Meanwhile, Sonim would continue to direct money to defense costs that could have gone to fund a settlement for the Class. *Id.* Thus, the risks facing this action weigh in favor of the requested fee award. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1176 (S.D. Cal. 2007) (finding a fee equal to 25% of the fund reasonable where plaintiffs argued that "prolonging a resolution of the case would increase the risk that the funds available for a judgment would be depleted due to litigation expenses[]").

### 3.    Lead Counsel Provided Quality Representation

"[T]he prosecution and management of a complex national class action requires unique legal skills and abilities." *Zynga*, 2016 WL 537946, at *17. The quality of the representation that Lead Counsel provided supports the reasonableness of the requested fee. Lead Counsel is a

8

national law firm with extensive experience representing investors in complex securities class actions. *See* Lenahan Decl. ¶42, Ex. A. As set forth in the Faruqi Firm's resume, Lead Counsel has served as lead or co-counsel in numerous complex class actions and has secured significant recoveries for injured investors. *See id.*

Lead Counsel's experience and skill were demonstrated by the zealous and effective prosecution of this Action. For example, Lead Counsel conducted an extensive factual investigation and drafted a detailed amended complaint supported by briefing in opposition to Defendants' motion to dismiss. *See* Lenahan Decl. ¶¶15-18, 44. Realizing that Defendants were likely to assert a negative causation defense down the road that could materially reduce the amount of damages available to the Class, Lead Counsel conducted research and worked closely with a damages consultant to better assess Defendants' likelihood of success on this issue. ¶¶26, 51.

"In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully." *In re Am. Apparel, Inc. Shareholder Litig.*, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014). Defendants' counsel, O'Melveny & Myers LLP and Sidley Austin LLP, are excellent law firms renowned for their securities litigation practices. *See* Lenahan Decl. ¶43. The attorneys who represented Defendants in this matter were formidable opponents who worked tirelessly on behalf of their clients and mounted strong defenses. *See id*. To match defense counsel, Lead Counsel was required to litigate at a very high level of skill, efficiency, and professionalism at every stage of the proceedings. *See id.; HCL Partners Ltd. P'ship v. Lead Wireless Int'l, Inc.*, 2010 WL 4156342, at *2 (S.D. Cal Oct. 15, 2010) (approving requested fees when "Lead Counsel has extensive experience in litigating securities class actions, and Defendants were represented by two law firms with nationwide and international reputations for providing thorough and competent representation[]"). Indeed, this litigation was hard fought by both sides at every stage. For example, settlement negotiations continued to be contentious even ***after*** the parties accepted the mediator's proposal for the Settlement Amount. After a dispute arose during the settlement documentation process about the Termination

9

Threshold, a material term of the Settlement, the parties were unable to come to an agreement, which necessitated an additional mediation/arbitration session with Judge Laporte. *See* Lenahan Decl. at ¶25. After reaching an impasse, the matter was ultimately resolved by Judge Laporte through final binding non-appealable arbitration. *Id.* While these additional negotiations did not increase the Settlement Amount (or the fees Lead Counsel could seek), Lead Counsel believed they were necessary to protect the Class's interests.

Despite the formidable opposition faced throughout the litigation, Lead Counsel was able to reach an agreement with Defendants early in the litigation and on terms favorable to the Class. *See Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) ("A prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice.").

### 4.    Lead Counsel Took on a Financial Burden

In addition to the risks associated with complex litigation, "the risk of non-payment or reimbursement of expenses [in cases undertaken on a contingent basis] is a factor in determining the appropriateness of counsel's fee award." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005). Courts in this Circuit have found that "the importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee." *Omnivision*, 559 F. Supp. 2d at 1047.

