Richard W. Gonnello (admitted *pro hac vice*)
Katherine M. Lenahan (admitted *pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: rgonnello@faruqilaw.com
        klenahan@faruqilaw.com

Benjamin Heikali SBN 307466
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
Email: bheikali@faruqilaw.com

*Attorneys for [Proposed] Class Representative David Sterrett*
*and [Proposed] Class Counsel for the [Proposed] Settlement Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID STERRETT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>SONIM TECHNOLOGIES, INC., ROBERT PLASCHKE, JAMES WALKER, MAURICE HOCHSCHILD, ALAN HOWE, KENNY YOUNG, SUSAN G. SWENSON, JOHN KNEUER, JEFFREY D. JOHNSON, OPPENHEIMER & CO., INC., LAKE STREET CAPITAL MARKETS, LLC, and NATIONAL SECURITIES CORPORATION,<br><br>Defendants. | **DECLARATION OF KATHERINE M. LENAHAN IN SUPPORT OF LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND AN AWARD FOR LEAD PLAINTIFF**<br><br>Case No. 3:19-cv-06416-MMC<br><br>**<u>CLASS ACTION</u>** |

I, Katherine M. Lenahan, declare as follows:

1.    I am a member in good standing of the bar of the State of New York and am admitted *pro hac vice* to practice before the bar of the Northern District of California.  I am a partner in the law firm of Faruqi & Faruqi, LLP, which represents Lead Plaintiff David Sterrett and the proposed Class in the above-captioned securities class action pending in this Court (the "Action").[1]  I have been actively involved in the prosecution of this Action and have personal knowledge of the matters set forth herein based upon my close supervision and participation in the Action.  If called upon, I could and would competently testify that the following facts are true and correct.

## I.    PRELIMINARY STATEMENT

2.    I respectfully submit this Declaration in support of Lead Counsel's Motion for Attorneys' Fees, Expenses, and an Award for Lead Plaintiff ("Fee Motion"), which is filed concurrently herewith.

3.    Lead Plaintiff, on behalf of himself and the putative Class, and defendants Sonim Technologies, Inc. ("Sonim" or the "Company"), Robert Plaschke, James Walker, Maurice Hochschild, Alan Howe, Kenny Young, Susan G. Swenson, John Kneuer, Jeffrey D. Johnson (collectively, the "Sonim Defendants"), and underwriters Oppenheimer & Co, Inc., Lake Street Capital Markets, LLC, National Securities Corporation (collectively, the "Underwriter Defendants") (collectively, with the Sonim Defendants, "Defendants") have reached a proposed settlement of this Action for $2,000,000 in cash that, if approved, will resolve all claims in the Action.

4.    The terms of the Settlement are set forth in the Stipulation.  The Court preliminary approved the Stipulation by its Order Preliminarily Approving Settlement and Providing for Notice, dated November 6, 2020 (ECF No. 105) ("Preliminary Approval Order").

---

[1]    Unless otherwise noted, the following conventions are used herein: (a) all emphases are added; (b) all internal citations and quotations are omitted; (c) all capitalized terms have the meaning ascribed to them in the Stipulation of Settlement dated September 10, 2020 ("Stipulation"), ECF No. 75; and (d) all page references are to a document's native pagination unless unavailable, in which case the ECF-stamped pagination is used.

1

5. This declaration sets forth the factual and procedural history of the Action relevant to the Fee Motion, and demonstrates why Lead Counsel's application for attorneys' fees, reimbursement of expenses, and an award for Lead Plaintiff pursuant to 15 U.S.C. §77z-1(a)(4) should be approved.

6. While Lead Counsel believes that the allegations in the Action have substantial merit, Lead Counsel respectfully submits that the Settlement represents a favorable result for the Class.

7. The Settlement is the result of extensive arm's-length and contentious settlement negotiations among experienced and capable counsel with a comprehensive understanding of the merits and value of the claims asserted.  With the assistance of an esteemed mediator, counsel met for a mediation session to vigorously debate the strengths and weaknesses of the claims and defenses in the Action.  While the mediation session did not result in a settlement, the parties continued to negotiate with the mediator's assistance.  As a result of these continued discussions, which included the evaluation and acceptance of the mediator's proposal for the Settlement Amount, and an additional mediation/arbitration session to resolve a dispute over a material term of the Settlement, the parties agreed to settle the Action.   Lead Counsel's ability to come to a compromise in light of the many complex issues present in this Action evidenced the skill of representation and the quality of the results.

