Richard W. Gonnello (admitted *pro hac vice*)
Katherine M. Lenahan (admitted *pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: rgonnello@faruqilaw.com
       klenahan@faruqilaw.com

Benjamin Heikali SBN 307466
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
Email: bheikali@faruqilaw.com

*Attorneys for [Proposed] Class Representative David Sterrett
and [Proposed] Class Counsel for the [Proposed] Settlement Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID STERRETT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SONIM TECHNOLOGIES, INC., ROBERT PLASCHKE, JAMES WALKER, MAURICE HOCHSCHILD, ALAN HOWE, KENNY YOUNG, SUSAN G. SWENSON, JOHN KNEUER, JEFFREY D. JOHNSON, OPPENHEIMER & CO., INC., LAKE STREET CAPITAL MARKETS, LLC, and NATIONAL SECURITIES CORPORATION,<br><br>Defendants. | Case No. 3:19-cv-06416-MMC<br><br>**LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**CLASS ACTION**<br><br>Judge: The Hon. Maxine M. Chesney<br>Date: March 5, 2021<br>Time: 9:00 a.m.<br>Courtroom: 7 – 19th Floor |

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION AND STATEMENT OF COURT ACTION SOUGHT ...........1

STATEMENT OF ISSUES TO BE DECIDED ................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................2

INTRODUCTION ...........................................................................................................................2

FACTUAL AND PROCEDURAL BACKGROUND ....................................................................3

ARGUMENT ..................................................................................................................................4

I.     THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL ....................................4

    A.     The Proposed Settlement Is Not The Result Of Collusion ....................................5

    B.     The Proposed Settlement Is Fair, Adequate, And Reasonable ..............................5

         1.     The Class Has Been Adequately Represented ............................................7

         2.     The Proposed Settlement Was Negotiated at Arm's Length ......................7

         3.     The Relief Provided for the Class is Adequate ..........................................9

             a.     The Costs, Risks, and Delay of Trial and Appeal .........................9

             b.     The Proposed Method for Distributing Relief Is Effective ..........11

             c.     Terms of Attorneys' Fees and Timing of Payment .....................12

             d.     Related Agreements .......................................................................12

         4.     The Settlement Treats Class Members Equitably .....................................13

         5.     The Extent of Discovery Completed and the Stage of Proceedings.........13

         6.     Risk of Maintaining Class Action Status Through Trial ..........................14

         7.     The Experience and Views of Counsel .....................................................14

         8.     The Reaction of the Class...........................................................................15

II.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE ........................16

III.     THE NOTICE PROGRAM SATISFIES RULE 23, THE PSLRA, AND DUE PROCESS ..........17

IV.     THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ...............................18

CONCLUSION ...................................................................................................................... 19

1

2

## TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*In re Am. Apparel, Inc. Shareholder Litig.*,
   2014 WL 10212865 (C.D. Cal. July 28, 2014) ...............................................16

*In re Bear Stearns Cos., Inc. Sec., Derivative, and ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ..............................................................18

*In re Celera Corp. Sec. Litig.*,
   2015 WL 7351449 (N.D. Cal. Nov. 20, 2015)........................................9, 15, 18

*In re Chrysler-Dodge-Jeep Ecodiesel® Mtg., Sales Practices, & Prods. Liab.
   Litig.*,
   2019 WL 2554232 (N.D. Cal. May 3, 2019) ......................................................6

*Chun-Hoon v. McKee Foods Corp.*,
   716 F. Supp. 2d 848 (N.D. Cal. 2010)...............................................................15

*Churchill Village, L.L.C. v. General Electric*,
   361 F.3d 566 (9th Cir. 2004) ...........................................................................6, 9

*Destefano v. Zynga, Inc.*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .....................................................5, 6

*In re Extreme Networks, Inc. Sec. Litig.*,
   2019 WL 3290770 (N.D. Cal. July 22, 2019) ....................................................13

*In re GSE Bonds Antitrust Litig.*,
   2020 WL 3250593 (S.D.N.Y. June 16, 2020)......................................................7

*Hayes v. MagnaChip Semiconductor Corp.*,
   2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) .....................................................5

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...................................................13

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005)................................................5, 16

*In re High-Tech Employee Antirust Litig.*,
   2015 WL 5159441 (N.D. Cal. Sept. 2, 2015)....................................................16

*Hosey v. Cotolo, et al.*,
   No. 16-CIV-02228, Judgment and Order Granting Final Approval of Class
   Action Settlement (Cal. Sup., San Mateo Cty. Aug. 16, 2018).........................11

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) .............................................................15

*Johansson-Dohrmann v. Cbr Sys., Inc.*,
  2013 WL 3864341 (S.D. Cal. July 24, 2013) .................................................................9

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) .......................................................................................9

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) .................................................................................14

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ...............................................................7

*Nobles v. MBNA Corp.*,
  2009 WL 1854965 (N.D. Cal. June 29, 2009) ...........................................................5, 10

*Officers for Justice v. Civil Service Comm'n of City and County of San
  Francisco*,
  688 F.2d 615 (9th Cir. 1982) .........................................................................................9

*Oh v. Chan, et al.*,
  No. 2:07-cv-04891-DDP-AJW (C.D. Cal. Sept. 24, 2009), ECF No. 100............................11

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008).........................................................................15

*Patel v. Axesstel, Inc.*,
  2015 WL 6458073 (S.D. Cal. Oct. 23, 2015) ...............................................................16

*Ramirez v. Ghilotti Bros. Inc.*,
  2014 WL 1607448 (N.D. Cal. Apr. 21, 2014)...............................................................14

*Rieckborn v. Velti PLC*,
  2015 WL 468329 (N.D. Cal. Feb. 3, 2015)...................................................................14

*Rodriguez v. West Publishing Corp.*,
  563 F.3d 948 (9th Cir. 2009) .........................................................................................7

