Richard W. Gonnello (admitted *pro hac vice*)
Katherine M. Lenahan (admitted *pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: rgonnello@faruqilaw.com
        klenahan@faruqilaw.com

Benjamin Heikali SBN 307466
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
Email: bheikali@faruqilaw.com

*Attorneys for [Proposed] Class Representative David Sterrett
and [Proposed] Class Counsel for the [Proposed] Settlement Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID STERRETT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SONIM TECHNOLOGIES, INC., ROBERT PLASCHKE, JAMES WALKER, MAURICE HOCHSCHILD, ALAN HOWE, KENNY YOUNG, SUSAN G. SWENSON, JOHN KNEUER, JEFFREY D. JOHNSON, OPPENHEIMER & CO., INC., LAKE STREET CAPITAL MARKETS, LLC, and NATIONAL SECURITIES CORPORATION,<br><br>Defendants. | **DECLARATION OF KATHERINE M. LENAHAN IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**<br><br>Case No. 3:19-cv-06416-MMC<br><br>**CLASS ACTION** |

I, Katherine M. Lenahan, declare as follows:

1.      I am a member in good standing of the bar of the State of New York and am admitted *pro hac vice* to practice before the bar of the Northern District of California.  I am a partner in the law firm of Faruqi & Faruqi, LLP, which represents Lead Plaintiff David Sterrett and the proposed Class in the above-captioned securities class action pending in this Court (the "Action").[1]  I have been actively involved in the prosecution of this Action and have personal knowledge of the matters set forth herein based upon my close supervision and participation in the Action.  If called upon, I could and would competently testify that the following facts are true and correct.

## I.      PRELIMINARY STATEMENT

2.      I respectfully submit this Declaration in support of Lead Plaintiff's Motion for Final Approval of the Class Action Settlement ("Final Approval Motion"), which is filed concurrently herewith.

3.      Lead Plaintiff, on behalf of himself and the putative Class, and defendants Sonim Technologies, Inc. ("Sonim" or the "Company"), Robert Plaschke, James Walker, Maurice Hochschild, Alan Howe, Kenny Young, Susan G. Swenson, John Kneuer, Jeffrey D. Johnson (collectively, the "Sonim Defendants"), and underwriters Oppenheimer & Co., Inc., Lake Street Capital Markets, LLC, National Securities Corporation (collectively, the "Underwriter Defendants") (collectively, with the Sonim Defendants, "Defendants") have reached a proposed settlement of this Action for $2,000,000 in cash that, if approved, will resolve all claims in the Action.

4.      The terms of the Settlement are set forth in the Stipulation.  The Court preliminary approved the Stipulation by its Order Preliminarily Approving Settlement and Providing for Notice, dated November 6, 2020 (ECF No. 105) ("Preliminary Approval Order").

5.      This declaration sets forth the factual and procedural history of the Action, and it

---

[1]      Unless otherwise noted, the following conventions are used herein: (a) all emphases are added; (b) all internal citations and quotations are omitted; (c) all capitalized terms have the meaning ascribed to them in the Stipulation of Settlement dated September 10, 2020 ("Stipulation"), ECF No. 75; and (d) all page references are to a document's native pagination unless unavailable, in which case the ECF-stamped pagination is used.

demonstrates the reasons why the Settlement and the Plan of Allocation are fair, reasonable, and adequate.

6.    While Lead Counsel believes that the allegations in the Action have substantial merit, Lead Counsel respectfully submits that the Settlement represents a favorable result for the Class.

7.    The Settlement is the result of extensive arm's-length and contentious settlement negotiations among experienced and capable counsel with a comprehensive understanding of the merits and value of the claims asserted.  With the assistance of an esteemed mediator, counsel met for a mediation session to vigorously debate the strengths and weaknesses of the claims and defenses in the Action.  While the mediation session did not initially result in a settlement, the parties continued to negotiate with the mediator's assistance.  As a result of these continued discussions, which included the evaluation and acceptance of the mediator's proposal for the Settlement Amount, and an additional mediation/arbitration session to resolve a dispute over a material term of the Settlement, the parties agreed to settle the Action.   Lead Counsel's ability to come to a compromise in light of the many complex issues present in this Action evidenced the skill of representation and the quality of the results.

