Katherine M. Lenahan (admitted *pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: klenahan@faruqilaw.com


Benjamin Heikali SBN 307466
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
Email: bheikali@faruqilaw.com

*Attorneys for Lead Plaintiff David Sterrett*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID STERRETT, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SONIM TECHNOLOGIES, INC., ROBERT PLASCHKE, JAMES WALKER, MAURICE HOCHSCHILD, ALAN HOWE, KENNY YOUNG, SUSAN G. SWENSON, JOHN KNEUER, JEFFREY D. JOHNSON, OPPENHEIMER & CO., INC., LAKE STREET CAPITAL MARKETS, LLC, and NATIONAL SECURITIES CORPORATION, <br><br> Defendants. | Case No. 3:19-cv-06416-MMC <br><br> <u>**CLASS ACTION**</u> <br><br> **DECLARATION OF TINA CHIANGO IN SUPPORT OF MOTION FOR DISTRIBUTION OF THE NET SETTLEMENT FUND** |

I, TINA CHIANGO, HEREBY DECLARE AND STATE AS FOLLOWS:

1. I am the Director of Claims Administration for RG/2 Claims Administration LLC ("RG/2"). The following statements are based on my personal knowledge and information provided by other experienced RG/2 employees working under my supervision. RG/2 was retained as the Claims Administrator in connection with the settlement of the above-captioned litigation.

2. RG/2 has processed the Claim Forms in accordance with the terms of the Stipulation of Settlement, filed September 11, 2020 (the "Stipulation"), and hereby submits its administrative determinations regarding whether to accept or reject the Proof of Claim and Release forms ("Claim Forms") in preparation for a distribution of the Net Settlement Fund to Authorized Claimants.

## DISSEMINATION OF NOTICE AND CLAIM FORM

3. As more fully described in the Declaration of Tina Chiango (the "Chiango"), executed on February 16, 2021, RG/2 mailed the Court-approved Notice of Pendency and Proposed Settlement of Class Action along with the Claim Form (together the "Notice") to potential Class Members, commencing on December 4, 2020. As stated therein, a total of 4,097 Notices have been mailed or emailed to potential Class Members and nominees.

4. Under the terms of the Stipulation and as set forth in the Notice, each Class Member who wished to be eligible to receive a distribution from the Net Settlement Fund was required to complete and submit a properly executed Claim Form postmarked or submitted electronically no later than February 3, 2021, together with adequate supporting documentation for transactions and holdings reported therein. Class Members seeking to share in the Net Settlement Fund were directed in the Notice to submit their Claim Forms and supporting documentation to the email address or fax number set forth therein, or by mail to: Sonim Technologies, Inc. Securities Litigation, c/o RG/2 Claims Administration LLC, P.O. Box 59479, Philadelphia, PA 19102-9479.

## PROCEDURES FOLLOWED IN PROCESSING PROOFS OF CLAIM

5. Before claims processing commenced, RG/2 created a database dedicated to this Settlement by customizing its proprietary database management software to accommodate the specifics of this Settlement, which included developing various computer programs and screens

1

for entry of Class Members' identifying and securities information.  In addition, RG/2 trained its staff in the specifics of the Settlement so that Claim Forms would be properly processed and formulated a system so that telephone inquiries are properly handled.

6.    RG/2 sorted incoming mail into Claim Forms and administrative mail.[1]  Notices that were returned by the Post Office as undeliverable were reviewed for updated addresses and, where available, new addresses were entered into the database and new Notices were mailed to the updated addresses.  Administrative mail was reviewed and, where necessary, appropriate responses were provided to the senders.

7.    RG2 received 962 Claim Forms through October 18, 2021. Once received, each Claim Form was assigned a unique Claim Form number.  The information from each Claim Form, including the Claimant's name, address, taxpayer identification number or social security number, and all claimed purchase and sale transactions was entered into a database developed by RG/2 to process Claim Forms submitted for the Settlement.  Next, the information provided by each Claimant in support of his, her or its Claim Form was reviewed to determine whether the Claimant had in fact purchased/acquired Sonim Technologies, Inc. common stock ("Sonim") during the relevant period.

8.    In order to process the Claim Forms, RG/2 utilized internal claim codes to identify and classify Claim Forms and any deficiency or ineligibility conditions that existed within those Claim Forms.  The appropriate codes were assigned to the Claim Forms as they were processed. For example, where a Claim Form was submitted by a Claimant who did not purchase/acquire any Sonim stock during the relevant period, that Claim Form was coded to denote the ineligibility. Similar codes were used to denote other ineligible conditions, such as duplicate Claim Forms; no Recognized Loss Amount; or the Claim was submitted without the proper documentation.  These codes indicated to RG/2 that the Claimant was not eligible to receive any payment from the Net Settlement Fund with respect to that claim unless the deficiency was cured.