When Lead Counsel undertook representation of Lead Plaintiff in this Action, it was aware that embarking on a complex securities class action posed a significant risk of non-payment after many years of litigation. *See* Lenahan Decl. ¶37. Despite this risk, Lead Counsel prosecuted this Action on a contingent fee basis and has not received any compensation for its services or reimbursement for the expenses it has incurred. *Id.* In order to reach the Settlement for the benefit of the Class, Lead Counsel has had to work thoroughly and diligently, investing a significant amount of time and energy into the litigation of this Action. Through these efforts, Lead Counsel has incurred 1,238.50 hours of attorney and staff time and $27,486.76 in expenses

10

without reimbursement.  *See id.* at ¶¶44, 48, Exs. B, C.  "This type of substantial outlay, when there is a risk that [no money] will be recovered, further supports the award of the requested fees."  *Am. Apparel*, 2014 WL 10212865, at *22; *see also In re DJ Orthopedics, Inc. Sec. Litig.*, 2004 WL 1445101, at *7 (S.D. Cal. June 21, 2004) (finding requested fee of 25% of the settlement fund reasonable when counsel litigated the case on a contingency fee basis because, *inter alia*, "Plaintiffs' counsel conducted all of these activities with no guarantee of compensation for the investment of time and resources[]").

In addition to the time and expense incurred during the litigation of this Action, the fact that the lawyers working on this Action have foregone the business opportunity to devote time to other cases, supports the reasonableness of the requested fee.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (considering opportunity cost); *McPhail v. First Command Fin. Planning, Inc.*, 2009 WL 839841, at *7 (S.D. Cal. Mar. 30, 2009) (approving 25% fee where "Class Counsel took this case under a contingent fee basis, advanced all costs in the litigation, and had to forego other financial opportunities[]").

### 5. The Fee Is In Line With the Customary Fee in Similar Actions

"This circuit has established 25% of the common fund as a benchmark award for attorney fees."  *Boeing*, 327 F.3d at 968.  In regard to the fees awarded in similar actions, "several other courts . . . have concluded that a 25 percent award was appropriate in complex securities class actions. . . . Indeed, in many securities class actions, the award has exceeded the 25[%] benchmark."  *Zynga*, 2016 WL 537946, at *18; *see e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming a fee award of 33.33% of the $1.725 million fund); *Omnivision*, 559 F. Supp. 2d at 1047-48 (approving a 28% fee award); *In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, at *3 (N.D. Cal. July 6, 2011) (approving a 30% fee); *In re CV Therapeutics, Inc., Sec. Litig.*, 2007 WL 1033478, at *1 (N.D. Cal. Apr. 4, 2007) (same).

Accordingly, it is respectfully submitted that the attorneys' fees requested here are well within the range of fees awarded in this Circuit and in other securities class actions.

### 6. The Requested Fee Is Reasonable Under the Lodestar Cross-Check

This District's Procedural Guidance for Class Action Settlements requires that "[a]ll

11

requests for approval of attorneys' fees must include detailed lodestar information, even if the requested amount is based on a percentage of the settlement fund."  The "lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Immune Response*, 497 F. Supp. 2d at 1176.  As the court in *Vizcaino*, 290 F.3d at 1050, explained:

> Where such investment [of time] is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable.  Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted. Thus, while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award.

"The lodestar is calculated by multiplying the number of hours . . . reasonably expended on the litigation by a reasonable hourly rate." *Zynga*, 2016 WL 537946, at \*18.  "In securities class actions, it is common for a counsel's lo[de]star figure to be adjusted upward by some multiplier reflecting a variety of factors such as the effort expended by counsel, the complexity of the case, and the risks assumed by counsel." *Heritage*, 2005 WL 1594403, at \*22.

Although this Action settled relatively early in the litigation, Lead Counsel devoted a significant amount of time to the prosecution of this case to protect the Class's interests.   Much of this time was spent conducting a thorough investigation into the relevant facts, responding to Defendants' Motion To Dismiss and Request for Judicial Notice, as well as engaging in contentious settlement negotiations with defense counsel.  *See* Lenahan Decl. ¶44, Ex. B.   As set forth in the lodestar report submitted herewith, Lead Counsel has expended 1,238.50 hours on this litigation (excluding time spent in connection with this fee motion).  *See id*.