8. Throughout the litigation, Lead Counsel has successfully overcome the significant obstacles that this Action has presented and adeptly navigated the complicated issues of law and fact inherent to a securities class action.  The Settlement provides an immediate and certain benefit to the Class considering the significant risks that a smaller recovery—or, indeed, no recovery at all—might be achieved after a trial and the likely appeals that would follow, which could prolong the Action for years and incur significant additional expenses.

9. Lead Counsel respectfully requests that the Court award attorneys' fees in the amount of $500,000 plus accrued interest, reimbursement of expenses in the amount of $27,486.76, plus accrued interest, and an award for Lead Plaintiff in the amount of $871 as fair and reasonable.  The fee award constitutes 25% of the Settlement Fund, which is in line with the

benchmark for attorneys' fees awarded by courts in this Circuit and is reasonable in light of the relevant factors, including the quality of the representation, the complexity of the Action, and the risks of representing the Class in this Action. The expenses incurred by Lead Counsel were reasonable and necessary to prosecute this Action and to reach this favorable result for the Class. Lead Plaintiff also worked diligently to serve the Class throughout this litigation.

10. As set forth in the Amended Class Action Complaint ("AC"), ECF No. 55, this Action alleges that Defendants violated §§11 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§77k and 77o, by reason of material misrepresentations and omission in the Registration Statement for Sonim's IPO. *See* AC ¶¶2, 6-9, 48-64.

11. Defendants have denied and continue to deny each and all of the claims and contentions alleged by Lead Plaintiff in this Action, and that they have committed any act or omission giving rise to any liability or violation of law under the U.S. securities laws. Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action. Defendants also have denied and continue to deny, *inter alia*, the allegations that Lead Plaintiff or Members of the Class have suffered damage, or were otherwise harmed by the conduct alleged in this Action. Defendants have asserted and continue to assert that the Registration Statement and Defendants' statements to investors, potential investors, and market participants contained no material misstatements or omissions. Defendants have asserted and continue to assert that, at all times, they acted in good faith and in a manner reasonably believed to be in accordance with all applicable rules, regulations and laws. Each Defendant reserves all defenses to any claims that may be filed by any Person who opts out of the settlement set forth in this Stipulation. *See* Stipulation at 3-4.

## II.    PROCEDURAL HISTORY

12. On October 7, 2019, plaintiff Ajay Malhotra filed the initial class action complaint in the United States District Court for the Northern District of California. ECF No. 1.

3

13.     Shortly before that complaint was filed, a securities class action was filed in California state court against the same defendants on behalf of the same class of investors. *See In re Sonim Techs., Inc. Sec. Litig.*, No. 19CIV05564 (Cal. Sup. Ct.) ("State Court Action").

14.     On December 6, 2019, several plaintiffs moved to be appointed as lead plaintiff in accordance with the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §77z-1, and to have their selection of counsel appointed as lead counsel. *See* ECF Nos. 16, 20, 22, 30. On January 22, 2020, the Court appointed Mr. Sterrett as Lead Plaintiff, and his counsel, the Faruqi Firm, was appointed Lead Counsel. ECF No. 52.

15.     On February 24, 2020, Lead Plaintiff filed the AC. ECF No. 55. When developing the claims in the AC, Lead Counsel conducted an extensive investigation into the facts alleged in the Action, reviewing, *inter alia*, documents filed publicly with the Securities and Exchange Commission ("SEC"); press releases; news articles; financial information; analyst reports; and other public statements issued by or concerning Sonim in, for example, conference call transcripts.

16.     On April 1, 2020, the Sonim Defendants filed the Motion To Dismiss the Amended Complaint ("Motion To Dismiss" or "MTD"), ECF No. 62, as well as the Request for Incorporation By Reference and Judicial Notice ("Request for Judicial Notice" or "RJN"), ECF No. 62-1, and the Underwriter Defendants filed a joinder in the MTD, ECF No. 63. Defendants argued, *inter alia*, that the AC failed to adequately plead facts showing that the challenged statements were false when made, that the Registration Statement disclosed the risks that the AC alleges were hidden, and that the challenged statements constitute inactionable opinion and puffery. *See generally* MTD.