*Vaccaro, et al. v. New Source Energy Partners L.P., et al.*,
  No. 1:15-cv-08954 (KMW) (S.D.N.Y. Dec. 14, 2017), ECF No. 74 ................................11

*Villegas v. J.P. Morgan Chase & Co.*,
  2012 WL 5878390 (N.D. Cal. Nov. 21, 2012)...............................................................12

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
  2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ...............................................................13

*Walsh v. CorePower Yoga LLC*,
  2017 WL 4390168 (N.D. Cal. Oct. 3, 2017) ..................................................................8

*In re Worldspace, Inc. Sec. Litig.*,
  1:07-cv-02252-RMB (S.D.N.Y. June 3, 2013), ECF No. 107 .......................................11

iii

**Other Authorities**

Rule 23 ......................................................................................................................... *passim*

**NOTICE OF MOTION AND MOTION AND STATEMENT OF COURT ACTION SOUGHT**

TO:  ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

PLEASE TAKE NOTICE that on March 5, 2021 at 9:00 a.m., before the Honorable Maxine M. Chesney, Lead Plaintiff David Sterrett ("Lead Plaintiff") will move this Court for an order granting: (i) final approval of the proposed Settlement of this Action; (ii) final certification of the proposed class for purposes of Settlement; and (iii) final approval of the proposed Plan of Allocation.[1]  The grounds for this motion are that the terms of the proposed Settlement and the Plan of Allocation are fair, reasonable, and adequate and have received a positive reaction from the Class.

This motion is based upon the Memorandum of Points and Authorities set forth below; the Declaration of Katherine M. Lenahan ("Lenahan Declaration" or "Lenahan Decl."), with attached exhibits, filed herewith; the RG2 Declaration, with attached exhibits, filed herewith; and the pleadings and records on file in this action; and other such matters and argument as the Court may consider at the hearing of this motion.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the Court should approve the proposed Settlement as fair, reasonable, and adequate under Federal Rule of Civil Procedure ("Rule") 23(e), the PSLRA, and due process.

2.      Whether the Court should approve the Plan of Allocation as fair, reasonable, and adequate.

3.      Whether the Court should grant final certification of the Action as a class action pursuant to Rules 23(a) and (b)(3) for settlement purposes and appoint Lead Plaintiff as Class Representative and Faruqi & Faruqi, LLP (the "Faruqi Firm") as Class Counsel.

---

[1]      Unless otherwise noted, the following conventions are used herein: (a) all emphases are added; (b) all internal citations and quotations are omitted; (c) all capitalized terms have the meaning ascribed to them in the Stipulation of Settlement dated September 10, 2020 ("Stipulation"), ECF No. 75; (d) all references to the "Settlement" are to the settlement described in the Stipulation; (e) all references to the "RG2 Declaration" or "RG2 Decl." are to the Declaration of Tina Chiango, filed herewith; and (f) all page references are to a document's native pagination unless unavailable, in which case the ECF-stamped pagination is used.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Lead Plaintiff, on behalf of himself and the putative Class, respectfully submits this memorandum in support of his motion for final approval of the Settlement and requests that the Court enter the proposed Final Judgment filed herewith which will, among other things: (1) approve the Settlement on the terms set forth in the Stipulation; (2) certify the Class for settlement purposes; and (3) approve the Plan of Allocation.

**INTRODUCTION**

As discussed in Lead Plaintiff's Motion for Preliminary Approval of the Class Action Settlement ("Preliminary Approval Motion"), ECF No. 76, Lead Plaintiff, on behalf of himself and the putative Class, and defendants Sonim Technologies, Inc. ("Sonim" or the "Company"), Robert Plaschke, James Walker, Maurice Hochschild, Alan Howe, Kenny Young, Susan G. Swenson, John Kneuer, Jeffrey D. Johnson (collectively, the "Sonim Defendants"), and underwriters Oppenheimer & Co., Inc., Lake Street Capital Markets, LLC, National Securities Corporation (collectively, the "Underwriter Defendants") (collectively, with the Sonim Defendants, "Defendants"), have reached a proposed classwide settlement for $2,000,000 that, if given final approval, will resolve all claims in the above-captioned action (the "Action").  The Settlement represents a favorable result for the Class in light of the significant risk that a smaller recovery—or ***no recovery*** at all—might be achieved after further litigation, particularly in light of the risks posed by Sonim's precarious financial position and the global economic crisis triggered by the COVID-19 pandemic.

As discussed below and in the Lenahan Declaration, the Settlement resulted from arms'-length negations among experienced and capable counsel with a comprehensive understanding of the merits and value of the claims asserted.

The Class's reaction to the Settlement and Plan of Allocation has been positive. Pursuant to the Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order" or "PA Order") (ECF No. 105), the Court-approved Claims Administrator, RG/2 Claims Administration LLC ("RG2"), has, *inter alia*, mailed 4,097 copies of the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") and the

2

Proof of Claim and Release form ("Claim Form") to potential Class Members and nominees, posted the requisite documents to the Action's settlement website, and caused the Summary Notice to be published in *Investor's Business Daily* and posted to *PR Newswire*. RG2 Decl. ¶¶9, 11-12; Lenahan Decl. ¶¶47, 49. The February 3, 2021 deadline for Class Members to object to the Settlement or request exclusion from the Class has passed and no requests for exclusion or objections have been received. RG2 Decl. ¶¶13-14; Lenahan Decl. ¶¶51-52.