8.    Pursuant to the Preliminary Approval Order, beginning on December 4, 2020, the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") and Proof of Claim and Release form ("Claim Form") were mailed to 4,097 potential Class Members and nominees, and were made available on the designated settlement website, www.rg2claims.com/Sonim.html, along with the Stipulation and Preliminary Approval Order. *See* Declaration of Tina Chiango Regarding: (A) Dissemination of Notice to the Class; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("RG2 Decl.") at ¶¶5-9, 12.  The Summary Notice was timely published in *Investor's Business Daily* on December 14, 2020 and posted by *PR Newswire* that same day.  *See id.* ¶11.

9.    The Settlement provides an immediate and certain benefit to the Class considering the significant risks that a smaller recovery—or, indeed, no recovery at all—might be achieved after a trial and the likely appeals that would follow, which could prolong the

Action for years and incur significant additional expenses.  For these reasons, and those set forth more fully below, Lead Counsel respectfully submits that the Settlement is in the best interests of the Class and should be approved as fair, reasonable, and adequate.

10.    Lead Counsel also respectfully requests that the Court approve the Plan of Allocation for the Settlement Proceeds.

## II.    PROCEDURAL HISTORY[2]

11.    On October 7, 2019, plaintiff Ajay Malhotra filed the initial class action complaint in the United States District Court for the Northern District of California.  ECF No. 1.

12.    Shortly before that complaint was filed, a securities class action was filed in California state court against the same defendants on behalf of the same class of investors.  *See In re Sonim Techs., Inc. Sec. Litig.*, No. 19CIV05564 (Cal. Sup. Ct.) ("State Court Action").

13.    On December 6, 2019, several plaintiffs moved to be appointed as lead plaintiff in accordance with the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §77z-1, and to have their selection of counsel appointed as lead counsel.  *See* ECF Nos. 16, 20, 22, 30.  On January 22, 2020, the Court appointed Mr. Sterrett as Lead Plaintiff, and his counsel, the Faruqi Firm, as Lead Counsel.  ECF No. 52.

14.    On February 24, 2020, Lead Plaintiff filed the Amended Class Action Complaint ("AC").  ECF No. 55.  When developing the claims in the AC, Lead Counsel conducted an extensive investigation into the facts alleged in the Action, reviewing, *inter alia*, documents filed publicly with the Securities and Exchange Commission ("SEC"); press releases; news articles; financial information; analyst reports; and other public statements issued by or concerning Sonim in, for example, conference call transcripts.

15.    On April 1, 2020, the Sonim Defendants filed the Motion To Dismiss the Amended Complaint ("Motion To Dismiss" or "MTD"), ECF No. 62, as well as the Request for Incorporation By Reference and Judicial Notice ("Request for Judicial Notice" or "RJN"), ECF

_____

[2]    Information about the Action's procedural history and the Settlement found at ¶¶12-35 herein was previously set forth in the Declaration of Katherine M. Lenahan in support of Lead Counsel's Motion for Attorneys' Fees, Expenses, and an Award for Lead Plaintiff, ECF No. 107-1, and is included in this declaration for ease of reference.

3

No. 62-1; and the Underwriter Defendants filed a joinder in the MTD, ECF No. 63.  Defendants argued, *inter alia*, that the AC failed to adequately plead facts showing that the challenged statements were false when made, that the Registration Statement disclosed the risks that the AC alleges were hidden, and that the challenged statements constitute inactionable opinion and puffery.  *See generally* MTD.

16.     On May 1, 2020, Lead Plaintiff filed his opposition to the MTD, ECF No. 65, as well as a Motion To Strike Defendants' Extrinsic Exhibits And Related Arguments Submitted With Defendants' Motion To Dismiss ("Motion To Strike"), ECF No. 64.  The Court converted the Motion To Strike to an opposition to Defendants' RJN.  ECF No. 66.

17.     On June 1, 2020, the Sonim Defendants filed their Reply in Support of the MTD, ECF No. 69, as well as their Reply in Support of the Request for Judicial Notice, ECF No. 70.

## III.    THE SETTLEMENT

### A.    Settlement Negotiations

18.     From the outset, Lead Counsel has tirelessly navigated the complicated issues present in this Action.  Prior to engaging in settlement negotiations, Lead Counsel spent considerable time evaluating the facts and arguments available in this Action through the following: (1) conducting an extensive investigation into the facts alleged in the Action, including reviewing press releases, SEC filings, conference call transcripts, analyst reports, and news articles; (2) researching and drafting the detailed AC; (3) conducting complex legal research for and drafting briefing related to Defendants' Motion To Dismiss and Request for Judicial Notice; and (4) consulting with a damages expert.