**THE DEFICIENCY PROCESS**

---

[1] Administrative mail includes all mail other than Claim Forms and supporting documentation as well as responses to notices of partial or entire rejection of the claim (*e.g.*, requests for Claim Forms, notifications of a change of address, and questions regarding the administration process or status of the administration).

9.     Many of the Claim Forms submitted were incomplete, not signed, not properly documented, or were otherwise deficient.  Much of RG/2's efforts in handling an administration involve Claimant communications so that all Claimants have sufficient opportunity to cure any deficiencies and file a complete Claim Form.  The "Deficiency Process," which involved letters and emails to Claimants, and inbound and outbound calls to Claimants, was intended to assist Claimants in properly completing their otherwise deficient submissions so that they would be eligible to participate in the Settlement.

10.     As described above, RG/2 established internal codes to identify and classify Claim Forms and conditions that existed within them.  These Claim Form conditions included, among other things, notations about which Claim Forms were deficient or rejected.  Accordingly, if a Claim Form was determined to be deficient in whole or in part (for example, if the Claim Form was missing documentation for claimed Sonim stock purchased/acquired, or if the Claimant did not sign the Claim Form or did not provide enough information to process the Claim), RG/2 generated and mailed notices to Claimants advising them of the deficiency and requesting the submission of the appropriate documentary evidence to correct the defect within thirty (30) days.  RG/2 mailed such deficiency notices to 36 Claimants.

11.     In addition, if a Claim Form was determined to be rejected (for example, the Class Member did not purchase/acquire shares during the relevant period), RG/2 generated and mailed notices to Claimants advising them of the rejection of their Claim and their right to contest such rejection in writing within thirty (30) days.  As of October 18, 2021, RG/2 has received no responses contesting the rejections.

## QUALITY ASSURANCE, FRAUD
## PREVENTION AND REGULATORY COMPLIANCE

12.     An integral part of all of our claims administration projects is the quality assurance review.  Once all of the claims have been processed, the Notice of Deficiency and Notice of Rejection letters have been mailed, and deficiency responses reviewed and processed, RG/2 performs a final project wrap-up in order to ensure correctness and completeness of all of the claims processed prior to preparing our final report to counsel.  Here, in connection with this

3

quality assurance process, RG/2 checked that all otherwise "valid" claims that do not have proper Social Security/Tax Identification Numbers were given a "message" flagging the computer system to denote that condition; determined that valid claims have no messages denoting ineligibility; determined that claims that are ineligible have messages denoting ineligibility; determined that all claims requiring a Final Notice of Rejection were sent such letters; performed a sample review of all claims deficient or otherwise; and reviewed claims with large share amounts.

13.     RG/2 also used a variety of fraud protection controls throughout the administration process to identify potential fraudulent Claim Forms.  Duplicate claim searches (by beneficial owner name, tax identification number and share amount), high value reviews, spot reviews and other standard audit report procedures that examined the information in a variety of ways, were used during the Claim Form review.

14.     RG/2 reviewed and compared the settlement database for this Settlement against the "watch list" of known potential fraudulent filers that RG/2 developed throughout its years of experience as a claims administrator.  RG/2 works closely with the FBI to update that watch list with the latest information available.  RG/2 also works with other claims administrators in preventing fraudulent claims.

## CLAIMS DETERMINATION

15.     The deadline for submitting a Claim Form was February 3, 2021. As of October 18, 2021, RG/2 has received a total of 962 Claim Forms.  Of the 962 Claims Forms received by RG/2, 760 were submitted timely and 202 were postmarked after February 3, 2021.  A total of 196 Claims have been provisionally accepted.  All provisionally accepted Claims, whether timely filed or late, are included in the list of Authorized Claimants, submitted herewith as Exhibits A and B, for the Court's review.

16.     Exhibit A lists all the Authorized Claimants who filed timely Claims and shows their Recognized Loss Amount in claim number order ("Timely Authorized Claimants").  Exhibit B lists those otherwise eligible Claimants who submitted their Claims after February 3, 2021, and their Recognized Loss Amount in claim number order ("Late But Otherwise Authorized Claimants").

4

17. Exhibit C lists all rejected or ineligible Claims and shows the reasons for rejection in claim number order ("Rejected or Ineligible Claimants"). For privacy reasons, Exhibits A, B and C include only claim numbers and reasons for rejection (no names, addresses or Taxpayer I.D. numbers are disclosed).

18. RG/2 has accepted 196 Claims representing total Recognized Loss Amounts of $9,382,941.91 (including $7,254,892.02 from 172 timely Claims and $2,128,049.89 from 24 Claims submitted after February 3, 2021). Each Authorized Claimant shall be allocated a *pro rata* share of the Net Settlement Fund based on his, her or its Recognized Loss Amount as compared to the total Recognized Loss Amounts of all Authorized Claimants. Upon approval by the Court, RG/2 will prepare and mail checks to all Authorized Claimants for their *pro rata* share of the Net Settlement Fund.