Partners' rates are $595 to $1,050 per hour, associates' rates range from $475 to $550 per hour, and paralegals' rates range from $250 to $400 per hour.  *See* Lenahan Decl. ¶¶44, 47.  These are "reasonable hourly rate[s] for the region and for the experience of the lawyer[,]"[6]

---

[6]    *See, e.g.*, *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liability Litig.,* 2017 WL 1047834, at \*5 (N.D. Cal. Mar. 17, 2017) (finding lodestar cross-check supported the reasonableness of the requested fee award where "[t]he blended average hourly billing rate is $529 for all work performed and projected, with billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals[]"); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at \*14 (N.D. Cal. Dec. 18, 2018) (finding

12

*Bluetooth*, 654 F.3d at 941, and when multiplied by the number of hours expended, result in a lodestar of $730,981.25.  When the lodestar is compared to the fee of approximately $500,000 requested by Lead Counsel, it results in a negative lodestar multiplier.  *See id.* at ¶47.

Lead Counsel will also devote additional hours and resources to this Action on an ongoing basis, including: preparing for and participating in the Final Approval Hearing; assisting potential Class Members with the completion and submission of their Proof of Claim forms; monitoring the claims process; corresponding with the Claims Administrator; and supervising the distribution of the Net Settlement Fund to Settlement Class Members.

Thus, there can be no question that Lead Counsel's requested fee award is fair and reasonable under the lodestar cross-check, as it represents substantially less than the actual amount of time Lead Counsel devoted (and will continue to devote) to this Action.

## II. THE LITIGATION EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED

Lead Counsel also respectfully requests reimbursement of $27,486.76, plus accrued interest, for expenses reasonably incurred in prosecuting this Action.  *See* Lenahan Decl. ¶48, Ex. C.  "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Heritage*, 2005 WL 1594403, at *23.  The appropriate analysis to apply in deciding whether expenses are compensable in a common fund case is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.  *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client.").  "To that end, courts throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation." *Zynga*, 2016 WL 537946, at

reasonable plaintiffs' counsel's rates that ranged from $650 to $1,250 for partners or senior counsel, from $400 to $650 for associates, and from $245 to $350 for paralegals).

13

*22 (approving expense request for, *inter alia*, "copying, court costs, computer research, delivery fees, expert and investigator fees, mediation, telephone, and travel costs[]"); *Rieckborn v. Velti PLC*, 2015 WL 468329, at *22 (N.D. Cal. Feb. 3, 2015) (approving $219,469.67 in expenses for primarily "experts, consultants, and investigators" and "computerized factual and legal research and [] travel expenses"). Courts often award interest on expense requests as well. *See In re Vocera Commn's, Inc. Sec. Litig.*, 2016 WL 8201593, at *1 (N.D. Cal. July 29, 2016) (awarding "payment of litigation expenses in the amount of $382,010.861, plus interest at the same rate earned by the Settlement Fund"); *In re Hewlett-Packard Co. Sec. Litig.*, 2014 WL 12656737, at *1 (C.D. Cal. Sept. 15, 2014) (similar).

Lead Counsel has itemized the categories of expenses the law firm and incurred and attest to their accuracy. *See* Lenahan Decl. ¶¶48-55, Ex. C. Lead Counsel's expenses include damages consultant fees, mediation fees, filing fees, electronic research, photocopying, postage, and travel, all of which Lead Counsel believes were reasonable and necessary to adequately prosecute the claims in this Action. *See* Lenahan Decl. ¶¶52-55, Ex. C.[7] One of the most significant expenses was the cost of the consulting damages expert, Stanford Consulting Group, Inc. ("SCG"), which totaled $16,271. *See* Lenahan Decl. ¶¶50-51. Lead Counsel retained SCG to consult on damages issues and prepare the Plan of Allocation. *See id.* at ¶¶51-52. Lead Counsel respectfully submits that SCG's fees, as well as the remaining expenses for which Lead Counsel seeks reimbursement, were reasonable and necessary to prosecute this Action and reach the favorable Settlement. *See id.* ¶¶52-55.