17.     On May 1, 2020, Lead Plaintiff filed his opposition to the MTD, ECF No. 65, as well as a Motion To Strike Defendants' Extrinsic Exhibits And Related Arguments Submitted With Defendants' Motion To Dismiss ("Motion To Strike"), ECF No. 64. The Court converted the Motion To Strike to an opposition to Defendants' RJN. ECF No. 66.

18.     On June 1, 2020, the Sonim Defendants filed their Reply in Support of the MTD, ECF No. 69, as well as their Reply in Support of the Request for Judicial Notice, ECF No. 70.

## III.    THE SETTLEMENT

### A.    Settlement Negotiations

19.    From the outset, Lead Counsel has tirelessly navigated the complicated issues present in this Action.  Prior to engaging in settlement negotiations, Lead Counsel spent considerable time evaluating the facts and arguments available in this Action through the following: (1) conducting an extensive investigation into the facts alleged in the Action, including reviewing press releases, SEC filings, conference call transcripts, analyst reports, and news articles; (2) researching and drafting the detailed AC; (3) conducting complex legal research for and drafting briefing related to Defendants' Motion To Dismiss and Request for Judicial Notice; and (4) conferring with a consulting damages expert.

20.    With the benefit of this investigation and comprehensive analysis of the factual and legal issues in this Action, all Settling Parties entered settlement negotiations well-informed of the strengths and weaknesses of the claims and defenses asserted in this Action.

21.    On June 24, 2020, the parties met for a mediation session before the Hon. Elizabeth Laporte (Ret.), a well-respected mediator who served as a United States Magistrate Judge in this District for more than two decades.  *See* Stipulation at 2.

22.    Prior to the mediation session, Sonim provided Lead Plaintiff a core document production of 3,484 pages of materials and made its Chief Financial Officer ("CFO") available to Lead Counsel pursuant to the mediation confidentiality agreement.  The mediation session was also preceded by submission of mediation statements and exhibits.

23.    No settlement was reached during the June 24th mediation session. Subsequently, Judge Laporte presented a mediator's proposal for the monetary terms for a settlement of this Action.

24.    Before Lead Plaintiff decided on the mediator's proposal, Lead Counsel requested additional documents from the Underwriter Defendants to better determine the strengths and weaknesses of the Action.  After reviewing these documents and further contemplating the issues, Lead Plaintiff accepted the mediator's proposal.

25.    After the parties agreed to the mediator's proposal for the Settlement Amount, the parties thereafter engaged in further negotiations regarding the complete terms of the

5

Settlement.  During these further negotiations, a dispute arose among the parties regarding the confidential Supplemental Agreement, which sets forth certain conditions under which Sonim shall have the sole option to terminate the settlement and render this Stipulation null and void in the event that requests for exclusion from the settlement Class exceed certain criteria (the "Termination Threshold").  *See* Stipulation ¶7.3.[2]  This necessitated additional written submissions by the parties, and an additional mediation/arbitration session with Judge LaPorte, who ultimately decided the Termination Threshold through final binding non-appealable arbitration.

### B.       Reasons for the Settlement and Risks of Litigation

26.     Although Lead Plaintiff and Lead Counsel strongly believe that the claims asserted in this Action are meritorious and that the evidence developed to date supports them, they recognize and acknowledge the substantial expense and duration of continued proceedings that would be necessary to prosecute the Action.  Lead Plaintiff and Lead Counsel are also mindful of the inherent difficulty of proving claims under the federal securities laws and the possible defenses to the claims asserted in this Action, such as Defendants' potential negative causation defense (*see* 15 U.S.C. §77k(e)) and the Underwriter Defendants' potential due diligence defense (*see* 15 U.S.C. §77k(b)(3)), as well as the uncertainties presented by complex litigation.