In light of the considerations discussed herein, Lead Plaintiff and Lead Counsel submit that the Settlement is fair, reasonable, and adequate; satisfies the standards of Rule 23, the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §77z-1, and due process; and provides a significant recovery for the Settlement Class. Lead Plaintiff accordingly requests that the Court: (i) grant final approval of the Settlement; (ii) deem the Plan of Allocation to be a fair, reasonable, and adequate method for distributing the Net Settlement Fund to Authorized Claimants; and (iii) grant final certification of the proposed Class for settlement purposes and appoint Lead Plaintiff as Class Representative and the Faruqi Firm as Class Counsel.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 7, 2019, plaintiff Ajay Malhotra filed the initial class action complaint in the United States District Court for the Northern District of California. ECF No. 1. On January 22, 2020, the Court appointed Mr. Sterrett as Lead Plaintiff, and his counsel, the Faruqi Firm, was appointed Lead Counsel. ECF No. 52. Lead Plaintiff filed the Amended Class Action Complaint ("AC") on February 24, 2020. ECF No. 55. The AC alleges that Defendants violated §§11 and 15 of the Securities Act by materially misrepresenting and omitting material facts as alleged in the AC. *See, e.g.*, AC ¶¶2, 6-9, 48-64. The Sonim Defendants thereafter filed the Motion To Dismiss the Amended Complaint ("Motion To Dismiss") and a Request for Incorporation By Reference and Judicial Notice ("Request for Judicial Notice"), which the Underwriter Defendants joined. *See* ECF Nos. 62-63.

Following the parties' briefing on the Motion To Dismiss and Request for Judicial Notice, the parties met for a mediation session on June 24, 2020 before the Hon. Elizabeth

1    Laporte (Ret.), a well-respected mediator who served as a United States Magistrate Judge in this

2    District for more than two decades.  *See* Stipulation at 2.  No Settlement was reached during the

3    mediation session.  Lenahan Decl. ¶22.  The parties ultimately accepted the mediator's

4    subsequent proposal for the monetary terms of the Settlement, but only after Lead Counsel

5    requested and was provided with additional documents from the Underwriter Defendants to

6    better assess the strengths and weaknesses of the Action.  *See id.* at ¶¶22-23.  The parties

7    continued to vigorously debate the Settlement's remaining terms thereafter.  *Id.* at ¶24.  A

8    Settlement was only reached after further contentious negotiations between the Parties, as well

9    as an additional mediation/arbitration session to resolve an open issue under the Settlement that

10   was ultimately resolved by Judge Laporte through final binding non-appealable arbitration.  *Id.*

11       On September 11, 2020, Lead Plaintiff filed the Preliminary Approval Motion.

12   Plaintiffs in the State Court Action[2] then filed a Motion To Intervene and Object on October 7,

13   2020 ("Intervention Motion") (ECF No. 82), which Lead Plaintiff opposed (ECF No. 91) and

14   the Court denied (ECF No. 95).  On October 30, 2020, the Court held a hearing on the

15   Preliminary Approval Motion and ordered that revisions be made to certain of the notice

16   documents.  *See* ECF Nos. 99, 101.   After the notices were revised, the Court issued the

17   Preliminary Approval Order on November 6, 2020, which, *inter alia*, approved the form and

18   manner of providing notice to the Settlement Class, preliminarily certified the Class for

19   settlement purposes, and set a hearing date for the Final Approval Hearing as well as deadlines

20   for the briefing related thereto.  The details of the notice program's progress to date is explained

21   in further detail in Section III, *infra*.

**ARGUMENT**

22

23   **I.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL**

24       Rule 23(e) provides that a class action settlement must receive court approval.  A court

25   should approve a class action settlement if it determines that the settlement is "fair, reasonable,

26   and adequate[.]"  Rule 23(e)(2).  While the authority to grant such approval lies within the

27

28   [2]    "State Court Action" refers to *In re Sonim Techs., Inc. Sec. Litig.*, No. 19CIV05564
     (Cal. Sup. Ct.), which was dismissed on December 4, 2020.  *See* Lenahan Decl. ¶¶12, 43 n.5.

4

1  court's discretion, the Ninth Circuit has a "strong judicial policy that favors settlements,

2  particularly where complex class action litigation is concerned." *In re Heritage Bond Litig.*,

3  2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005).  Indeed, as one court has explained,

4  "intrusion upon what is otherwise a private consensual agreement negotiated between the

5  parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the

6  agreement is not the product of fraud or overreaching by, or collusion between, the negotiating

7  parties." *Nobles v. MBNA Corp.*, 2009 WL 1854965, at *1 (N.D. Cal. June 29, 2009).  Thus,

8  when deciding whether to approve a settlement, the court must ensure that: (1) "the settlement is

9  not the product of collusion among the negotiating parties" and (2) that the "settlement is

10  fundamentally fair, adequate, and reasonable." *Hayes v. MagnaChip Semiconductor Corp.*,

11  2016 WL 6902856, at *4 (N.D. Cal. Nov. 21, 2016).

12  **A.    The Proposed Settlement Is Not The Result Of Collusion**

13  As the Ninth Circuit explained in *In re Bluetooth Headset Prods. Liab. Litig.*, "when a

14  settlement agreement is negotiated *prior* to formal class certification," the court must also

15  analyze whether the settlement was reached as a result of collusion between the parties.

16  *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *8 (N.D. Cal. Feb. 11, 2016) (citing *Bluetooth*,

17  654 F.3d 935, 946 (9th Cir. 2011)).  As Lead Plaintiff explained in exhaustive detail in the

18  Preliminary Approval Motion, *see* ECF No. 76 at 8-10, as well as his opposition to the State

19  Court plaintiffs' Intervention Motion, *see* ECF No. 91 at 9, 11-17, there was no collusion here.

20  The Court agreed with this assessment at the hearing on the Preliminary Approval Motion.  *See*

21  Transcript of Preliminary Approval Motion hearing at 69:7-8 ("I don't find there's any

22  collusion between counsel.").