19.     With the benefit of this investigation and comprehensive analysis of the factual and legal issues in this Action, all Settling Parties entered settlement negotiations well-informed of the strengths and weaknesses of the claims and defenses asserted in this Action.

20.     On June 24, 2020, the parties met for a mediation session before the Hon. Elizabeth Laporte (Ret.), a well-respected mediator who served as a United States Magistrate Judge in this District for more than two decades.  *See* Stipulation at 2.

21.     Prior to the mediation session, Sonim provided Lead Plaintiff a core document production of 3,484 pages of materials and made its Chief Financial Officer ("CFO") available to Lead Counsel pursuant to the mediation confidentiality agreement.  The mediation session was also preceded by submission of mediation statements and exhibits.

22.     No settlement was reached during the June 24th mediation session.  Subsequently, Judge Laporte presented a mediator's proposal for the monetary terms for a settlement of this Action.

23.     Before Lead Plaintiff decided on the mediator's proposal, Lead Counsel requested additional documents from the Underwriter Defendants to better determine the strengths and weaknesses of the Action.  After reviewing these documents and further contemplating the issues, Lead Plaintiff accepted the mediator's proposal.

24.     After the parties agreed to the mediator's proposal for the Settlement Amount, the parties thereafter engaged in further negotiations regarding the complete terms of the Settlement.  During these further negotiations, a dispute arose among the parties regarding the confidential Supplemental Agreement, which sets forth certain conditions under which Sonim shall have the sole option to terminate the settlement and render the Stipulation null and void in the event that requests for exclusion from the settlement Class exceed certain criteria (the "Termination Threshold").  *See* Stipulation ¶7.3.[3]  This necessitated additional written submissions by the parties, and an additional mediation/arbitration session with Judge Laporte, who ultimately decided the Termination Threshold through final binding non-appealable arbitration.  It then took over a month of robust negotiations for the parties to come to a final agreement on the full terms of the settlement.

### B.     Reasons for the Settlement and Risks of Litigation

25.     Although Lead Plaintiff and Lead Counsel strongly believe that the claims asserted in this Action are meritorious and that the evidence developed to date supports them, they recognize and acknowledge the substantial expense and duration of continued proceedings

---

[3]     At the Court's request, the confidential Supplemental Agreement was filed under seal for the Court's review on November 4, 2020.  ECF Nos. 100, 104.

5

that would be necessary to prosecute the Action.  Lead Plaintiff and Lead Counsel are also mindful of the inherent difficulty of proving claims under the federal securities laws and the possible defenses to the claims asserted in this Action, such as Defendants' potential negative causation defense (*see* 15 U.S.C. §77k(e)) and the Underwriter Defendants' potential due diligence defense (*see* 15 U.S.C. §77k(b)(3)), as well as the uncertainties presented by complex litigation.

26.    While Lead Plaintiff believes that his claims would have survived Defendants' Motion To Dismiss, he acknowledges that this result was far from guaranteed.  Even if the Action survived the Motion To Dismiss, the fact discovery process would likely be time-consuming and expensive.  For example, the AC alleges, *inter alia*, that the Registration Statement's discussion of Sonim's phones' capabilities and the risks facing investors were false and/or misleading for failing to disclose that Sonim conducted inadequate testing of certain of its phones.  *See, e.g.*, AC ¶¶40, 60-61, 66, 68.  According to Defendants, such testing involves third parties such as Sonim's wireless carrier channel partners (*e.g.*, AT&T, Sprint, and Verizon).  *See* ECF No. 62 (MTD) at 19.  Thus, the fact discovery process would require, among other things, numerous document subpoenas to third parties, which are notoriously difficult to enforce; the retention of expert witnesses regarding highly technical issues about the functioning of cellular phones and the proper testing of such devices; discovery motion practice; production and review of thousands of pages of documents; and taking numerous depositions.

27.    Even if Lead Plaintiff were able to obtain the necessary evidence through discovery, the road to trial would involve numerous motions, including summary judgment, and require the preparation of expert reports and debate over witnesses, all of which would be time consuming and would monopolize valuable court resources.