19. Through October 18, 2021, RG/2 has received and processed 202 Claim Forms that were postmarked after February 3, 2021. RG/2 processed all late Claim Forms, and 24, totaling $2,128,049.89 in Recognized Loss Amounts, have been found to be otherwise eligible. As no delay resulted from these late but otherwise valid Claims, RG/2 believes that the 24 eligible Late But Otherwise Authorized Claimants should be accepted.

20. A total of 766 claims were rejected for not incurring a Recognized Loss pursuant to the Plan of Allocation approved by the Court.

21. The 766 rejected Claims are listed in Exhibit C, attached hereto. It is RG/2's position that all 766 Claims be rejected by the Court. As discussed above, RG/2 noticed each of the 766 Claimants of the rejection.

22. However, there must be a final cut-off date after which no more Proofs of Claim will be processed so that there may be a proportional distribution of the Net Settlement Fund. The processing of any Proof of Claim received after preparation of this application—October 18, 2021—would necessarily require a delay in the distribution.

## DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

23. Should the Court concur with RG/2's determinations concerning the provisionally accepted and rejected Claims, including the Late But Otherwise Authorized Claimants, RG/2 recommends the following distribution plan (the "Distribution Plan") and will undertake the

following tasks: calculate the *pro rata* cash distribution amounts from the Net Settlement Fund by comparing the Claimant's Recognized Loss Amount to the total Recognized Loss Amounts of all Authorized Claimants, and then to the total dollar value of the Net Settlement Fund at the time of distribution; prepare checks and check registers, and mail checks by prepaid first class mail; issue replacement checks upon request by payees; and answer inquiries about claim calculation and checks.

24. RG/2 understands that all procedures performed with respect to the distribution of the Net Settlement Fund in connection with the validity of the Claim Forms submitted are subject to the supervision and direction of Lead Counsel and the Court.

25. To carry out such orders as the Court may issue with respect to the allocation and distribution of the Net Settlement Fund to Authorized Claimants approved by the Court, RG/2 will first coordinate with Lead Counsel to determine the amount remaining in the Net Settlement Fund after all fees and expenses authorized by this Court have been paid. Next, RG/2 will calculate the *pro rata* distribution amount for each Authorized Claimant.

26. RG/2 will then prepare checks for the distribution, and send the payments by prepaid first class mail. Finally, RG/2 will issue replacement payments upon request by payee, and will respond to inquiries about distribution amounts and Recognized Loss Amounts.

27. As provided for in the Court-approved Plan of Allocation, Authorized Claimants whose Distribution Amount is less than $10.00 will receive no payment.

28. In those cases where Authorized Claimants checks are returned as undeliverable, RG/2 will take steps to locate a new address and reissue a distribution check to the new address. Furthermore, RG/2 will reissue checks to those Authorized Claimants who have lost, damaged or otherwise require a reissued check and have requested for such in writing.

29. As set forth in the Notice, if any funds remain in the Net Settlement Fund by reason of uncashed distribution checks or otherwise, then, after RG/2 has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions, any balance remaining in the Net Settlement Fund after a reasonable period of time after the date of the initial distribution shall, if feasible, be reallocated in an equitable and economic fashion among Authorized Claimants who cashed the checks sent in

the initial distribution and would receive a minimum of $10.00. These redistributions shall be repeated, if economically feasible, until the balance remaining in the Net Settlement Fund is *de minimis*. Any *de minimis* balance that still remains in the Net Settlement Fund after such reallocation(s), which is not feasible or economical to reallocate among Authorized Claimants, shall be donated to Investor Protection Trust, a nationwide non-profit organization dedicated to providing investor education and advocacy

### FEES AND DISBURSEMENTS

30.    RG/2 agreed to be the Claims Administrator in exchange for payment of its fees and expenses. RG/2's actual fees and expenses for work performed through October 18, 2021, as well as the estimated fees and expenses to conduct the distribution of the Net Settlement Fund described above total $46,070. Attached hereto as Exhibit D is RG/2's cumulative invoice. RG/2 has already been paid $38,123, and respectfully requests payment of the balance due of $7,947 from the Settlement Fund.

### RECORDS RETENTION AND DESTRUCTION

31.    Unless otherwise ordered by the Court, one year after distribution of the Net Settlement Fund, RG/2 will destroy the paper copies of the Proofs of Claim and all supporting documentation, and three years after the final distribution of the Net Settlement Fund it will destroy electronic copies of the same. In RG/2's experience, this is a reasonable retention period and will save the Settlement Class storage costs.

32.    RG/2 respectfully requests that the Court enter an Order approving its administrative determinations accepting and rejecting the Proofs of Claim received on or before October 18, 2021 and approving the proposed distribution.

**I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES THAT TO THE BEST OF MY KNOWLEDGE THE FOREGOING IS TRUE AND CORRECT.**

Executed on October 20, 2021 at Philadelphia, Pennsylvania.

Tina Chiango, Declarant

7