Thus, Lead Counsel respectfully requests an award of $27,486.76, plus accrued interest, as reimbursement for these reasonable expenses.

---

[7] The $27,486.76 also includes estimated expenses of $1,000 for hotel, transportation, and meals that Lead Counsel anticipates it will incur should travel be required for the Final Approval Hearing. Lead Counsel will reduce its request accordingly if these expenses are not incurred.

14

## III.    THE REQUESTED AWARD FOR LEAD PLAINTIFF IS REASONABLE

Finally, Lead Counsel seeks an award in the amount of $871 for the Lead Plaintiff's costs and expenses pursuant to the PSLRA, 15 U.S.C. §77z-1(a)(4).

The PSLRA limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class[,]" but explicitly provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."  15 U.S.C. §77z-1(a)(4).  Congress acknowledged "that lead plaintiffs *should* be reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and grants the courts discretion to award fees accordingly."  H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. (1995).

Many courts have construed 15 U.S.C. §77z-1(a)(4) to include as compensable "costs" or "expenses" the amount of time spent on litigation that would otherwise have been spent on other things, such as the lead plaintiff's work, investment activities, or personal life.  *See Ramsey v. MRV Commc'ns Inc.*, 2010 WL 11596641, at *8-9 (C.D. Cal. Nov. 16, 2010) (applying 15 U.S.C. §78u-4(a)(4)—the Exchange Act's analogue to 15 U.S.C. §77z-1(a)(4)— and awarding the lead plaintiff $11,000 for 35.75 hours he spent working on the case at the hourly rate of $300 an hour, which the court found appropriate for a lead plaintiff who works in the financial industry or runs a business, and collecting cases); *In re Bear Stearns Cos., Inc. Sec., Derivative, and ERISA Litig.*, 909 F. Supp. 2d 259, 273 (S.D.N.Y. 2012) (awarding $31,053.14 to lead plaintiff).

Lead Plaintiff's request here is justified for similar reasons.  As set forth in David Sterrett's declaration accompanying this motion, Lead Plaintiff conservatively estimates that he spent 13 hours of his time in work directly related to the representation of the Class.  Lenahan Decl., Ex. D at ¶6.  Lead Plaintiff's work on behalf of the Class included: (1) engaging in communications with Lead Counsel; (2) gathering information concerning his Sonim transactions and providing them to Lead Counsel; (3) submitting a sworn certification and a

15

sworn declaration as part of the Lead Plaintiff process to provide information about his Sonim transactions, his biography, and understanding of the Lead Plaintiff's duties; (4) reviewing documents filed in the Action; and (5) consulting with counsel and providing input on the mediation and settlement negotiations. *See* Ex. D at ¶¶4-5. The value of Lead Plaintiff's time, as explained in his declaration, is estimated to be about $67 per hour. *Id.* at ¶6.

Accordingly, Lead Counsel, on behalf of Lead Plaintiff, respectfully requests that the Court reimburse Lead Plaintiff for his reasonable costs and expenses, amounting to $871 incurred in fulfilling his duty to ably represent the Class's interests and achieve the favorable result reflected in the Settlement.

## CONCLUSION

For the reasons stated above, Lead Counsel respectfully requests that the Court award attorneys' fees of 25% of the Settlement Fund, reimbursement of litigation expenses in the amount of $27,486.76 plus accrued interest, and an award to Lead Plaintiff in the amount of $871.

Dated: December 4, 2020

**FARUQI & FARUQI, LLP**

By:  */s/ Katherine M. Lenahan*
　　　　Katherine M. Lenahan

Richard W. Gonnello (admitted *pro hac vice*)
Katherine M. Lenahan (admitted *pro hac vice*)
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: rgonnello@faruqilaw.com
　　　　klenahan@faruqilaw.com

Benjamin Heikali SBN 307466
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
Email:  bheikali@faruqilaw.com

*Attorneys for [Proposed] Class Representative David Sterrett and [Proposed] Class Counsel for the [Proposed] Settlement Class*