27.     While Lead Plaintiff believes that his claims would have survived Defendants' Motion To Dismiss, he acknowledges that this result was far from guaranteed.  Even if the Action survived the Motion To Dismiss, the fact discovery process would likely be time-consuming and expensive.  For example, the AC alleges, *inter alia*, that the Registration Statement's discussion of Sonim's phones' capabilities and the risks facing investors were false and/or misleading for failing to disclose that Sonim conducted inadequate testing of certain of its phones.  *See, e.g.*, AC 40, 60-61, 66, 68.  According to Defendants, such testing involves third parties such as Sonim's wireless carrier channel partners (*e.g.*, AT&T, Sprint, and

---

[2]     At the Court's request, the confidential Supplemental Agreement was filed under seal for the Court's review on November 4, 2020.  ECF Nos. 100, 104.

**DECL. OF KATHERINE M. LENAHAN IN SUPPORT OF FEE MOTION**
Case No. 3:19-cv-06416-MMC

Verizon).  *See* ECF No. 62 (MTD) at 19.  Thus, the fact discovery process would require, among other things, numerous document subpoenas to third parties, which are notoriously difficult to enforce; the retention of expert witnesses regarding highly technical issues about the functioning of cellular phones and the proper testing of such devices; discovery motion practice; production and review of thousands of pages of documents; and taking numerous depositions.

28.     Even if Lead Plaintiff were able to obtain the necessary evidence through discovery, the road to trial would involve numerous motions, including summary judgment, and require the preparation of expert reports and debate over witnesses, all of which would be time consuming and would monopolize valuable court resources.

29.     Assuming that Lead Plaintiff filed a successful class certification motion, the claims in the Action survived Defendants' motion for summary judgment, and the case proceeded to trial, Lead Plaintiff still might not recover anything for the Class.  Defendants have denied, and continue to deny, Lead Plaintiff's allegations, and would undoubtedly continue to vigorously oppose the Action and mount strong defenses were the Action to continue.  There is a significant risk that the jury might be swayed by Defendants' theory of the case at trial, leaving the Class with very little recovery, or no recovery at all.  Even if Lead Plaintiff were to prevail at trial, Defendants might have appealed the decision.  The appeals process can go on for months or even years, significantly prolonging the Action and jeopardizing any recovery awarded to the Class at trial should Defendants be victorious.

30.     Notwithstanding the risks to recovery posed by a trial in this Action, the trial process is lengthy, complicated and would be taxing on the Court and the attorneys involved.

31.     As well, further litigation of the Action would be costly, and would have significantly depleted the funds available for the Settlement.  Based upon Sonim's public filings with the SEC, as well as a call with Sonim's current CFO, it is Lead Counsel's and Lead Plaintiff's understanding that the Company's ability to fund a settlement in this Action is limited, and that continued litigation would further erode the assets available to fund a judgment or a settlement made at a later date.  For example, Sonim is required to indemnify the officers, directors, and underwriters named in this Action, *see* Sonim Form 424 at 26 (filed with the SEC

on June 8, 2020), and the Company has a large self-insured retention on its relevant insurance that would require Sonim to spend a substantial sum on litigation before insurance would cover any costs.

32.    Sonim's ability to spend more on further litigation is limited because, as the Company warned on June 8, 2020, it has not been profitable in recent years and may not achieve or maintain profitability in the future. *See* Sonim Form 424B4 at 5 (filed with the SEC on June 8, 2020). It also warned at that time that "substantial doubt exists as to [Sonim's] ability to continue as a going concern," because, *inter alia*, the Company has "incurred significant net losses since 2013[,]" expects that its costs for research and development will increase, and its principal sources of liquidity as of March 31, 2020 consist of existing cash and cash equivalents of $12.4 million. *See id*. at 5, 12.

33.    Although the Company recently raised funds through another public offering in June, it is Lead Plaintiff's and Lead Counsel's understanding that the proceeds were used to pay a portion of Sonim's debt, and are needed to cover, *inter alia*, the high research and development costs the Company expects to incur to develop and rollout devices that can operate on 5G wireless networks, which is necessary for Sonim to survive in the highly competitive cellular device market. *See id.* at 4, 19. Sonim warned investors once again in August that "substantial doubt exists as to our ability to continue as a going concern," citing, *inter alia*, its current revenue run-rate, the fact that it expects costs to increase in future periods, and that just $4.6 million was provided by Sonim's operating activities during the six months ended June 30, 2020. *See* Sonim Form 10-Q at 27, 30 (filed with the SEC on Aug. 12, 2020).