23  **B.    The Proposed Settlement Is Fair, Adequate, And Reasonable**

24  To determine whether a proposed settlement is fair, adequate, and reasonable, courts

25  consider the factors in recently amended Rule 23(e)(2), which provides that a court may grant

26  final approval of a proposed settlement:

27
28  . . . only after a hearing and only on finding that it is fair, reasonable, and
    adequate after considering whether:

5

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

    (i)    The costs, risks, and delay of trial and appeal;

    (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)  the terms of any proposed award of attorneys' fees, including timing of payment; and

    (iv)   Any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Rule 23(e)(2).

As explained in the Preliminary Approval Motion, amended Rule 23(e)(2)'s factors do not displace the factors that the Ninth Circuit previously used to determine whether the settlement is "fair, reasonable, and adequate," several of which overlap with Rule 23(e)(2)'s factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant;[3] and (8) the reaction of the class members to the proposed settlement.  *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).  To find that a settlement is substantively fair, reasonable, and adequate, not every factor needs to be satisfied.  *See Zynga*, 2016 WL 537946, at *8 ("The Court need not consider all of these factors, or may consider others.").

As explained in the Preliminary Approval Motion, all of the requirements imposed by Rule 23(e)(2) and the relevant Ninth Circuit factors have been met.  Courts that have analyzed proposed settlements following the amendments to Rule 23 have found that the factors are usually satisfied where, as here, little has changed between preliminary and final approval.  *See In re Chrysler-Dodge-Jeep Ecodiesel® Mtg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding that the conclusions the court made in granting

---

[3]    The "presence of a governmental participant" is not relevant here because there is no governmental entity involved.  Lead Plaintiff will therefore not analyze this factor.

preliminary approval "stand and counsel equally in favor of final approval now"); *In re GSE Bonds Antitrust Litig.*, 2020 WL 3250593, at *1 (S.D.N.Y. June 16, 2020) (stating that the Court's previous orders granting preliminary approval of the settlements at issue already detailed why the relevant factors support approval, readopting that analysis at the final approval stage, and focusing only on "those few developments since" preliminary approval that impact the analysis).  Nevertheless, the factors are analyzed below.

### 1.    The Class Has Been Adequately Represented

Rule 23(e)(2)(A) is satisfied because Lead Plaintiff and Lead Counsel have adequately represented the Class throughout the litigation and will continue to do so through the Settlement administration process.  Lead Plaintiff's interests are directly aligned with those of other Class members, as he claims to have suffered damages from the same alleged conduct, and through those claims seeks the same recovery from Defendants.  *See* PA Motion at 7 (explaining Lead Plaintiff's adequacy).  Additionally, Lead Plaintiff has actively overseen the litigation every step of the way, having, among other things, reviewed filings in this Action, communicated with counsel about all aspects of the case, and authorized the proposed settlement.  *See* Fee Decl.,[4] Ex. D (Declaration of David Sterrett).  Furthermore, Lead Counsel has zealously represented the Class at all times and is highly experienced in securities class action litigation.  *See generally* Fee Decl.; *see also* PA Motion at 22 (explaining Lead Counsel's adequacy).

### 2.    The Proposed Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) is satisfied because the proposed Settlement was the result of arm's length negotiations between Lead Counsel and Defendants' counsel.  The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement.  *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *see also In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement

---

[4]    "Fee Decl." refers to the Declaration of Katherine M. Lenahan filed on December 4, 2020, ECF No. 107-1, in support of the Motion for Attorneys' Fees, Expenses, and an Award to Lead Plaintiff ("Fee Motion"), ECF No. 107.

agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel"). Courts also recognize that the "[t]he presence of a mediator strongly suggests the absence of collusion or bad faith by the parties or counsel." *Walsh v. CorePower Yoga LLC*, 2017 WL 4390168, at *7 (N.D. Cal. Oct. 3, 2017).

The Settlement merits a presumption of fairness because it is the product of extensive arm's length negotiations among counsel with significant experience in securities class action litigation, and was reached following mediation with an experienced mediator.   Prior to engaging in negotiations with Defendants, Lead Counsel thoroughly investigated the relevant facts; drafted the AC; vigorously opposed Defendants' Motion To Dismiss and Request for Judicial Notice; reviewed over 3,000 pages of core documents produced by Defendants; and had a call with Sonim's CFO to discuss Sonim's financial conditions and business plans, including its ability to fund a settlement.  *See* Lenahan Decl. ¶¶18-35.

After submitting mediation statements and exhibits, the parties engaged in a mediation session with the assistance of Judge Laporte, a well-respected mediator who served as a United States Magistrate Judge in this District for more than two decades.  *See id.* at ¶¶20-21. Following the mediation session—which did not result in a settlement—Judge Laporte presented a mediator's proposal for the Settlement Amount.  *Id.* at ¶22.  Before Lead Plaintiff decided on the mediator's proposal, Lead Counsel requested additional documents from the Underwriter Defendants to better determine the strengths and weaknesses of the Action.  *Id.* at ¶23.  Only after reviewing these documents and further contemplating the issues did Lead Plaintiff accept the mediator's proposal.  *Id.*

Even after the Settlement Amount was agreed upon, negotiations regarding the complete terms of the Settlement Agreement remained contentious.  *Id.* at ¶24.  During these negotiations, a dispute arose regarding the Termination Threshold, requiring the parties to engage in an additional mediation/arbitration session with Judge Laporte.  *Id.*  After the parties reached an impasse, Judge Laporte decided the matter through final binding non-appealable arbitration.  *Id.* It then took over a month of robust negotiations for the parties to come to a final agreement on the full terms of the settlement.  *Id.*  Thus, the Settlement was plainly the result of hard-fought,

1  arm's length negotiations among the parties.

2  ### 3.  The Relief Provided for the Class Is Adequate

3  Rule 23(e)(2)(C) requires the Court to take four specific considerations into account

4  when determining whether the relief provided for the class is adequate.  Each of these

5  considerations is addressed below, along with the Ninth Circuit factors that overlap with them.