28.    Assuming that Lead Plaintiff filed a successful class certification motion, the claims in the Action survived Defendants' motion for summary judgment, and the case proceeded to trial, Lead Plaintiff still might not recover anything for the Class.  Defendants have denied, and continue to deny, Lead Plaintiff's allegations, and would undoubtedly continue to vigorously oppose the Action and mount strong defenses were the Action to

6

continue.  There is a significant risk that the jury might be swayed by Defendants' theory of the case at trial, leaving the Class with very little recovery, or no recovery at all.  Even if Lead Plaintiff were to prevail at trial, Defendants might have appealed the decision.  The appeals process can go on for months or even years, significantly prolonging the Action and jeopardizing any recovery awarded to the Class at trial should Defendants be victorious.

29.    In addition to the risks to recovery posed by a trial in this Action, the trial process is lengthy, complicated and would be taxing on the Court and the attorneys involved.

30.    As well, further litigation of the Action would be costly, and would have significantly depleted the funds available for the Settlement.  Based upon Sonim's public filings with the SEC, as well as a call with Sonim's current CFO, it is Lead Counsel's and Lead Plaintiff's understanding that the Company's ability to fund a settlement in this Action is limited, and that continued litigation would further erode the assets available to fund a judgment or a settlement made at a later date.  For example, Sonim is required to indemnify the officers, directors, and underwriters named in this Action, *see* Sonim Form 424B4 at 26 (filed with the SEC on June 8, 2020), and the Company has a large self-insured retention on its relevant insurance that would require Sonim to spend a substantial sum on litigation before insurance would begin covering any litigation costs.

31.    Sonim's ability to pay more is further limited because, as the Company warned on June 8, 2020, it has not been profitable in recent years and may not achieve or maintain profitability in the future.  *See* Sonim Form 424B4 at 5 (filed with the SEC on June 8, 2020).  It also warned at that time that "substantial doubt exists as to [Sonim's] ability to continue as a going concern," because, *inter alia*, the Company has "incurred significant net losses since 2013[,]" expects that its costs for research and development will increase, and its principal sources of liquidity as of March 31, 2020 consist of existing cash and cash equivalents of $12.4 million.  *See id*. at 5, 12.

32.    Although the Company recently raised funds through a public offering in June, it is Lead Plaintiff's and Lead Counsel's understanding that the proceeds were used to pay a portion of Sonim's outstanding debt, and the remaining proceeds are needed to cover, *inter alia*,

7

the high research and development costs the Company expects to incur to develop and rollout devices that can operate on state-of-the-art 5G wireless networks—devices which are necessary for Sonim to survive in the highly competitive cellular device market. *See id.* at 4, 19. Sonim warned investors once again in August 2020 that "substantial doubt exists as to our ability to continue as a going concern," citing, *inter alia*, its current revenue run-rate, the fact that it expects costs to increase in future periods, and that just $4.6 million was provided by Sonim's operating activities during the six months ended June 30, 2020. *See* Sonim Form 10-Q at 27, 30 (filed with the SEC on Aug. 12, 2020).

33.    While recovery from the Individual Defendants and Underwriter Defendants is possible, to date neither group of defendants has indicated any willingness to fund a settlement. Sonim is obligated to indemnify them and it is Lead Counsel's understanding that Sonim has been funding all the litigation costs for all Defendants. While Lead Plaintiff's claims are strict liability as to the Company, the Individual Defendants and Underwriter Defendants have defenses available that the Company does not. For example, Lead Counsel anticipates that the Underwriter Defendants would assert a due diligence defense should the litigation continue. Underwriter Defendants' counsel affirmed that they would do so during the Preliminary Approval Hearing. *See* Preliminary Approval Motion Hearing Tr. at 14:22 – 15:13 ("[W]e feel very strongly about that defense. We would also bring at least in one expert on that defense. It is something that the underwriters would stand behind and would pursue if this case goes forward."). Lead Counsel believes that Lead Plaintiff would have to prove his case on the merits and overcome this and any other defenses the Underwriter Defendants and Individual Defendants may assert before either group would be willing to contribute any money towards a settlement. Meanwhile, Sonim would continue to foot the bill for their defense costs, further depleting the funds that could have gone towards a settlement, and further increasing the risk of Sonim's insolvency.