34.    While recovery from the Individual Defendants and Underwriter Defendants is possible, to date neither group of defendants has indicated any willingness to fund a settlement. Sonim is obligated to indemnify them and it is Lead Counsel's understanding that Sonim has been funding all the litigation costs for all Defendants. While Lead Plaintiff's claims are strict liability as to the Company, the Individual Defendants and Underwriter Defendants have defenses available that the Company does not. For example, Lead Counsel anticipates that the Underwriter Defendants would assert a due diligence defense should the litigation continue.

Underwriter Defendants' counsel affirmed that they would do so during the Preliminary Approval Hearing. *See* Preliminary Approval Motion Hearing Tr. at 14:22 – 15:13 ("[W]e feel very strongly about that defense. We would also bring at least in one expert on that defense. It is something that the underwriters would stand behind and would pursue if this case goes forward."). Lead Counsel believes that Lead Plaintiff would have to prove his case on the merits and overcome this and any other defenses the Underwriter Defendants and Individual Defendants may assert before either group would be willing to contribute any money towards a settlement. Meanwhile, Sonim would continue to foot the bill for their defense costs, further depleting the funds that could have gone towards a settlement, and further increasing the risk of Sonim's insolvency.

35. Additionally, the coronavirus pandemic, which caused a global economic crisis and continues to sow economic uncertainty, makes continued litigation especially risky. Sonim is not immune to the pandemic's effects—it was forced to close its manufacturing facility in Shenzhen for most of February 2020 and has warned that "demand for our solutions may be reduced as a result of the COVID-19 outbreak and resulting market uncertainty." Sonim Form 10-Q at 29-30 (filed with the SEC on Aug. 12, 2020). Many municipalities, a key customer demographic for Sonim, are facing steep budget cuts due to the COVID-19 pandemic. *See* AC ¶33 (Sonim markets its phones to "task workers," including those working for "public sector agencies"); Kim Hart, *The pandemic is hitting city budgets harder than the Great Recession*, Axios.com (Aug. 13, 2020).[3] There is no guarantee that these customers will purchase Sonim's products, or in sufficient quantities, to allow the Company to continue to fund the litigation. Indeed, Sonim's stock has been trading below $1 for much of the year, and closed at just $0.61 on December 2, 2020. *See* SONM, Yahoo! Finance, https://finance.yahoo.com/quote/SONM.

36. In contrast to the foregoing, the Settlement represents an immediate and certain benefit for the Class. Lead Counsel, having evaluated the substantial risk, time, and expense

---

[3] *See* https://www.axios.com/the-pandemic-is-hitting-city-budgets-harder-than-the-greatrecession-0156574a-c5f9-454d-b579-1292595abdca.html

9

required to prosecute this Action through trial and appeals, strongly believes that the Settlement is a favorable result for the Class under the circumstances.

## IV. LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

### A. Attorneys' Fees

37. Lead Counsel has represented the Class on a wholly contingent basis for nearly a year, not receiving any payment for its service or the expenses incurred in prosecuting this Action against Defendants and negotiating the Settlement. Throughout this time, Lead Counsel's dedication to recovering a favorable result for the Class has been expensive and challenging.

38. The Notice approved by the Court will inform Class Members that Lead Counsel will apply for an award of attorneys' fees up to 25% of the Settlement Fund, reimbursement of expenses not to exceed $50,000, and an award for Lead Plaintiff not to exceed $2,500. *See* ECF No. 105-1 at 1.

39. Lead Counsel requests that the Court award a fee of 25% of the Settlement Fund, or $500,000 plus accrued interest.

40. As discussed in the Fee Motion, filed concurrently herewith, the requested fee is fair, adequate, and reasonable in this Action. In addition, in light of the factors including the favorable result achieved for the Class, the skill required, the quality of work performed, and the risk of pursing claims on a contingency basis, Lead Counsel respectfully submits that a fee of 25% of the Settlement Fund is justified and should be approved.

41. According to Lead Plaintiff's damages consultant, if Class Members submit claims for 100% of the shares eligible for distribution, the average distribution per share of common stock will be approximately $0.49 before deduction of Court-approved fees and expenses. The $2,000,000 Settlement Amount will recover approximately 6.3% of the Class's estimated maximum damages, and approximately 14.9% of the Class's estimated damages when crediting a negative causation defense that limits damages to the corrective disclosure alleged in the AC. As explained in the Fee Motion, this is well within the range of court-approved recoveries in actions such as these. Based on Defendants' adamant denial of any

10

liability, as well as the substantial time and expense of continued litigation and the barriers to further recovery posed by Sonim's precarious financial situation and the COVID-19 pandemic, the Settlement Amount represents a favorable recovery for the Class.