6  ### a.  The Costs, Risks, and Delay of Trial and Appeal

7  Rule 23(e)(2)(C)(i) requires the Court to consider whether the Settlement Amount is

8  adequate when taking into account the costs, risks, and delay of trial and appeal.  This inquiry

9  overlaps with the following Ninth Circuit factors: "the strength of the plaintiffs' case; the risk,

10  expense, complexity, and likely duration of further litigation;" and "the amount offered in

11  settlement."  *See Churchill Village*, 361 F.3d at 575.

12  As the Ninth Circuit has noted, "[t]he proposed settlement is not to be judged against a

13  hypothetical or speculative measure of what ***might*** have been achieved by the negotiators. . . . ";

14  rather, "the very essence of a settlement is compromise, a yielding of absolutes and an

15  abandoning of highest hopes."  *Officers for Justice v. Civil Service Comm'n of City and County*

16  *of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (original emphasis).  Thus, "[t]he fact that

17  a proposed settlement may only amount to a fraction of the potential recovery does not, in and

18  of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."

19  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).  When determining the

20  reasonableness of the settlement, "the Court must balance against the continuing risks of

21  litigation (including the strengths and weaknesses of the plaintiff's case), the benefits afforded

22  to members of the Class, and the immediacy and certainty of a substantial recovery."

23  *Johansson-Dohrmann v. Cbr Sys., Inc.*, 2013 WL 3864341, at *4 (S.D. Cal. July 24, 2013).

24  While "there is no particular formula by which the outcome must be tested" when "assessing

25  the strength of a plaintiff's case," "[t]he court may presume that through negotiation, the

26  Parties, counsel, and mediator arrived at a reasonable range of settlement by considering

27  Plaintiff's likelihood of recovery."  *In re Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *5

28  (N.D. Cal. Nov. 20, 2015).

As explained in the Preliminary Approval Motion, the $2,000,000 Settlement provides an immediate benefit to the class and is adequate when compared to the risk that no recovery, or lesser recovery, might be achieved after prolonged litigation, particularly in light of the Company's financial position and the economic uncertainty posed by the ongoing pandemic. *See* PA Motion at 10.  Lead Plaintiff has always believed that his claims have merit and would be proven through fact discovery.  Despite this confidence, Lead Plaintiff is aware of the substantial risks and expenses that would be presented by further litigation based on his work to date.

For one thing, it is well known that class action litigation is inherently complex, *see Nobles*, 2009 WL 1854965, at *2, and this case is no exception.  Even if the Action survived Defendants' Motion To Dismiss, fact discovery would likely be time consuming and expensive. In order to develop the claims in the AC, fact discovery would require, among other things: drafting numerous rounds of discovery requests; engaging in discovery motion practice; reviewing thousands of pages of documents; taking numerous depositions; serving and attempting to enforce third party subpoenas; and retaining expert witnesses regarding highly technical issues about the functioning of cellular phones and the proper testing of such devices. *See* PA Mot. at 11-12; Lenahan Decl. ¶26.

Defendants have denied any wrongdoing and would undoubtedly aggressively litigate this Action at each step.  *See* Lenahan Decl. ¶28.  Without this Settlement, the Action would have continued to be vigorously contested.  *Id.*  Even after putting in the considerable time and incurring the additional expenses that fact discovery would require, there is a chance that Lead Plaintiff's claims could be dismissed at summary judgment or trial.  *See id.* at ¶¶27-29.

The risks of further litigation are exacerbated by Sonim's precarious financial position, indemnity obligations, and the ongoing COVID-19 pandemic that has caused unprecedented global economic turmoil.  *See* PA Mot. at 12-13; Lenahan Decl. ¶¶30-34.

In light of the foregoing, the Settlement Amount of $2,000,000 provides a favorable result for the Class and constitutes a material percentage of the Class's estimated damages.  It represents approximately 6.3% of the Class's estimated maximum damages and approximately

14.9% of the Class's estimated damages when crediting a negative causation defense that limits damages to the corrective disclosures alleged in the AC.  *See* PA Motion at 13-14.  Under either measure, the Settlement Amount is well within the range of typical recoveries in complex securities litigation such as this.  *See, e.g.*, *Oh v. Chan, et al.*, No. 2:07-cv-04891-DDP-AJW (C.D. Cal. Sept. 24, 2009), ECF No. 100 (approving a $1.2 million settlement in an action alleging claims under Sections 11 and 15 of the Securities Act, which purportedly represented approximately 2.6% of estimated damages (*see* ECF No. 91 at 3, 12)); *Hosey v. Cotolo, et al.*, No. 16-CIV-02228, Judgment and Order Granting Final Approval of Class Action Settlement at 2 (Cal. Sup., San Mateo Cty. Aug. 16, 2018) (granting final approval to $2.5 million settlement in action alleging claims under Section 11 and 15 of the Securities Act that purportedly recovered 5.8% of "estimated aggregate damages" (*see* Memorandum of Points and Authorities in Support of Plaintiff's Unopposed Motion for Certification of Settlement Class and for Final Approval of Settlement, at 11 (Cal. Sup., San Mateo Cty. July 3, 2018)); *Vaccaro, et al. v. New Source Energy Partners L.P., et al.*, No. 1:15-cv-08954 (KMW) (S.D.N.Y. Dec. 14, 2017), ECF No. 74 at 3 (approving a $2,850,000 settlement in an action alleging Securities Act claims, which purportedly represented about 6.3% of statutory damages ($2,850,000 settlement divided by $44.9 million statutory damages) (*see* ECF No. 54 at 2, 15-16)); *In re Worldspace, Inc. Sec. Litig.*, 1:07-cv-02252-RMB (S.D.N.Y. June 3, 2013), ECF No. 107 (granting final approval of $2,375,000 settlement in an action alleging claims under Sections 11, 12(a)(2), and 15 of the Securities Act, which purportedly represented approximately 3.3-5% of the Class's maximum provable damages (*see* ECF No. 105 at 1, 18-19)).