34.    Additionally, the coronavirus pandemic, which caused a global economic crisis and continues to sow economic uncertainty, makes continued litigation especially risky. Sonim is not immune to the pandemic's effects—it was forced to close its manufacturing facility in

Shenzhen for most of February 2020 and has warned that "demand for our solutions may be reduced as a result of the COVID-19 outbreak and resulting market uncertainty."  Sonim Form 10-Q at 29-30 (filed with the SEC on Aug. 12, 2020).  Many municipalities, a key customer demographic for Sonim, are facing steep budget cuts due to the COVID-19 pandemic.  *See* AC ¶33 (Sonim markets its phones to "task workers," including those working for "public sector agencies"); Kim Hart, *The pandemic is hitting city budgets harder than the Great Recession*, Axios.com (Aug. 13, 2020).[4]  There is no guarantee that these customers will purchase Sonim's products, or in sufficient quantities, to allow the Company to continue to fund the litigation. Indeed, Sonim's stock traded below $1 for much of 2020, and it closed at just $0.88 on September 10, 2020, the date the Settlement was entered into.  *See* SONM, Yahoo! Finance, https://finance.yahoo.com/quote/SONM.

35.    In contrast to the foregoing, the Settlement represents an immediate and certain benefit for the Class.  Lead Counsel, having evaluated the substantial risk, time, and expense required to prosecute this Action through trial and appeals, strongly believes that the Settlement is a favorable result for the Class under the circumstances.

### C.    The Settlement Terms

36.    The Settlement, which the Court preliminarily approved, provides for the gross payment of $2,000,000 to secure a settlement of the claims asserted in the Action against Defendants.  If approved, the Settlement will finally resolve Lead Plaintiff's allegations against Defendants and release all Released Claims against them in the Action.

37.    Defendants have denied liability and any wrongdoing as part of the Settlement, and they vigorously maintain that they are not liable to the Class.

38.    All eligible Class Members who timely submit valid Claim Forms will receive a distribution from the Net Settlement Fund, which is the Settlement Fund minus administration expenses, Lead Counsel's fees and expenses, an award to Lead Plaintiff, and any Taxes and Tax

---

[4]    *See* https://www.axios.com/the-pandemic-is-hitting-city-budgets-harder-than-the-greatrecession-0156574a-c5f9-454d-b579-1292595abdca.html

9

Expenses.  The Court will be asked to approve the distribution of the Net Settlement Fund at a future date, once the administration is completed.

39.    The Settlement provides an immediate and substantial recovery to the Class, who faced a significant risk of a much smaller recovery or no recovery at all.  Given the complexities of the issues involved in the Action, Lead Plaintiff's entitlement to recovery would be correspondingly uncertain.  Moreover, there is still a considerable dispute between the Settling Parties over whether Defendants violated the securities laws at all.  This dispute could have resulted in further proceedings before the Court and would have required the expenditure of substantial additional judicial resources, time, and expenses.  Given these and other difficulties facing the Class at this point in the litigation, the Settlement provides a favorable guaranteed recovery.

40.    Based on this declaration and for the reasons set forth in the accompanying memorandum, Lead Plaintiff respectfully submits that the terms of the Settlement and the Plan of Allocation are fair, reasonable, and adequate.

## IV.    THE COURT'S PRELIMINARY APPROVAL ORDER AND LEAD PLAINTIFF'S DISSEMINATION OF NOTICE

### A.    Preliminary Approval Motion

41.    On September 11, 2020, Lead Plaintiff filed the Preliminary Approval Motion, seeking preliminary approval of the Settlement, preliminary certification of the Class, approval of the manner and content of the proposed notice, and scheduling of the Final Approval Hearing.  ECF Nos. 75-77.

42.    On October 7, 2020, the plaintiffs in the State Court Action filed a Motion To Intervene and Object, through which they sought to intervene to object to the proposed Settlement and stay the Action in favor of the State Court Action.  ECF No. 82.

43.    Lead Plaintiff vigorously opposed their motion, ECF No. 91, and the Court denied it, ECF No. 95.[5]  The Court explained that the State Court Action plaintiffs failed to

---

[5]    As Lead Plaintiff pointed out in his opposition to the State Court Action plaintiffs' motion, the State Court Action was tentatively dismissed on October 14, 2020, when the State Court tentatively granted Defendants' motion to dismiss on *forum non conveniens* grounds.  *See*

10

establish that intervention was appropriate because, assuming the Preliminary Approval Order was granted, they could exclude themselves from the settlement or object to the proposed settlement "in accordance with the notice sent to the settlement class." *See* ECF No. 95 at 2-3.