42.    Lead Counsel's expertise and persistence have been vital to obtaining such a favorable result for the Class.  As set forth in its firm resume, attached as *Exhibit A* hereto, the Faruqi Firm is a nationally-recognized class action firm with extensive experience litigating and negotiating settlements as lead or co-lead counsel in complex securities class actions.

43.    In order to reach a successful resolution of this Action, Lead Counsel was required to litigate at a high skill level because Defendants were represented by O'Melveny & Myers LLP and Sidley Austin LLP, which fought vigorously for their clients throughout the Action and were formidable opponents.

44.    As set forth in the Faruqi Lodestar Report, a true and correct copy of which is attached hereto as *Exhibit B*, Lead Counsel has committed over a thousand hours to litigating this Action, from the initial investigation to this final resolution.  Specifically, from December 2019 through November 2020, Lead Counsel has devoted 1,238.50 hours to this Action, which includes time spent, *inter alia*: (1) conducting an extensive investigation into the facts alleged in the Action, including reviewing press releases, SEC filings, conference call transcripts, analyst reports, and news articles; (2) conducting research for and briefing the contested lead plaintiff motion; (3) conducting research for and drafting a motion to join in Defendants' motion to stay the State Court Action; (4) conducting research for and drafting the detailed AC; (5) conducting complex legal research for and drafting opposition briefing related to Defendants' Motion To Dismiss and Request for Judicial Notice; (6) conferring with a damages consultant to better understand the issues facing recovery for the Class; (7) drafting a detailed mediation statement; (8) reviewing over 3,000 pages of documents produced by Sonim in connection with the mediation; (9) engaging in a mediation session; (10) requesting and reviewing additional documents from the Underwriter Defendants; (11) corresponding with the mediator and Defendants' Counsel after the session and evaluating the mediator's proposal for the monetary terms of the Settlement; (12) engaging in additional negotiations with Defendants' counsel

regarding the Termination Threshold; (13) drafting additional papers in support of Lead Plaintiff's position with respect to the Termination Threshold for review by the mediator and engaging in an additional mediation/arbitration session with Judge Laporte about that issue; (14) drafting the Settlement Stipulation, Notice, and related materials; (15) drafting the preliminary approval motion papers; and (16) opposing the State Plaintiffs' Motion To Intervene and Object.

45.    Based upon the hours expended by Lead Counsel and the current billing rates for Lead Counsel's professionals, the total lodestar is $730,981.25.  The lodestar results in a negative multiplier where the fee requested by Lead Counsel in the amount of $500,000 (plus accrued interest) is significantly less than Lead Counsel's lodestar.

46.    Lead Counsel's time is taken from daily time records regularly prepared and maintained by the firm in the ordinary course of business.  The hours expended in preparing this application for fees and reimbursement of expenses have been excluded from Lead Counsel's total time.

47.    The total number of hours reasonably and necessarily spent by Lead Counsel in this Action is 1,238.50 hours.  Lead Counsel's hourly billing rates range from $595 to $1,050 for partners, $475 to $550 for associates, and $250 to $400 for paralegals.  The total lodestar amount for attorney and support staff time, based on the Faruqi Firm's current rates is $730,981.25.  The hourly rates for attorneys and support staff in the Faruqi Firm, included in *Exhibit B*, are reasonable for the region and the expertise of the attorneys.

**B.    Costs and Expenses**

48.    The expenses incurred by Lead Counsel in the prosecution of this Action are set forth in the accompanying Expenses Report from the Faruqi Firm, a true and correct copy of which is attached hereto as *Exhibit C*.  In total, Lead Counsel has incurred $26,486.76 in expenses, and estimates that it will incur another $1,000 in connection with the Final Approval Hearing.

49.    The expenses in the Expense Report are taken from the books and records of the Faruqi Firm maintained in the ordinary course of business. The books and records are prepared

12

from expense vouchers, check records, and other such documents.  The expenses were reasonable and necessary for the effective and efficient prosecution of this Action and are the type that would normally be charged to a fee-paying client in the private legal marketplace.