                **b.**        **The Proposed Method for Distributing Relief Is Effective**

Rule 23(e)(2)(C)(ii) requires the court to consider whether the proposed method of distributing relief to the class is effective, including the processing of class members' claims. The method used in this Action is that traditionally used in securities class actions.

Pursuant to the Preliminary Approval Order, beginning on December 4, 2020, 4,097 copies of the Notice and Claim Form were mailed to potential Class Members and nominees, and the Summary Notice was published in *Investor's Business Daily* and transmitted over *PR*

1   *Newswire* on December 14, 2020.  RG2 Decl. ¶¶5-11.  Class Members who wanted to object to

2   the Settlement or request exclusion from the Class were required to do so by February 3, 2021.

3   *See* PA Order at ¶¶19, 22.   That date has passed, and no requests for exclusion or objections

4   have been received.  *See* RG2 Decl. ¶¶13-14; Lenahan Decl. ¶52.

5       Additionally, the Settlement's claims process is similar to the process commonly used in

6   securities class action settlements, and provides for cash payments to eligible class members

7   based on their *pro rata* share of the recovery as established by the trading information eligible

8   Class Members provide.  *See* PA Motion at 14-15; Section II, *infra.*  This factor supports final

9   approval for the same reason that it supported preliminarily approval.  *See* PA Motion at 14-15.

### c.       Terms of Attorneys' Fees and Timing of Payment

11      Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of

12   attorney's fees, including timing of payment."  Consistent with the Notice, and as discussed in

13   the Fee Motion, Lead Counsel seeks an award of attorneys' fees in an amount of 25% of the

14   Settlement Fund, which is the benchmark award in this Circuit.  *See Villegas v. J.P. Morgan*

15   *Chase & Co.*, 2012 WL 5878390, at *7 (N.D. Cal. Nov. 21, 2012).  This amount is supported by

16   Lead Counsel's lodestar, which is $730,981.25 based on 1,238.50 hours of attorney and

17   professional staff time.  *See* Fee Decl. ¶¶44, 47.  Thus, an award of 25% of the Settlement Fund

18   (approximately $500,000) represents no windfall to Lead Counsel, as it is substantially less than

19   the actual fees incurred.

20      Pursuant to the Stipulation, attorneys' fees are to be paid to Lead Counsel "immediately

21   after the Court executes an order awarding such fees and expenses notwithstanding any

22   objection thereto[,]" subject to the obligation to repay as described therein.  Stip. ¶¶6.2-6.3.  The

23   timing of payment is standard in class action cases and typically approved.  *See* PA Motion at

24   16.

### d.       Related Agreements

26      Rule 23(e)(2)(C)(iv) requires the Court to determine the proposed Settlement's adequacy

27   in light of any agreements made in connection with it.  As disclosed in the Preliminary

28   Approval Motion, the only such agreement is the parties' confidential Supplemental Agreement,

12

which sets forth certain conditions under which Sonim has the sole option to terminate the settlement and render the Stipulation null and void in the event that requests for exclusion from the settlement Class exceed certain criteria.  PA Motion at 4, 16 (citing Stipulation ¶7.3).  The confidential Supplemental Agreement was filed under seal for the Court's review.  *See* ECF No. 100.  This type of agreement is common in class actions and does not render a settlement unfair. *See Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *7 (N.D. Cal. Dec. 18, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

### 4.    The Settlement Treats Class Members Equitably

Rule 23(e)(2)(D) requires the Court to consider whether "the proposal treats class members equitably relative to each other."  As discussed in Section II, *infra*, the Plan of Allocation treats Class members equitably relative to each other, based on the timing of their purchases, acquisitions, and sales of Sonim common stock, and by providing that each Authorized Claimant shall receive their *pro rata* share of the Net Settlement Fund based on their recognized losses.  Lead Plaintiff's request for an award of $871 pursuant to 15 U.S.C. §77z-1(a)(4) does not change this conclusion.  *See* PA Motion at 17; *see In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (finding similar allocation plan to be equitable and that the reasonable service award of $2,180.80 sought by the lead plaintiff "does not constitute inequitable treatment of class members").

### 5.    The Extent of Discovery Completed and the Stage of Proceedings

Formal discovery "is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."  *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 2016 WL 6248426, at *13 (N.D. Cal. Oct. 25, 2016).

As explained in Section I.B.2, *supra*, although the Settlement was achieved relatively early in the litigation, it was reached only after the parties had a comprehensive understanding of the potential risks and hurdles facing further litigation, and had sufficient information to make an informed assessment of the Action's strengths and weaknesses and the Settlement's

13

1   fairness.  *See Rieckborn v. Velti PLC*, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015)

2   ("Despite reaching settlement relatively early in the life span of this case, the Settling Parties

3   have shown that their decision to settle was made on the basis of a thorough understanding of

4   the relevant facts and law.").

### 6.    Risk of Maintaining Class Action Status Through Trial

6   While Lead Plaintiff and Lead Counsel are confident that the class meets the

7   requirements for certification, *see* Section IV, *infra*, the Class has not yet been certified and

8   Lead Plaintiff is aware there is a risk that the Court could disagree.  *See* PA Mot. at 18.

### 7.    The Experience and Views of Counsel

10   "Great weight is accorded to the recommendation of counsel, who are most closely

11   acquainted with the facts of the underlying litigation."  *Nat'l Rural Telecommunications Coop.*

12   *v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).  "When class counsel is experienced

13   and supports the settlement, and the agreement was reached after arm's length negotiations,

14   courts should give a presumption of fairness to the settlement."  *Ramirez v. Ghilotti Bros. Inc.*,

15   2014 WL 1607448, at *1 (N.D. Cal. Apr. 21, 2014).

16   As set forth in detail in the Faruqi Firm's resume, Lead Counsel is a nationally

17   recognized law firm that has substantial experience litigating securities class action lawsuits.