44.    On October 30, 2020, the Court held a hearing on the Preliminary Approval Motion and ordered that revisions be made to certain of the notice documents. *See* ECF Nos. 99, 101.

**B.    Preliminary Approval Order**

45.    After the notices were revised, on November 6, 2020 the Court issued the Preliminary Approval Order, which:

(a) Granted preliminary approval of the Stipulation and the Settlement set forth therein, subject to further consideration at the Final Approval Hearing;

(b) Scheduled a Final Approval Hearing for March 5, 2021 at 9:00 a.m. to determine whether (1) the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate and should be approved; (2) the proposed Final Judgment as provided in the Stipulation should be entered; (3) the proposed Plan of Allocation for the proceeds of the Settlement is fair, reasonable, and adequate and should be approved; and (4) Lead Counsel's application for attorneys' fees, reimbursement of expenses, and an award for Lead Plaintiff pursuant to 15 U.S.C. § 77z-1(a)(4) should be granted;

(c) Appointed RG/2 Claims Administration LLC ("RG2" or "Claims Administrator") to supervise and administer the notice program as well as the processing of the claims;

(d) Approved the form and content of the Notice, Summary Notice, and Claim Form, and approved the plan for mailing, distribution, and/or publication of these documents;

---

ECF No. 91 at 4. The State Court has since entered the dismissal order. *See* State Court Action Docket, Notice of Entry of Order Granting Defendants' Motion To Dismiss dated Dec. 4, 2020 (filed on Dec. 8, 2020).

11

(e) Directed RG2 to cause a copy of the Notice and Claim Form to be mailed by first class mail to the list of record holders of Sonim common stock provided by the Company no later than December 4, 2020;

(f) Directed RG2 to cause copies of the Stipulation and its exhibits, the Preliminary Approval Order, the Notice, and the Claim Form, to be posted on the Settlement's website, www.rg2claims.com/Sonim.html, no later than December 4, 2020;

(g) Directed RG2 to cause the Summary Notice to be posted by *PR Newswire* and published in *Investor's Business Daily* no later than December 18, 2020;

(h) Directed Lead Counsel to serve on Defendants' Counsel and file with the Court proof of such mailing and publication no later than February 17, 2021;

(i) Established procedures and deadlines for Class Members to object to the Settlement, Plan of Allocation, or award of attorneys' fees, expenses, or Lead Plaintiff's award, and to appear at the Final Approval Hearing; and

(j) Established procedures and deadlines for Class Members to submit Claim Forms or seek exclusion.

**C.     Notice**

46.     Pursuant to the Preliminary Approval Order, on February 17, 2021, Lead Counsel served on Defendants' Counsel and filed with the Court the RG2 Declaration, by filing it concurrently herewith. The RG2 Declaration sets forth the efforts undertaken by RG2 to mail the Notice and Claim Form to Class Members, to publish the Summary Notice, and to establish the Action's website, among other things.

47.     As detailed in the RG2 Declaration, beginning on December 4, 2020, RG2 mailed or caused to be mailed a total of 4,097 Notices and Claim Forms to potential Class Members and nominees. *See* RG2 Decl. ¶¶5-9. The Summary Notice was published in *Investor's Business Daily* and posted by *PR Newswire* on December 14, 2020. *Id.* at ¶11.

48.     Additionally, RG2 established a telephone helpline to accommodate potential Class Members who have questions about the Settlement. *See id.* at ¶12.

49.     RG2 also set up the website, www.rg2claims.com/Sonim.html, to provide information about the proposed Settlement to Class Members and others. *See id.* The website makes available for viewing and downloading important documents, including the Notice, Claim Form, and the Stipulation and its exhibits. *See id.* The website also lists the exclusion, objection, and claim deadlines as well as the date and time of the Final Approval Hearing.