50.    The majority of this amount, $16,271.00, represents expenses primarily incurred by the damages consultant retained by Lead Counsel.

51.    Lead Counsel retained an economic consulting firm, Stanford Consulting Group, Inc. ("SCG"), to consult on the damages issues present in this Action, including the maximum possible damages available, the strength of Defendants' potential negative causation defense and the extent to which it would reduce the Class's damages.  SCG also assisted with the preparation of the Plan of Allocation.

52.    Lead Counsel respectfully submits that the fees paid to SCG were reasonable and necessary to prosecute this Action.

53.    The next major expense, $4,851.55, was for mediation fees, which Lead Counsel respectfully submits were necessary to reach the Settlement.

54.    The remainder of Lead Counsel's expenses, $6,364.21, reflect routine and typical expenditures incurred during the course of litigation, including filing fees, electronic research, photocopying, postage, and transportation.  This amount also includes estimated expenses of $1,000 for hotel, transportation, and meals that Lead Counsel anticipates that it will incur should travel be required for the Final Approval Hearing.[4]  All of these expenditures are the types of expenses incurred in similar class actions of this size and would be billed to a fee-paying client.

55.    The total expenses, $27,486.76, are approximately 55% of the $50,000 in potential expenses that the Notice informed the Class may be incurred.  Lead Counsel respectfully submits that these expenses are reasonable in light of the pace and duration of the Action and were necessarily incurred for its successful resolution.  Lead Counsel understood that it might not recover any expenses in the event the Action was dismissed, and thus took

---

[4]    Lead Counsel will reduce its request for reimbursement accordingly in the event no travel is required for the Final Approval Hearing.

**DECL. OF KATHERINE M. LENAHAN IN SUPPORT OF FEE MOTION**
**Case No. 3:19-cv-06416-MMC**

steps to minimize costs wherever possible without jeopardizing its duty to zealously represent the Class.

### C.   Award for Lead Plaintiff

56.   Lead Counsel also respectfully requests that the Court grant an award in the amount of $871 to Lead Plaintiff, to reimburse Lead Plaintiff for his service as representative of the Class in this Action.

57.   As set forth in the Declaration of David Sterrett, attached hereto as *Exhibit D*, Lead Plaintiff has taken his role as representative of the Class seriously.  Over the course of this litigation, he conservatively estimates that he has dedicated at least 13 hours of his time to this Action by: (1) engaging in communications with Lead Counsel; (2) gathering information concerning his Sonim transactions and providing them to Lead Counsel; (3) submitting a sworn certification and a sworn declaration as part of the Lead Plaintiff process to provide information about his Sonim transactions, his biography, and understanding of the Lead Plaintiff's duties; (4) reviewing documents filed in the Action; and (5) consulting with counsel and providing input on the mediation and settlement negotiations .  *See* Ex. D at ¶¶4-6.

58.   Thus, Lead Plaintiff actively and effectively complied with the demands that arose during the litigation and settlement of this Action.  The types of activities that Lead Plaintiff has engaged in are precisely the type of efforts that courts have found support an award to class representatives.  Because Lead Plaintiff has played an integral role in this Action, Lead Counsel respectfully submits that he should be reimbursed for the time and effort he devoted to actively representing the Class in this Action.

59.   Attached hereto as *Exhibit A* is a true and correct copy of the Faruqi Firm's resume.

60.   Attached hereto as *Exhibit B* is a true and correct copy of the Faruqi Firm's Lodestar Report.

61.   Attached hereto as *Exhibit C* is a true and correct copy of the Faruqi Firm's Expense Report.

62.    Attached hereto as *Exhibit D* is a true and correct copy of the Declaration of David Sterrett.

## V.    CONCLUSION

63.    Lead Counsel respectfully submits that attorneys' fees in the amount of 25% of the Settlement Fund, or $500,000 plus accrued interest, should be approved as fair and reasonable; that the expenses in the amount of $27,486.76, plus accrued interest, should be reimbursed; and that Lead Plaintiff should be granted an award in the amount of $871 for the time and effort he put forth participating in the Action.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 4th day of December 2020.

*/s/ Katherine M. Lenahan*
Katherine M. Lenahan

15