18   *See* Fee Decl., Ex. A.  The Faruqi Firm has also negotiated many substantial recoveries for

19   classes across the country.  *See id.*  Additionally, the law firms representing Defendants,

20   O'Melveny & Myers LLP and Sidley Austin LLP, are widely renowned for their securities

21   litigation practices.  *See* PA Motion at 9 & n.5.

22   Lead Counsel, having carefully considered and evaluated, *inter alia*, the relevant legal

23   authorities and evidence to support the claims asserted against Defendants, the likelihood of

24   prevailing on these claims, the risk, expense, and duration of continued litigation, and the

25   likelihood of subsequent appellate proceedings even if Lead Plaintiff were to prevail against

26   Defendants at trial, concluded that the settlement here is a favorable result for the Class.  *See*

27   Lenahan Decl. ¶¶25-35.  Thus, since "[b]oth Parties are represented by experienced counsel[,] . .

28   . their mutual desire to adopt the terms of the proposed settlement, while not conclusive, is

14

1    entitled to [a] great deal of weight." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166,

2    1174 (S.D. Cal. 2007).

3                    **8.    The Reaction of the Class**

4            "It is established that the absence of a large number of objections to a proposed class

5    action settlement raises a strong presumption that the terms of a proposed class [action

6    settlement] are favorable to the class members."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d

7    1036, 1043 (N.D. Cal. 2008).  "[T]he willingness of the overwhelming majority of the class to

8    approve the offer and remain part of the class presents at least some objective positive

9    commentary as to its fairness."  *Celera*, 2015 WL 7351449, at *7.

10           To date, a total of 4,097 copies of the Notice and Claim Form have been mailed to

11   potential Class Members and nominees, and the Summary Notice was published in *Investor's*

12   *Business Daily* and posted on *PR Newswire* on December 14, 2020.  *See* RG2 Decl. ¶¶9, 11.

13   The deadline for objecting to the Settlement or requesting exclusion from the Class was

14   February 3, 2021.  *See* RG2 Decl., Ex. A at 2.  Despite the large number of potential Class

15   Members, not one Class Member has objected to the Settlement, Plan of Allocation, request for

16   attorneys' fees and expenses, or the Lead Plaintiff's request for an award pursuant to 15 U.S.C.

17   §77z-1(a)(4).  To date, the Claims Administrator has received 756 claims, which represents a

18   response rate of approximately 18% of the Notices mailed out.  *See* RG2 Decl. ¶15; *see also* PA

19   Motion at 24 (explaining that RG2 and Lead Counsel estimated a response rate of

20   approximately 10-25% and noting response rates in recent cases ranging from 7.5% to 22%).

21           Thus, the reaction of the Class confirms the adequacy of the Settlement.  *See Chun-*

22   *Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (concluding, in a case

23   where "zero objections and sixteen opt-outs (comprising 4.86% of the class) were made from a

24   class of roughly . . . 329 members[,]" class members' reaction "strongly supports

25   settlement[]").[5]

26   _____

27   [5]      The Northern District of California's Procedural Guidance for Class Action Settlements
     provides that the motion for final approval briefing should also include information about the
28   number of undeliverable class notices and claim packets and the number of class members who

                                                    15

## II.  THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

The Court has broad discretion in approving a plan of allocation.  "Approval of a plan of allocation of settlement proceeds in a class action under FRCP 23 is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate."  *In re Am. Apparel, Inc. Shareholder Litig.*, 2014 WL 10212865, at *18 (C.D. Cal. July 28, 2014).  "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable."  *In re High-Tech Employee Antirust Litig.*, 2015 WL 5159441, at *6 (N.D. Cal. Sept. 2, 2015).

In developing the Plan of Allocation, Lead Plaintiff enlisted the help of a damages consultant who was familiar with the damages issues in this Action as well as the help of the Claims Administrator which has many years of experience implementing plans of allocation in securities class actions.  *See* Lenahan Decl. ¶57.  The Plan of Allocation's objective is to distribute a *pro rata* share of the Net Settlement Fund to Authorized Claimants based upon their claimed losses consistent with the AC's allegations.  *See id.* at ¶¶54-56.  Specifically, after Authorized Claimants submit their Claim Forms and supporting documentation, the Claims Administrator will calculate each Authorized Claimant's Recognized Loss according to a formula that will take into account when and at what price they purchased Sonim common stock and when such stock was sold.  *See id.* at ¶56.  In order to have a Recognized Loss under the Plan of Allocation, Authorized Claimants must have purchased common stock between May 9, 2019 (the IPO date) and September 9, 2019, inclusive, and still held that stock on September 10, 2019, the date of the corrective disclosure alleged in the AC.  *See id.*  The amount recovered per share will vary depending on when each share was sold and for how much.  *See id.*  Authorized Claimants cannot recover more than their out-of-pocket losses.  Thus, "the plan allocates the settlement fund proportional to the actual injury of each class member.  Accordingly, the plan of allocation is fair, reasonable and adequate."  *Patel v. Axesstel, Inc.*, 2015 WL 6458073, at *7 (S.D. Cal. Oct. 23, 2015); *see also Heritage*, 2005 WL 1594403, at

submitted valid claims.  To the extent known, this information is reported in RG2's Declaration.  *See* RG2 Decl. ¶¶10, 15.

*11 ("[A] plan of allocation . . . fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, [even as it] sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.").

The terms of the Plan of Allocation were fully disclosed in the Settlement Notice that was mailed to potential Class Members and nominees and posted on the Action's website.  *See* RG2 Decl. ¶¶5-9, 12, Ex. A; Lenahan Decl. ¶58.  The deadline for objecting to the Plan of Allocation has passed, and no objections have been received.  *See* Lenahan Decl. ¶58.  Thus, for the reasons set forth herein and in the Lenahan Declaration, Lead Plaintiff respectfully requests that the Court approve the Plan of Allocation as fair, reasonable, and adequate.