50.     As required by Rule 23 of the Federal Rules of Civil Procedure, due process, and the PSLRA, the Notice (a) described the nature of the claims asserted in the Action; (b) included a definition of the Settlement Class; (c) summarized the Settling Parties' reasons for entering into the Settlement; (d) listed the name, telephone number, and address for Lead Counsel; (e) disclosed that Lead Counsel intends to seek attorneys' fees of up to 25% of the Settlement Fund, plus reimbursement of expenses not to exceed $50,000, and an award for Lead Plaintiff not to exceed $2,500; (f) provided the date, time, and location of the Final Approval Hearing; (g) advised Settlement Class Members of their right to appear at the Final Approval Hearing and instructed them that the date may change; (h) advised Class Members of their right to exclude themselves from the Class and the binding effect of doing so; (i) provided the deadline and procedure for opting out of our opposing the Settlement, Plan of Allocation, award of attorneys' fees and expenses, or the award to Lead Plaintiff; (j) explained the consequences of remaining in the Settlement Class; (k) provided the manner in which to obtain more information, including the address for the designated website; and (l) explained how to access the case docket on PACER. *See* RG2 Decl., Ex. A.

**D.     Reaction of the Class**

51.     The Notice provides that objections to the Settlement, Plan of Allocation, the application for attorneys' fees and payment of expenses, and/or an award for Lead Plaintiff must be received by the Court no later than February 3, 2021. *See* RG2 Decl., Ex. A at 2.

52.     Although 4,097 Notices have been mailed to potential Class Members and nominees, no requests for exclusion from the class or objections to the Settlement, Plan of Allocation, the application for attorneys' fees and payment of expenses, and/or an award for Lead Plaintiff have been received. The State Court Action plaintiffs who previously sought to

intervene and object before preliminary approval was granted, *see* ¶¶42-43, *supra*, did not subsequently file an objection pursuant to the Notice and therefore presumably no longer object to the Settlement.

### E.    Plan of Allocation

53.    Pursuant to the Preliminary Approval Order, and as explained in the Notice, all Class Members who wished to participate in the Settlement were required to submit a Claim Form to RG2 so that it was postmarked or submitted electronically no later than February 3, 2021.  *See* RG2 Decl., Ex. A at 2, 6-7.

54.    As set forth in the Notice, all Class Members who timely filed a valid Claim Form and whose *pro rata* share of the Net Settlement Fund amounts to $10.00 or more will receive a distribution of the Settlement proceeds, after deduction of, *inter alia*, attorneys' fees and expenses, an award to Lead Plaintiff, and taxes incurred on the Settlement Fund.  *See* RG2 Decl., Ex. A at 12-16.  The distribution will be made in accordance with the Plan of Allocation set forth and described in detail in the Notice.  *See id*.

55.    The objective of the Plan of Allocation is to equitably distribute the Net Settlement Fund among Authorized Claimants based upon their claimed losses as a result of the alleged false and/or misleading statements alleged in the AC as opposed to losses caused by unrelated market or industry factors.

56.    Under the Plan of Allocation, the Claims Administrator will calculate each Authorized Claimant's Recognized Loss, as explained in the Notice.  *See* RG2 Decl., Ex. A at 13.  The calculation of a Recognized Loss will depend upon several factors, including when and for how much Class Members purchased or otherwise acquired their Sonim common stock, and whether these securities were sold, and if sold, when and for how much they were sold.  *See id*. In order to have a Recognized Loss under the Plan of Allocation, Authorized Claimants must have purchased or otherwise acquired their Sonim common stock between May 9, 2019 (the IPO date) and September 9, 2019, inclusive, and still held that stock on September 10, 2019, the date of the corrective disclosure set forth in the AC.  *See id*. at 13-14.  The Claims Administrator will use the Recognized Loss formula to determine each Authorized Claimant's

*pro rata* share to proportionately allocate the Net Settlement Fund to the Authorized Claimants. *See id.*

57.    The Plan of Allocation was formulated with the assistance of Lead Plaintiff's damages consultant, and it tracks the theory of damages alleged in the AC.  It was also reviewed and approved by RG2, a claims administrator with substantial experience in claims administration.

58.    The terms of the Plan of Allocation were fully disclosed in the Notice which was mailed to 4,097 potential Class Members and nominees and made available on the Action's designated website beginning on December 4, 2020.  *See* RG2 Decl. ¶¶5-9, 12.   There have been no objections to the Plan of Allocation.  Thus, Lead Plaintiff respectfully submits that it is fair, reasonable, and adequate and should be approved by the Court.

**V.    CONCLUSION**

59.    Lead Counsel respectfully submits that the Settlement should be granted final approval as fair, reasonable, and adequate, and that the Plan of Allocation should be approved as fair, reasonable, and adequate.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 17th day of February 2021.

*/s/ Katherine M. Lenahan*
Katherine M. Lenahan

15