## III.   THE NOTICE PROGRAM SATISFIES RULE 23, THE PSLRA, AND DUE PROCESS

Notice of a class action settlement must meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, the PSLRA, and the due process clause of the United States Constitution.  Rules 23(c)(2)(B) and 23(e)(1) require the Court to direct to potential settlement class members "the best notice that is practicable under the circumstances" and "in a reasonable manner."  The PSLRA and the due process clause impose similar requirements.

The Court preliminarily approved the form, content, and method of dissemination of the notices provided to potential Class Members.  *See* PA Order at ¶6.  Pursuant to the Preliminary Approval Order, the Notice and Proof of Claim form have been mailed to 4,097 potential Class Members and nominees beginning on December 4, 2020.  *See* RG/2 Decl. ¶¶5-9.  That same day, the Notice and Claim Form were also made available on the settlement website, along with the Stipulation and its exhibits, and the Preliminary Approval Order.  *See id.* at ¶12.  The Summary Notice was published in *Investor's Business Daily* and posted by *PR Newswire* on December 14, 2020.  *See id.* at ¶11.  Additionally, RG/2 has set up a toll-free telephone helpline to accommodate potential Class Members who have questions regarding the Settlement.  *See id.* at ¶12.

Pursuant to the requirements of Rule 23, the due process clause, and the PSLRA, the Settlement Notice: (a) described the nature of the claims asserted in the Action; (b) included a definition of the Settlement Class; (c) summarized the Settling Parties' reasons for entering into the Settlement; (d) listed the name, telephone number, and address for Lead Counsel; (e) disclosed that Lead Counsel intends to seek attorneys' fees of up to 25% of the Settlement Fund, plus reimbursement of expenses not to exceed $50,000, and an award for Lead Plaintiff not to exceed $2,500; (f) provided the date, time, and location of the Final Approval Hearing; (g) advised Settlement Class Members of their right to appear at the Final Approval Hearing and instructed them that the date may change; (h) advised Class Members of their right to exclude themselves from the Class and the binding effect of doing so; (i) provided the deadline and procedure for opting out of or opposing the Settlement, Plan of Allocation, award of attorneys' fees and expenses, or the award to Lead Plaintiff; (j) explained the consequences of remaining in the Settlement Class; (k) provided the manner in which to obtain more information, including the address for the designated website; and (l) explained how to access the case docket on PACER. *See* RG2 Decl., Ex. A.

Courts in this Circuit have routinely found that this method of mailing, publication, and Internet notices satisfies the applicable notice standards in similar class actions. *See Celera*, 2015 WL 7351449, at *4-5 (finding a similar notice plan appropriate). Thus, Lead Plaintiff respectfully requests that the Court find the notice program satisfies the requirements of Rule 23, the PSLRA, and due process.

## IV.     THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Pursuant to the Preliminary Approval Order, the Court conditionally certified the Class for Settlement purposes. *See* PA Order ¶2. Since the entry of that Order, no circumstances have changed to alter the propriety of the Court's certification and appointments. *See In re Bear Stearns Cos., Inc. Sec., Derivative, and ERISA Litig.*, 909 F. Supp. 2d 259, 264 (S.D.N.Y. 2012) (finally certifying a settlement class where there had been no material changes since the court preliminarily certified the class). Thus, pursuant to Rules 23(a) and (b)(3), and for reasons as set forth below and in further detail on pages 19-22 of the Preliminary Approval Motion,

18

1  Lead Plaintiff respectfully requests that the Court finally certify the following Class for

2  purposes of Settlement:

> [A]ll Persons who purchased or otherwise acquired Sonim common stock
> pursuant or traceable to the May 2019 Registration Statement and Prospectus filed
> in connection with the IPO of Sonim on or about May 9, 2019 and were damaged
> thereby.  Excluded from the Class are Defendants, the officers and directors of
> Sonim (at all relevant times), members of their families and their legal
> representatives, heirs, successors or assigns, and any entity in which any of the
> above has a majority ownership interest.  Also excluded from the Class are those
> Persons who would otherwise be Class Members but who timely and validly
> exclude themselves therefrom.

8  Stipulation ¶1.3.  Lead Plaintiff also respectfully requests that the Court appoint David Sterrett

9  as Class Representative and the Faruqi Firm as Class Counsel.

10                                              **CONCLUSION**

11          For the reasons stated above, Lead Plaintiff respectfully requests that this Court: (a)

12  grant final approval of the proposed Settlement; (b) certify the proposed settlement Class and

13  appoint Lead Plaintiff as settlement Class Representative and the Faruqi Firm as settlement

14  Class Counsel; and (c) grant approval of the Plan of Allocation.

15  Dated: February 17, 2021                 **FARUQI & FARUQI, LLP**

16                                            By:  _/s/ Katherine M. Lenahan_____
                                                   Katherine M. Lenahan
17
                                             Richard W. Gonnello (admitted *pro hac vice*)
18                                           Katherine M. Lenahan (admitted *pro hac vice*)
                                             685 Third Avenue, 26th Floor
19                                           New York, NY 10017
                                             Telephone: 212-983-9330
20                                           Facsimile: 212-983-9331
                                             Email: rgonnello@faruqilaw.com
21                                                  klenahan@faruqilaw.com

22                                           Benjamin Heikali SBN 307466
                                             10866 Wilshire Boulevard, Suite 1470
23                                           Los Angeles, CA 90024
                                             Telephone: 424-256-2884
24                                           Facsimile: 424-256-2885
                                             Email:  bheikali@faruqilaw.com
25
                                             *Attorneys for [Proposed] Class Representative*
26                                           *David Sterrett and [Proposed] Class Counsel for*
                                             *the [Proposed] Settlement Class*
27

28